**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BRYAN KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:05-cv-1150-T** |
| | ) | |
| **RICKY OWENS, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF COOSA COUNTY SHERIFF RICKY OWENS'S MOTION TO DISMISS**

COMES NOW Coosa County Sheriff Ricky Owens, a Defendant in the above-entitled action, and submits this Memorandum Brief in support of his contemporaneously filed Motion to Dismiss.

## INTRODUCTION

Plaintiff filed this action alleging that Defendants Coosa County Commission, Sheriff Ricky Owens, former Coosa County Jail Administrator Terry Wilson, Interim Jail Administrator Wendy Roberson, Dr. Randall Weaver, and Jailer Al Bradley are liable to him for the treatment he received while "admitted" to the Coosa County Jail between November 13, 2003 and January 16, 2004. As interpreted by Sheriff Owens, the Complaint alleges seven federal claims against him in his individual and official capacities.[1] The Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983 and allege the following violations of the Plaintiff's Eighth and Fourteenth Amendment rights: (1) deliberate indifference to a serious medical need by failing to provide medical care; (2) deliberate indifference to a serious medical need by delaying medical treatment; (3) failure to train jail staff to provide medication; (4) failure to train jail staff to

[1] The Plaintiff's seven claims are contained in the first five counts of the Complaint.

recognize serious medical conditions; (5) provision of inadequate jail conditions; (6) failure to train the jail staff not to mistreat prisoners; and (7) deliberate indifference to a serious risk of harm in not stopping the jail staff from abusing the Plaintiff.

None of the Plaintiff's causes of action state a claim against Sheriff Owens. Consequently, as set forth below, Sheriff Owens is entitled to a dismissal of all of the Plaintiff's claims against him.

**ARGUMENT**

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Plaintiff's Complaint, at least insofar as it relates to Sheriff Owens, contains little more than conclusory allegations that cannot survive a motion to dismiss. See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F. 3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

Sheriff Owens is entitled to a dismissal of all of the Plaintiff's claims against him for three reasons. First, the Complaint fails to state a claim against Sheriff Owens in either his individual or

official capacities. Second, even if the Complaint did state a claim against Sheriff Owens in his individual capacity, he is entitled to qualified immunity.

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PLAINTIFF'S CLAIMS BECAUSE THE COMPLAINT FAILS TO PLEAD VALID 42 U.S.C. § 1983 CLAIMS AGAINST SHERIFF OWENS IN EITHER HIS INDIVIDUAL OR OFFICIAL CAPACITY.

Sheriff Owens is entitled to a dismissal of the Plaintiff's claims against him pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Plaintiff ostensibly brings his claims pursuant to 42 U.S.C. § 1983 against Sheriff Owens in his official and individual capacities. However, the Complaint fails to allege valid claims under § 1983. With respect to his official capacity, the Eleventh Amendment to the United States Constitution deprives this Court of subject matter jurisdiction, and Sheriff Owens is not a "person" for purposes of § 1983. Additionally, the Complaint fails to allege that Sheriff Owens was acting under color of law as required by § 1983 for purposes of individual liability.

### A. Sheriff Owens is Entitled to a Dismissal of the Plaintiff's Official Capacity Claims.

Plaintiff's claims against Sheriff Owens in his official capacity are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a ***person***, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Sheriff Owens in his official capacity should therefore be dismissed because he is not a "person[s]" under § 1983 and therefore claims against him in his official capacity fails to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3.

**B. The Complaint Fails to Allege an Individual Capacity Claim Under 42 U.S.C. § 1983.**

As noted above, the Court obtains jurisdiction under 42 U.S.C. § 1983 when a plaintiff alleges that a defendant, ***acting under color of law***, deprives him or her of his federally protected rights. The Plaintiff's Complaint does not allege anywhere that Sheriff Owens was acting "under color of law." (See generally Complaint.) Accordingly, this Court's subject matter jurisdiction has not been properly invoked and Sheriff Owens is entitled to a dismissal of the Plaintiff's claims against him.

**II. EVEN IF THE COURT HAD SUBJECT MATTER JURISDICTION OVER THE PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS, SHERIFF OWENS IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW.**

Once a defendant official in a § 1983 action has demonstrated he was acting within his discretionary authority, the burden shifts to the plaintiff to show a violation of a clearly established federally protected right. The threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a

constitutional violation is stated, were these rights "clearly established" to the degree that Sheriff Owens had "fair warning" that his conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Sheriff Owens was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of the law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1998). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Furthermore, a plaintiff cannot merely rely on notice pleading in a § 1983 case involving qualified immunity. A plaintiff's pleading standard is "heightened" when § 1983 claims are made against government officials in their individual capacities. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement"). It is the Plaintiff's burden to allege sufficient specific supporting facts or face dismissal of his claims. Marsh, 268 F.3d at 1036 n.16; Montalvo, 84 F.3d at 408 n.10.

