IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL BRYAN KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:05-cv-01150-MHT |
| | ) | |
| RICKY OWENS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

OPPOSITION TO DEFENDANT OWENS' MOTION TO DISMISS

Here Owens is sued both in his official capacity and his individual capacity.
With respect to the Plaintiff's 'official capacity' claims, the Supreme Court has said
that a court may not grant a motion to dismiss unless it appears beyond doubt that a
claimant can prove no set of facts that would entitle him to relief. *Conley v. Gibson,*
355 U.S. 41, 45-46(1957). Owens has moved to dismiss the 'official capacity' claims
against him, because he says, they are barred by the Eleventh Amendment, and
because state official, such as himself, are not "persons" under §1983, citing *Will v.
Michigan Dept. Of State Police*, 491 U.S. 58,71 (1989). But the 11th Circuit has held
that the Eleventh Amendment does not bar §1983 suits against state officials in their
individual capacities with regard to injunctive or declaratory relief. In *Parker v.
Williams,* 862 F2d 1471,1475 (11th Cir. 1989) the court said:

> Although the Eleventh Amendment does not insulate from suit state officials acting in their official capacities, at least for prospective injunctive relief, *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), regardless of the entity named as defendant, the Eleventh Amendment bars retroactive damage awards which must be paid by the state.

See also *Kentucky v. Graham* 473 U.S. 159, 170; 105 S.Ct. 3099, 3107 Fn.18 (1985) which held state officials can be sued in their official capacity for injunctive and declaratory relief:

> In an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants. See *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); see also *Ex parte Young, supra.*

With respect to Owens' motion to dismiss claims against him in his 'individual capacity'[1] on grounds of qualified immunity, the Eleventh Circuit has said that the only time it is appropriate to do so is when five elements are satisfied:

> We apply the qualified immunity defense to dismiss a complaint at the 12(b)(6) stage where, (1) from the face of the complaint, (2) we must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim-given the alleged circumstances-was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted. *Marsh v. Butler Cty.*, 268 F.3d 1014,1023 (11th Cir. 2001).

---

[1]Defendant claims that plaintiff has insufficiently pled an 'individual capacity' claim against him because he did not allege that the defendant"acting under color of law" deprived him of federally protected rights. Though Defendant cites no law for this position, Plaintiff will amend the complaint to address this.

Plaintiff Daniel Bryan Kelly's rights, that the Complaint alleges Defendant Owens violated, were clearly established before December 2003, the time plaintiff alleges the defendant violated his constitutional rights, and so a motion to dismiss on qualified immunity grounds is not appropriate here.

## OWEN HAS NOT SHOWN HE IS ENTITLED TO QUALIFIED IMMUNITY

Defendant Owens raises the defense of qualified immunity. The case law he cites holds that when asserting a defense of qualified immunity, the defendant has the burden of first proving, by a factual showing, that the challenged actions were within his discretionary authority. To establish the defense of qualified immunity Owens must offer evidence his actions or inactions were (1) in the performance of his duties, and (2) in the scope of his authority, see *Harbert Int'l, Inc., v. James*, 157 F.3d 1271, 1282 (11th Cir.1998). Owens argues that only in his capacity as sheriff can he train and supervise jail personnel, provide inmate medical care, and operate the jail. So he was acting within his discretionary authority. But "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice."*Harbert* at 1282.

## PLAINTIFF'S RIGHTS WERE CLEARLY ESTABLISHED

Even if Defendant were to satisfy his burden of proving he was acting within his discretionary authority, Plaintiff's rights alleged in his complaint were clearly

3

established.

Plaintiff's claims against Defendant Owens fall into four categories: 1) that the jail conditions violated his constitutional rights; 2) that denial of his serious medical needs violated his constitutional rights; 3) that Owens's knowing failure to stop jail staff from abusing plaintiff violated his constitutional rights; and 4) that failure to train jail staff violated his constitutional rights.

With respect to what constitutes clearly established law for purposes of overcoming qualified immunity in a §1983 case the Supreme Court has criticized the Eleventh Circuit's use of the "materially similar" standard as a "rigid gloss on the qualified immunity standard" that was not consistent with Supreme Court precedent. See *Hope v. Pelzer*, 536 U.S.730, 739 (2002). The *Hope* Court explained the "clearly established" standard for §1983 liability was identical to "fair warning" requirement under §242. The court pointed out that it had affirmed convictions under §242 despite notable factual distinctions between precedents relied on and the cases before the court, see *Hope* at 739. The *Hope* Court specifically criticized the Eleventh Circuit's failure to recognize circuit precedent in *Ort v. White*, 813 F2.d 318 (11th Cir.1987) and *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974) in addressing the qualified immunity of the officers who chained the plaintiff to the hitching post and denied him drinking water.

