**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BRYAN KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:05-cv-1150-T** |
| | ) | |
| **RICKY OWENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT COOSA COUNTY COMMISSION'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION TO DISMISS**

COMES NOW Defendant Coosa County Commission, a Defendant in the above-entitled action, and submits this Reply to the Plaintiff's Opposition to its Motion to Dismiss.

## ARGUMENT

### I. THE PLAINTIFF'S CLAIMS ARE TIME-BARRED.

The Plaintiff failed to respond to this Defendant's argument that the applicable statute of limitations for all of the Plaintiff's claims is governed by the two-year period contained in Alabama Code § 6-2-38(l) and that consequently any claim based upon incidents occurring prior to December 6, 2003, is time-barred. The Plaintiff has in essence conceded the Commission's argument. Plaintiff's responsive brief refers to the period of injury to Plaintiff as being December 6, 2003 through January 16, 2004. (Doc. 27 at p. 13.) Thus, the Plaintiff has agreed that he cannot recover for any alleged mistreatment that happened before December 6, 2003. Plaintiff's Complaint makes claims for incidents occurring between November 13, 2003 and December 5, 2003, specifically on November 25, 2003 and December 5, 2003. Because the statute of limitations based upon these incidents ran before the Plaintiff filed his Complaint, he cannot recover for any alleged mistreatment occurring on these dates.

## II. THE PLAINTIFF'S FEDERAL CLAIMS AGAINST THE COOSA COUNTY COMMISSION ARE DUE TO BE DISMISSED.

In Counts I, II and III, the Plaintiff brings claims against the Coosa County Commission pursuant to § 1983 asserting that the Commission violated his constitutional rights. Count I of Plaintiff's Complaint specifically states that the Commission violated the Plaintiff's constitutional rights by being deliberately indifferent to his medical needs, amounting to cruel and unusual punishment. Count II of Plaintiff's Complaint specifically states that the Commission violated the Plaintiff's constitutional rights by inadequately treating Plaintiff's medical condition, by failing to train the jail staff to properly provide medication to the Plaintiff, and failing to provide adequate training to the jail staff regarding recognizing when an inmate needed medical treatment. Count III of the Plaintiff's Complaint specifically states that the Commission violated his constitutional rights by failing "to provide plaintiff with an environment that [did] not impair his physical and mental health and [was] an adequate living space" and that this failure constituted cruel and unusual punishment. (Doc. 1 at ¶ 52.) Each of these counts are due to be dismissed against the Commission.

### A. Plaintiff Cannot Maintain Concurrent Eighth and Fourteenth Amendment Claims.

The Plaintiff mischaracterizes the Commission's Motion to Dismiss in stating that this Defendant cites to no authority in support of its argument that either the Plaintiff's Eighth or Fourteenth Amendment claims are due to be dismissed. The law is clear that the Plaintiff must be an inmate in order for the Commission to be potentially liable pursuant to 42 U.S.C. § 1983 and that the Eighth Amendment applies to convicted prisoners while the Fourteenth Amendment governs the rights of pre-trial detainees. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). Even though the standard is the same pursuant to the Eighth Amendment and the

Fourteenth Amendment, he cannot maintain both claims simultaneously for the same incarceration.

As a matter of common sense, the Plaintiff could not have been a pre-trial detainee and a convicted prisoner at the same time. The Plaintiff concedes the argument in part by stating in his Opposition that he will amend his Complaint to state his status during his incarceration. (Doc. 27 at p. 2 n.1.) Nevertheless, the Plaintiff's concurrent Eighth or Fourteenth Amendment claims are due to be dismissed. Cottrell, 85 F.3d at 1490.

**B. Plaintiff's Arguments Do Not Save His Federal Claims Against the Commission.**

**1. Plaintiff's jail conditions allegations fail to state a claim as a matter of law.**

The Plaintiff attempts to establish liability on the part of the Commission for Plaintiff's conditions of his confinement claims by arguing that they fall under the Commission's duty to "fund" and "maintain" the jail under Alabama law. (Doc. 27 at pp. 3-6.) Plaintiff fails in this attempt for two reasons. First, not all relevant counts of the Plaintiff's Complaint invoke the Commission's funding duty. Second, Alabama law, as interpreted by the federal courts, demonstrates conclusively that the Plaintiff's claims fall in an area that is outside of the Commission's responsibility.

