**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BRYAN KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:05-cv-1150-T** |
| | ) | |
| **RICKY OWENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT COOSA COUNTY SHERIFF RICKY OWENS'S
REPLY TO PLAINTIFF'S OPPOSITION TO HIS MOTION TO DISMISS**

COMES NOW Coosa County Sheriff Ricky Owens, a Defendant in the above-entitled action, and submits this Reply to the Plaintiff's Opposition to his Motion to Dismiss.

**INTRODUCTION**

In his Opposition, the Plaintiff has asserted essentially three arguments as to why his 42 U.S.C. § 1983 claims should not be dismissed against Sheriff Owens. First, the Plaintiff argues that despite his no longer being "admitted" to the Coosa County Jail, and his Complaint identifying no specific declaratory or injunctive relief, that his official capacity claims cannot be dismissed. Second, the Plaintiff asserts that Sheriff Owens is not entitled to qualified immunity because he was not acting within his discretionary authority. The Plaintiff's third argument is that Sheriff Owens is not entitled to qualified immunity because he violated the Plaintiff's clearly established rights. The Court should not find these arguments persuasive and should dismiss the Plaintiff's claims against Sheriff Owens.

**ARGUMENT**

At the outset, the Court should note that the Plaintiff has in effect conceded that his Complaint does not properly invoke this Court's jurisdiction. (Doc. 26 at p. 2 n.1.) While the Plaintiff asserts that Sheriff Owens did not cite any authority for the proposition (apparently missing Sheriff Owens's citation to the actual federal statute at issue here – 42 U.S.C. § 1983), he nonetheless states that he "will amend the complaint to address this.") Id. Despite this concession, Sheriff Owens urges the Court to grant his Motion to Dismiss because, for the reasons stated below, even if the Plaintiff were to correct the technical deficiency, his claims are still due to be dismissed.

**I.    THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUE TO BE DISMISSED.**

The Plaintiff has correctly drawn the Court's attention to authority holding that official capacity suits are proper where a plaintiff seeks injunctive or declaratory relief. (Doc. 26 at p. 1 citing Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989).) The problem for the Plaintiff is that the Complaint, although it mentions injunctive and declaratory relief in each of its *ad damnum* clauses, does not ask for any specific relief. (Doc. 1 at pp. 10-14.) Even if it did, his official capacity claims must still be dismissed because they are moot, the Plaintiff lacks standing, and/or the facts pled in the Complaint cannot support an equitable remedy.

**A.    The Plaintiff's Equitable Claims are Moot.**

The Plaintiff, according to the Complaint, has not been "admitted" to the Coosa County Jail for over two years. (Doc. 1 at ¶¶ 16, 32.) He has not averred that he is facing additional time in the Coosa County Jail or that he currently is a prisoner. (See generally Doc. 1.) Consequently, any such claim is moot. See, e.g., Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega

2

County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)).   Furthermore, even if the Court were to interpret the Plaintiff's Complaint as attempting to assert a class, his claims must be dismissed because the class was not certified before his transfer.  See McKinnon, 745 F.2d at 1363 (citing Board of School Commissioners v. Jacobs, 420 U.S. 128, 130 (1975); Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984)).

> **B.    The Plaintiff Lacks Standing to Obtain an Equitable Remedy.**

The Plaintiff also lacks standing to pursue his equitable claims.  A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. 461 U.S. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  Id. 461 U.S. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation that he **might** be stopped by the police, **might** be arrested, and **might** be subjected to another chokehold.  Id. 461 U.S. at 108.  The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

In addition to having more than five times as much time pass without further violations (five months versus twenty-six months), the instant Plaintiff's claims are even more speculative than those in <u>Lyons</u>.  Because the Plaintiff is no longer "admitted" to the Coosa County Jail, his claim is, in essence, that he ***might*** be stopped by police, ***might*** be arrested by an officer with authority to incarcerate someone in the Coosa County Jail, ***might*** be "admitted" to the Coosa County Jail, ***might*** again start tripping over things in the general population cells, ***might*** again be transferred to "the hole" for his own protection, ***might*** again be abused by jailers while in "the hole", and ***might*** again be subjected to the "unconstitutional" condition of receiving "only" one visit to a health care provider a week.  Such speculation into future conduct – even if it did violate the Plaintiff's rights – does not grant the Plaintiff standing.  <u>Lyons</u>, 461 U.S. at 108.

**C.    No Set of Facts as Pled By the Plaintiff Would Support Granting Equitable Relief.**

The Plaintiff must satisfy three elements to justify an injunction against Sheriff Owens.  First, he must succeed on the merits (in this context, he must show an actionable wrong).  Second, he must show the existence of a continuing irreparable injury.  Finally, he must prove that he has no other adequate relief at law.  <u>Newman v. State of Alabama</u>, 683 F.2d 1312, 1319 (11th Cir. 1982).  The Plaintiff cannot establish any of these elements.

First, the Plaintiff cannot show an actionable injury.  As argued in Sheriff Owens's brief supporting his Motion to Dismiss and as set forth below, Sheriff Owens is entitled to qualified immunity.  In particular, the non-conclusory allegations of the Complaint do not allege that Sheriff Owens violated any of the Plaintiff's federally protected rights.

However, even if the Complaint could be construed as making out an actionable wrong, the Complaint does not contain allegations establishing the second element.  In particular, there is no ***continuing*** irreparable injury.  Put simply, the Plaintiff is no longer "admitted" to the

4

Coosa County Jail.  The actionable injury, if any, ceased on January 16, 2004.  (Doc. 1 at ¶¶ 16, 32.)  There has been no further injury in over two years.

Finally, the Plaintiff cannot argue with a straight face that he has no adequate remedy at law.  The Plaintiff has brought individual capacity claims for money damages against all of the individual Defendants and state and federal money damages claims against Coosa County (See generally Doc. 1.)

Moreover, Sheriff Owens's immunity to the Plaintiff's claims does not deprive him of an adequate remedy.  See Rittenhouse v. DeKalb County, 764 F.2d 1451, 1459 (11th Cir. 1985).  It is sufficient that the Plaintiff has the opportunity to adjudicate the question.  Id.  Accordingly, because the evidence fails to establish the elements necessary to obtain an injunction, Sheriff Owens, in his official capacity, is entitled to a dismissal of the Plaintiff's official capacity § 1983 claims as a matter of law.

