**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BRYAN KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 2:05-cv-1150-T** |
| | ) | |
| **RICKY OWENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF COOSA COUNTY**
**SHERIFF RICKY OWENS'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Coosa County Sheriff Ricky Owens, a Defendant in the above-entitled action, and submits this Memorandum Brief in support of his contemporaneously filed Motion to Dismiss the Plaintiff's Amended Complaint.

**INTRODUCTION**

Plaintiff filed this action alleging that Defendants Coosa County Commission, Sheriff Ricky Owens, former Coosa County Jail Administrator Terry Wilson, Interim Jail Administrator Wendy Roberson, Dr. Randall Weaver, and Jailer Al Bradley are liable to him for the treatment he received while "admitted" to the Coosa County Jail between November 13, 2003 and January 16, 2004. Sheriff Owens filed a Motion to Dismiss that was fully briefed and argued before the Court. The Plaintiff next filed a Motion to Amend his Complaint that was subsequently granted by the Court.

One of the technical deficiencies corrected in the Plaintiff's Amended Complaint is that he has now finally admitted that he was a prisoner. Specifically, the Plaintiff alleges that he was a pretrial detainee. Nonetheless, the Plaintiff has persisted in making Eighth Amendment claims.

1

As relates to Sheriff Owens, the Plaintiff's claims appear to be as follows: (1) deliberate indifference to a serious medical need by delaying medical treatment; (2) deliberate indifference to a serious medical need by providing inadequate medical treatment; (3) deliberate indifference in failing to train jail staff to provide adequate medical treatment to inmates; (4) deliberate indifference in failing to train jail staff to recognize conditions requiring medical or psychological treatment; (5) provision of unconstitutional conditions of confinement; (6) failure to train jail staff to not abuse inmates; and (7) deliberate indifference to a serious risk of harm to the Plaintiff in failing to stop jailers from abusing him.

None of the Plaintiff's causes of action state a claim against Sheriff Owens. Consequently, as set forth below, Sheriff Owens is entitled to a dismissal of all of the Plaintiff's claims against him.

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Plaintiff's Complaint, at least insofar as it relates to Sheriff Owens, contains little more than conclusory allegations that cannot survive a motion to dismiss. See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F. 3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule

12(b)(6).  Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

Sheriff Owens is entitled to a dismissal of all of the Plaintiff's claims against him.  First, all of the Plaintiff's official capacity claims are due to be dismissed due to a lack of subject matter jurisdiction and because Sheriff Owens, in his official capacity, is not a "person" under 42 U.S.C. § 1983.  Second, all of the Plaintiff's Eighth Amendment claims are due to be dismissed because at all times relevant to his Amended Complaint, he was a pretrial detainee.  Finally, all of the Plaintiff's individual capacity claims are due to be dismissed because Sheriff Owens is entitled to qualified immunity.

## I.    SHERIFF OWENS IS ENTITLED TO A DISMISSAL OF THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS.

In spite of being made aware of crystal clear authority to the contrary, the Plaintiff's Amended Complaint contains official capacity federal claims against Sheriff Owens.  The Plaintiff's official capacity claims are due to be dismissed.  First, Sheriff Owens is entitled to Eleventh Amendment immunity.  Second, the United States Supreme Court has made it clear that public officials are not "persons" for purposes of 42 U.S.C. § 1983 in their official capacities.  Third, the Plaintiff's unsupported claims for equitable relief cannot save his official capacity claims because they are moot, the Plaintiff lacks standing, and/or the facts cannot support an equitable remedy.

### A.    The Eleventh Amendment Bars the Plaintiff's Claims.

Plaintiff's claims against Sheriff Owens in his official capacity are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity);

Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

**B.      Sheriff Owens in His Official Capacity is Not a "Person" for Purposes of 42 U.S.C. § 1983.**

The Plaintiff's official capacities claims must fail because Sheriff Owens, in his official capacity, is not subject to 42 U.S.C. § 1983. Section 1983 prohibits a ***person***, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Sheriff Owens in his official capacity should therefore be dismissed because he is not a "person[s]" under § 1983 and therefore claims against him in his official capacity fails to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3.

