IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL BRYAN KELLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:05-cv-1150-T ) |
| RICKY OWENS, et. al., | ) ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF DEFENDANT COOSA COUNTY COMMISSION'S
MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW Defendant Coosa County Commission to submit this brief in support of its contemporaneously filed motion to dismiss. Plaintiff's Amended Complaint is due to be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

**INTRODUCTION**

Plaintiff filed this action alleging that Defendants Coosa County Commission (hereinafter "Coosa County"), Sheriff Ricky Owens, former Coosa County Jail Administrator Terry Wilson, Interim Jail Administrator Wendy Roberson, Dr. Randall Weaver, and Jailer Al Bradley are liable to him for the treatment he received while "admitted" to the Coosa County Jail between November 13, 2003 and January 16, 2004. Following Coosa County's Motion to Dismiss and full briefings on same by the parties, the Plaintiff filed a Motion to Amend his Complaint. The Court granted the Plaintiff's motion.

As interpreted by Coosa County, the Plaintiff's Amended Complaint contains five federal claims and six state law claims against Coosa County.[1] The Plaintiff's five federal claims are brought pursuant to 42 U.S.C. § 1983 and allege the following violations of the Plaintiff's Eighth and Fourteenth Amendment rights: (1) deliberate indifference to a serious medical need by failing to provide medical care; (2) deliberate indifference to a serious medical need by delaying medical treatment; (3) failure to train jail staff to provide medication; (4) failure to train jail staff to recognize serious medical conditions; and (5) provision of inadequate jail conditions. The Plaintiff's state law claims against Coosa County are (1) failure to fund inmate medical care as purportedly required by Alabama Code § 14-6-19; (2) failure to adequately fund medical staff at the jail; (3) negligent hiring of Dr. Weaver; (4) negligent retention of Dr. Weaver; (5) failure to maintain the facility of the Coosa County Jail; and (6) an apparent medical malpractice claim based upon *respondeat superior*.

None of the Plaintiff's causes of action state a claim against Coosa County. Consequently, as set forth below, Coosa County is entitled to a dismissal of all of the Plaintiff's claims against it.

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted

---

[1] The five federal claims against Coosa County are contained in the first three counts of the Amended Complaint. The six state law claims are contained in the last four counts.

deductions of fact are not admitted as true in a motion to dismiss"). Even taking all of the Plaintiff's allegations as true, his claims against the Coosa County Commission are due to be dismissed based on the legal grounds set out below.

**I.  ANY CLAIMS MADE BY THE PLAINTIFF, STATE OR FEDERAL, BASED UPON ANYTHING OCCURRING PRIOR TO DECEMBER 6, 2003, ARE TIME BARRED.**

All of the Plaintiff's claims against the Coosa County Commission are subject to a two-year statute of limitations. Specifically, the state law claims are governed by Alabama Code § 6-2-38(l). As a matter of federal law, the statute of limitations for a § 1983 claim is governed by the state law for personal injury torts. Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). Consequently, the applicable statute of limitations for all of the Plaintiff's claims is governed by the two-year period contained in Alabama Code § 6-2-38(l). The Plaintiff filed suit on December 6, 2005. Consequently, any claims he makes for incidents occurring prior to December 6, 2005, are time barred.

**II.  THE PLAINTIFF'S EIGHTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED.**

Whether the Plaintiff was a pretrial detainee or convicted prisoner determines which constitutional amendment is applicable. The Eighth Amendment contains the rights of convicted prisoners while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). The analysis under either amendment is the same. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). However, the Plaintiff cannot maintain claims under both amendments. Cottrell, 85 F.3d at 1490.

The Plaintiff has not amended his Complaint to allege that he was a pretrial detainee. (Doc. 37 at ¶ 4.) Accordingly, he cannot maintain Eighth Amendment claims. Cottrell, 85 F.3d at 1490. Therefore, the Plaintiff's Eighth Amendment claims are due to be dismissed. Id.