Sheriff Owens is entitled to qualified immunity and a dismissal of the Plaintiff's claims against him. First, Sheriff Owens was clearly acting within his discretionary authority. Second, the Plaintiff has failed to allege sufficient non-conclusory facts demonstrating that Sheriff Owens

violated his federally protected rights. Finally, no clearly established law provided Sheriff Owens with the requisite "fair warning" that his conduct was illegal.

**A. SHERIFF OWENS ACTED WITHIN HIS DISCRETIONARY AUTHORITY.**

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted). As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Under the facts as alleged in the Complaint, Sheriff Owens easily clears this low hurdle. All of the Plaintiff's allegations with respect to Sheriff Owens are based upon his role as the Sheriff of Coosa County. It is in this capacity only that he has the ability to train and supervise jail personnel, provide for the medical care of inmates, and otherwise operate a jail. As all of the alleged actions were taken under the auspices of these roles, Sheriff Owens was acting within his discretionary authority.

**B. SHERIFF OWENS DID NOT VIOLATE THE PLAINTIFF'S FEDERALLY PROTECTED RIGHTS.**

Supervisory officials like Sheriff Owens are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The causal connection may be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).

Here, the Plaintiff's claims appear to be based upon Sheriff Owens's alleged direct involvement and apparent policy of not taking action against the jailers who abused him. In essence, the Plaintiff has alleged three groups of federal claims against Sheriff Owens, medical, jail conditions, and training. All of these claims lack merit. First, the Plaintiff has failed to properly identify the federal rights that Sheriff Owens purportedly violated. Second, as a matter of law, Sheriff Owens was not deliberately indifferent to the Plaintiff's serious medical needs. Third, the Complaint fails to allege facts demonstrating the requisite strong causal connection necessary to hold Sheriff Owens liable on the Plaintiff's conditions claim. Finally, the Complaint fails to make out a cognizable failure to train claim against Sheriff Owens.

**1. The Complaint fails to properly plead a violation of the Plaintiff's federally protected rights.**

In an apparent attempt to avoid casting himself in a bad light, the Plaintiff has wound up failing to plead a set of circumstances that identify the specific federally protected right allegedly violated by Sheriff Owens. Specifically, the Plaintiff has failed to allege that he was an inmate, his classification as a pretrial detainee or convicted inmate, or the proper constitutional amendment that the Coosa County Commission violated. In his Complaint, the Plaintiff merely avers that he was "placed" and "admitted" to the jail. (Complaint at ¶¶ 4, 5.) At no time does he ever describe himself as an inmate or whether he was awaiting trial or had already been convicted. (See generally Complaint.) This failure to plead is important in that without them, Sheriff Owens owed him no duty to provide him with medical care, properly train his staff to handle inmates, or provide him with a constitutionally adequate jail cell.

Furthermore, assuming he was an inmate, whether the Plaintiff was a pretrial detainee or convicted prisoner determines which constitutional amendment is applicable. The Eighth Amendment governs convicted prisoners while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). The analysis under either amendment is the same. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). However, the Plaintiff, assuming he was an inmate, cannot maintain claims under both amendments. Cottrell, 85 F.3d at 1490. Therefore, at minimum, Sheriff Owens would be entitled to a dismissal of either the Plaintiff's Eighth or Fourteenth Amendment claims.[2]

[2] As Count I asserts a claim only under the Eighth Amendment, if the Plaintiff was a pretrial detainee, Count I is due to be dismissed in its entirety. Cottrell, 85 F.3d at 1490.

**2. Sheriff Owens was not deliberately indifferent to the Plaintiff's medical needs.**

As stated by the United States Supreme Court, in order to be deliberately indifferent, an official must both know of and disregard a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Farmer deliberate indifference standard contains both a subjective component (knowledge of the risk or willful blindness on the part of the supervisory official) and an objective component (whether there was a serious risk of harm). Id. at 838-39. The Complaint fails to allege that Sheriff Owens was deliberately indifferent.

While the Complaint does allege in conclusory fashion that the Plaintiff had a serious medical condition of which Sheriff Owens was aware, the facts allegations also demonstrate that Sheriff Owens did not disregard the Plaintiff's condition. Immediately after asserting that he did not receive medical care at all (paragraph five) the Plaintiff begins alleging medical care that he ***did*** receive. (Complaint at ¶ 6, alleging a visit with a mental health professional and a trip to Dr. Weaver after a fall.) During the course of the Plaintiff's two-month "admission" to the Coosa County Jail, he received medications. Id. at ¶ 19, 30. Said medications cost $900.00 per month. Id. at 19. According to the Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than ***six*** occasions – an average of almost once a week. Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 22 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash). At least five of these treatments were provided by either hospital personnel or outside providers. Id.