The *Hope* Court said that the situation in Gates which identified several forms of impermissible conduct lessened the force of any one of the instances for purpose of clearly establishing the violation. It said:

> The fact that *Gates* found several forms of punishment impermissible does not, as respondents suggest, lessen the force of its holding with respect to handcuffing inmates to cells or fences for long periods of time. Nor, for the purpose of providing fair notice to reasonable officers administering punishment for past misconduct, is there any reason to draw a constitutional distinction between a practice of handcuffing an inmate to a fence for prolonged periods and handcuffing him to a hitching post for seven hours. The Court of Appeals' conclusion to the contrary exposes the danger of a rigid, overreliance on factual similarity. *Hope* at 742

Similarly, the *Hope* Court analyzed the *Ort* case and found that even though the facts were significantly different, the reasoning gave sufficient "fair warning" to clearly establish the violation. It said:

> In *Ort v. White,* 813 F.2d 318, the Court of Appeals held that an officer's temporary denials of drinking water to an inmate who repeatedly refused to do his share of the work assigned to a farm squad "should not be viewed as punishment in the strict sense, but instead as necessary coercive measures undertaken to obtain compliance with a reasonable prison rule, *i.e.,* the requirement that all inmates perform their assigned farm squad duties." *Id.,* at 325. "The officer's clear motive was to encourage Ort to comply with the rules and to do the work required of him, after which he would receive the water like everyone else." *Ibid.* The court cautioned, however, that a constitutional violation might have been present "if later, once back at the prison, officials had decided to deny [Ort] water as punishment for his refusal to work." *Id.,* at 326. So too would a violation have occurred if the method of coercion reached

a point of severity such that the recalcitrant prisoner's health was at risk. *Ibid. Although the facts of the case are not identical, Ort's premise is that "physical abuse directed at [a] prisoner after he terminate[s] his resistance to authority would constitute an actionable eighth amendment violation." Id., at 324. This premise has clear applicability in this case. Hope was not restrained at the worksite until he was willing to return to work. Rather, he was removed back to the prison and placed under conditions that threatened his health. Ort therefore gave fair warning to respondents that their conduct crossed the line of what is constitutionally permissible.* Hope *at 743 (emphasis added)*

## JAIL CONDITIONS CLAIMS

In this case Plaintiff Daniel Bryan Kelly has alleged that certain jail conditions which injured him and that Owens was aware were clearly established as being constitutional violations. The complaint alleges the following:

Owens put Plaintiff in a solitary cell called "the hole" and required him to sleep on the cold concrete floor on a thin plastic mat even though Owens knew he had had back surgery, had recently injured his back in a fall and suffered from degenerative back problems. "The hole" did not have running water or toilet. Urinating and defecating was done in a drain hole in the center of the floor beside the plastic mat where he was forced to sleep. He could not flush the drain hole, only jail staff outside could, and Owens was aware that it was not flushed for hours, and on several occasions, for days, leaving urine and feces accumulated by where plaintiff was forced to sleep. He was not given toilet paper. He was not given water for hours

at a time. Owens was aware he repeatedly called for water to drink and was constantly thirsty. He was denied access to a shower or means to perform personal hygiene for extended periods, and on several occasions, for days at a time. Owens covered the only window with paper. He repeatedly requested to use a toilet and to be allowed to take a bath. Owens was aware of this but denied him access to basic hygiene. He repeatedly complained that there were bugs on the wall and in his food, and Owens was aware of this. He was in "the hole" from December 6 to January 16, and repeatedly complained that he was extremely cold, but Owens would not let him move to a bed off the cold concrete floor. (See complaint ¶¶9,10,11,13,13,14,16,17,20).