First, the two relevant counts of the Complaint do not invoke a ***federal*** claim based upon the Commission's funding duty. Count III of the Plaintiff's Complaint contains no claim that the Commission has violated the Plaintiff's right to be free from cruel and unusual punishment by failing to fund or maintain the jail. (Doc. 1 at ¶¶ 42-45.) Count VIII of the Complaint clearly states a breach of duty claim against the Commission based upon an alleged failure to "provide a facility and to provide adequate funding to provide a safe and habitable facility for inmates." (Doc. 1 at ¶ 72.) Thus, the Plaintiff's Complaint unmistakably asserts only a state law

negligence claim against the Commission in regard to its duty to fund and maintain the jail. The Plaintiff's Complaint does not contain a federal claim that the Commission failed to fund or maintain the jail.

Second, the Plaintiff's allegations do not fit, as a matter of federal and Alabama law, under the Commission's duty to maintain the physical plant of the jail. The Plaintiff's Complaint states that the following conditions of his confinement constituted constitutional violations: (1) Plaintiff slept on a plastic mat; (2) Plaintiff's toilet was not flushed often enough by the jailers; (3) Plaintiff was not provided toilet paper; (4) on several occasions jailers did not give Plaintiff water until several hours had passed since his request; (5) Plaintiff was not allowed to shower enough by the jailers; and (6) the jailers did not allow the Plaintiff out of his cell enough to exercise. As a matter of common sense, such claims do not relate to the physical plant of the jail.

In an attempt to get around the clear law in this area, the Plaintiff has grossly mischaracterized the Commission's argument. The Commission has ***not*** argued that it has "no liability for jail conditions." (Doc. 27 at p. 3.) To the contrary, the Commission acknowledges that it has some responsibility – but solely in the areas of operational funding and the physical plant of the jail. The factual allegations of the Plaintiff's Complaint simply do not touch either of these areas.

The Commission's duty with respect to the jail is a matter of clear federal and Alabama law. The Eleventh Circuit's en banc opinion in Turquitt v. Jefferson County, 137 F.3d 1285 (11th Cir. 1998), offers the Plaintiff no support whatsoever, and fully buttresses the Commission's argument that it cannot be liable for his conditions claims. The Turquitt Court specifically held:

> We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates. ***The duties of the counties with respect to the jails***

> ***"are limited to funding the operation of the jail and to providing facilities to house the jail."***

Id. 1289-1290 (citations omitted, emphasis added). Mats, toilet paper, the guards' flushing of toilets, the guards' alleged refusal to give the Plaintiff water, and the guards' willingness to allow the Plaintiff to use the shower facilities ***do not***, even under the most tortured twisting of the relevant law, fall into the areas of operational funding or the physical plant of the jail.

The Plaintiff is, of course, the "master of his complaint." (Doc. 27 at p. 3). However, that does not entitle him to call an apple an aardvark. South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss"). Even if the Sheriff and his jailers deliberately misused ***one room*** in the jail and violated the Plaintiff's rights, the Commission cannot be liable as a matter of law under its duty to maintain the physical facility of the jail. Turquitt makes it abundantly clear that because the Commission has no control over the Sheriff's employees, it cannot be liable for their actions or misuse of the facilities. 137 F.3d at 1289. The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala.1989).

The Plaintiff also relies upon the Eleventh Circuit's opinion in Marsh v. Butler County in support of his argument that the allegations of his Complaint support his claim that the Commission failed to maintain the jail. 268 F.3d 1014 (11th Cir. 2001). Marsh merely reiterates an Alabama County's limited role in building and funding jails. Id. at 1026. Furthermore, the factual allegations in Marsh are entirely dissimilar from the Plaintiff's allegations. The Marsh plaintiff alleges that the physical conditions of the jail building created a risk of serious harm to the plaintiff in that the doors to the cells could not be locked and the

building had deteriorated to the point that inmates made weapons from pieces of the building that were used to harm plaintiff. Id. at 1027.