## II.    SHERIFF OWENS WAS ACTING WITHIN HIS DISCRETIONARY AUTHORITY FOR PURPOSES OF QUALIFIED IMMUNITY.

The Plaintiff's single-sentence argument that Sheriff Owens was not acting within his discretionary authority is that Sheriff Owens has made no more than a "bald assertion that the acts were taken pursuant to the performance of duties and within the scope of [his] duties." (Doc. 26 at p. 26 quoting Harbert Int'l, Inc. v. James, 157 F.3d, 1282 (11th Cir. 1998)).  After citing ample case authority showing that his discretionary authority hurdle is an extremely low one, Sheriff Owens argued:

> ***Under the facts as alleged in the Complaint***, Sheriff Owens easily clears this low hurdle.  All of the Plaintiff's allegations with respect to Sheriff Owens are based upon his role as the Sheriff of Coosa County.  It is in this capacity only that he has the ability to train and supervise jail personnel, provide for the medical care of inmates, and otherwise operate a jail.  As all of the alleged actions were taken under the auspices of these roles, Sheriff Owens was acting within his discretionary authority.

(Doc. 15 at p. 6 (emphasis added).)  It is not just Sheriff Owens's "bald assertion", it is the bald assertions contained in the Plaintiff's own Complaint.

The Plaintiff also relies upon the two-part test set forth in <u>Harbert</u> that a defendant seeking qualified immunity must first show that his actions were in the performance of his duties and within the scope of his authority.  (Doc. 26 at p. 3 citing <u>Harbert</u>, 157 F.3d at 1282.) However, in <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252 (11th Cir. 2004), the Eleventh Circuit explained the <u>Harbert</u> analysis and cautioned the district courts to not be overly narrow in making the discretionary authority analysis:

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted), however, "***the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology***." ***In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances***.

370 F.3d at 1266 (emphasis added).

What the Plaintiff clearly hopes is that this Court will get lost in tautology – the Court should not oblige him.  As explained by the Eleventh Circuit, the relevant questions here are not whether it is within Sheriff Owens's authority to subject the Plaintiff to unconstitutional jail conditions.  The Court should not ask whether it is within the scope of a sheriff's authority to place a piece of paper on a window because the Plaintiff was seeking more medical attention than the trip per week that he was already getting.  (Doc. 1 at ¶ 16.)

Instead, the relevant questions here are those set forth in Sheriff Owens's principal brief. Are running a jail, managing inmates, and managing jail staff within Sheriff Owens's duties? Such responsibilities are indisputably within an Alabama sheriff's duties.  <u>See</u>, <u>e.g.</u>, ALA. CODE §

14-6-1 ("The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto.")   Are moving prisoners to different cells, protecting prisoners from themselves, getting prisoners medical care an average of once a week, and training jail staff within the scope of an Alabama sheriff's authority?  Clearly such activities are within Sheriff Owens's authority.  Id.; see also ALA. CODE § 14-6-19 (requiring the sheriff to provide prisoners with necessary clothing, bedding, medicines, and medical care).  Consequently, even laboring under the tremendous disadvantage of the "master" of this Complaint's selective presentation of the "facts", Sheriff Owens easily clears the low hurdle that is the discretionary authority analysis.

## III.   THE PLAINTIFF'S COMPLAINT DOES NOT SATISFY HIS BURDEN UNDER THE QUALIFIED IMMUNITY ANALYSIS.

Once a defendant official demonstrates that he was acting within his discretionary authority, the burden under the qualified immunity analysis shifts to the plaintiff.  It is the plaintiff's burden to show that the defendant official (1) violated his federally protected rights; and (2) had "fair warning" that his conduct was illegal.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Court must first determine that a constitutional violation exists before proceeding to the "fair warning" prong.  Siegert v. Gilley, 500 U.S. 226, 232 (1991).

In his Opposition, the Plaintiff has clarified the federal claims he makes against Sheriff Owens.  Instead of the seven claims defense counsel deduced from the Complaint, the Plaintiff states that his four claims against Sheriff Owens are unconstitutional jail conditions, denial of care for serious medical needs, failure to stop jail personnel from abusing the Plaintiff, failure to train the jail staff.  (Doc. 26 at p. 4.)  However, as a matter of law, the Complaint does not validly state any of these claims against Sheriff Owens for three reasons: (1) the Plaintiff has waived the issues of his failure to assert his status and the proper constitutional underpinnings of his claims; (2) the case law cited by the Plaintiff does not satisfy his burden under the qualified

immunity analysis; and (3) the Plaintiff has failed to provide the Court with applicable clearly established law that gave Sheriff Owens fair warning.

> **A.    The Plaintiff's Failure to Address the Deficiencies of His Complaint With Respect to His Status as a Pre- or Post-Trial Prisoner and the Correct Constitutional Amendment for His Claims Constitutes a Waiver of the Issues.**

At the outset, it is important to note that even in his Opposition, the Plaintiff still has not referred to himself as an inmate or addressed the adequacy of his pleading with respect to whether his claims are brought under the Eighth or Fourteenth Amendments. (See generally Doc. 26.) The Plaintiff's silence is particularly puzzling in light of Sheriff Owens's argument highlighting this deficiency. (Doc. 15 at p. 8.) The Plaintiff, therefore, has not identified a proper factual predicate for his jail conditions claims (i.e., that he was a pre- or post-trial prisoner of the Coosa County Jail) or the proper legal predicate (i.e., the constitutional amendment that would cover his status as a pre or post-trial detainee). Consequently, as argued in Sheriff Owens's principal brief, all of the Plaintiff's claims should be dismissed. Id. citing Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).

Additionally, the Plaintiff's failure to address this serious deficiency constitutes a waiver of the issues and should result in dismissal of his claims against Sheriff Owens. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). Even if it were so inclined to overlook the Plaintiff's failure to plead and seek to research the issues *sua sponte* it may not do so. The Eleventh Circuit has made it crystal clear that this court should not act as *de facto* counsel for a party or rewrite defective pleadings. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) citing Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). According to the Eleventh Circuit:

> "Among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded *sua sponte* by the trial

8

judge." <u>Doubleday & Co. v. Curtis</u>, 763 F.2d 495, 502 (2d Cir. 1985). A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard for § 1983 claims that is the law of this circuit and the Supreme Court's call for a "firm application of the Federal Rules of Civil Procedure" in cases where qualified immunity is asserted. <u>Butz v. Economou</u>, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

<u>GJR</u>, 132 F.3d at 1369.

Consequently, in light of the Plaintiff's concession of both factual and legal issues absolutely critical to the viability of his claims against Sheriff Owens, the Court should dismiss all of the Plaintiff's claims against Sheriff Owens.