**C.      The Plaintiff's Unsupported Assertion of Equitable Relief Does Not Save His Official Capacity Claims.**

Previously, the Plaintiff has argued that official capacity suits are proper where a plaintiff seeks injunctive or declaratory relief. (Doc. 26 at p. 1 citing Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989).) The problem for the Plaintiff is that the Amended Complaint, although it mentions injunctive and declaratory relief in each of its *ad damnum* clauses, does not ask for any specific relief. (Doc. 37 at pp. 16-18.) Even if the Court were to allow a second amended complaint, the Plaintiff's official capacity claims must still be dismissed because they are moot, the Plaintiff lacks standing, and/or the facts cannot support an equitable remedy.

### 1.    The Plaintiff's Equitable Claims are Moot.

The Plaintiff, according to the Amended Complaint, has been out of the Coosa County Jail for over two years.  (Doc. 37 at ¶¶ 14, 32.)  He has not averred that he is facing additional time in the Coosa County Jail or that he currently is a prisoner.  (See generally Doc. 37.)  Consequently, any such claim is moot.  See, e.g., Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)).  Furthermore, even if the Court were to interpret the Plaintiff's Amended Complaint as attempting to assert a class, his claims must be dismissed because the class was not certified before his transfer.  See McKinnon, 745 F.2d at 1363 (citing Board of School Commissioners v. Jacobs, 420 U.S. 128, 130 (1975); Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984)).

### 2.    The Plaintiff Lacks Standing to Obtain an Equitable Remedy.

The Plaintiff also lacks standing to pursue his equitable claims.  A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. 461

U.S. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id., 461 U.S. at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* be subjected to another chokehold. Id., 461 U.S. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

In addition to having more than five times as much time pass without further violations (five months versus twenty-six months), the instant Plaintiff's claims are even more speculative than those in Lyons. Because the Plaintiff is no longer an inmate in the Coosa County Jail, his claim is, in essence, that he *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Coosa County Jail, that he *might* be "admitted" to the Coosa County Jail, *might* again start tripping over things in the general population cells, *might* again be transferred to "the hole" for his own protection, *might* again be abused by jailers while in "the hole", and *might* again be subjected to the "unconstitutional" condition of receiving "only" one visit to a health care provider a week. Such speculation into future conduct – even if it did violate the Plaintiff's rights – does not grant the Plaintiff standing. Lyons, 461 U.S. at 108.

### 3.     No Set of Facts as Pled By the Plaintiff Would Support Granting Equitable Relief.

The Plaintiff must satisfy three elements to justify an injunction against Sheriff Owens. First, he must succeed on the merits (in this context, he must show an actionable wrong). Second, he must show the existence of a continuing irreparable injury. Finally, he must prove that he has no other adequate relief at law. Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982). The Plaintiff cannot establish any of these elements.

First, the Plaintiff cannot show an actionable injury. As set forth below, Sheriff Owens is entitled to qualified immunity. In particular, the non-conclusory allegations of the Amended Complaint do not allege that Sheriff Owens violated any of the Plaintiff's federally protected rights.

However, even if the Amended Complaint could be construed as making out an actionable wrong, the Amended Complaint does not contain allegations establishing the second element. In particular, there is no ***continuing*** irreparable injury. Put simply, the Plaintiff is no longer "admitted" to the Coosa County Jail. The actionable injury, if any, ceased on January 16, 2004. (Doc. 37 at ¶¶ 14, 32.) There has been no further injury in over two years.

Finally, the Plaintiff cannot argue with a straight face that he has no adequate remedy at law. The Plaintiff has brought individual capacity claims for money damages against all of the individual Defendants and state and federal money damages claims against Coosa County (See generally Doc. 37.) Moreover, Sheriff Owens's immunity to the Plaintiff's claims does not deprive him of an adequate remedy. See Rittenhouse v. DeKalb County, 764 F.2d 1451, 1459 (11th Cir. 1985). It is sufficient that the Plaintiff has the opportunity to adjudicate the question. Id. Accordingly, because the evidence fails to establish the elements necessary to obtain an injunction, Sheriff Owens, in his official capacity, is entitled to a dismissal of the Plaintiff's official capacity § 1983 claims as a matter of law.