3

**III.   COOSA COUNTY IS ENTITLED TO A DISMISSAL OF THE PLAINTIFF'S FEDERAL CLAIMS.**

The Plaintiff improperly attempts to hold Coosa County vicariously liable under § 1983 for the acts of Sheriff Owens and his staff. The Plaintiff's § 1983 claims against Coosa County can be broken down into two general categories: (1) conditions at the jail (e.g., water and toilet facilities); and (2) provision of medical care (e.g., providing medical care, funding medical care, medically training staff, and funding the medical training of staff). Because Coosa County has no responsibility for, or authority over, any of the areas complained of as a matter of law, Coosa County is entitled to be dismissed.

**A.   The Plaintiff's Jail Conditions Claims are Due to be Dismissed.**

The Eleventh Circuit in <u>Turquitt v. Jefferson County</u>, sitting <u>en banc</u>, analyzed Alabama law with respect to whether Alabama counties possessed any authority over the operation of county jails or the supervision of jail employees and its inmates. 137 F.3d 1285, 1288-1291 (11th Cir. 1998). In <u>Turquitt</u> the Eleventh Circuit found as follows:

> A thorough analysis of the [Alabama] Code reveals that ***no statute authorizes counties to supervise inmates in the county jails***; instead, ***authority over inmates is expressly delegated to Alabama sheriffs. Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties***.
>
> ***Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself***. The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto." Ala. Code § 14-6-1 (1995). ***The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]."*** <u>King v. Colbert County</u>, 620 So. 2d 623, 625 (Ala. 1993). The sheriff appoints, directs, and controls the deputies and jailers who work at the jail. Ala. Code § 14-6-105. ***The County has no authority to manage the sheriff's employees***. See <u>Lockridge v. Etowah County Comm'n</u>, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); <u>see also</u> <u>Terry v. Cook</u>, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers).

<u>Id.</u> at 1289 (emphasis added).

As a result, an Alabama county cannot be held vicariously liable under § 1983 for injuries to a county jail inmate arising from the sheriff's management of the jail. Id. at 1286; see also McMillian v. Monroe County, 520 U.S. 781, 788 (1997) (holding Alabama sheriff policymaker of state and not county). Further, Coosa County cannot be held liable under § 1983 on a *respondeat superior* theory. See Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978).

The Plaintiff's claims regarding the conditions of his incarceration, although couched in terms of conditions, are actually operational in nature. The Plaintiff asserts various "conditions" claims (e.g., hygiene, exercise, water, and toilet facilities in "the hole"). Each of his claims, however, all arise after his assignment to "the hole". There are no allegations in the Amended Complaint that the Coosa County Jail, as a whole, did not have water or showers. There are no allegations in the Amended Complaint that the jail did not have adequate exercise or toilet facilities. Consequently, the Plaintiff's claims can only be construed as involving the staff's use of one room in the jail.

Taking, as an example, the Plaintiff's toilet claim, leads to the inevitable conclusion that the Plaintiff's claims are based on operations and not the facilities. The Plaintiff alleges that "the hole" had a drain that was apparently flushable from outside of the cell. (Doc. 37 at ¶ 10.) The Plaintiff's complaint is not that the drain was inadequate or unsanitary, as installed, but that the jail staff did not flush it. Id. His claim, therefore, is clearly directed at the alleged malfeasance of the *staff* and not the facility itself.

The Plaintiff's other "conditions" claims suffer from similar factual infirmities. He admits implicitly that water was available in the jail by his averments that he only went without for "hours at a time" and that he was allowed to use the showers. (Doc. 37 at ¶¶ 12, 14.) Consequently, because the Plaintiff's conditions claims are operational in nature, Coosa County is entitled to a dismissal of Count III.

### B. Coosa County, As a Matter of Law, is Entitled to Dismissal of the Plaintiff's Medical Claims.

The federal medical claims against Coosa County lack merit. The Plaintiff appears to assert four health care-related deliberate indifference claims against Coosa County: (1) the Commission failed to provide medical care; (2) the Commission delayed providing medical care; (3) the Commission failed to train the jail staff to dispense medications to inmates; and (4) the Commission failed to train the jail staff in recognizing when medical care was necessary. Each of these claims fail as a matter of law.