The Plaintiff's claims regarding the type of treatment he received also fails to state a claim. An inmate does not have a right to a ***specific*** kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this

Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

Furthermore, the Complaint does not allege that Sheriff Owens has any kind of medical education, training or experience. By necessity, therefore, he is forced to rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. It defies common sense, and places jail officials in an untenable situation, to require them to second guess medical care professionals.

While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

---

[3] The medical director was a trained and licensed nurse. Meloy, 302 F.3d at 846.

Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, Sheriff Owens is not a doctor. The Plaintiff was evaluated and treated by medical professionals at the local hospital, a mental health professional, and a dentist, as well as Dr. Weaver. Sheriff Owens was entitled to rely on these professionals. Consequently, the Plaintiff's individual capacity medical claims against Sheriff Owens are due to be dismissed.

**3. Sheriff Owens did not subject the Plaintiff to unlawful jail conditions.**

There is no constitutional mandate that prisons or jails be made comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

A claim by a pretrial detainee regarding conditions of confinement is reviewed under the Fourteenth Amendment's due process standard. Bell v. Wolfish, 441 U.S. at 575 n.16. The standard for evaluating the constitutionality of a particular restriction for purposes of affording due process, therefore, is whether the restriction amounts to punishment of the detainee. Id. at 535. The Eleventh Circuit has held that the analysis of a pretrial detainee's conditions of confinement claim is

not appreciably different from the Eighth Amendment's cruel and unusual standard for convicted inmates. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985) (noting that under the Eighth Amendment, "states may not impose punishments that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed.").

As with the Plaintiff's medical claims, in order to overcome Sheriff Owens's entitlement to qualified immunity, the Plaintiff must allege and prove that Sheriff Owens was deliberately indifferent. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Specifically, in this context, Sheriff Owens must have been aware of a serious risk to the Plaintiff's safety and disregarded it. Id. With respect to the jail conditions, the Plaintiff's Complaint falls short on both elements.

The Plaintiff's conditions claims center around the conditions in "the hole" and the alleged lack of exercise, water, and hygiene.[4] (Complaint at ¶¶ 9-14.) According to the Complaint, the Plaintiff was placed in "the hole" for his own protection after having two falling incidents. Id. at 6, 7, 9. These allegations alone demonstrate that there was a conscious regard for the Plaintiff's safety while he was in the jail. As described in the Complaint, "the hole" contained nothing. There was nothing for the Plaintiff to fall over or fall on to hurt himself after having one of his alleged seizures. Id. at ¶¶ 9-10. Obviously, if the Plaintiff were left in a cell with a toilet and sink, he could have injured himself by striking their metal surfaces during a seizure. Consequently, the layout of "the hole" demonstrates both a lack of serious risk to the Plaintiff (or, at the very least, a significant reduction of the risk found in a general population cell), and a conscious effort on the part of Sheriff Owens and his staff to reduce the risk of harm to the Plaintiff.

[4] The Complaint also contains allegations regarding "bugs" in the Plaintiff's cell and in his food. (Complaint at ¶ 20.) However, the Complaint does not actually allege that the bugs were present, only that the Plaintiff – a person with a diagnosed history of mental illness and currently taking medication for same – complained about bugs. Id.

The Plaintiff's hygiene, exercise, and water claims fail because they do not allege a serious risk of harm. In fact, the Complaint does not allege, even in conclusory language, that the Plaintiff suffered any injury or deterioration in health due to a lack of hygiene, exercise or water. With respect to water, the Plaintiff alleges that he went without water for, at most, a few hours. (Complaint at ¶ 12.) He vaguely alleges he went without a shower for "days at a time." Id. at ¶ 13. Almost as an afterthought, the Plaintiff throws in that he only "rarely" was let out to exercise between December 6, 2003 and January 16, 2004. Id. at ¶ 14. Nowhere in the Complaint does the Plaintiff allege that these conditions during the relevant five-week period caused him harm.