A similar situation has been held to be unconstitutional. In *Gates v. Collier*, supra the Court found the following similar situation unconstitutional:

> In addition, each side has one 6' X 6' cell, known as the dark hole, with no lights, commode, sink or other furnishings. A hole in the concrete floor is located in the middle of the cell and is approximately 6'[sic] in diameter that will flush to dispose of body wastes. A heavy metal door without a window closes the cell. For solitary confinement at Parchman the inmates are placed in the dark hole, naked, without any hygienic material, without any bedding, and often without adequate food. It is customary to cut the hair of an inmate confined in the dark hold by means of heavy-duty clippers. Inmates have frequently remained 7968 also expressly discourages corporal [sic] and may be confined there for up to seventy-two hours. While an inmate occupies the dark hole, the cell is not cleaned, nor is the inmate permitted to wash himself.

7

Even under the restrictive standards for determining cruel and unusual punishment enunciated in Novak, this solitary confinement in the dark hole at Parchman undoubtedly meets the test as found by the district court. It is unassailable that the solitary confinement of naked persons in MSU's dark hole, without any hygienic materials, any bedding, adequate food or heat, without opportunity for cleaning either themselves or the cell, and for longer than twenty-four hours continuously, is constitutionally forbidden under the Eighth Amendment. *Gates* at 1305.

The facts in this case similar to those in *Gates* are that plaintiff is held in a solitary cell with no commode, sink or other furnishing.  There is a hole in the concrete floor in the middle of the cell that will flush to dispose of bodily waste.  The door is without a window (because Owen's covered it).  Plaintiff was placed in it without any hygienic material.  The cell was not cleaned while the Plaintiff was in it.  The Plaintiff was not permitted to wash himself.    The differences are that in *Gates* there was no light, inmates were put in the "dark hole" naked, without any bedding, and often without adequate food.  Inmates in the "dark hole" often had their hair cut.

On the other hand, here, while Plaintiff was given a plastic mat to lie, on it was insufficient against the cold.  Several factors made the plaintiff's situation worse that that in Gates: unlike *Gates*, there were bugs on the walls and in the food; unlike *Gates,* Plaintiff was in "the hole" for forty-one days instead of the 24 to 72 hours in *Gates*; unlike *Gates*, here  urine and feces were not flushed for extensive periods of time, on several occasions for days, and Plaintiff was forced to lie beside the hole

8

filled with human waste; unlike *Gates* Plaintiff was not given toilet paper, and though Plaintiff was given a thin plastic mat instead of the absence of bedding in *Gates,* given that Plaintiff had a severe injuries to his back, degenerative back problems, recent back injuries and previous back surgery, lying on a thin plastic mat was as bad or worse than *Gates*.

One of the things the Supreme Court in *Hope* identified as previously established by *Gates* was depriving inmates of hygienic materials. See *Hope* at 742 referencing *Gates* at 1306. Plaintiff's deprivation of basic hygiene was therefore clearly established as a constitutional violation. Also, Plaintiff's situation, in some senses, also worse than the situation in *Gates* because Plaintiff was obviously sick and suffering from a serious medical condition, both physically and mentally.

Additionally, Plaintiff went for hours at a time without receiving clean drinking water. The Supreme Court in *Hope,* citing Eleventh Circuit President of *Ort v. Wright*, held that the denial of drinking water to an inmate violates clearly established constitutional law. In *Ort* the Plaintiff was denied water for as much as two hours. The Supreme Court in *Gates* held that such physical abuse directed at a prisoner when he was not resisting authority would violate constitutional rights. So it was clearly established that deprivation of drinking water for several hours would constitute a constitutional violation.

Other Eleventh Circuit cases have held that the treatment that Owens subjected Plaintiff to were clearly established as violating the Plaintiff's constitutional rights. In *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) the court held that a cell where Plaintiff was forced to sleep on the floor and where Plaintiff was deprived of running water for two days, deprived of toilet paper for three days, where there is filth on the cell floor, was sufficient to make out a violation of constitution of law with regard to the cell temperature and the denial of hygiene.  The *Chandler* court said:

> Plaintiff's description of sleeping on the floor with only under cloths and a mattress with a plastic cover in sixty degree "real cold" temperature was graphic, and his question, "what kind of effect would that have on you?" was sufficient to preserve were sufficient to preserve the issue of harm.  Moreover, he later unambiguously stated: "as far as being in solitary confinement or administrative confinement...I am sure I was depressed from it."  *Chandler* at 1066.

The *Chandler* court held that this was evidence of a constitutional violation.  The Plaintiff's facts, here, are very similar.

Because Plaintiff's constitutional deprivation by Owens was clearly established by the Circuit and Supreme Court case law, Plaintiff's jail condition claims against Owens are such that his Motion to Dismiss should be denied.