The Plaintiff's claims in the instant case are entirely distinguishable. The Plaintiff's complaints regarding the bedding provided to him, how often his toilet was flushed, not being provided toilet paper, how quickly he was provided water, how often he was allowed to shower and exercise are clearly not claims regarding the physical conditions of the jail building. The Plaintiff does not complain about the actual structure of the building causing him harm.

The Plaintiff also contends that the plaintiff's argument in Gaines v. Choctaw County Comm'n, 242 F.Supp. 2d 1153 (S.D.Ala. 2003), is similar to the instant case. Gaines is not similar, as plaintiff in Gaines brought a 1983 claims against a county due to funding of medical care, not due to funding of the maintenance of a jail. Id. at 1161. The one facilities claim in Gaines that the plaintiff made – failure to install security cameras – was rejected by the Southern District. Id. at 1160.

**2. The Plaintiff's medical claims fail to state a claim against the Commission.**

In his Opposition, the Plaintiff argues simply that Alabama counties have a duty to provide medical care to inmates. The Plaintiff supports this position with the Eleventh Circuit's decision in Marsh v. Butler County, 268 F.3d 1014 (11th Cir. 2001). The Plaintiff argues that the instant case is distinguishable from Marsh because Plaintiff Kelly alleges that the Commission was involved in the denial of medical care. (Doc. 27 at p. 6.) The Marsh court did conclude that the plaintiff failed to allege facts demonstrating that the defendant county was involved in the denial of medical care. 268 F.3d at 1026 n.6. However, the Plaintiff has also failed to make allegations to support his contention that the Commission denied him medical care.

In Marsh, the Eleventh Circuit affirmed the District Court's dismissal of plaintiff's claim that Butler County, Alabama was deliberately indifferent to his serious medical needs by releasing him from jail after he was injured. Marsh, 268 F.3d at 1026. The plaintiff, who was taken to the hospital after being injured in the jail, was released from the hospital to two Butler County Sheriff's deputies who were instructed to monitor him. Id. at 1026 n.6. The inmate was then released from the jail by the chief deputy. Id. at 1026.

The Marsh plaintiff subsequently brought a claim against Butler County, alleging that it was deliberately indifferent to his medical needs by releasing him. 268 F.3d at 1026 n.6. In affirming the dismissal of the claim, the Eleventh Circuit referred to Turquitt and stated "under Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a limited role in building and funding the jails." Id. at 1026 n.6.

As in Marsh, the instant Plaintiff makes only allegations that the Commission was deliberately indifferent to his medical needs based upon claims of denial of medical care that fall under the sheriff's responsibility. The Plaintiff's claims are that (1) the Commission failed to provide medical care; (2) the Commission delayed providing medical care; (3) the Commission failed to train the jail staff to dispense medications to inmates; and (4) the Commission failed to train the jail staff in recognizing when medical care was necessary. Each of these claims involve the Sheriff's responsibility to provide medical care to inmates.

Continuing his theme of "distinguishing" clearly relevant case law by reliance on irrelevant pleading differences and mischaracterizing the Commission's arguments, the Plaintiff next asserts in a footnote that the Commission has informed this Court that it has no duty to fund inmate medical care. (Doc. 27 at p. 7 n.2.) The Commission has made no such argument. As clearly set out in its memorandum brief, the Commission acknowledges that it must pay for

inmate medical care. (Doc. 13 at p. 9 citing ALA. CODE § 14-6-19; Malone v. Escambia County, 22 So. 503, 505 (Ala. 1897); Baptist Health Systems, Inc. v. City of Mayfield, 792 So. 2d 1095, 1096 (Ala. 2001); Limestone County v. City of Huntsville Hospital Bd., 412 So. 2d 792, 793 (Ala.Civ.App. 1982).) However, the duty does not arise until ***after*** the sheriff provides the care and a showing is made that the inmate is indigent. ALA. CODE § 14-6-19.

With respect to the Plaintiff's pleading argument, Malone does not turn on the procedural method by which the Alabama Supreme Court disposed of the plaintiff's claims. It very specifically analyzed the statute at issue – which is identical to the statute at issue here – determined what was required under the statute, and made a determination that the Plaintiff had not met the elements necessary to prevail on his claim. Furthermore, if the Plaintiff were correct that a change in pleading standard eliminated the efficacy of the Malone holding, neither the Supreme Court nor the Court of Civil Appeals would have cited it as good law in 1982 and 2001.