**B.    SHERIFF OWENS DID NOT VIOLATE THE PLAINTIFF'S FEDERALLY PROTECTED RIGHTS.**

Even if the Plaintiff had properly rebutted the factual and legal deficiencies of his Complaint, Sheriff Owens would still be entitled to qualified immunity because the Complaint does not show that he violated the Plaintiff's federally protected rights. In his Opposition, it appears that the Plaintiff argues that the case law he cites, read in conjunction with the allegations of the Complaint, demonstrates both a constitutional violation and the existence of clearly established law – thereby address both of his burdens simultaneously. While Sheriff Owens will address the Plaintiff's arguments in the order set forth in the Opposition, this brief will nonetheless continue to address the Plaintiff's burden in the manner established by the Supreme Court. <u>See</u>, <u>e.g.</u>, <u>Saucier</u>, 533 U.S. at 201; <u>Siegert</u>, 500 U.S. at 232.

**1.    <u>Sheriff Owens Did Not Subject the Plaintiff to Unconstitutional Jail Conditions.</u>**

With respect to the conditions at the Coosa County Jail, the Plaintiff cites three cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens. (Doc. 26 at pp. 7-10, citing <u>Gates v. Collier</u>, 501 F.2d 1291 (5th Cir. 1974); <u>Hope</u>, 536 U.S. at 742; and <u>Chandler v. Baird</u>, 926 F.2d 1057 (11th Cir. 1991).) These cases

do not support the Plaintiff's position.  In fact, these cases and subsequent cases, actually cut against the Plaintiff's claims.

It is remarkable that the Plaintiff compares himself to the inmates who brought suit in <u>Gates</u>. As alleged, in <u>Gates</u>, inmates were placed in a dark cell, naked, without any hygienic materials, bedding, adequate food or heat, or an opportunity for cleaning either themselves or the cell.  501 F.2d at 1305.  The Plaintiff here does not allege he was kept in "the hole" naked.  (<u>See generally</u> Doc. 1.)  The Plaintiff does not allege "the hole" was without light.  <u>Id.</u>  The Complaint does not allege that the Plaintiff's cell was not cleaned.  <u>Id.</u>  The Plaintiff actually alleges that he was provided with bedding.  <u>Id.</u> at ¶ 9.  The Plaintiff alleges that he was given an opportunity to shower. <u>Id.</u> at 13.  By implication, the Plaintiff alleges that he was given access to some hygiene, albeit infrequently.[1]  <u>Id.</u>

The facts of the instant case are so dissimilar from those in <u>Gates</u> that the Fifth Circuit's case cannot possibly clearly establish either a violation of the instant Plaintiff's rights or provide the fair warning required.  Moreover, any commentary as to the constitutionality of the conditions in <u>Gates</u> is pure dicta as that Court noted:

> ***The sole argument on appeal is that the state lacks the financial ability to implement the district court's order within the time schedule designated***, and that therefore, the court exceeded its jurisdiction in ordering the total elimination of the armed trusty system, the improvement of the physical facilities, the classification of inmates, the implementation of inmate protection procedures, and emendation of medical facilities.  More specifically, the appellants' argument is that after the entry of the judgment they immediately promulgated conforming rules and regulations concerning the censorship of mail, use of corporal punishment, the discipline of inmates, and disciplinary confinement, but lacked the funds to effectuate the other portions of the judgment in accordance with the time guidelines specified. It is important to note that the appellants do not challenge, for example, the court's

---

[1] Plaintiff appears to have tried to track the "magic language" of <u>Gates</u> in his Complaint with the result that the factual allegations of the Complaint are internally inconsistent.  For example, in paragraph 13, the Plaintiff alleges that the individual defendants "were aware that plaintiff was without basic hygiene for extended periods of time but denied him access to basic hygiene."  While the latter to words mirror the absolute denial language in <u>Gates</u>, the phrase "extended period of time" indicates that the Plaintiff received some access to hygiene.  Furthermore, in the same paragraph, the Plaintiff alleges that he sometimes went without showers for days – thereby implying that he actually received showers and negating the claim that he was denied "access to basic hygiene."

> holding that equal protection requires reclassification of the inmates on a basis other than race or that the Eighth Amendment requires improvements in the physical and medical facilities at Parchman and the elimination of the trusty system. The appellants did not deny the unconstitutionality of their previous operation and administration of Parchman and do not now controvert the constitutional mandate for the reforms ordered. Rather ***their sole argument is that they do not have the financial capacity to effectuate these reforms***. To reiterate, appellants do not challenge a single finding of fact or conclusion of law by the trial court.

501 F.2d at 1299 (emphasis added). Gates was ***not*** a § 1983 case seeking money damages. The inmates there sought equitable relief for unchallenged claims of unconstitutional conditions. Qualified immunity was not an issue. Accordingly, as Gates is factually, legally, and procedurally dissimilar to the instant case, it cannot assist the Plaintiff in overcoming either of his qualified immunity burdens.

The Plaintiff also improperly relies on Hope with respect to his drinking water claim. According to the Complaint, the Plaintiff was without water "for hours at a time" while in his cell. Leaving aside that this phrase is impermissibly vague under the heightened pleading standard, the Plaintiff's situation does not come close to that faced by the inmate in Hope. Specifically:

> [Hope] took a nap during the morning bus ride to the chain gang's worksite, and when it arrived he was less than prompt in responding to an order to get off the bus. An exchange of vulgar remarks led to a wrestling match with a guard. Four other guards intervened, subdued Hope, handcuffed him, placed him in leg irons and transported him back to the prison where he was put on the hitching post. ***The guards made him take off his shirt, and he remained shirtless all day while the sun burned his skin***. He remained attached to the post for approximately seven hours. ***During this 7-hour period, he was given water only once or twice and was given no bathroom breaks. At one point, a guard taunted Hope about his thirst. According to Hope's affidavit: "[The guard] first gave water to some dogs, then brought the water cooler closer to me, removed its lid, and kicked the cooler over, spilling the water onto the ground.***"

536 U.S. at 734-35 (footnotes omitted emphasis added).

Clearly, the instant Plaintiff did not face even remotely similar conditions. He was inside. He had clothes on. He was not exposed to the sun in hot temperatures. The guards did not taunt him by giving water to a dog. The Plaintiff was not shackled to a hitching post.