## II.    THE PLAINTIFF'S EIGHTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED.

Whether the Plaintiff was a pretrial detainee or convicted prisoner determines which constitutional amendment is applicable. The Eighth Amendment contains the rights of convicted prisoners while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). The analysis under either amendment is the same. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).

However, the Plaintiff cannot maintain claims under both amendments.  Cottrell, 85 F.3d at 1490.

The Plaintiff has not amended his Complaint to allege that he was a pretrial detainee. (Doc. 37 at ¶ 4.)  Accordingly, he cannot maintain Eighth Amendment claims.  Cottrell, 85 F.3d at 1490.  Therefore, the Plaintiff's Eighth Amendment claims are due to be dismissed.  Id.

## III.    SHERIFF OWENS IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW.

Once a defendant official in a § 1983 action has demonstrated he was acting within his discretionary authority, the burden shifts to the plaintiff to show a violation of a clearly established federally protected right.  The threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that Sheriff Owens had "fair warning" that his conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Sheriff Owens was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of the law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1998).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of

Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Furthermore, a plaintiff cannot merely rely on notice pleading in a § 1983 case involving qualified immunity. A plaintiff's pleading standard is "heightened" when § 1983 claims are made against government officials in their individual capacities. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement"). It is the Plaintiff's burden to allege sufficient specific supporting facts or face dismissal of his claims. Marsh, 268 F.3d at 1036 n.16; Montalvo, 84 F.3d at 408 n.10.

Sheriff Owens is entitled to qualified immunity and a dismissal of the Plaintiff's claims against him. First, Sheriff Owens was clearly acting within his discretionary authority. Second, the Plaintiff has failed to allege sufficient non-conclusory facts demonstrating that Sheriff Owens violated his federally protected rights. Finally, no clearly established law provided Sheriff Owens with the requisite "fair warning" that his conduct was illegal.

## A.     Sheriff Owens Acted within his Discretionary Authority.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). To determine this question "a court must

9

ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted). As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Under the facts as alleged in the Complaint, Sheriff Owens easily clears this low hurdle. All of the Plaintiff's allegations with respect to Sheriff Owens are based upon his role as the Sheriff of Coosa County. It is in this capacity only that he has the ability to train and supervise jail personnel, provide for the medical care of inmates, and otherwise operate a jail. As all of the alleged actions were taken under the auspices of these roles, Sheriff Owens was acting within his discretionary authority.

The Plaintiff has previously argued that under the test set forth in Harbert, a defendant seeking qualified immunity must first show that his actions were in the performance of his duties and within the scope of his authority. (Doc. 26 at p. 3 citing Harbert, 157 F.3d at 1282.) However, in Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004), the Eleventh Circuit explained the Harbert analysis and cautioned the district courts to not be overly narrow in making the discretionary authority analysis:

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted), however, "*the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology.*" *In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances*.

370 F.3d at 1266 (emphasis added).

This Court should not get lost in tautology in determining whether Sheriff Owens was acting within his discretionary authority. As explained by the Eleventh Circuit, the relevant questions here are not, for example, whether it is within Sheriff Owens's authority to subject the Plaintiff to unconstitutional jail conditions. The Court should not ask whether it is within the scope of a sheriff's authority to place a piece of paper of a window because the Plaintiff was seeking more medical attention than the trip per week that he was already getting. (Doc. 1 at ¶ 16.)

Instead, the relevant questions are more generalized. Are running a jail, managing inmates, and managing jail staff with Sheriff Owens's duties? Such responsibilities are indisputably within an Alabama sheriff's duties. See, e.g., ALA. CODE § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto.") Are moving prisoners to different cells, protecting prisoners from themselves, getting prisoners medical care an average of once a week, and training jail staff within the scope of an Alabama sheriff's authority? Clearly such activities are within Sheriff Owens's authority. Id.; see also ALA. CODE § 14-6-19 (requiring the sheriff to provide prisoners with necessary clothing, bedding, medicines, and medical care). Consequently, Sheriff Owens easily clears the low hurdle that is the discretionary authority analysis.