As noted above, an Alabama county commission has no responsibility whatsoever for the operation of the county jail. A commission's only duties lie in funding the jail's operations and maintaining the physical plant of the jail. <u>Turquitt</u>, 137 F.3d at 1290. The Eleventh Circuit, sitting en banc, last addressed the liability of Alabama counties for jail conditions generally, and medical care specifically, in <u>Marsh v. Butler County</u>, 268, F.3d 1014 (11th Cir. 2001). In <u>Marsh</u>, the Eleventh Circuit, while addressing a plaintiff's claim for deliberate indifference against both the county and the sheriff, affirmed dismissal of Butler County:

> We address the claims against the County in detail only for the conditions of confinement. Plaintiffs also alleged deliberate indifference to Owens's serious medical needs based on his release. They make this claim against Defendants in general, which would seem to include the County. Nothing indicates, however, that the County was involved in the alleged deprivation of medical care to Owens. ***Moreover, under Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a "limited role in building and funding the jails".*** <u>See</u> <u>Turquitt v. Jefferson Cty., Ala.</u>, 137 F.3d 1285, 1290 (11th Cir. 1998) (*en banc*). ***Therefore, the County is not a responsible party for the alleged tort of deliberate indifference to Owens's medical needs. This claim was properly dismissed against the County***.

268 F.3d at 1026 n.6 (emphasis added). Each of the Plaintiff's claims are related to the provision of medical care in the jail. Consequently, they are due to be dismissed against Coosa County.

6

Factually, the Amended Complaint's allegations eviscerate the denial and delay of medical care claims. Immediately after asserting that he did not receive medical care at all (paragraph five) the Plaintiff begins alleging medical care that he *did* receive. (Doc. 37 at ¶ 6, alleging a visit with a mental health professional and a trip to Dr. Weaver after a fall.) During the course of the Plaintiff's two-month incarceration at the Coosa County Jail, he received medications. Id. at ¶ 19, 30. According to the Amended Complaint, he was evaluated and/or received treatment by medical/mental health professionals on no less than *six* occasions – an average of almost once a week. Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (trip to hospital on 1/16/04 and treatment on an unspecified date for a rash). At least five of these treatments were provided by either hospital personnel or outside providers not associated with Coosa County. Id.

The Plaintiff's claims regarding the type of treatment he received also fails to state a claim. An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

The Plaintiff proffers two novel theories of liability that have not been accepted by any appellate court. First, he asserts that the Commission had a duty to adequately fund medical care for prisoners and the staffing to provide the care. (Doc. 37 at ¶ 33 citing ALA. CODE § 14-6-19.) Second, he erroneously claims that Dr. Weaver was the "final policy maker" for Coosa County. Neither of these theories find any support in the relevant law.

> 1. **Coosa County has no authority over the provision of health care to inmates at the jail.**

The Plaintiff's funding claims against Coosa County lacks merit. Plaintiff relies on Alabama Code § 14-6-19 as imposing a duty to prospectively fund inmate medical care and staff training on Coosa County. His reliance upon the statute utterly ignores the text of the statute and the century-old case law interpreting it.

The statutory framework defining the duties of Alabama sheriffs and counties has been thoroughly examined by the Eleventh Circuit and the conclusions are described above.[2] Nothing in Alabama Code § 14-6-19 requires that Alabama counties affirmatively, proactively and extraordinarily fund the medical care of inmates before the sheriff *first* presents the funding requests and indicates that the inmate is unable to pay the expenses himself. Both of these preconditions appear on the face of § 14-6-19:

> Necessary clothing and bedding ***must be furnished by the sheriff*** or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, ***when they are unable to provide them for themselves***. (emphasis added)

The Alabama Supreme Court, interpreting the predecessor to § 14-6-20 explained that,

> When suit is brought . . . the complaint should show that the services were rendered or medicines furnished to a prisoner in jail, and that he was unable to

---

[2] The Eleventh Circuit has stressed county liability for inmate injuries "depends on an analysis of Alabama law[:] . . . We must determine the 'actual function' of an official in a particular area by reference to 'the definition of the official's functions under relevant state law.'" Turquitt v. Jefferson County, 137 F.3d 1285, 1288 (11th Cir. 1998) (en banc) (quoting McMillian v. Monroe County, 520 U.S. 781, 786 (1997)).