Other federal courts have upheld the constitutionality of conditions similar to those alleged here. See, e.g., Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding one shower per week sufficient); Briggs v. Heidlebaugh, 1997 WL 318081, *3 (E.D. Pa. 1997) (holding ***denial of shower for two weeks not constitutional violation***); DiFilippo v. Vaughn, 1996 WL 355336, *5 (E.D. Pa. 1996) (holding Eighth Amendment does not require inmates be given frequent showers); Tinsley v. Vaughn, 1991 WL 95323 at *4 (E.D. Pa. 1991) (holding no violation when shower privileges suspended for twelve days); Bensinger v. Nichols, 1994 WL 561924, *1 (E.D. Pa. 1994) (granting motion to dismiss where plaintiff alleged, *inter alia*, that he received showers only once every three days); Mugmuk v. Beyer, 1988 WL 80875, *2 (D.N.J. 1988) (holding no constitutional violation where plaintiff was permitted to shower only once every three days); Pendleton v. Housewright, 651 F. Supp. 631, 634 (D. Nev. 1986) (approving three-day shower rule imposed by prison official). Similarly, federal courts have held that infrequent access to exercise outside of an inmate's cell does not violate the Constitution. See, e.g., French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (holding lack of exercise states a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"); Bensinger v.

Boyle, 1995 WL 422795, *2 (E.D. Pa. 1995) (holding deprivation of exercise for five straight days not constitutional violation). Of course, the Plaintiff was always free to exercise inside his cell and has not alleged that a lack of exercise caused his muscles to atrophy.

**4. The Complaint fails to allege a cognizable failure to train claim as a matter of law.**

A supervisory official faces § 1983 liability only where the "'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains." Belcher, 30 F.3d at 1397 (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)). Put into the context of Plaintiff's training claim, in order to be deliberately indifferent, Sheriff Owens must have been aware of a serious risk posed by his jailers that would result in their violation of the Plaintiff's federally protected rights. Farmer, 511 U.S. at 837.

The Plaintiff's training claims can be grouped into two categories. Claims in the first category involve failure to provide medical training to jail staff. For the reasons stated previously (e.g., allegations in the Complaint regarding Plaintiff's frequent access to medical care and the reasonableness of relying upon the jail doctor and other medical personnel), the Plaintiff's medical training claims fail as a matter of law.

The second category involve claims related to the alleged abuse the Plaintiff received at the hands of Officer Bradley and others. The Plaintiff's claims here involve failing to train officers not to abuse prisoners. However, under Eleventh Circuit precedent, a policy-making official is not required to promulgate policy or train subordinates to refrain from doing that which is clearly illegal. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (holding that there is no supervisory liability where the conduct engaged in by a subordinate is obviously illegal). If the Plaintiff's conclusory allegations are correct, kicking prisoners, punching them, and attempting to sodomize them with a broom stick are clearly illegal. Assuming, *arguendo*, the truth

of the Plaintiff's allegations, Sheriff Owens was under no constitutional obligation to implement a policy against or provide training regarding that which is clearly already illegal.

**C. No Clearly Established Law Provided Sheriff Owens With "Fair Warning" That His Conduct Violated the Plaintiff's Federally Protected Rights.**

The Plaintiff's final burden under the qualified immunity analysis is to show that clearly established law provided Sheriff Owens with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

After a diligent search of the relevant case law, counsel for the Defendants has been unable to find a case involving materially similar facts that held conduct similar to that engaged in by the Defendants to be unlawful. Consequently, the Plaintiff has the burden of either identifying such a case or proving that the conduct of Sheriff Owens was obviously illegal. In light of the law cited above finding similar conduct constitutional, the Plaintiff simply cannot meet his burden. See, e.g., City of Revere, 463 U.S. at 246; Hamm, 774 F.2d at 1575; Camberos, 73 F.3d at 176; Davenport, 844 F.2d at 1316-17; French, 777 F.2d at 1255; Sewell, 117 F.3d at 490. Consequently, even if the Court were to conclude that the Complaint set forth constitutional

violations against Sheriff Owens, he is nonetheless entitled to a dismissal of the Plaintiff's individual capacity claims against him as Sheriff Owens did not have the requisite fair warning to hold him liable under § 1983.

**CONCLUSION**

Based upon the foregoing, Sheriff Owens requests that the Court issue an Order dismissing him from this action and awarding attorney's fees pursuant to law and 42 U.S.C § 1988.

Respectfully submitted this 13th day of January, 2006.

**s/Gary L. Willford, Jr.**
KENDRICK E. WEBB – Bar No. WEB022
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorney for Defendants
WEBB & ELEY, P.C.
7474 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: gwillford@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of January, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard J. Stockham, III, Esquire
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL 35209

Kristi Allen Dowdy, Esquire
McDonald & Dowdy
1005 Montgomery Highway
Birmingham, AL 35216

Alex L. Holtsford, Jr., Esquire
Rick A. Howard, Esquire
Nix, Holtsford, Gilliland, Higgins & Hitson, PC
P. O. Box 4128
Montgomery, AL 36103-4128

**s/Gary L. Willford, Jr.**
OF COUNSEL