## MEDICAL CONDITIONS CLAIMS

Plaintiff has alleged that Defendant Owens was made aware of his extensive medical problems but that Owens acted with deliberate indifference in failing to

address his medical conditions. Owens' failure to address Plaintiff's medical conditions, either at all, or in a timely manner, violated clearly established constitutional law. The Complaint alleges the following:

When Plaintiff was put in the jail he disclosed to Owens and others that he had an extensive medical history: that he suffered from bipolar disorder and had recently been treated for that, that he was on medication and under a doctor's care for his bipolar condition, that he had a history of lower back pain and a degenerative disc problem in his back for his lower back for which he had surgery, that he had a history of migraine headaches and that he was on medication without which he would suffer seizures. Despite that, no medication or treatment was provided. On November 25 due to seizures that Plaintiff suffered Owens had Plaintiff evaluated by a mental health professional who notified Owens of Plaintiff's serious medical conditions with regard to seizures with memory loss and his bipolar disorder. The evaluation told Owens that the Plaintiff needed an evaluation by a doctor for seizures. Plaintiff then fell and was taken to Doctor Randall Weaver for treatment of his back and leg injury. Plaintiff's family told Owens that Plaintiff's regular doctor at Brookwood Hospital had requested that he be brought to a lock down in Birmingham for medical supervision. Plaintiff grew increasingly disoriented. Plaintiff again suffered seizures of which Defendant Owens was aware of on December 5, Plaintiff again had a fall

and was taken to Russell Hospital for treatment. At this point Owens was fully aware of Plaintiff's serious physical and psychiatric illnesses.

On December 6, Plaintiff was returned from Russell Hospital and placed in the hole. Plaintiff repeatedly requested that he be provided medication and be taken to a doctor because he was in pain and suffering from seizures. Owens was aware that Plaintiff was requesting medications and requesting to see a doctor repeatedly but did not respond to his request by providing medication or medical treatment at the time he requested it. Instead he let him lie in pain and crying, hallucinating and begging for extended periods of time. Owens was aware that Plaintiff was confused and distressed and begging for medical attention. That was when he took a piece of paper and taped it over the window of the hole in response to Plaintiff's cries for help.

Plaintiff's mental condition was deteriorating and Owens was aware of it but did not call a doctor or provide access to personal hygiene. Plaintiff's family, concerned, requested a copy of the evaluation of the mental health personnel but Owens refused to provide it. Plaintiff continued to beg for help. Owens commented that Plaintiff's medications were costing about $900 a month. Plaintiff's family complained to Owens that he had been given too much medication and not in accord with what his doctors had previously given him, but Owens told Plaintiff's family members that they had their own rules regarding medications and doctors.

12

Plaintiff's condition continued to deteriorate. His skin and eyeballs turned yellow. Owens knew of Plaintiff's deteriorating mental and physical condition and his repeated begging for help and need for a doctor but did not provide with access to adequate medical attention. Plaintiff was in such poor condition that he spent most of his time lying on the mat on the floor next to the drain. Plaintiff began to experience pains in his right side and complained to Owens that he needed to see a doctor but he was not provided access to any medical treatment. Plaintiff began to hallucinate that he was seeing dead people but was not provided access to any medical or psychiatric treatment. Defendants gave Plaintiff medications but did so without any training or supervision and not in accordance with any medically appropriate treatment scheme. Plaintiff was given high doses of medication that exacerbated rather than helped his conditions. Plaintiff developed a rash all over his body and began to itch very badly. He complained about this to Defendants, cried repeatedly, and begged to let him see a doctor but he was not provided with adequate timely access to medical treatment. After an extended time of several weeks, Plaintiff was finally taken to see a doctor to address his skin rash. Even after this Plaintiff continued to be confused and depressed. Plaintiff experienced shocking feelings all over his body and complained about them to Defendants. Even after he was taken to the doctor for his skin rash, Plaintiff continued to have shocking spells all over his

body. Plaintiff's condition continued to deteriorate further when he was lying on the floor itching all over and begging for help on a continuous basis until January 16 when he was transported to Russell hospital.

Plaintiff's diagnosis included drug induced hepatitis and drug poisoning. Owens was aware of Plaintiff's serious medical condition but refused to take prompt or adequate medical treatment and instead took an easier way less effective treatment method. As a result of Plaintiff's treatment by Defendant he has been diagnosed as suffering from post traumatic stress disorder. As a result of Owens constitutional violations Plaintiff has suffered physical and mental anguish and permanent injury. Even after mental health professional advised Owens that Plaintiff needed evaluated procedures by a doctor nothing was done. (Complaint ¶¶ 5, 6, 7, 8, 9, 15, 16, 17, 18, 19, 20, 27, 29, 30, 31, 32, 38, 40, 43, 45).