Plaintiff finally tries to save his medical claims by arguing that his federal claims against the Commission are not due to be dismissed because Dr. Weaver was a final policymaker for the Coosa County Commission. Plaintiff argues that Dr. Weaver was the final policymaker for the Commission based upon the Eleventh Circuit's decision in Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989). (Doc. 27 at p. 7.) However, whether a given official is properly viewed as a policymaker for a particular governmental entity must be resolved on the basis of state law. See Mandel at 792 (citing Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737 (1989)). This rule is clearly followed in the Mandel case. Alabama law could not be clearer that sheriffs are not county policymakers and are the final policymakers for all operational functions of the jail – including the procedures for the provision of inmate medical care. See Turquitt, 137 F.3d at 1290; King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993) (holding county commission has no control over jail operations). Mandel is a Florida case, and the decision is based upon Florida

law. Therefore, the holding is inapplicable to the instant case. Under Florida law, sheriffs are ***county***, not ***state*** officials, and Florida ***counties*** are custodians of the inmates in the jail. Beard v. Hambrick, 396 So.2d 708, 711 (Fla. 1981) ("[A] sheriff is a 'county official', and, as such, is an integral part of the 'county.'"); Comeau v. State, 611 So.2d 68, 69 (Fla. Dist. Ct. App. 1992), ("The county, ***as custodian of a prisoner*** charged with violating a state law or county ordinance, has a duty to provide medical care for its prisoner." (emphasis added); *c.f.* ALA. CODE § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto")). To the contrary, the law of Alabama is that ***sheriffs*** are the final policymakers for ***all*** operational functions in the jail – including the procedures for the provision of inmate medical care, that ***sheriffs*** are the custodians of the inmates in the jail, and that ***sheriffs*** are ***state***, not ***county*** officials. See Turquitt, 137 F.3d at 1290; Marsh, 268 F.3d at 1026 n.6; ALA. CODE § 14-6-19 (requiring the sheriff or jailer to furnish necessary medicines and medical attention to inmates who cannot afford it). Alabama counties, unlike Florida counties, are afforded no control over the operations of the jail and are not custodians of inmates in the jail. In fact, in Alabama, the counties' responsibilities are limited to maintaining the jail building and funding the jail operations. Coosa County's hiring of Dr. Weaver was simply its way of fulfilling its duty to fund the medical care of inmates. Therefore, although in Florida, counties can be liable for operational functions of the jail as custodians of the inmates, in Alabama, the law is clear that this is not the case. Further, in Mandel, the physician assistant's decisions were never reviewed by anyone else. In the instant case, Plaintiff was seen by at least five other medical professionals in addition to Dr. Weaver. Consequently, Mandel offers no support for the Plaintiff's claims.

## III. THE PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED.

### A. The Plaintiff Failed to Satisfy the Notice of Claim Requirements.

Plaintiff does not dispute that he failed to submit a notice of claim to Defendant within twelve months of a portion of his alleged injury as required by Alabama law. ALA. CODE. § 11-

12-8. Thus, the Plaintiff may not recover for anything that he alleges occurred between November 13, 2003, the date he claims to have been admitted to the jail, and December 1, 2003, as he did not sign his Notice of Claim until December 1, 2004, and it was not received by the Coosa County Commission until December 2, 2004. ALA. CODE § 11-2-8.

The Plaintiff makes two arguments with respect to his inadequate notice of claim. First, the Plaintiff argues that his notice complied with the notice statutes as interpreted by the Alabama Supreme Court. Second, the Plaintiff seems to think that Rule 8 applies to notices. Neither of these arguments save his claims.