11

The Plaintiff also asserts that the <u>Hope</u> court cited Eleventh Circuit precedent as establishing "that the denial of drinking water to an inmate violates clearly established constitutional law." (Doc. 26 at p. 9.)[2]  According to the Plaintiff, the Eleventh Circuit has held that denial of drinking water for as much as two hours violates a prisoner's constitutional rights.  <u>Id.</u> (naming, without a specific citation, <u>Hope</u> and <u>Ort v. Wright</u>, 813 F.2d 318 (11th Cir. 1987)).  However, what <u>Hope</u> and <u>Ort</u> actually say is radically different:

> ***The reasoning, though not the holding***, in a case decided by the Eleventh Circuit in 1987 sent the same message to reasonable officers in that Circuit. ***In <u>Ort v. White</u>, 813 F.2d 318, the Court of Appeals held that an officer's temporary denials of drinking water to an inmate who repeatedly refused to do his share of the work assigned to a farm squad "should not be viewed as punishment in the strict sense, but instead as necessary coercive measures undertaken to obtain compliance with a reasonable prison rule, i.e., the requirement that all inmates perform their assigned farm squad duties."*** <u>Id.</u>, at 325. "The officer's clear motive was to encourage Ort to comply with the rules and to do the work required of him, after which he would receive the water like everyone else." <u>Ibid</u>. ***The court cautioned, however, that a constitutional violation might have been present "if later, once back at the prison, officials had decided to deny [Ort] water as punishment for his refusal to work."*** <u>Id.</u>, at 326. ***So too would a violation have occurred if the method of coercion reached a point of severity such that the recalcitrant prisoner's health was at risk.*** <u>Ibid</u>. ***Although the facts of the case are not identical, Ort's premise is that "physical abuse directed at [a] prisoner after he terminate[s] his resistance to authority would constitute an actionable eighth amendment violation."*** <u>Id.</u>, at 324. This premise has clear applicability in this case. Hope was not restrained at the worksite until he was willing to return to work. Rather, he was removed back to the prison and placed under conditions that threatened his health. Ort therefore gave fair warning to respondents that their conduct crossed the line of what is constitutionally permissible.

<u>Hope</u>, 536 U.S. at 743 (emphasis added).

Neither <u>Hope</u> nor <u>Ort</u> stand for the proposition that a denial of drinking water for two hours violates an inmate's rights *per se*, as the Plaintiff would have the Court believe.  In fact, the Eleventh Circuit specifically held that a two-hour denial of water under the facts of that case ***was constitutionally permissible***.  813 F.2d at 325.  With respect to <u>Hope</u> it was not the denial of

---

[2] The Plaintiff does not give a citation to either <u>Hope</u> or the Eleventh Circuit precedent in his brief for this proposition.

drinking water while the inmate refused to work, but the continued denial of water and other "punishments" back at the prison that constituted the violation of clearly established law.  536 U.S. at 743 (citing Ort, 813 F.2d at 324).

Put into the context of the instant case, the Plaintiff's Complaint would have to contain allegations that the denial of drinking water was (1) punishment designed to obtain compliance that was continued after the Plaintiff ceased being noncompliant; or (2) placed his health at risk.  Hope, 536 U.S. at 743 (citing Ort, 813 F.2d at 324).  The Complaint contains no such allegations.  The entirety of the Plaintiff's water allegations with respect to this Defendant is that the Plaintiff "repeatedly called for water to drink but was not given water for hours at a time so that [he] was constantly thirsty.  [Defendant Owens was] aware that the plaintiff was without water for hours at a time but did not provide it to him."  (Doc. 1 at ¶ 12.)

Nowhere does the Complaint allege that the denial of water was punishment to obtain compliance that was continued after the Plaintiff complied.  Nowhere does the Complaint allege that the alleged denial of drinking water "for hours at a time" placed his health at risk.  (See generally Doc. 1.)  The Plaintiff's failure to plead necessary facts is fatal to his claims in light of the heightened pleading standard.  See, e.g., Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

The Plaintiff next turns to Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991) to support his jail conditions claims.  The Chandler court did allow an inmate's hygiene and cold temperature claims to proceed.  926 F.2d at 1065.  However, this case, too, is easily distinguishable on both its facts and the law upon which it relies.

With respect to the facts, the allegations in Chandler were far more specific than those of the instant case.  Inmate Chandler averred that the temperature of his cell was as low as 60 degrees and was "ice cold".  926 F.2d at 1063.  He also alleged that he was given no clothing except for undershorts and was forced to sleep huddled with a roommate between two mattresses to stay

13

warm.  Id.  Chandler also made specific hygiene-related allegations.  He claimed that he was deprived of toilet paper for three days, running water for two days, and soap, toothbrush, and toothpaste altogether.  Id.

Here, there are no allegations as to the temperature in the Plaintiff's cell.  He has not alleged that he was deprived of clothing.  (See generally Doc. 1.)  As noted previously, the Plaintiff has alleged by implication facts that show he was given access to a shower, thereby gutting his conclusory allegation that he was deprived of basic hygiene.  Id. at ¶ 13.

Chandler is also distinguishable from the perspective of the law relied upon by the Eleventh Circuit in two ways.  First, the Eleventh Circuit rejected a case that was factually distinguishable from the allegations it faced but that was on point with respect to the instant Plaintiff's claims.  Second, there has been a fundamental shift in the way Eighth Amendment claims are analyzed since the Chandler decision.

First, the Chandler court examined McMahon v. Beard, 583 F.2d 172 (5th Cir. 1978), and found it distinguishable.[3]  In McMahon, the Fifth Circuit found no constitutional violation where an inmate was kept in solitary confinement without clothes, mattress or blankets for three months.  583 F.2d at 175.  The Chandler court found that McMahon was distinguishable because unlike Chandler, the inmate in McMahon was placed in isolation because he had attempted suicide, was seen by medical personnel during the relevant period, and was eventually given paper clothes.  926 F.2d at 1064.

Similarly, in the instant case, the Plaintiff was placed in "the hole" for his own protection due to his propensity to fall over things in the general population cells.  (Doc. 1 at ¶¶ 6, 7, 9.)  The Plaintiff received medical attention an average of once per week during his incarceration.  Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 22 (dentist), 32 (trip to hospital on 1/16/04 and

---

[3] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).

treatment on an unspecified date for a rash).  Finally, he was removed from the jail altogether

and put in the hospital.  Id. at ¶ 21.  Under McMahon, therefore the Plaintiff has failed to state a

claim.