**B.    Sheriff Owens Did Not Violate the Plaintiff's Federally Protected Rights.**

Supervisory officials like Sheriff Owens are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in
> the alleged constitutional violation or when there is a causal connection between

11

> actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  The causal connection may be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."  Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).

Here, the Plaintiff's claims appear to be based upon Sheriff Owens's alleged direct involvement and apparent policy of not taking action against the jailers who abused him.  In essence, the Plaintiff has alleged three groups of federal claims against Sheriff Owens:  medical, jail conditions, and training.  All of these claims lack merit.  First, as a matter of law, Sheriff Owens was not deliberately indifferent to the Plaintiff's serious medical needs.  Second, the Complaint fails to allege facts demonstrating the requisite strong causal connection necessary to hold Sheriff Owens liable on the Plaintiff's conditions claim.  Finally, the Complaint fails to make out a cognizable failure to train claim against Sheriff Owens.

### 1.    Sheriff Owens was not deliberately indifferent to the Plaintiff's medical needs.

As stated by the United States Supreme Court, in order to be deliberately indifferent, an official must both know of and disregard a serious risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The Farmer deliberate indifference standard contains both a subjective component (knowledge of the risk or willful blindness on the part of the supervisory official) and an objective component (whether there was a serious risk of harm).  Id. at 838-39.  The Amended Complaint fails to allege that Sheriff Owens was deliberately indifferent.

While the Amended Complaint does allege in conclusory fashion that the Plaintiff had a serious medical condition of which Sheriff Owens was aware, the facts alleged also demonstrate that Sheriff Owens did not disregard the Plaintiff's condition. Immediately after asserting that he did not receive medical care at all (paragraph five) the Plaintiff begins alleging medical care that he **did** receive. (Doc. 37 at ¶ 6, alleging a visit with a mental health professional and a trip to Dr. Weaver after a fall.) During the course of the Plaintiff's two-month confinement he received medications. Id. at ¶¶ 15, 19, 30. Said medications cost $900.00 per month. Id. at 19. According to the Amended Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than **six** occasions – an average of almost once a week. Id. at ¶¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash). At least five of these treatments were provided by either hospital personnel or outside providers. Id.

The Plaintiff's claims regarding the type of treatment he received also fails to state a claim. An inmate does not have a right to a **specific** kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; **how [a municipality] obtains such treatment is not a federal constitutional question**") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096

13

(1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Amended Complaint does not allege that Sheriff Owens has any kind of medical education, training or experience.  By necessity, therefore, he is forced to rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  The Amended Complaint specifically alleges that Sheriff Owens and his subordinates made health care providers aware of the Plaintiff's condition.  (Doc. 37 at ¶ 6 (mental health officials notified after seizures were observed, and Dr. Weaver informed of seizures).) Consequently, Sheriff Owens did all he could do.  It defies common sense, and places jail officials in an untenable situation, to require them to second-guess the treatment plans devised by medical care professionals.

While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[1] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

---

[1] The medical director was a trained and licensed nurse.  Meloy, 302 F.3d at 846.

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, Sheriff Owens is not a doctor. The Plaintiff was evaluated and treated by medical professionals at the local hospital, a mental health professional, and a dentist, as well as Dr. Weaver. Sheriff Owens was entitled to rely on these professionals. Consequently, the Plaintiff's individual capacity medical claims against Sheriff Owens are due to be dismissed, because the Plaintiff has failed to allege facts showing that Sheriff Owens violated his federally protected rights.

### 2.    Sheriff Owens did not subject the Plaintiff to unlawful jail conditions.

There is no constitutional mandate that prisons or jails be made comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

A claim by a pretrial detainee regarding conditions of confinement is reviewed under the Fourteenth Amendment's due process standard. Bell v. Wolfish, 441 U.S. at 575 n.16. The standard for evaluating the constitutionality of a particular restriction for purposes of affording due process, therefore, is whether the restriction amounts to punishment of the detainee. Id. at 535. The Eleventh Circuit has held that the analysis of a pretrial detainee's conditions of confinement claim is not appreciably different from the Eighth Amendment's cruel and unusual standard for convicted

inmates.  Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985) (noting that under the Eighth Amendment, "states may not impose punishments that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed.").