> provide such services and medicines for himself, or was in a destitute condition. Without such averment, it would not appear that it contained any cause of action against the county.

Malone v. Escambia County, 22 So. 503, 505 (Ala. 1897).[3] Malone has been cited as good law as recently as 2001. See, e.g., Baptist Health Systems, Inc. v. City of Midfield, 792 So. 2d 1095, 1096 (Ala. 2001) (citing Malone and holding that § 14-6-19 did not provide a cause of action against an Alabama City); Limestone County v. City of Huntsville Hospital Bd., 412 So. 2d 792, 793 (Ala. Civ. App. 1982) (citing Malone and holding that § 14-6-19 did not apply where an arrestee given medical treatment was never incarcerated in the county jail). Alabama law is clear: *if* a sheriff furnishes medical attention and *if* the inmate cannot pay for it, *then* the county must pay for the inmate's care. Without any allegation that the County refused to pay for medical care the sheriff "furnished" and that the inmate was "unable to provide" or pay for his own medical care, the Complaint fails to state a claim and is due to be dismissed.

### 2. Dr. Weaver is not a final policymaker for Coosa County.

While a county may be held liable for a constitutional violation caused by a policy or custom created by an official "whose edicts or acts may fairly be said to represent official policy," Id. at 694, whether a given official is properly viewed as a policymaker for a particular governmental entity must be resolved on the basis of state law. See Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737 (1989). Alabama law makes it clear that sheriffs are not county policymakers. See King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993) (holding county commission has no control over jail operations); see also Crocker v. Shelby County, 604 So. 2d 350 (Ala. 1992) (holding county commission has no authority over, and takes no part in, training or

---

[3] The statute construed by the Malone Court, § 4542 of the Alabama Code of 1886, is identical to Alabama Code § 14-6-19 (1975):

> Necessary Clothing, Medicines, etc., to Insolvent Prisoners. Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves; and also necessary medicines and medical attention to those who are sick, when they are unable to provide them for themselves.

9

supervising deputy sheriffs); Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) (holding county commission does not have authority to promulgate work rules for employees of sheriff). As a result, a sheriff is not treated as an "employee of the county for purposes of imposing liability on the county under a theory of *respondeat superior*." Parker v. Amerson, 519 So. 2d 442 (Ala. 1987); see also King, 620 So. 2d at 625 ("The sheriff's authority over the jail is totally independent of the Colbert County Commission. . . . Therefore, . . . Colbert County itself cannot be held vicariously liable for his actions or inaction").

In an effort to get around the devastating impact of the clearly established law in this area, the Plaintiff asserts as a fact an incorrect legal conclusion that Dr. Weaver was the final policymaker for medical treatment at the jail. (Doc. 37 at ¶ 36.) However, as the above recitation of law makes abundantly clear, sheriffs are the final policymakers for ***all*** operational functions in the jail – including the procedures for the provision of inmate medical care. See Turquitt, 137 F.3d at 1290; Marsh, 268 F.3d at 1026 n.6; ALA. CODE § 14-6-19 (requiring the sheriff or jailer to furnish necessary medicines and medical attention to inmates who cannot afford it). Even if this were not the state of the law, the Plaintiff's averments demonstrate that Dr. Weaver did not have final authority as Sheriff Owens and the other defendants are alleged to have prevented the Plaintiff from receiving medical care. (See, e.g., Doc. 37 at ¶¶ 5, 15, 17, 27, 29.)

Furthermore, Coosa County is a governmental body – it is not a hospital's board of directors. The Plaintiff has not alleged, and cannot allege, that the Commission has any degree of medical experience, knowledge, or training. While the Plaintiff has alleged in conclusory fashion that Dr. Weaver was incompetent, it does allege any facts from which the Court could infer that the Commission knew he was incompetent (e.g., from other instances of problems with inmate medical care) or had the ability, knowledge, and training to second guess his treatment plans.

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[4] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, in the instant case, with the exception of Dr. Weaver, none of the Defendants are medical professionals, nor are they mental health providers. Plaintiff was evaluated and treated by medical professionals at the local hospital, a mental health professional, and a dentist, as well as Dr. Weaver. They were entitled to rely on those professionals to not only adequately treat the Plaintiff, but to inform them in the event that Dr. Weaver was doing something wrong. There is no allegation in the Amended Complaint that any of these professionals ever indicated to the Commission – prior to January 16, 2004, when the Plaintiff was released – that there was anything amiss with the Plaintiff's course of treatment. (See generally Doc. 37.)