Prior to Plaintiff's admission to the jail, it was clearly established in this Circuit that prison officials have an obligation to take action or inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care, See *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989). Citing *Estelle v. Gamble*, 429 U.S. 97, 104-5 (1976). The failure to notify competent officials of an inmates dangerous psychiatric state can constitute deliberate indifference, see *Waldrop, supra* at 1036. The failure to provide an inmate with an environment that

does not impair his physical and mental health violates the due process clause of the Fourteenth Amendment. *Anderson v. Nosser*, 456 F.2d 835 (1972). When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them then deliberate indifference may be inferred. *Bozeman v. Orum*, 422 F.3d 1265, 1274 (2005), citing *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994). Failure to administer physician prescribed medication to a prisoner demonstrates deliberate indifference to the prisoner's rights, see *Aldridge v. Montgomery*, 753 F.2d 970, 972-973 (11th Cir. 1985)

Removal of a seriously ill patient from a hospital and confining him in the jail with no medial facilities, and under the untrained observation of jail personnel amounts to deliberate indifference. *Lancaster v. Monroe County Alabama*, 116 F.3d 1419, 1425 (11th Cir. 1997). It is clearly established that a serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, see *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994). Cases stating a constitutional claim for immediate or emergency medical treatment concern medical needs that are obvious even to a lay person because they involve life threatening conditions or situations where it is apparent that delay would exascerbate the medical problem. *Landcaster, supra,* at 1425.

If necessary medical treatment was delayed for non- medical reasons a case of deliberate indifference has been made out, see *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Delay in access to medical attention can violate the inmate's constitution rights when it is tantamount to unnecessary and wanton infliction of pain.  *Hill, supra at 1187.*  The number and range cases of serious medical needs where delayed treatment violates the constitution is large and varied. See *Hill* at 1187 fn.21.

Where a Sheriff intentionally delayed treatment that he knew had been prescribed for an inmate's serious medical need it violated Plaintiff's constitutional rights.  See *Harris v.  Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994).  Failure to provide prompt attention to serious medical needs by delaying medical treatment for non medical reasons constitutes deliberate indifference.  See, *Thomas v. Town of Davie*, 847 F.2d 771, 773, (11th Cir. 1988).  Even if medical care is ultimately provided a prison official may nonetheless act with deliberate indifference by delaying treatment for serious medical needs, even for hours.  See *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990).

In *Carswell v. Bay County*, 854 F.2d 454 (11th Cir. 1988).  Plaintiff repeatedly requested medical treatment for complaints of a rash, constipation and significant weight loss.  The jail administrator, Grigsby, and the physician's assistant, Belz, were

16

denied qualified immunity. The court held that evidence established that Grigsby and Belz had knowledge of Carswell's need for medical care. In *Ancata v. Prison Health Services, Inc.*, *supra,* the court held that knowledge of the need for medical care and intentional refusal to provide the care constituted deliberate indifference. The court held that Grigsby, confronted with Plaintiff's condition, receiving requests for medical attention, and requests from the public defender, did nothing significant to insure that Plaintiff receive medical attention, and consequently his failure to act was deliberate indifference. This is similar to the facts pled in the present case. Furthermore, where a jail administrator threw a juvenile detainee against the wall and bunk in an isolation cell, and subsequently denied the detainee's immediate pleas for medical attention, the court held that the individual's implicated personally. See *H.C. by Hewitt v. Jarrard*, 786 F.2d 1080, 1087 (11th Cir. 1986).

Because Owens was on notice of Plaintiff's serious medical conditions concerning his seizures, bipolar condition, back injury, his feeling shocking all over his body, rash all over his body, hallucinations, depression, and his degrading and declining physical and mental condition, it was clearly established that Owen's failure to take action violated Plaintiff's constitutional rights. Likewise it was clearly established that where one takes insufficient action, that is tantamount to taking no action. See *Waldrop v. Evens, supra*, *McElligott v. Foley,* at 1258-9, citing *Ancata*

17

at 704, *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2nd Cir. 1994); *West v. Kave*, 571 F.2d 158-162 (3rd Cir. 1978).