As set forth in the Commission's principal brief, the Plaintiff's notice fails to meet the requirements of Alabama's notice statutes in two respects: (1) it does not contain any specific claim for damages; and (2) it does not assert any basis for his negligent hiring, negligent retention, or funding claims. (Doc. 13 at p. 14.) The Plaintiff counters that all the Alabama Supreme Court requires is "a description of the accident and the accident scene, the basis for the claim that the county was liable, and a description of the medical care that was required." (Doc. 27 at p. 8 quoting Elmore County Commission v. Ragona, 540 So. 2d 720, 723 (Ala. 1989).) All Ragona does, however, is protect persons who file notices with "relatively minor deficiencies" from having their claims dismissed. 540 So. 2d at 723; see also Ford v. Jefferson County, 774 So. 2d 600, 606 (Ala.Civ.App. 2000).

Clearly, however, this is not all that is required for every claim because not all claims involve automobile accidents. To the contrary, the more generalized standard set forth by the Ragona court is applicable in the instant case, "the 'items' should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded." 540 So. 2d at 723. The Ragona decision also does not indicate whether the plaintiffs asked for a

specific amount of damages or what was present that the court found sufficient to provide the "basis for the claim."

The questions left unanswered in Ragona are addressed in the two Alabama Court of Civil Appeals decisions that have dealt with the issue. In Ford v. Jefferson County, the Alabama Court of Civil Appeals rejected notices that did not contain either the basis of the county's liability or the compensation demanded. 774 So. 2d at 606. Similarly, in Jacks v. Madison County, the plaintiff filed a notice of claim that set forth the basis of a breach of contract claim against the county. 741 So. 2d 429, 430 (Ala.Civ.App. 1999). The Alabama Court of Civil Appeals found that the notice was filed outside of the 12-month period for the breach of contract claim. Although the continuing nature of trespass and nuisance claims made the plaintiff's notice timely, her failure to provide a basis for them in her notice of claim barred her from making such claims. Id. at 433-34.

More recently, the Alabama Supreme Court had an opportunity to revisit Ragona. In Helms v. Barbour County, the plaintiffs filed a very detailed notice of claim. 914 So. 2d 825, 826 (Ala. 2005). The notice, according to the court, contained statements that clearly set forth the claims later made by the plaintiffs in their lawsuit:

> The Helmses first allege a trespass claim with the following language: "During the scraping process the grader went outside of the established right-of-way and came upon the property of the claimants. This caused the long leaf pines to be destroyed." The Helmses next allege an "improper taking" claim, stating that "[t]his further caused the right-of-way to be expanded without the consent of the property owners and without compensation to the property owners." Therefore, the bases for the County's liability as stated in the Helmses' § 6-5-20 claim are substantially the same as those stated in their complaint.

914 So. 2d at 830. The notice met the compensation element because it specifically asked for $6,500.00 as the value of the trees and a promise to avoid further scraping the plaintiffs' land in lieu of monetary compensation for the trespass. Id.

The Complaint before this Court does not contain any language from which one could construe negligent hiring, negligent retention, or funding claims. (See generally Doc. 13 at

Exhibit A.) Unlike Helms, there are no facts in the notice asserting that Dr. Weaver was incompetent prior to his hiring. There are no facts in the notice demonstrating that the Commission ever became aware that Dr. Weaver was allegedly incompetent. Clearly, there is absolutely no demand for a sum of money or type of equitable relief as was present in Helms. The missing assertions are not minor deficiencies; they are glaring omissions that run contrary to the plain language of the notice statutes and the holdings of Alabama's appellate courts.

The Plaintiff finally argues that Rule 8 of the Alabama Rules of Civil Procedure applies to his notice of claim. (Doc. 27 at p. 9.) However, the Plaintiff cites no authority for his implied proposition that a notice of claim is a civil pleading under the authority of the Alabama Rules of Civil Procedure. Plaintiff's notice of claim is governed by and fails to comply with Alabama Code Section 11-12-5. Rule 8 is wholly inapplicable.

**B. The Plaintiff Lacks Standing to Bring a Claim Pursuant to Alabama Code § 14-6-19.**

Plaintiff's claims that the County Commission breached its duty under Alabama Code Section 14-6-19 to fund medical care at the jail and provide staffing to perform medical care are due to be dismissed as Plaintiff lacks standing to bring these claims. Instead of responding to this specific argument, Plaintiff argues that because the Commission hired a doctor to treat inmates, the Commission took upon itself duties not required by Alabama law and can be held liable for negligence on the part of that doctor. (Doc. 27 at p. 10, citing Carpenter v. Mobile County, 841 So. 2d 1237 (Ala. 2002).) However, Carpenter concerns a jail facility that was operated by both a county and a city pursuant to a specific agreement. Carpenter does not concern Alabama Code § 14-6-19 and does not address a private right of action for this code section.