Second, the legal analysis used by the Chandler court has changed.  Interestingly, the

change was noted in another lawsuit filed by the same plaintiff.  Chandler v. Crosby, 379 F.3d

1278 (11th Cir. 2004).  In Crosby, the Eleventh Circuit rejected Chandler noting:

> We do not find Chandler to be controlling here. First, the Chandler court, in
> rendering its judgment on qualified immunity, was concerned entirely with the law
> related to excessive cold claims; the court had no opportunity to treat an excessive
> heat or inadequate ventilation claim. Second, the Chandler court did not have the
> benefit of the Supreme Court's rulings in Wilson [v. Seiter, 501 U.S. 294 (1991)],
> Hudson [v. McMillian, 503 U.S. 1 (1992)], Helling [v. McKinney, 509 U.S. 25
> (1993)], or Farmer [v. Brennan, 511 U.S. 825 (1994)]. It was in these cases that the
> Court refined the Eighth Amendment framework that governs our present cases. See
> supra Part III.A.
>
> The Chandler court did have the benefit of Estelle and Rhodes, but these
> foundational cases did not fully establish the current Eighth Amendment framework.
> Estelle held "that deliberate indifference to serious medical needs of prisoners
> constitutes" an Eighth Amendment violation. 429 U.S. at 104, 97 S.Ct. at 291. This
> ruling was landmark but limited. Indeed, the Rhodes Court, writing nearly five years
> after Estelle, stated,
>
>> until this case, we have not considered a disputed contention that the
>> conditions of confinement at a particular prison constituted cruel and
>> unusual punishment. Nor have we had an occasion to consider
>> specifically the principles relevant to assessing claims that conditions
>> of confinement violate the Eighth Amendment.
>
> 452 U.S. at 345, 101 S.Ct. at 2398 (footnote omitted).
>
> Rhodes applies more broadly to all conditions of confinement. See supra Part III.A.
> Nonetheless, it was not until after Chandler that the Supreme Court clearly
> delineated the objective and subjective components of Eighth Amendment claims.
> See Wilson, 501 U.S. at 303, 111 S.Ct. at 2327 (adopting a "deliberate indifference"
> standard for the subjective component); Farmer, 511 U.S. at 847, 114 S.Ct. at 1984
> (holding that a prison official is deliberately indifferent "if he knows that inmates
> face a substantial risk of serious harm and disregards that risk by failing to take
> reasonable measures to abate it"). Furthermore, it was not until after Chandler that
> the Supreme Court held that a prisoner "states a cause of action under the Eighth
> Amendment by alleging that [prison officials] have, with deliberate indifference,

exposed him to [a condition] that pose[s] an *unreasonable risk of serious damage to his future health*." Helling, 509 U.S. at 35, 113 S.Ct. at 2481 (emphasis added).

The "severe discomfort" language from Chandler **appears to be an anomaly in our jurisprudence**. A quick Lexis search reveals that, after Chandler, **we never again used that phrase in deciding an Eighth Amendment challenge**. We have routinely used language found in the Supreme Court's post-Chandler cases, however. See, e.g., Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) ("A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." (citing Helling, 509 U.S. at 32-33, 113 S.Ct. at 2480)); Bass, 170 F.3d at 1317 ("Wantonness has been defined as 'deliberate indifference to a substantial risk of serious harm to a prisoner.'" (quoting Farmer, 511 U.S. at 836, 114 S.Ct. at 1978)). *In the end, the Supreme Court's holdings, rather than the obsolete and potentially irrelevant phraseology of Chandler, must govern our analysis*.

379 F.3d at 1296-97 (emphasis added).

In other words, Chandler was decided prior to the Supreme Court's imposition of the more demanding deliberate indifference standard containing both an objective and subjective component. The Plaintiff can no longer get by on a mere showing that a given condition caused objective "severe discomfort".   The Plaintiff must show that objectively the condition posed "an *unreasonable* risk of *serious* damage to his future health" and that Sheriff Owens was aware not just of the condition but that it posed such a risk.  Helling, 509 U.S. at 32-33.

The Plaintiff's Complaint falls well short of this standard.  While he does allege various conditions of his confinement, with the exception of his medical claim, he does not allege that any of them resulted or could have resulted in serious damage to his future health.  (See generally Doc. 1.)  While he alleges that Sheriff Owens was aware of the conditions, he does not allege that Sheriff Owens was aware that the conditions posed an unreasonable risk of serious damage to his health. Id.  Consequently, the Plaintiff has failed to allege a viable conditions claim.

## 2.    **Sheriff Owens was not Deliberately Indifferent to Plaintiff's Alleged Serious Medical Conditions.**

The Plaintiff cites several cases for his proposition that he succeeded in stating a claim against Sheriff Owens for deliberate indifference to his serious medical need.  However, none of

the cases even approach meeting the materially similar test.  In fact, the cases cited by the Plaintiff are so readily distinguishable from the facts as alleged in the Plaintiff's Complaint, that it is clear that the Plaintiff's allegations do not rise to the level of a constitutional violation.

First, five of the cases cited by the Plaintiff do not even address the liability of a sheriff or jail officer for medical claims.  Therefore, these five cases ***cannot*** be considered in determining whether a constitutional violation is established with regard to a sheriff and certainly cannot be considered in determining whether Sheriff Owens had fair warning that his conduct was unlawful.  In Waldrop v. Evans, 871 F.2d 1030, 1032 (11th Cir. 1989), the Defendants were a staff physician and a prison psychiatrist.  In McElligott v. Foley, 182 F.2d 1248, 1251 (11th Cir. 1999), the defendants were a physician, a nurse, and the county.  In Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996), the defendant was a psychiatrist.  In Hathaway v. Coughlin, 37 F.3d 63 (2nd Cir. 1994), the defendant was a doctor. Further, Hathaway carries absolutely no weight in the clearly established prong of the qualified immunity analysis, and it is not even binding authority as to the question of whether a constitutional violation has occurred. See Jenkins ex rel. Hall v. Talladega City Board of Education, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (en banc) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose"); U.S. v. Veal, 322 F.3d 1275, 1278 (11th Cir. 2003) (holding that decisions of another circuit are not binding authority in the Eleventh Circuit).

Finally, the decision of the United States Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976) focused on claims against a physician.  The Court held that, where the Complaint alleged that the plaintiff had been seen and treated by medical personnel seventeen times in a three-month period, it was insufficient to state a cause of action against the physician.  The court noted:  "Medical malpractice does not become a constitutional violation merely because the

17

victim is a prisoner." Estelle, 429 U.S. at 106. On remand, the warden and correction director were also dismissed. Gamble v. Estelle, 554 F.2d 653 (5th Cir. 1977). The facts alleged in the Estelle case is similar to those alleged in the instant case. In the case at bar, it is clear from the face of the Complaint that the Plaintiff was seen and treated by medical personnel several times during the two-month period he was in the Coosa County Jail. Just like in Estelle, in the instant case, such allegations are insufficient to state a cause of action against Sheriff Owens. The Plaintiff's acknowledgements in his Complaint of the several times that he was seen and treated by medical personnel is fatal to his Complaint, and therefore, this claim should be dismissed as was the claim in Estelle.