As with the Plaintiff's medical claims, in order to overcome Sheriff Owens's entitlement to qualified immunity, the Plaintiff must allege and prove that Sheriff Owens was deliberately indifferent.  Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Specifically, in this context, Sheriff Owens must have been aware of a serious risk to the Plaintiff's safety and disregarded it.  Id.  With respect to the jail conditions, the Plaintiff's Amended Complaint falls short on both elements.

The Plaintiff's conditions claims center around the conditions in "the hole" and the alleged lack of exercise, water, and hygiene.[2]  (Doc. 37 at ¶¶ 9-14.)  According to the Amended Complaint, the Plaintiff was placed in "the hole" for his own protection after having two falling incidents.  Id. at ¶¶ 6, 7, 9.  These allegations alone demonstrate that there was a conscious regard for the Plaintiff's safety while he was in the jail.

As described in the Amended Complaint, "the hole" contained nothing.  There was nothing for the Plaintiff to fall over or fall on to hurt himself after having one of his alleged seizures.  (Doc. 37 at ¶¶ 9-10.)  Obviously, if the Plaintiff were left in a cell with a toilet and sink, he could have injured himself by striking their metal surfaces during a seizure.  Consequently, the layout of "the hole" demonstrates both a lack of serious risk to the Plaintiff (or, at the very least, a significant reduction of the risk found in a general population cell), and a conscious effort on the part of Sheriff Owens and his staff to reduce the risk of harm to the Plaintiff.

---

[2] The Amended Complaint also contains allegations regarding "bugs" in the Plaintiff's cell and in his food.  (Doc. 37 at ¶ 20.)  However, the Amended Complaint does not actually allege that the bugs were present, only that the Plaintiff – a person with a diagnosed history of mental illness and currently taking medication for same – complained about bugs.  Id.  Put in the context of the Plaintiff's other allegations (e.g., that he reported seeing "dead people"), it is not a reasonable inference that bugs – or dead people – were in the Plaintiff's cell and/or food.

The Plaintiff's hygiene, exercise, and water claims fail because they do not allege a serious risk of harm. In fact, the Amended Complaint does not allege, even in conclusory language, that the Plaintiff suffered any injury or deterioration in health due to a lack of hygiene, exercise or water. With respect to water, the Plaintiff alleges that he went without water for, at most, a few hours. (Doc. 37 at ¶ 12.) He vaguely alleges he went without a shower for "days at a time." Id. at ¶ 13. Almost as an afterthought, the Plaintiff throws in that he only "rarely" was let out to exercise between December 6, 2003 and January 16, 2004. Id. at ¶ 14. Nowhere in the Amended Complaint does the Plaintiff allege that these conditions during the relevant five-week period caused him harm.

Other federal courts have upheld the constitutionality of conditions similar to those alleged here. See, e.g., Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding one shower per week sufficient); Briggs v. Heidlebaugh, 1997 WL 318081, *3 (E.D. Pa. 1997) (holding *denial of shower for two weeks not constitutional violation*); DiFilippo v. Vaughn, 1996 WL 355336, *5 (E.D. Pa. 1996) (holding Eighth Amendment does not require inmates be given frequent showers); Tinsley v. Vaughn, 1991 WL 95323 at *4 (E.D. Pa. 1991) (holding no violation when shower privileges suspended for twelve days); Bensinger v. Nichols, 1994 WL 561924, *1 (E.D. Pa. 1994) (granting motion to dismiss where plaintiff alleged, *inter alia*, that he received showers only once every three days); Mugmuk v. Beyer, 1988 WL 80875, *2 (D.N.J. 1988) (holding no constitutional violation where plaintiff was permitted to shower only once every three days); Pendleton v. Housewright, 651 F. Supp. 631, 634 (D. Nev. 1986) (approving three-day shower rule imposed by prison official). Similarly, federal courts have held that infrequent access to exercise outside of an inmate's cell does not violate the Constitution. See, e.g., French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (holding lack of exercise states a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"); Bensinger v.