---

[4] The medical director was a trained and licensed nurse. 302 F.3d at 846.

**IV.   THE PLAINTIFF'S STATE LAW CLAIMS AGAINST COOSA COUNTY ARE DUE TO BE DISMISSED.**

As noted previously, the Amended Complaint contains six state law claims against Coosa County.[5] All of the Plaintiff's state law claims are due to be dismissed. First, each of the Plaintiff's state law claims is due to be dismissed because the Plaintiff failed to serve a proper and timely notice of claim on Coosa County. Second, in addition to the law cited previously, the Plaintiff's claims based upon Alabama Code § 14-6-19 are due to be dismissed because the statute does not provide the Plaintiff with a private cause of action. Third, the Plaintiff's conditions claims are due to be dismissed because the relevant jail employees are not employees of Coosa County. Fourth, the Amended Complaint does not properly allege either a negligent hiring or a negligent retention claim. Fifth, Coosa County cannot be held liable for medical malpractice. Finally, the Plaintiff's state law damages are capped under Alabama law.

**A.   All of the Plaintiff's State Law Claims are Due to be Dismissed Because the Plaintiff Failed to Comply With the Relevant Statutes of Non-Claim.**

A plaintiff must submit a notice of any claim against a county to its commission within twelve months of the alleged injury. ALA. CODE § 11-12-8. This notice is required for all claims against counties, including tort, contract and equitable claims. Williams v. McMillan, 352 So. 2d 1347, 1349 (Ala. 1977); see also Hyche Landfill, Inc. v. Winston County, 878 So. 2d 258, 262 (Ala. 2003) (Houston, J. concurring). Filing a proper notice is a prerequisite to maintaining a lawsuit against a county. ALA. CODE § 6-5-20(a); Williams, 352 So. 2d at 1349; Groeschner v. Mobile County, 512 So. 2d 70, 72 (Ala. 1987); Chumney v. Houston County, 632 So. 2d 1328, 1329 (Ala. 1994).

---

[5] Three of the Plaintiff's claims, funding medical care, funding medical staff training, and liability for the conditions of confinement, have been addressed above. The law mandating the dismissal of the Plaintiff's federal version of these claims also mandates dismissal of their state law counterparts. In the interests of brevity, the arguments contained in the federal portion of this brief are incorporated herein in support of dismissing the state law claims.

Section 11-12-8 is not just a limitations period, but a statute of non-claim. Groeschner, 512 So. 2d at 72. As a statute of non-claim, § 11-12-8 is "an absolute bar to claims against a County." Alabama Disposal Solutions-Landfill, L.L.C. v. Town of Lowndesboro, 837 So. 2d 292, 300 (Ala.Civ.App. 2003) (citing City of Birmingham v. Davis, 613 So. 2d 1222 (Ala. 1992)). The purpose of statutes of non-claim is to provide a much broader defense than a statute of limitations. Ivory v. Fitzpatrick, 445 So. 2d 262, 264 (Ala. 1984). Such statutes extinguish not only tort remedies but debts and other liabilities. Id. In the case of counties, § 11-12-8 serves "to prevent and guard against excessive and embarrassing demands on the revenue of a particular year, growing out of occurrences in the too distant past." Groeschner, 512 So. 2d at 72.

While the Plaintiff avers that he filed a notice of claim, said notice, attached hereto as Exhibit A, is deficient in two important respects.[6] First, for at least a portion of the Plaintiff's incarceration, the notice is untimely. Second, it fails to meet the requirements of a proper notice under Alabama law.

First, the Plaintiff avers that he was admitted to the jail on November 13, 2003. Nonetheless, he did not sign his Notice of Claim until December 1, 2004, and it was not received by Coosa County until December 2, 2004. Accordingly, the Plaintiff may not recover for anything that he alleges occurred between November 13, 2003 and December 1, 2003. ALA. CODE § 11-2-8.