Deliberate indifference may also be established by showing a grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment that reflected deliberate indiference to Plaintiff's pain and suffering. See *McElligott v. Foley*, 182 F.3d 1248, 1255-8 (11th Cir. 1999); *Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Inmates also have the right to have evaluations and diagnoses in the treatment of their serious medical conditions, the denial of which are clearly established constitutional violations. See *Harris v. Coweta* at 394, *H. C. By Hewitt* at 1086.

## FAILURE TO STOP ABUSE

Plaintiff alleges that he was subjected to abuse by jail staff and that Owens was aware of this but failed to stop it. This was clearly established as a constitutional violation at the time it occurred. The Complaint alleges the following:

Owens was aware that Plaintiff repeatedly asked for water but went for hours at a time without providing it to him. Jailor Bradley repeatedly told Plaintiff that he was tired of him asking for water. After Plaintiff was place in "the hole" on December 6, Bradley assaulted him on several occasions beginning shortly after he was placed in it continuously up until he was taken to Russell Hospital on January 16.

18

On two occasions Bradley with another officer came into "the hole" and while the other officer held the Plaintiff's legs apart, Bradley kicked Plaintiff in the groin. On another occasion, Bradley came into "the hole" when Plaintiff was sick and lying on his stomach on the floor, tried to stick a broomstick in Plaintiff's rectum. On another occasion when Plaintiff requested medication from Bradley, Bradley hit him in the face. Bradley was often intoxicated and would confront Plaintiff repeatedly and curse at him. Plaintiff complained about Bradley to Lieutenant Wilson, but nothing was done. Plaintiff complained to Wendy Robinson but nothing was done. Plaintiff complained to Owens asking him when the treatment was going to stop and when he was going to get out of "the hole." Owens called Plaintiff "a son of a bitch" and told him he would stay in "the hole" until he left the jail. Bradley kicked Plaintiff in the mouth and broke two of his teeth. Owens was aware of this and they took Plaintiff to the dentist to get the teeth pulled. Owens was aware Bradley would come into work intoxicated and would be abusive towards prisoners but he did nothing about it. Owens acknowledge to Plaintiff's family that he knew Bradley would come to work intoxicated. Jailors Wilson, Roberson, and Bradley laughed Plaintiff when he asked them to clean the drain hole that he used for his toilet facility. When Plaintiff was finally allowed access to a shower and a razor Bradley grabbed him by the cheek and told him that he needed to shave his mustache or that he would not be allowed

19

to see his parents at visitation.  (Complaint ¶¶ 12, 21, 22, 23, 24, 26, 28).

At the time Plaintiff was subjected to abuse and it was clearly established that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.  This is true whether or not significant injury is evident."  See *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In *Hudson* the plaintiff was beat up by guards McMillian and Woods while supervisor Mezo watched the beating and told the officers not to have too much fun.  Hudson suffered minor bruises and swelling of his face, mouth and lips.  The court held that this was sufficient to establish a constitutional violation, not only against McMillian and Woods, but also supervisor Mezo.  Likewise, in *Gates v. Collier*, 501 F.2d 1291, 1306 (5th Cir. 1974).  The Fifth Circuit held that whipping inmates and instances of physical brutality and abuse which was aquiesced in by prison officials violated Plaintiffs' constitutional rights.

Supervisor liability under § 1983 occurs when a supervisor personally participates in the unconstitutional conduct or there is a causal connection between his action or inaction and the alleged constitutional depravation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A causal connection may be established when there is a history of wide spread of abuse which puts the responsible supervisor on notice and he then fails to correct the problem; or where a supervisor's custom or

policy results in the deliberate indifference to constitutional rights; or when facts support a inference that the supervisor directed the subordinate to act unlawfully, or knew that the subordinate would act unlawfully and failed him to stop him from doing so. *Cottone* at 1360.

In *Young v. Augusta*, 59 F.3d 1160, 1173 (11th Cir. 1995), a history of mistreatment, or failure to provide treatment, occurring over a period of months, and involving at least three different jailors, was held to constitute sufficient evidence that policymakers had a pattern or custom of deliberate indifference to unconstitutional conduct. Here Owens knew Bradley frequently came to work intoxicated and when he was intoxicated that he was abusive with inmates. Moreover, Owens' own conduct of taping over the window when Plaintiff was crying for help, not flushing the drain filled with feces and urine when Plaintiff was lying on the floor, calling Plaintiff a "son of a bitch" when Plaintiff was asking him when the treatment from Bradley would end satisfies the necessary causal connection. Also, the *Gates* court held that depriving inmates of basic hygiene and putting them in the "black hole" constituted acts of brutality and abuse, see *Gates* at 1306. Since it is alleged Owens participated in these acts of abuse, this would constitute sufficient evidence that he condoned, participated in, or established a custom or practice of abuse.