**C. The Plaintiff's Conditions Claims Fail as None of the Jail Staff are Employed by the Coosa County Commission.**

The Plaintiff's responsive argument that is various code sections impose certain duties on counties without merit. Alabama law is clear that the jail conditions subject to Plaintiff's Complaint fall under the authority of the Coosa County Sheriff. The Plaintiff's complaints of having to sleep on a plastic mat on the floor, that his toilet was not flushed often enough by the jailers, that no toilet paper was provided to him by the jailers, that on several occasions he was not given water by the jailers until several hours after he had requested it, that jailers did not allow him to shower often enough, and that he was not allowed out of his cell to exercise do not implicate any of the code sections he cites. The Plaintiff's same statutes were in existence at the time Turquitt was decided and were not deemed by the Eleventh Circuit to expand the duties of Alabama counties. 137 F.3d at 1289-1290.

**D. The Plaintiff Has Failed to State a Negligent Hiring/Retention Claim Regarding Dr. Weaver Against the Commission.**

In his Opposition, the Plaintiff cites no law establishing that the Commission can be held liable for negligent hiring or retention of Dr. Weaver. The Plaintiff does not dispute that to establish a claim for negligent hiring or retention against the Commission, he must allege facts to show that the Coosa County Commission knew, or in the exercise of due diligence, should have known of Dr. Weaver's incompetence. Lane v. Central Bank of Alabama, N.A., 425 So. 2d 1098, 1100 (Ala. 1983). The Plaintiff's Complaint is devoid of any such facts. (See generally Doc. 1.) Further, the Plaintiff does not dispute that in order to establish negligence by the Commission, the Plaintiff must allege and prove wrongful conduct on the part of the doctor. Voyager Ins. Companies v. Whitson, 867 So. 2d 1065, 1073 (Ala. 2003). Instead the Plaintiff states that the cases of Lane and Voyager were not adjudicated at the 12(b)(6) stage and are thus inapplicable. This is irrelevant as both cases outline what a plaintiff must allege and prove to

establish a negligence claim. Further, as noted previously, the Plaintiff failed to rebut Defendant's argument that the provision to medical care to inmates is the responsibility of an Alabama sheriff, not the Coosa County Commission.

Plaintiff further asserts that his Complaint need not contain all the elements of his claims and that any requirement that he do so embraces the abandoned "theory of pleading standard." He is incorrect as a matter of law. Under the liberal pleading standards of Rule 8, a plaintiff must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Eleventh Circuit has made it clear that despite the apparent low hurdle of Rule 8, a complaint must still contain allegations from which all of the elements of a viable legal theory can be deduced:

> while notice pleading may not require that the pleader allege a "specific fact" to cover every element or allege "with precision" each element of a claim, ***it is still necessary that a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory***." In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept.8, 1981). See also St. Joseph's Hosp., 795 F.2d at 954 ***("[T]he pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.")*** (internal quotation and citation omitted); Quality Foods v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir.1983) (stating, "***enough data must be pleaded so that each element of the alleged ... violation can be properly identified"***); Municipal Utils. Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir.1991) (same); Seagood Trading Corp. v. Jerrico, Inc., 924 F.2d 1555, 1576 (11th Cir.1991) (same); Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988) (stating that ***even under the liberal notice pleading standard, a plaintiff is still required to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory"***).

Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683-84 (11th Cir. 2001) (footnotes omitted, emphasis added).

As set out in the Commission's principal brief, the Complaint does not allege that the Commission was aware of Dr. Weaver's alleged incompetence or in any position to learn Dr.

Weaver was incompetent. (See generally Doc. 1.) There are no "direct or inferential allegations" respecting these necessary elements whatsoever. To the contrary, the facts alleged are that the Plaintiff was seen by five other health care professionals. The Complaint does not allege than any of these professionals reported that Dr. Weaver was incompetent to the Commission. Furthermore, as explained fully above, the Commission has no control over the operations involved in rendering health care to inmates as a matter of law. See Turquitt, 137 F.3d at 1289-1290.