Similarly, in Hill v. DeKalb, 40 F.3d 1176 (11th Cir. 1994), the Court granted qualified immunity to the defendants. In Hill, the Eleventh Circuit found that the director of the detention center directed that the plaintiff be taken to a hospital if he did not improve after taking his prescribed medicine and that the plaintiff was given "extraordinary care and medical attention." Hill, 40 F.3d at 1191 and 1193. The Plaintiff's Complaint in the instant case presents a similar factual scenario. The Complaint states that during the course of the Plaintiff's two-month "admission" to the Coosa County Jail, he received medications. (Doc. 1 at ¶ 19, 30.) Said medications cost $900.00 per month. Id. at 19. According to the Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than *six* occasions – an average of almost once a week. Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 22 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash). At least five of these treatments were provided by either hospital personnel or outside providers. Id. Because the Plaintiff in the instant case was given extraordinary care and medical attention – as evidenced by the Plaintiff's Complaint – Plaintiff's Complaint fails to state a claim

The remaining cases cited by the Plaintiff similarly fail to show that the allegations of the Plaintiff's Complaint rise to the level of a constitutional violation on the part of Sheriff Owens. First, Anderson v. Nosser, 456 F.2d 835 (5th Cir. 1972) does not even discuss a medical claim, so clearly this case cannot support the Plaintiff's position.

Next, in both Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005), and H.C. by Hewitt v. Jarrard, 786 F.2d 1080 (11th Cir. 1986), the defendant officers had the requisite subjective knowledge of the serious medical need because they were the ones who actually inflicted the injury. In contrast, in the instant case, there is no allegation that Sheriff Owens inflicted any injury on the Plaintiff. Therefore, unlike Bozeman and Jarrard, in the instant case, the allegations are insufficient to show that Sheriff Owens had the requisite subjective knowledge required to make out a claim for deliberate indifference to a serious medical need.

In Harris v. Coweta, 21 F.3d 388 (11th Cir. 1994), and Aldridge v. Montgomery 753 F.2d 970 (11th Cir. 1985), the defendants ignored the recommendations of the medical personnel who were treating the plaintiffs. In Harris, the Court denied qualified immunity where the sheriff delayed surgery despite the surgery being recommended by two doctors. In Aldridge, the Court found a jury question where the officers waited two and a half hours before getting treatment for a one and a half inch bleeding cut that required six stitches and where the officers did not give the plaintiff aspirin and an ice pack as prescribed by the doctor. In contrast to these two cases, in the Plaintiff's Complaint in the instant case, there is no allegation that Sheriff Owens ever ignored the recommendation of any of the medical personnel who treated the Plaintiff.[4]

In Ancata v. Prison Health Services, 769 F.2d 700 (11th Cir. 1985), the plaintiff's complaint was not dismissed where it was alleged that the sheriff had a policy of requiring inmates to obtain court orders prior to being given medical treatment and that the policy caused

_____

[4] In an interesting twist, what the defendants in Harris lost qualified immunity for – ignoring a treating physician – is the exact course of action the Plaintiff argues Sheriff Owens should have taken.

the plaintiff's injury.  On the contrary, in the instant case, there is no allegation that Sheriff Owens promulgated any policy requiring such an order.

In <u>Brown v. Hughes</u>, 894 F.2d 1533 (11th Cir. 1990), the Court granted summary judgment to three of the four defendants because there was no evidence that they were aware of the injury.  Summary judgment was denied to the defendant who was present when the inmates "began to limp and then hop on one leg" and saw his foot beginning to swell severely.  That fourth defendant promised to send someone to look at his foot but never did.  894 F.2d at 1538-1539.  Although the Plaintiff was ultimately taken to the hospital, officers other than the defendants were involved in that process.

In the instant case, the Plaintiff has failed to allege that Sheriff Owens ever saw an obvious medical need such as the one shown in <u>Brown</u> and promised to get medical attention for him but failed to do so.  On the contrary, the Plaintiff in the instant case was provided with medical care, and there is no allegation that Sheriff Owens was not actually involved in obtaining that medical care.

In <u>Carswell v. Bay County</u>, 854 F.2d 454 (11th Cir. 1988), the evidence at trial showed that the jail administrator recognized that the plaintiff was in need of medical care.  However, his reaction to this need was simply to yell into a crowded room "Get this man to see the doctor." 854 F.2d at 455.  Two days later, the plaintiff was seen by a medical professional.  The plaintiff had lost 52 pounds, was diagnosed as a diabetic, and spent the next two months in the hospital.  In the case at bar, there is no allegation that Sheriff Owens's response to Plaintiff's medical needs were deficient like the response of the jail administrator in <u>Carswell</u>.  Further, there is no allegation that the Plaintiff had such a obvious ailment and was not treated for such.

In <u>Lancaster v. Monroe County</u>, 116 F.3d 1419 (11th Cir. 1997), the sheriff was denied qualified immunity because he intentionally delayed obtaining treatment even though he was

aware of an imminent life-threatening seizure.  However, the Eleventh Circuit later distinguished the facts of <u>Lancaster</u>, stating that, where the prison official had given the plaintiff "ongoing medical care and had medical personnel monitor Plaintiff's behavior and symptoms, and took affirmative steps to prevent Plaintiff from harming herself and others," no deliberate indifference had occurred.  <u>Campbell v. Sikes</u>, 169 F.3d 1353 (11th Cir. 1999).

In the Plaintiff's Complaint, it is clear that the facts alleged are analogous to those in <u>Campbell</u>.  The Complaint affirmatively shows that the Plaintiff was placed in "the hole" for his own protection due to his propensity to fall over things in the general population cells.  (Doc. 1 at ¶¶ 6, 7, 9.)  The Plaintiff received medical attention an average of once per week during his incarceration.  <u>Id.</u> at ¶ 6 (two visits), 7 (trip to hospital after a fall), 22 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash).  Finally, he was removed from the jail altogether and put in the hospital.  <u>Id.</u> at ¶ 21.  There is no allegation that medical treatment was delayed or denied for non-medical reasons in this case.  Accordingly, it is clear, based on the Eleventh Circuit's analysis in <u>Campbell</u> that there has been no constitutional violation established by the Plaintiff's Complaint.