Boyle, 1995 WL 422795, *2 (E.D. Pa. 1995) (holding deprivation of exercise for five straight days not constitutional violation).  Of course, the Plaintiff was always free to exercise inside his cell and has not alleged that a lack of exercise caused his muscles to atrophy.

The Plaintiff also alleges that the drain hole he used to relieve himself was not flushed regularly.  The Plaintiff specifically alleges that Sheriff Owens did not flush the drain hole or cause it to be flushed.  However, there is no factual allegation that Sheriff Owens knew the drain hole was not being flushed.  No law suggests, and common sense contradicts, any argument that Sheriff Owens *personally* had a duty to flush the Plaintiff's toilet.

### 3. The Complaint fails to allege a cognizable failure to train claim as a matter of law.

A supervisory official faces § 1983 liability only where the "'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains."  Belcher, 30 F.3d at 1397 (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)).  Put into the context of Plaintiff's training claim, in order to be deliberately indifferent, Sheriff Owens must have been aware of a serious risk posed by his jailers that would result in their violation of the Plaintiff's federally protected rights.  Farmer, 511 U.S. at 837.

The Plaintiff's training claims can be grouped into two categories.  Claims in the first category involve failure to provide medical training to jail staff.  For the reasons stated previously (e.g., allegations in the Amended Complaint regarding Plaintiff's frequent access to medical care and the reasonableness of relying upon the jail doctor and other medical personnel), the Plaintiff's medical training claims fail as a matter of law.

The second category involve claims related to the alleged abuse the Plaintiff received at the hands of Officer Bradley and others.  The Plaintiff's claims here involve failing to train officers not to abuse prisoners.  However, under Eleventh Circuit precedent, a policy-making

official is not required to promulgate policy or train subordinates to refrain from doing that which is clearly illegal. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (holding that there is no supervisory liability where the conduct engaged in by a subordinate is obviously illegal). If the Plaintiff's conclusory allegations are correct, kicking prisoners, punching them, and attempting to sodomize them with a broomstick are clearly illegal. Assuming, *arguendo*, the truth of the Plaintiff's allegations, Sheriff Owens was under no constitutional obligation to implement a policy against or provide training regarding that which is clearly already illegal.

### C.  No Clearly Established Law Provided Sheriff Owens With "Fair Warning" That His Conduct Violated the Plaintiff's Federally Protected Rights.

The Plaintiff's final burden under the qualified immunity analysis is to show that clearly established law provided Sheriff Owens with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

After a diligent search of the relevant case law, including the law cited by the Plaintiff in his Opposition to Sheriff Owens's original Motion to Dismiss, counsel for the Defendants has been unable to find a case involving materially similar facts that held conduct similar to that engaged in

19

by the Defendants to be unlawful. Consequently, the Plaintiff has the burden of either identifying such a case or proving that the conduct of Sheriff Owens was obviously illegal. In light of the law cited above finding similar conduct constitutional, the Plaintiff simply cannot meet his burden. <u>See, e.g.</u>, <u>City of Revere</u>, 463 U.S. at 246; <u>Hamm</u>, 774 F.2d at 1575; <u>Camberos</u>, 73 F.3d at 176; <u>Davenport</u>, 844 F.2d at 1316-17; <u>French</u>, 777 F.2d at 1255; <u>Sewell</u>, 117 F.3d at 490. Consequently, even if the Court were to conclude that the Amended Complaint set forth constitutional violations against Sheriff Owens, he is nonetheless entitled to a dismissal of the Plaintiff's individual capacity claims against him as Sheriff Owens did not have the requisite fair warning to hold him liable under § 1983.

## CONCLUSION

Based upon the foregoing, Sheriff Owens requests that the Court issue an Order dismissing him from this action and awarding attorney's fees pursuant to law and 42 U.S.C § 1988.

Respectfully submitted this 2nd day of June, 2006.

**s/Gary L. Willford, Jr.**
KENDRICK E. WEBB – Bar No. WEB022
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorney for Defendants
WEBB & ELEY, P.C.
7474 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Richard J. Stockham, III**, **Kristi Allen Dowdy**, and **Stephen Michael Doyle**.

**s/Gary L. Willford, Jr.**
OF COUNSEL