Second, the Plaintiff's notice is not sufficient under the law to preserve his claims. ALA. CODE § 11-12-5 requires that any claim against a county must be itemized:

> No claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant or some person in his behalf having personal knowledge of the facts . . .

The itemization requirement of § 11-12-5 is far broader than a list of alleged damages. Specifically, in Elmore County Comm'n v. Ragona, the Alabama Supreme Court held:

---

[6] As the document attached at Exhibit A is central to the Plaintiff's allegation that he filed a notice of claim, it may be considered by the Court, even on a motion to dismiss. Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002).

13

> Likewise, the itemization provision should not be narrowly construed as applying solely to a breakdown of damages in precise dollar amounts. Rather, the "items" should include a factual background, a description of the event or transaction giving rise to the claim, ***the alleged basis for the county's liability for damages resulting from the event or transaction***, the nature of the damages, ***and the compensation demanded***.

540 So. 2d 720, 723 (Ala. 1989) (emphasis added).

The Plaintiff's notice fails to meet the requirements of § 11-12-5. The notice refers only vaguely to "such monetary compensation to adequately compensate him for these physical and emotional injuries." (Notice of Claim.) The Plaintiff utterly failed to list "the compensation demanded" as required under Alabama law.

Also critical is the Plaintiff's failure to provide several of the theories of recovery that he has now included in his Amended Complaint. Specifically, he did not assert any negligent hiring, negligent retention, or funding claims. While the Notice does reference "inadequate" medical care, it fails to assert a claim of medical malpractice. The Alabama Court of Civil Appeals has found notices missing the crucial element of identifying a legal theory of recovery to be deficient under § 11-12-5. Ford v. Jefferson County, 774 So. 2d 600, 606 (Ala.Civ.App. 2000) (quoting Ragona and holding that the plaintiff's notice was deficient because it did not provide the alleged basis for the county's liability); Jacks v. Madison County, 741 So. 2d 429, 433-34 (Ala.Civ.App. 1999) (quoting Ragona and holding that the plaintiff's notice was deficient even though it asserted a breach of contract claim because it failed to mention the trespass and nuisance claims asserted by the plaintiff in the complaint). Accordingly, Counts VI through IX of the Plaintiff's Amended Complaint are due to be dismissed.

### B. The Plaintiff Lacks Standing to Bring Any Claim Under Alabama Code § 14-6-19.

Alabama Code § 14-6-19 does not provide a private cause of action. "One claiming a private right of action within a statutory scheme must show clear and convincing evidence of

legislative intent to impose civil liability for a violation of the statute." American Auto. Ins. Co. v. McDonald, 812 So. 2d 309, 311 (Ala. 2001). Section 14-6-19, quoted in its entirety above, contains absolutely no language creating a private cause of action. Consequently, the Plaintiff lacks standing to bring any claim based upon the statute and Count VI of his Amended Complaint is due to be dismissed.

    **C.**  **The Plaintiff's Conditions Claims are Due to be Dismissed Because None of the Jail Staff are Coosa County Commission Employees.**

  As demonstrated previously, the Plaintiff's conditions claims are actually operational in nature. As such, the Plaintiff's state law claims appear to be premised under a *respondeat superior* theory. As such, the Plaintiff's state law claims are due to be dismissed because Coosa County cannot be held liable under a theory of *respondeat superior* for the actions of a sheriff or his jailers.

  The Sheriff of Coosa County, Alabama, is an executive officer of the State of Alabama. See Ala. Const. art. V, § 112. Under Alabama law, a sheriff is not treated as an "employee of the county for purposes of imposing liability on the county under a theory of *respondeat superior*." Parker v. Amerson, 519 So. 2d 442 (Ala. 1987); see also King, 620 So. 2d at 625 ("The sheriff's authority over the jail is totally independent of the Colbert County Commission. . . . Therefore, . . . Colbert County itself cannot be held vicariously liable for his actions or inaction"); Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991). Thus, under state law, a sheriff is not even an agent of the county – let alone a policymaker.