<u>PLAINTIFF'S FAILURE TO TRAIN CLAIMS</u>

21

Plaintiff has alleged that Owens knew that Plaintiff was not receiving adequate medical attention. Not only had he observed it in person, but he had been told by a mental health care professional that Plaintiff needed to have an evaluation for seizures, he had heard from Plaintiff's family that he was being given too much medication and not in accordance with what the doctors had previously given him. Owens had refused to provide a copy of the evaluation that the mental health professional had done to Plaintiff's family. It was so widely known at the jail that Defendant Roberson on several occasions informed Plaintiff's family that Plaintiff had suffered from seizures but no doctor was called. Owens himself had told Plaintiff's family members that the jail had its own rules and regulations regarding medication and their doctor. Owens was repeatedly begged by Plaintiff to see a doctor. Yet none was provided in an adequate or timely manner. Even after Owens' had been advised by family and mental health professionals nothing was done. (See Complaint ¶ 5, 6, 7, 9, 15, 16, 17, 18, 20, 27, 29, 30, 31, 32, 37, and 48).

It is clearly established in this Circuit that a custom or a practice of a constitutional depravation can result by the inadequate treating of jail employees. See *Young v. Augusta Georgia*, 59 F.3d 1160, 1173 (11th Cir. 1995). Policies of failing to adequately train jail employees on the need to move ill inmates to a hospital, or to dispense medication as prescribed, have been held to be cognizable constitutional

violations. See *Young v. Augusta* at 1171. Before finding of liability the policymaker must have had ample of constructive notice that the particular admission is substantially certainly a result of the constitutional rights. *Young* at 1172. This may be proven by showing a pattern of constitutional violations exists such as the policy makers should know or knew that corrective measures were needed. *Young* at 1172.

In fact, such liability can arrive from failure to train officers for a single decision by a policymaker, see *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). In Rivas, the Sheriff was the policymaker who had previous knowledge that his deputies were detaining individuals even though discrepancies of identification existed. The court held this would constitute a failure to adequately train officers regarding identification techniques. It said it was sufficient basis for 1983 liability.

Here, Owens was repeatedly warned about problems regarding medication and failure to provide medical treatment. He knew that Plaintiff was not getting the proper medication that his doctors had prescribed for him. Based on this it is clearly established that Owens had a duty to train his employees sufficiently to remove ill inmates to the hospital, and to properly dispense medication as prescribed. Owens was also on actual notice that this was not occurring. Also, in Goodson v. City of Atlanta, 763 F.2d 1381, 1388 (11th Cir. 1985) the defendant jail administrator received notice that jail guards were not responding to prisoner's request for medical

treatment. This constituted sufficient notice of a pattern or custom of constitutional violations to make him liable for failing to train employees.

Finally, Plaintiff alleges that Defendant Owens failed to provide training to jail staff regarding mistreating and proper treatment of prisoners and regarding remedial action for ongoing abuses by jail staff. As set out above, it was already clearly established that such abusive conduct was violating inmates constitutional rights. That Plaintiff complained to Willson, Roberson, Bradley and Owens but the abuse did not stop. Defendant Owens had a duty to prevent that. See *Cottone v. Jenne*, 326 F.3d 1352, 1358-9, 1361 (11th Cir. 2003). A recent decision has used this analysis in *Cottone* to find supervisory liability where guards beat an inmate to death, see *Valdes v. Crosby*, 390 F.Supp.2d 1084, 1101 (M.D. Fla.2005).

<u>CONCLUSION</u>

Based on the facts alleged in the Complaint and the law that was clearly established at the time of the alleged constitutional deprivation, Plaintiff respectfully submits that this Court should deny the motion to dismiss.

Respectfully submitted

<u>s/Richard J. Stockham III</u>
State Bar No.STO034
Attorney for the Plaintiff

24

Stockham, Carroll, & Smith P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, Alabama 35209
Telephone (205) 879-9954
Fax: (205) 879-9990
E-Mail: rjs@stockhampc.com