The Plaintiff's failure to make the averments necessary to set forth the elements of his negligent hiring and retention claims mandates their dismissal. Aware Woman Center, 253 F.3d at 683-84.

**E. The Coosa County Commission Cannot be Held Liable for Medical Malpractice.**

The Plaintiff, in his Opposition, has attempted to recharacterize his claim for medical malpractice as not being based on *respondeat superior* in order to avoid dismissal based on the clear law of Alabama. However, in Count IX of Plaintiff's Complaint, he alleges:

> 75. Plaintiff avers that defendant Coosa County Commission and defendant Randall Weaver owed plaintiff a duty to provide medical treatment to the plaintiff.
>
> 76. Defendants breached their duty when Weaver breached the standard of care required of physicians.

Accordingly, it is clear from the text of the Plaintiff's own Complaint that the Plaintiff does, in fact, seek to hold the County Commission liable for Dr. Weaver's alleged breach of his standard of care required of physicians. The "master of his complaint" has spoken, and the Plaintiff has clearly made a *respondeat superior* claim. Because, based on Alabama law, vicarious liability is insufficient to create corporate liability on the Commission, the Plaintiff's claims are due to be dismissed. See e.g., Parsons v. Yolande Coal & Coke Co., 91 So. 493, 496

(Ala. 1921); Golden v. Autauga Medical Center, Inc., 675 So. 2d 418, 419 (Ala. 1996). As the Coosa County Commission is clearly not a hospital, Count IX is due to be dismissed.

**F. The Plaintiff's Claims for Compensatory Damages Exceed That Authorized by State Law.**

The Alabama Code clearly limits compensatory damages recoverable against the Coosa County Commission "to $100,000.00 for bodily injury or death for one person in any single occurrence." ALA. CODE § 11-93-2. The Plaintiff argues that his potential compensatory damages against the Coosa County Commission are not capped at $100,000.00 because each day that Plaintiff was denied medical treatment could constitute a separate "single occurrence." Plaintiff's assertion is in opposition to Alabama law.

In Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984), the Alabama Supreme Court held that, "... for the purpose of Sec. 11-93-2, all injuries that stem from one proximate cause are the result of a single 'occurrence.'" The Plaintiff's Complaint claims that all of his alleged injuries result from his alleged denial of medical care by the Sheriff and his staff during a single incarceration period. The Plaintiff makes no other claim of how his injuries occurred. See Carson v. City of Prichard, 709 So.2d 1199 (Ala.1998), (holding that the failure of the Board to remedy the overflow of sewage was a single 'occurrence' within the meaning of section 11-93-2 even though there were numerous incidents of sewage overflow). As a matter of law, the Plaintiff's single incarceration is a single occurrence. United States Fire Ins. Co. v. Safeco Ins. Co. 444 So.2d 844, 846 (Ala.1983); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982). ("The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence.") Consequently, the Plaintiff, as a matter of law, can prove no set of facts that would entitle him to more than $100,000.00 in compensatory damages on his state law claims.

## CONCLUSION

Based upon the foregoing, Defendant Coosa County Commission requests that this Court grant its Motion to Dismiss and grant unto them costs and attorneys' fees pursuant to law and 42 U.S.C. § 1988.

Respectfully submitted this 16th day of March, 2006.

**s/Gary L. Willford, Jr.**
KENDRICK E. WEBB – Bar No. WEB022
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorney for Defendants
WEBB & ELEY, P.C.
7474 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: gwillford@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard J. Stockham, III, Esquire
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL 35209

Kristi Allen Dowdy, Esquire
McDonald & Dowdy
1005 Montgomery Highway
Birmingham, AL 35216

Alex L. Holtsford, Jr., Esquire
Rick A. Howard, Esquire
Nix, Holtsford, Gilliland, Higgins & Hitson, PC
P. O. Box 4128
Montgomery, AL 36103-4128

**s/Gary L. Willford, Jr.**
OF COUNSEL