### 3. <u>Sheriff Owens Did Not Violate the Plaintiff's Constitutional Rights by a Failure to Stop Abuse.</u>

With respect to the Plaintiff's "Failure to Stop Abuse" claims, the Plaintiff cites four cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens.  (Doc. 26 at pp. 20-21 citing <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992); <u>Gates v. Collier</u>, 501 F.2d 1291 (5th Cir. 1974); <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003); and <u>Young v. Augusta</u>, 59 F.3d 1160 (11th Cir. 1995).)  However, these cases do not, as the Plaintiff suggests, establish that there was a constitutional violation in the case at bar, nor do they establish the existence of fair warning.

The case of <u>Hudson v. McMillian</u>, does nothing to advance the Plaintiff's argument that Sheriff Owens should be held liable for failing to stop abuse allegedly received at the hands of jail officers.  In <u>Hudson</u>, the defendants were two corrections officers as well as a supervising corrections officer.  503 U.S. at 4.  The evidence was that the two corrections officers beat the inmate and that the supervising corrections officer "watched the beating but merely told the officers 'not to have too much fun.'"  <u>Id.</u>  The Court held that the supervising officer "expressly condoned" the actions of the corrections officers.  In the instant case, there is no allegation that Sheriff Owens ever witnessed any of the alleged acts of abuse, much less "expressly condoned" such abuse.  Accordingly, the <u>Hudson</u> case cannot be relied on by the Plaintiff in the instant case to show evidence of a constitutional violation.  Nor can the Plaintiff show that the facts in <u>Hudson</u> are materially similar to the facts of the instant case as would provide fair warning to Sheriff Owens that his conduct was unlawful.

As noted previously, <u>Gates v. Collier</u>, is factually, legally, and procedurally dissimilar to the instant case.  In <u>Gates</u>, the Court found that the prison superintendent *acquiesced* in the following:

> ... administering milk of magnesia as a form of punishment, stripping inmates of their clothes, turning the fan on inmates while naked and wet, depriving inmates of mattresses, hygienic materials, and adequate food, handcuffing inmates to the fence and to cells for long periods of time, shooting at and around inmates to keep them standing or moving, and forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods.

501 F.2d at 1306.  In the Plaintiff's Complaint, the allegations are not even close to rising to the level of the conditions found in the <u>Gates</u> case.  Additionally, there is no allegation in the Plaintiff's Complaint that Sheriff Owens *acquiesced* in any such treatment of the Plaintiff.

Plaintiff also cites <u>Cottone v. Jenne</u> in support of his position.  However, in <u>Cottone</u>, the Court, on the defendants' motion to dismiss, granted qualified immunity to the supervisory defendants because the complaint failed to allege the causal connection required to impose

supervisory liability against them.   Clearly, <u>Cottone</u> does nothing to bolster the Plaintiff's argument, but instead gives credence to the Defendants' argument that no constitutional violation has been established.   Just like in <u>Cottone</u>, in the instant case the Plaintiff has failed to allege the causal connection required to impose liability against Sheriff Owens.  Therefore, this Court should, as the court in <u>Cottone</u> did, dismiss the Plaintiff's Complaint against Sheriff Owens.

Finally, the Plaintiff cites <u>Young v. Augusta</u> to support his contention that Sheriff Owens violated his clearly established rights.   The <u>Young</u> opinion, however, was solely focused on determining whether to impose municipal liability for the "inadequate selection and training of employees."   <u>Young</u>, 59 F.3d at 1163.   Clearly, a municipal liability decision regarding inadequate selection and training of employees cannot provide the fair warning necessary to satisfy the Plaintiff's burden in the qualified immunity analysis of a failure to stop abuse claim.

### 4.    Sheriff Owens Did Not Violate the Plaintiff's Constitutional Rights by a Failure to Train.

With respect to the Plaintiff's "Failure to Train" claims, the Plaintiff cites five cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens.  (Doc. 26 at pp. 22-24 citing <u>Young v. Augusta</u>, 59 F.3d 1160 (11th Cir. 1995); <u>Rivas v. Freeman</u>, 940 F.2d 1491 (11th Cir. 1991); <u>Goodson v. City of Atlanta</u>, 763 F.2d 1381 (11th Cir. 1985); <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003)[5]: and <u>Valdes v. Crosby</u>, 390 F.Supp. 2d 1084 (M.D. Fla. 2005)).

Initially, Sheriff Owens notes that the <u>Valdes</u> case carries absolutely no weight in the clearly established prong of the qualified immunity analysis, and it is not even binding authority as to the question of whether a constitutional violation has occurred.  See <u>Jenkins</u>, 115 F.3d at

---

[5] As set forth in the previous section, in <u>Cottone</u>, the Court, on the defendants' motion to dismiss, granted qualified immunity to the supervisory defendants because the complaint failed to allege the causal connection required to impose supervisory liability against them.   Accordingly, the <u>Cottone</u> case does nothing at all to support the Plaintiff's position.

827 n.4; see also Powers v. CSX Transp., Inc., 105 F.Supp. 2d 1295 (S.D.Ala. 2000) (holding Florida district court opinion not relevant to qualified immunity analysis); U.S. v. Veal, 322 F.3d 1275, 1278 (11th Cir. 2003) (holding that decisions of another circuit are not binding authority in the Eleventh Circuit). Furthermore, the facts of the Valdes case are extreme – Valdes involved a claim that corrections officers beat an inmate to death – that the case is far from materially similar to the facts of the instant case.[6]

As pointed out in the previous section, the Young case involved only the issue of whether or not to impose municipal liability. There was absolutely no discussion of whether liability should be imposed on an individual supervisor. Certainly, there was no discussion of qualified immunity in the Young case. Further, the facts in Young are easily distinguishable from the facts in the instant case. In Young the plaintiff was "stripped naked and chained to the metal bed, which contained no mattress. She was shackled in such a way that she could not reach the toilet and was forced to eliminate her bodily wastes where she sat on the floor." Young, 59 F.3d at 1164. She was also maced by male and female guards while chained to the bed. Id. In the instant case, there is no allegation that the Plaintiff was naked or chained to a bed. There is also no allegation that the Plaintiff was maced while naked and chained to a bed. Clearly, the facts in Young are so far removed from the facts as alleged in the instant case that this case is completely irrelevant in either prong of the qualified immunity analysis.

In Rivas v. Freeman, the Court found that the sheriff "knew of prior instances of mistaken identity, but allowed his deputies to detain individuals even where discrepancies existed." The Court also found that the sheriff failed "to adequately train his officers regarding reliable identification techniques" and failed "to properly account for incarcerated suspects."