  Further, Alabama counties are also delegated no control over sheriffs. The Alabama Constitution expressly includes sheriffs in the "executive department" of *state* government. Ala. Const., art. V, § 112. Because a sheriff is a State officer, he cannot be directed or controlled by the county commission in any of his activities. See Terry v. Cook, 866 F.2d 373, 379 (11th Cir. 1989) (noting that county commissions have no authority to hire or fire deputies, dispatchers and jailers); King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993) (holding county commission has no

15

control over jail operations). Accordingly, Count VIII of the Plaintiff's Amended Complaint is due to be dismissed.

      **D.    The Amended Complaint Does Not State a Negligent Hiring/Retention Claim Against Coosa County.**

In Count VII of the Plaintiff's Amended Complaint, the Plaintiff alleges that Coosa County was negligent in the hiring and retention of Dr. Weaver. However, even taken at face value the conclusory allegations in the Amended Complaint regarding Dr. Weaver's competency, the Amended Complaint still fails to state a negligent hiring/retention claim. Under Alabama law, the Plaintiff must allege and prove (1) Dr. Weaver was incompetent to perform his duties; and (2) Coosa County knew, or in the exercise of due diligence, should have known of Dr. Weaver's incompetence. Lane v. Central Bank of Alabama, N.A., 425 So. 2d 1098 (Ala. 1983). Additionally, the Plaintiff must allege and prove wrongful conduct on the part of Dr. Weaver. Voyager Ins. Companies v. Whitson, 867 So. 2d 1065, 1073 (Ala. 2003) citing Stevenson v. Precision Standard, Inc., 762 So. 2d 820 (Ala. 1999).

Here, while the Plaintiff has alleged that Dr. Weaver was incompetent and engaged in wrongful conduct, the Plaintiff has not alleged any facts demonstrating how Coosa County was aware of the alleged incompetence or in a position to know of the alleged incompetence. The Amended Complaint does not allege, even in conclusory form, that the Commission knew Dr. Weaver was incompetent *before* they hired him. The Amended Complaint does not allege, even in conclusory form, that there were other instances of Dr. Weaver's incompetence involving treatment provided to other inmates prior, or even during, the Plaintiff's incarceration. There are no allegations of any complaints filed by other inmates with the Commission. There are no allegations of the Commission receiving information from the State physician licensure board regarding actions taken, or complaints made, against Dr. Weaver.

There are, however, allegations in the Amended Complaint demonstrating that the Plaintiff was seen by at least *five other* health care professionals who, presumably, could have reported any problems to the Commission, yet there are no allegations that these professionals conveyed any such report. In short, there are no factual allegations in the Amended Complaint from which the Court could reasonably infer that Coosa County was aware of Dr. Weaver's alleged incompetence.

Furthermore, the Commission was not in a position to determine Dr. Weaver's competency. As demonstrated above, the provision of medical care to inmates is operational and outside of the Commission's area of responsibility for the jail under Alabama law. There are no allegations in the Amended Complaint that any commission member had medical training, education, or experience that would allow him or her to evaluate Dr. Weaver's performance. There are no allegations that the State licensure board had taken any action against Dr. Weaver and informed the Commission. It is entirely reasonable for the Commission to rely on the State board.

Accordingly, as the Amended Complaint fails to allege facts indicating that Coosa County knew or could have known that Dr. Weaver was incompetent, Count VII is due to be dismissed.

**E.    Coosa County Cannot be Held Liable for Medical Malpractice.**

Count IX of the Plaintiff's Amended Complaint appears to be a medical malpractice claim against both Dr. Weaver and Coosa County. As the Plaintiff does not make any allegations that Coosa County contains health care providers in its membership, it can only be assumed, based upon the Plaintiff's employment allegations, that his claim against Coosa County is based upon *respondeat superior*.[7] However, it has long been established that a plaintiff may not assert such a claim against any entity other than a hospital – and even then, vicarious liability is not sufficient – a direct showing of negligence on the part of the hospital is necessary. See e.g., Parsons v. Yolande Coal & Coke Co.,

---

[7] Count IX also alleges that the Commission had a duty to provide medical care. (Complaint at ¶ 75.) To the extent that Count IX could be read as imposing a direct duty on the Commission to provide medical care to the Plaintiff, such a claim is disposed of by the fact that, as a matter of law, the Commission has no such duty. ALA. CODE § 14-6-19.