---

[6] Interestingly, the Valdes court, like the instant Plaintiff, did not address the mandatory authority in Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (holding that there is no supervisory liability where the conduct engaged in by a subordinate is obviously illegal).

Rivas, 940 F.2d at 1495-1496.  The Court held that there was sufficient evidence to show that the Sheriff's actions caused the Plaintiff's injuries.  The allegations in the instant case are completely dissimilar.

In the Plaintiff's Complaint, he alleges that Sheriff Owens failed to train the officers with regard to providing medication and referring inmates to receive medical treatment.  (Doc. 1, ¶ 48.)  The Plaintiff also alleges that Sheriff Owens failed to provide training regarding treatment and mistreatment of prisoners.  Id. at ¶ 57.  None of these types of training were discussed in Rivas.  Furthermore, the Plaintiff does not sufficiently allege a claim for failure to train or that any alleged failure to train caused the Plaintiff's injuries. According to the Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than *six* occasions – an average of almost once a week.  Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 22 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash).  Clearly, any alleged failure to train jail staff with regard to medical care did not cause any injury as the Plaintiff was, in fact, given medical care.  Further, the Rivas case involved a specific area wherein training was lacking.  Therefore, the allegation – that the Sheriff failed to train officers regarding the mistreatment of injuries – is so broad that it could not possibly be implicated by Rivas and clearly does not meet the heightened pleading standard applicable to this claim.

In Goodson v. City of Atlanta, the Atlanta Bureau of Corrections had warned the jail supervisor regarding "irresponsible correctional officers and requested the discipline of the same."  763 F.2d at 1387.  However, the jail supervisor refused to discipline the officers and refused to take any corrective action.  In the instant case, there is no allegation that Sheriff Owens failed to take any corrective action with regard to alleged violations of which he was

aware. Accordingly, the <u>Goodson</u> case cannot show the existence of a constitutional violation, nor can it provide fair warning to Sheriff Owens that his alleged conduct was unlawful.

### C. No Clearly Established Law Provided Sheriff Owens With "Fair Warning" That His Conduct Violated the Plaintiff's Federally Protected Rights.

The Plaintiff devotes several pages of his opposition to the United States Supreme Court's <u>Hope v. Pelzer</u> decision.  (Doc. 26 at pp. 4-6 citing 536 U.S. 730 (2002).)  However, as noted in Sheriff Owens's principal brief, and as explained by the Eleventh Circuit itself, <u>Hope</u> "did not change the preexisting law of the Eleventh Circuit much."  <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1300 (11th Cir. 2003).  The Plaintiff must still either point to a materially similar case or demonstrate the conduct complained of was unconstitutional with "obvious clarity."  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  This statement of the Eleventh Circuit's "clearly established law" jurisprudence was recognized by Justice Thomas in rejecting the <u>Hope</u> majority's "rigid gloss" language relied upon by the Plaintiff:

> Although the Court argues that the Court of Appeals has improperly imposed a "rigid gloss on the qualified immunity standard," ante, at 2515, and n. 9, requiring that the facts of a previous case be materially similar to a plaintiff's circumstances for qualified immunity to be overcome, this suggestion is plainly wrong. Rather, this Court of Appeals has repeatedly made clear that it imposes no such requirement on plaintiffs seeking to defeat an assertion of qualified immunity. <u>See</u>, <u>e.g.</u>, <u>Priester v. Riviera Beach</u>, 208 F.3d 919, 926 (C.A.11 2000) (stating that qualified immunity does not apply if an official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without case law on point" (internal quotation marks omitted)); <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (C.A.11 1997) (noting that a plaintiff can overcome an assertion of qualified immunity by demonstrating "that the official's conduct lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw"); <u>Lassiter v. Alabama A & M Univ.</u>, 28 F.3d 1146, 1150, n. 4 (C.A.11 1994) ("[O]ccasionally the words of a federal statute or federal constitutional provision will be specific enough to establish the law applicable to particular circumstances clearly and to overcome qualified immunity even in the absence of case law").

536 U.S. at 754 (Thomas, J. dissenting).

In other words, the Plaintiff, even post-<u>Hope</u>, still has the burden of showing that Sheriff Owens was on notice that his conduct was crossing a constitutional bright line, and most often this will require a pre-existing factually similar case. "[P]reexisting, factually similar cases are – not always, but (in our experience) usually – needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights." <u>Id.</u> at 1303.

As noted above, the cases relied upon by the Plaintiff are not materially similar. Furthermore, as the cases clearly demonstrate – and the Plaintiff apparently concedes as he has not argued the point – this is not an obvious clarity case. Accordingly, even if the Complaint alleged sufficient facts to show Sheriff Owens violated the Plaintiff's federally protected rights, no clearly established law provided the requisite fair warning. To the contrary, as noted in Sheriff Owens's principal brief, instead of condemning his conduct, the relevant clearly established law demonstrates that Sheriff Owens did not violate the Plaintiff's rights. <u>See</u>, <u>e.g.</u>, <u>City of Revere</u>, 463 U.S. at 246; <u>Hamm</u>, 774 F.2d at 1575; <u>Camberos</u>, 73 F.3d at 176; <u>Davenport</u>, 844 F.2d at 1316-17; <u>French</u>, 777 F.2d at 1255; <u>Sewell</u>, 117 F.3d at 490. Consequently, even if the Court were to conclude that the Complaint set forth constitutional violations against Sheriff Owens, he is nonetheless entitled to a dismissal of the Plaintiff's individual capacity claims against him as Sheriff Owens did not have the requisite fair warning to hold him liable under § 1983.

## CONCLUSION

Based upon the foregoing, Sheriff Owens requests that the Court issue an Order dismissing him from this action and awarding attorney's fees pursuant to law and 42 U.S.C § 1988.

Respectfully submitted this 16th day of March, 2006.

**s/Gary L. Willford, Jr.**
KENDRICK E. WEBB – Bar No. WEB022
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorney for Defendants
WEBB & ELEY, P.C.
7474 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard J. Stockham, III, Esquire
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL  35209

Kristi Allen Dowdy, Esquire
McDonald & Dowdy
1005 Montgomery Highway
Birmingham, AL  35216

Alex L. Holtsford, Jr., Esquire
Rick A. Howard, Esquire
Nix, Holtsford, Gilliland, Higgins & Hitson, PC
P. O. Box 4128
Montgomery, AL  36103-4128

**s/Gary L. Willford, Jr.**
OF COUNSEL