17

91 So. 493, 496 (Ala. 1921); Golden v. Autauga Medical Center, Inc., 675 So. 2d 418, 419 (Ala. 1996). As Coosa County is clearly not a hospital, Count IX is due to be dismissed.

      **F.    The Plaintiff's Claims For Compensatory Damages Exceed That Authorized By State Law.**

The Plaintiff has not specified the amount of damages he claims. Alabama law "caps" the amount of compensatory damages that may be awarded against a county or a city. See ALA. CODE §§ 11-93-1(1) and 11-93-2. Under Alabama law, the Plaintiff may not recover more than $100,000.00.

> The recovery of damages under any judgment against a governmental entity ***shall be limited to $100,000.00 for bodily injury or death for one person*** in any single occurrence. ***Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims*** or judgments on account of bodily injury or death arising out of any single occurrence.

ALA. CODE § 11-93-2 (emphasis added). Accordingly, to the extent the Plaintiff seeks to recover more than $100,000.00 from Coosa County, his claim is barred.

Previously, the Plaintiff argued that his potential compensatory damages against the Coosa County Commission are not capped at $100,000.00 because each day that Plaintiff was denied medical treatment could constitute a separate "single occurrence." Plaintiff's assertion is in opposition to Alabama law.

In Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala. 1984), the Alabama Supreme Court held that, "... for the purpose of Sec. 11-93-2, all injuries that stem from one proximate cause are the result of a single 'occurrence.'" The Plaintiff's Amended Complaint claims that all of his alleged injuries result from his alleged denial of medical care by the Sheriff and his staff during a single incarceration period. The Plaintiff makes no other claim of how his injuries occurred. See Carson v. City of Prichard, 709 So. 2d 1199 (Ala. 1998) (holding that the failure of the Board to remedy the overflow of sewage was a single "occurrence" within the meaning of Section 11-93-2 even though

18

there were numerous incidents of sewage overflow).  As a matter of law, the Plaintiff's *single* incarceration is a single occurrence.  United States Fire Ins. Co. v. Safeco Ins. Co. 444 So.2d 844, 846 (Ala. 1983); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982).  ("The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence.")  Consequently, the Plaintiff, as a matter of law, can prove no set of facts that would entitle him to more than $100,000.00 in compensatory damages on his state law claims.

**V.     DEFENDANT COOSA COUNTY IS IMMUNE FROM PUNITIVE DAMAGES.**

It is well settled that local governments are immune from punitive damages under § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Wheeler v. City of Pleasant Grove, 883 F.2d 267, 271 (11th Cir. 1987); Housing Investors, Inc. v. City of Clanton,  68 F. Supp. 2d 1287, 1296 (M.D. Ala. 1999) ("The city will therefore remain as a defendant, but, notably, the city is immune from claims for punitive damages").  Further, state law prohibits punitive damages from being awarded against counties and municipalities.  See ALA. CODE § 6-11-26 (1975) ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof . . ."); Harrelson v. Elmore County, 859 F. Supp. 1465, 1469  (M.D. Ala. 1994) (applying statute to strike punitive damages claims made under state law).  As a result, the Plaintiff's claims for punitive damages are due to be dismissed.

**CONCLUSION**

Based upon the foregoing, Defendant Coosa County Commission requests that this Court grant its Motion to Dismiss and grant unto it costs and attorney's fees pursuant to law and 42 U.S.C. § 1988.

Respectfully submitted this 2nd day of June, 2006.

        **s/Gary L. Willford, Jr.**
        KENDRICK E. WEBB – Bar No. WEB022
        GARY L. WILLFORD, JR. – Bar No. WIL198
        Attorney for Defendants
        WEBB & ELEY, P.C.
        7474 Halcyon Pointe Road (36117)
        Post Office Box 240909
        Montgomery, Alabama 36124
        Telephone: (334) 262-1850
        Fax: (334) 262-1889
        E-mail: gwillford@webbeley.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this the 2nd day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Richard J. Stockham, III**, **Kristi Allen Dowdy**, and **Stephen Michael Doyle**.

        **s/Gary L. Willford, Jr.**
        OF COUNSEL