**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **DANIEL BRYAN KELLY,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO.  2:05-cv-1150-T** |
| | ) |
| **RICKY OWENS, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

**DEFENDANT COOSA COUNTY COMMISSION'S REPLY TO PLAINTIFF'S
OPPOSITION TO ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Defendant Coosa County Commission, a Defendant in the above-entitled

action, and submits this Reply to the Plaintiff's Opposition to its Motion to Dismiss Plaintiff's

Amended Complaint.

**ARGUMENT**

In his Opposition, the Plaintiff has conceded that the Coosa County Commission (hereinafter

"Coosa County") cannot be liable for punitive damages.  The Plaintiff takes issue with most of Coosa

County's other arguments in its principal brief.  For the reasons set forth in the principal brief and as

discussed below, the Plaintiff's arguments in his Opposition are not persuasive and should dismiss all

of the Plaintiff's claims against Coosa County.

**I.    THE PLAINTIFF'S PRE-DECEMBER 6, 2003 CLAIMS ARE TIME-BARRED.**

The Plaintiff argues that his federal claims pre-dating December 6, 2003 are not barred

by the statute of limitations because they are "continuing wrongs."  (Doc. 55 at pp. 2-3.)  The

Plaintiff asserts that his state law claims deriving from the same period of time are saved because

the injury was not apparent until after December 6, 2003, and that Alabama recognizes a

"continuous tort".  None of these arguments save the Plaintiff's pre-December 6, 2003 claims.

Additionally, even if a continuing violation theory was applicable to the instant case, the Plaintiff still could not recover damages for anything that occurred prior to the applicable statute date.

**A.      Alabama Law Does Not Recognize a "Discovery Rule."**

The essence of the Plaintiff's "apparent injury" argument is that the statute of limitations is tolled until the injury is discovered by the Plaintiff. While Alabama law recognizes a discovery rule, it is strictly limited to fraud claims. Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1274 (Ala. 1993). As noted in Coosa County's principal brief, the statute of limitations for federal claims is governed by state law. Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). Consequently, even if the Plaintiff's injuries did not become apparent until after December 6, 2003, the period was not tolled until the Plaintiff "discovered" his injury.

**B.      The "Continuing Injury" and "Continuous Tort" Theories are Not Applicable to the Plaintiff's Claims.**

In his opposition, the Plaintiff argues that Title VII's "continuous injury" doctrine should be applied to his federal claims pre-dating December 6, 2003. He further argues that state law applicable only to nuisance abatement applies to personal injury actions. The Plaintiff's novel arguments rely on inapplicable law and should be rejected by the Court.

**1.      The "Continuous Injury" Case Law Cited in the Opposition is Inapplicable to the Plaintiff's Federal Claims.**

The Plaintiff has relied upon cases that have absolutely no bearing on the instant case. In his Opposition, the Plaintiff cites a United States Supreme Court ***Title VII*** case, and two Fifth Circuit cases. (Doc. 55 at pp. 2-3 citing Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); Neel v. Rehberg, 577 F.2d 262 (5th Cir. 1978); Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974). Each of these cases is easily distinguishable.

As noted above, Morgan is a Title VII case and does not involve 42 U.S.C. § 1983 claims. 536 U.S. at 104-05. Its decision regarding continuous injury turned upon 42 U.S.C.

2

2000e-5(e)(1) – the 180- to 300-day limitations period contained in Title VII.  Id. at 117.  The holding was restricted in that the Court allowed a "continuous injury" theory **only** for hostile work environment claims.  Id. at 110-11 (rejecting the plaintiff's "practices" claim and finding that a retaliation claim under Title VII must be filed in the 180- to 300-day window imposed by § 2000e-5(e)(1)).

The instant Plaintiff does not bring his claims under Title VII, but rather 42 U.S.C. § 1983.  (Doc. 42 at ¶ 3.)  Section 1983 does not contain a limitations period.  See generally 42 U.S.C. § 1983.  As a result, the United States Supreme Court has held that the district courts must look to the applicable statute of limitations for personal injury actions in the state in which they sit.  Wilson v. Garcia, 471 U.S. 261, 275-76 (1985).  In Alabama, the relevant statute of limitations is two years and is found in Alabama Code § 6-2-38( l ).  Lufkin v. McCallum, 956 F.2d 1104, 1106 n.2 (11th Cir. 1992).

The holding in Garcia renders the case law cited by the Plaintiff inapplicable.  Neel was based on Georgia law.  577 F.2d at 264.  Donaldson turned on a question of Florida law.  493 F.2d at 528-29.

Accordingly, none of the cases cited by the Plaintiff support a "continuous injury" theory in this case.  The answer to the question turns on Alabama law.  As set forth below, Alabama law makes clear that the Plaintiff's claims based on alleged actions/omissions prior to December 6, 2003, are time barred.

## 2.    The "Continuous Tort" Case Law Cited in the Opposition is Inapplicable to the Plaintiff's State Law Claims.

In his Opposition, the Plaintiff cites state law employment and nuisance abatement that discuss the concept of a continuous tort – i.e., those cases in which the actionable wrong and the injury proximately caused by the wrong do not occur simultaneously.  (Doc. 55 citing Ex parte Floyd, 796 So. 2d 303 (Ala. 2001); Garrett v. Raytheon Co., 368 So. 2d 516, 518-19 (Ala. 1979); American Mut.

Liability Ins. Co. v. Agricola Ins. Co., 236 Ala. 535, 183 So. 677 (1938); Lehigh Portland Cement Co.

v. Donaldson, 164 So. 97 (Ala. 1935); Howell v. City of Dothan, 174 So. 624 (Ala. 1937); Employers

Ins. Co. of Alabama v. Rives, 87 So. 2d 653 (1955); and Alabama Fuel & Iron Co. v. Vaughn, 83 So.

323 (Ala. 1919).)   Using this law, the Plaintiff makes two arguments that he claims save his state

law claims.   First, he argues that the statute of limitations did not begin to run until he suffered

an injury.   (Doc. 55 at p. 3 citing Ex parte Floyd, 796 So. 2d 303 (Ala. 2001).)   Second, the

Plaintiff asserts that Alabama recognizes a "continuous tort" theory and analogizes his treatment

to a "continuing trespass".   Id. at pp. 3-4 citing, inter alia, American Mut. Liability Ins. Co. v.

Agricola Insurance Co., 183 So. 577 (1938).[1]   The law cited by the Plaintiff is inapplicable to

his claims.

     First, the Plaintiff's position that his claims are similar to those in Floyd are simply

unpersuasive.   In Floyd, the tortuous action was the preparation of a forged mortgage

satisfaction.   The injury caused by the fraud was not apparent until later when the plaintiff gave a

second mortgage thinking that there were no other encumbrances on the property.   796 So. 2d at

308.   The Alabama Supreme Court noted that a legal injury does not occur until the plaintiff can

first maintain an action.   Id.

     In the instant case, the Plaintiff's Amended Complaint appears to contain essentially

three pre-December 6, 2003 allegations: (1) a generalized allegation that he did not receive

medication or medical treatment that led to increasing disorientation and seizures culminating on

December 5, 2003; (2) a seizure that occurred on November 25, 2003; and (3) a fall on

December 5, 2003.   (Doc. 42 at ¶¶ 5-7.)   Assuming, arguendo, that Coosa County had any

responsibility for, or role in causing, the alleged denial of medical care underlying these

allegations they easily fall outside of the limitations period.   The Plaintiff's alleged injuries –

---

[1] Interestingly, the most recent case cited by the Plaintiff for his novel theory is a 1955 case.  (Doc. 55 at p. 4 citing Employers Insurance Co. of Alabama v. Rives, 87 So. 2d 653 (1955).)

seizures, disorientation, and falls – all occurred prior to December 6, 2003.  The Plaintiff could

have filed his claims any time after the injury occurred.  Floyd, 796 So. 2d at 308; see also Moon

v. Harco Drugs, Inc., 435 So. 2d 218, 220 (Ala. 1983).  In Moon, the Alabama Supreme Court

stated:

> If the act of which the injury is the natural sequence is of itself a legal injury to
> plaintiff, a completed wrong, the cause of action accrues and the statute begins to
> run from the time the act is committed, be the actual damage (then apparent)
> however slight, and the statute will operate to bar a recovery not only for the
> present damages but for damages developing subsequently and not actionable at
> the time of the wrong done; for in such a case the subsequent increase in the
> damages resulting gives no new cause of action. Nor does plaintiff's ignorance of
> the tort or injury, at least if there is no fraudulent concealment by defendant,
> postpone the running of the statute until the tort or injury is discovered.

435 So. 2d at 220 (citations omitted).  Consequently, claims resulting from these injuries are

time-barred as suit was not filed on them within two years of the injury.  Id.

Second, the Plaintiff's pre-December 6, 2003 claims are not saved by a continuous tort

theory.  The cases cited by the Plaintiff for the proposition that Alabama recognizes a continuous

tort theory do not support the Plaintiff's argument.  Agricola Ins. Co. was a declaratory judgment

action brought to determine coverage under an insurance policy.  183 So. at 678.  The Court was

not called upon to determine whether the statute of limitations applied.  The issue was the

definition of "accident" under the policy.  Id.  Similarly, Donaldson did not establish a

continuing tort exception for the statute of limitations because there was no limitations period at

issue.  The portion of the opinion cited by the Plaintiff relates to an assignment of error that the

Donaldson plaintiff had pled more than one claim in a single cause of action.  164 So. at 100

("The particular objection here urged to count A is that it unites in one count a series of separate

causes of action").  Rives is identical to Donaldson in that it also dealt with a declaratory

judgment action and turned on the definition of an "accident".  87 So. 2d at 654.

Tellingly, the Plaintiff does not cite a single Alabama case applying continuous tort to the claims stated in his Amended Complaint. (Doc. 55 at pp. 3-4.) Moreover, the Supreme Court's decision in Howell and Vaughn actually supports Coosa County's position. Howell involved an action for damages and to abate the nuisance of a sewage discharge into a stream that ran through the plaintiff's property. 174 So. at 628. This discharge of sewage allegedly resulted in the death of cows more than six months before suit was filed and the death of some pigs within six months of suit being filed. Id. at 627. The Howell court specifically noted "[t]he fact that the damages are sought in a suit for injunction *would not change the rules or limitations of time for presentation of claim for damages* or suit for such damages." Id. at 628 (emphasis added). The plaintiff therefore could not recover for damages that occurred outside the six-month statute of non-claim. Id. at 627. Accordingly, the Court held that the plaintiff could not recover for the cows as "[t]he injury and damage in question being in tort should have been presented or a suit brought before the bar of the statute." Id. at 627, 629.

Vaughn also involved pollution of a stream. 83 So. at 323-24. Unlike Howell, the defendant was not a municipality. Id. Far from supporting the Plaintiff's position, the Vaughn court explicitly held that damages were limited "to such damages as [the plaintiff] *suffered within 12 months prior to the commencement of the suit*." Id. at 324 (emphasis added).

Similarly, in the instant case, the Plaintiff alleges one generalized "continuing trespass" – improper medical care. As alleged, some of the resulting injuries occurred more than two years before suit was filed (the alleged injuries contained in ¶¶ 5-7). Other alleged injuries occurred within two years of filing suit. (Doc. 42 at ¶¶ 9-41.) The Plaintiff cannot, as a matter of

Alabama law, recover for any alleged damages that occurred prior to December 6, 2003. Howell, 174 So. at 627, 629; Vaughn, 83 So. at 324.[2]

C.    **Even if the County Was Guilty of a Continuing Violation, the Plaintiff Cannot Recover Damages for any Alleged Violation Pre-dating December 6, 2003.**

Assuming, *arguendo*, that the continuing violation theory was applicable to the instant case, the Plaintiff is still barred from recovery.  "The continuing violation doctrine does not render the applicable statute of limitations irrelevant."  Seacoast Sanitation Ltd., Inc. v. Broward County, 275 F.Supp.2d 1370, 1378 (S.D.Fla. 2003) (citing Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 521-23 (6th Cir. 1997)).  While each new incident restarts the relevant limitations period, no recovery may be had for damages occurring prior to the limitations period. Id.  Accordingly, even if there is a continuing violation, the Plaintiff cannot recover against Coosa County for any alleged injuries occurring prior to December 6, 2003.

## II.    **THE PLAINTIFF'S FEDERAL CLAIMS AGAINST THE COOSA COUNTY COMMISSION ARE DUE TO BE DISMISSED.**

Despite clear mandatory authority to the contrary, the Plaintiff insists in his Opposition that he can maintain Eighth Amendment claims against Coosa County.  The Plaintiff further asserts, also in the face of contrary mandatory authority, Coosa County can be held liable for his jail conditions and medical care claims.  As the Plaintiff's arguments are not founded in mandatory state and federal law, they are due to be dismissed.

A.    **Plaintiff Cannot Maintain Concurrent Eighth and Fourteenth Amendment Claims.**

With the Amended Complaint now alleging that the Plaintiff was a pre-trial detainee, the Plaintiff realizes that he has difficulty in maintaining claims under both the Eighth and

---

[2] It should be noted that the Howell decision states that its discussion of continuing tort has nothing to do with the statutes of non-claim and the Court did not apply the theory to the statutes of non-claim.  174 So. at 627-28.  Consequently, even if Howell were to save the Plaintiff's state law claims from the statute of limitations, it would not save them from the Plaintiff's failure to file a timely and adequate notice of claim as discussed below in section III A of this brief.

Fourteenth Amendments. Consequently, the Plaintiff has put forth a novel position in arguing that his Eighth Amendment claims are proper. He asserts that his Fourteenth Amendment claims are for money damages and, since he was later convicted, his Eighth Amendment claims can be maintained ***prospectively*** in the event he violates his parole. The Plaintiff's argument suffers from two major deficiencies. First, the argument relies on facts that have not been pled in the Amended Complaint. Second, the Plaintiff's injunctive relief claims are barred.

First, the Amended Complaint does not allege that the Plaintiff was convicted. (See generally Doc. 42.) Consequently, the main fact that serves as a premise to his parole argument – that has been convicted – is not before the Court. Consequently, his argument fails and his Eighth Amendment claims are due to be dismissed.

Second, even if the Plaintiff had alleged that he was subsequently convicted, his injunctive relief claims are nevertheless due to be denied. The Plaintiff, according to the Amended Complaint, has been out of the Coosa County Jail for over two years. (Doc. 37 at ¶¶ 14, 32.) As noted above, he has not averred that he was convicted, is facing a parole violation, and/or has been arrested on new charges. (See generally Doc. 42.) Consequently, any claim for injunctive relief is moot. See, e.g., Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)). Furthermore, even if the Court were to interpret the Plaintiff's Amended Complaint as attempting to assert a class, his claims must be dismissed because the class was not certified before his transfer. See McKinnon, 745 F.2d at 1363 (citing Board of School Commissioners v. Jacobs, 420 U.S. 128, 130 (1975); Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984)).

8

The Plaintiff also lacks standing to pursue his equitable claims. A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome. Baker v. Carr, 369 U.S. 186, 204 (1962). The plaintiff must have sustained, or is about to sustain, some direct injury. Golden v. Zwickler, 394 U.S. 103, 109-110 (1969). Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights. 461 U.S. 95, 97 (1983). The plaintiff sought an injunction barring the future use of police chokeholds. Id. 461 U.S. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id., 461 U.S. at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* be subjected to another chokehold. Id., 461 U.S. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

In addition to having more than five times as much time pass without further violations (five months versus twenty-six months), the instant Plaintiff's claims are even more speculative than those in Lyons. Because the Plaintiff is no longer an inmate in the Coosa County Jail, his claim is, in essence, that he *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Coosa County Jail, that he *might* be "admitted" to the Coosa County Jail, *might* again start tripping over things in the general population cells, *might* again be transferred to "the hole" for his own protection, *might* again be abused by jailers while in "the hole", and *might* again be subjected to the "unconstitutional" condition of receiving "only" one visit to a health care

9

provider a week. Such speculation into future conduct – even if it did violate the Plaintiff's rights – does not grant the Plaintiff standing. Lyons, 461 U.S. at 108.

The facts in the Amended Complaint also do not satisfy the elements of injunctive relief. First, the Plaintiff cannot succeed on the merits (in this context, he cannot show an actionable wrong). Second, he cannot show the existence of a continuing irreparable injury. Finally, he cannot prove that he has no other adequate relief at law. Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).

As argued more fully below, Coosa County's scant involvement with the jail as a matter of law makes it impossible for the Plaintiff to succeed on the merits. The arguments contained in section II B of this brief are incorporated herein as setting forth why the Plaintiff cannot show an actionable injury caused by Coosa County. See, e.g., Turquitt v. Jefferson County, 137 F.3d 1285, 1289-1290 (11th Cir. 1998). Accordingly, the Plaintiff may not have injunctive relief against Coosa County.

However, even if the Amended Complaint could be construed as making out an actionable wrong, the Amended Complaint does not contain allegations establishing the second element. In particular, there is no *continuing* irreparable injury. Put simply, the Plaintiff is no longer in the Coosa County Jail. The actionable injury, if any, ceased on January 16, 2004. (Doc. 42 at ¶¶ 14, 32.) There has been no further injury in over two years.

The Plaintiff cannot argue with a straight face that he has no adequate remedy at law. The Plaintiff has brought state and federal money damages claims against Coosa County (See generally Doc. 42.) He admits in his Opposition that he has money damages claims against Coosa County for jail conditions. (Doc. 55 at p. 4.) Accordingly, his claims for injunctive relief against Coosa County are due to be dismissed.

**B.     The Plaintiff's Federal Jail Conditions and Medical Claims are Due to be Dismissed.**

In his Amended Complaint, the Plaintiff still asserts claims of unconstitutional jail conditions and medical care claims against Coosa County.  As Coosa County has no authority or responsibility over these areas as a matter of unambiguous state and federal law, the Plaintiff's federal claims against Coosa County are due to be dismissed.

**1.     Plaintiff's jail conditions allegations fail to state a claim as a matter of law.**

The Plaintiff attempts to establish liability on the part of Coosa County for Plaintiff's conditions of his confinement claims by arguing that they fall under the Commission's duty to "fund" and "maintain" the jail under Alabama law.  (Doc. 55 at pp. 5-9.)  The Plaintiff's argument is based first upon a misreading of Turquitt.  Id. at pp. 6-7.  The Plaintiff next argues that Alabama law gives counties certain duties with respect to the jails.  Finally, the Plaintiff argues that the Southern District of Alabama's decision in Gaines v. Choctaw County, 242 F.Supp.2d 1153 (S.D. Ala. 2003) supports his claims.

Neither of these arguments should persuade the Court to allow the Plaintiff to maintain his federal jail conditions claims against Coosa County.  First, the Amended Complaint does not state a federal funding claim.  Second, Alabama law, as interpreted by the federal courts (including the Turquitt court), demonstrates conclusively that the Plaintiff's claims fall in an area that is outside of Coosa County's responsibility.  Third, this Court should not be persuaded by the aberrant Gaines opinion, going as it does against every other state and federal court that has examined these issues.

First, the Plaintiff's one conditions claim against Coosa County does not allege inadequate funding.  Count VIII of the Complaint clearly states a breach of duty claim against the Commission based upon an alleged failure to "provide a facility and to provide adequate

funding to provide a safe and habitable facility for inmates."[3]   (Doc. 1 at ¶ 72.)    Count III, however, the only federal conditions claim against Coosa County, alleges:

> Defendants violated plaintiff's constitutional right when they acted under color of law with deliberate indifference by placing him in "the hole" in excess of forty days as set out above; which, as constructed and maintained, was inadequate for human habitation.

(Doc. 42 at ¶ 53.)   The word "funding" appears nowhere in Count III.   (Doc. 42 at ¶¶ 51-55.) Thus, the Plaintiff's Amended Complaint unmistakably asserts only a state law negligence claim against the Commission in regard to its duty to fund the jail.

Second, while the Plaintiff now alleges in conclusory fashion a maintenance/construction claim, his allegations do not fit, as a matter of federal and Alabama law, under Coosa County's duty to maintain the physical plant of the jail.   The Plaintiff's Amended Complaint *still* states only that the following conditions of his confinement constituted constitutional violations: (1) Plaintiff slept on a plastic mat; (2) Plaintiff's toilet was not flushed often enough by the jailers; (3) Plaintiff was not provided toilet paper; (4) on several occasions jailers did not give Plaintiff water until several hours had passed since his request; (5) Plaintiff was not allowed to shower enough by the jailers; and (6) the jailers did not allow the Plaintiff out of his cell enough to exercise.   As a matter of common sense, such claims do not relate to the physical plant of the jail.

In an attempt to get around the clear law in this area, the Plaintiff again has grossly mischaracterized the Commission's argument.   The Commission has *not* argued that it has "no liability for jail conditions."   (Doc. 55 at p. 5.)   To the contrary, the Commission acknowledges that it has some responsibility – but solely in the areas of operational funding and the physical

---

[3] Coosa County made a similar argument against the original Complaint dealing with Counts III and VIII.  After amending the Complaint, the Plaintiff added language indicating Count III was a federal claim but failed to add similar language to Count VIII.  (Compare Doc. 42 ¶¶ 52-55 with Doc. 42 ¶¶ 72-73.)  The implication of the Plaintiff's failure to amend Count VIII while simultaneously amending Count III is that he intended Count VIII to be a state law claim.

plant of the jail. The factual allegations of the Plaintiff's Amended Complaint simply do not touch either of these areas.

The Commission's duty with respect to the jail is a matter of clear federal and Alabama law. The Eleventh Circuit's en banc opinion in Turquitt v. Jefferson County, 137 F.3d 1285 (11th Cir. 1998), offers the Plaintiff no support whatsoever and fully buttresses the Commission's argument that it cannot be liable for his conditions claims. The Turquitt Court specifically held:

> We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates. ***The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail."***

Id. 1289-1290 (citations omitted, emphasis added). Mats, toilet paper, the guards' flushing of toilets, the guards' alleged refusal to give the Plaintiff water, and the guards' willingness to allow the Plaintiff to use the shower facilities ***do not***, even under the most tortured twisting of the relevant law, fall into the areas of operational funding or the physical plant of the jail.

Coosa County is not "reframing" the Amended Complaint. (Doc. 55 at p. 6). Coosa County is, however, continuing to challenge the Plaintiff's attempt to call an apple an aardvark. South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss"). Even if the Sheriff and his jailers deliberately misused ***one room*** in the jail and violated the Plaintiff's rights, Coosa County cannot be liable as a matter of law under its duty to maintain the physical facility of the jail. Turquitt makes it abundantly clear that because the Commission has no control over the Sheriff's employees, it cannot be liable for their actions or misuse of the facilities. 137 F.3d at 1289. The duty to "maintain a jail" under §

11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989).

The Plaintiff also relies upon the Eleventh Circuit's opinion in Marsh v. Butler County in support of his argument that the allegations of his Complaint support his claim that the Commission failed to maintain the jail. 268 F.3d 1014 (11th Cir. 2001). Marsh merely reiterates an Alabama County's limited role in building and funding jails. Id. at 1026. Furthermore, the factual allegations in Marsh are entirely dissimilar from the Plaintiff's allegations. The Marsh plaintiff alleges that the physical conditions of the jail building created a risk of serious harm to the plaintiff in that the doors to the cells could not be locked and the building had deteriorated to the point that inmates made weapons from pieces of the building that were used to harm plaintiff. Id. at 1027.

The Plaintiff's claims in the instant case are entirely distinguishable. The Plaintiff's complaints regarding the bedding provided to him, how often his toilet was flushed, not being provided toilet paper, how quickly he was provided water, how often he was allowed to shower and exercise are clearly not claims regarding the physical conditions of the jail building. The Plaintiff does not complain about the actual structure of the building causing him harm.

The Plaintiff also relies upon portions of the Alabama Code that appear to give Coosa County additional responsibilities with respect to the jail. (Doc. 55 at p. 8 citing Ala. Code §§ 14-6-103 and 14-6-92.) Each of these codes must be read in the context of § 14-6-19 which requires the counties to fund the jails operations. With respect to § 14-6-103, the duties therein, ventilation, light, heating, plumbing, etc., very clearly relate to the physical plant of the jail – areas in which everyone agrees the counties have responsibility. See, e.g., Turquitt, 137 F.3d at 1289. Section 14-6-92's requirement to provide a clean jail, bathing facilities, and clean bedding – read, as it must, in *pari materia* with § 14-6-19 – is merely a funding requirement. Compare

14

Ala. Code § 14-6-92 with Ala. Code § 14-6-19 ("*Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county*, to those prisoners who are unable to provide them for themselves . . .") (emphasis added).  Furthermore, these code sections were in force at the time of Turquitt.  As the opinion makes clear, the en banc Eleventh Circuit conducted an extensive review of the relevant Alabama statutory authority and found that a county's role is limited to the physical plant of the jail and funding its operations.  Turquitt, 137 F.3d at 1289-90.

Finally, the Plaintiff continues to rely upon Gaines.  Putting aside the fact that the Gaines opinion is an aberration that is clearly at odds with other mandatory authority (e.g., Turquitt), the Southern District's opinion is dissimilar from the instant case.  The plaintiff in Gaines brought § 1983 claims against a county due to funding of medical care, not due to funding of the maintenance of a jail.  Id. at 1161.  The one facilities claim in Gaines that the plaintiff made – failure to install security cameras – was rejected by the Southern District.   Id. at 1160.

**2.    The Plaintiff's medical claims fail to state a claim against the Commission.**

In his Opposition, the Plaintiff argues simply that Alabama counties have a duty to provide medical care to inmates.  The Plaintiff supports this position with the Eleventh Circuit's decision in Marsh v. Butler County, 268 F.3d 1014 (11th Cir. 2001).  The Plaintiff argues that the instant case is distinguishable from Marsh because Plaintiff Kelly alleges that Coosa County was involved in the denial of medical care.  (Doc. 27 at p. 6.)  The Marsh court did conclude that the plaintiff failed to allege facts demonstrating that the defendant county was involved in the denial of medical care.  268 F.3d at 1026 n.6.  However, the Plaintiff has also failed to make allegations to support his contention that the Commission denied him medical care.

In <u>Marsh</u>, the Eleventh Circuit affirmed the District Court's dismissal of plaintiff's claim that Butler County, Alabama was deliberately indifferent to his serious medical needs by releasing him from jail after he was injured. <u>Marsh</u>, 268 F.3d at 1026. The plaintiff, who was taken to the hospital after being injured in the jail, was released from the hospital to two Butler County Sheriff's deputies who were instructed to monitor him. <u>Id.</u> at 1026 n.6. The inmate was then released from the jail by the chief deputy. <u>Id.</u> at 1026.

The <u>Marsh</u> plaintiff subsequently brought a claim against Butler County, alleging that it was deliberately indifferent to his medical needs by releasing him. 268 F.3d at 1026 n.6. In affirming the dismissal of the claim, the Eleventh Circuit referred to <u>Turquitt</u> and stated "under Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care. Alabama law assigns counties a limited role in building and funding the jails." <u>Id.</u> at 1026 n.6.

As in <u>Marsh</u>, the instant Plaintiff makes only allegations that Coosa County was deliberately indifferent to his medical needs based upon claims of denial of medical care that fall under the sheriff's responsibility. The Plaintiff's claims are that (1) the Commission failed to provide medical care; (2) the Commission delayed providing medical care; (3) the Commission failed to train the jail staff to dispense medications to inmates; and (4) the Commission failed to train the jail staff in recognizing when medical care was necessary. Each of these claims involve the Sheriff's responsibility to provide medical care to inmates.

Continuing his theme of "distinguishing" clearly relevant case law by reliance on trivial pleading differences and mischaracterizing Coosa County's arguments, the Plaintiff next asserts in a footnote that Coosa County claims that it has no duty to fund inmate medical care. (Doc. 55 at p. 10 n.1.) Coosa County has made no such argument. As clearly set out in its memorandum brief, Coosa County acknowledges that it must pay for inmate medical care. (Doc. 46 at pp. 8-9

16

citing ALA. CODE § 14-6-19; Malone v. Escambia County, 22 So. 503, 505 (Ala. 1897); Baptist Health Systems, Inc. v. City of Mayfield, 792 So. 2d 1095, 1096 (Ala. 2001); Limestone County v. City of Huntsville Hospital Bd., 412 So. 2d 792, 793 (Ala.Civ.App. 1982).)  However, the duty does not arise until *after* the sheriff provides the care and a showing is made that the inmate is indigent.  ALA. CODE § 14-6-19.

With respect to the Plaintiff's pleading argument, Malone does not turn on the procedural method by which the Alabama Supreme Court disposed of the plaintiff's claims.  It very specifically analyzed the statute at issue – which is identical to the statute at issue here – determined what was required under the statute, and made a determination that the Plaintiff had not met the elements necessary to prevail on his claim.  Furthermore, if the Plaintiff were correct that a change in pleading standard eliminated the efficacy of the Malone holding, neither the Alabama Supreme Court nor the Court of Civil Appeals would have cited it as good law in 1982 and 2001.

Plaintiff finally tries to save his medical claims by arguing that his federal claims against the Commission are not due to be dismissed because Dr. Weaver was a final policymaker for the Coosa County Commission.  Plaintiff argues that Dr. Weaver was the final policymaker for the Commission based upon the Eleventh Circuit's decision in Mandel v. Doe,  888 F.2d 783 (11th Cir. 1989).  (Doc. 27 at p. 7.)  However, whether a given official is properly viewed as a policymaker for a particular governmental entity must be resolved on the basis of state law.  See Mandel at 792 (citing  Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737 (1989)).  This rule is clearly followed in the Mandel case.  Alabama law could not be clearer that sheriffs are not county policymakers and are the final policymakers for all operational functions of the jail – including the procedures for the provision of inmate medical care. See Turquitt, 137 F.3d at

1290; <u>King v. Colbert County</u>, 620 So. 2d 623, 625 (Ala. 1993) (holding county commission has no control over jail operations).

      <u>Mandel</u> is a ***Florida*** case, and the decision is based upon ***Florida*** law. Therefore, the holding is inapplicable to the instant case. Under Florida law, sheriffs are ***county***, not ***state*** officials, and Florida ***counties*** are custodians of the inmates in the jail. <u>Beard v. Hambrick</u>, 396 So. 2d 708, 711 (Fla. 1981) ("[A] sheriff is a 'county official', and, as such, is an integral part of the 'county.'"); <u>Comeau v. State</u>, 611 So. 2d 68, 69 (Fla. Dist. Ct. App. 1992), ("The county, ***as custodian of a prisoner*** charged with violating a state law or county ordinance, has a duty to provide medical care for its prisoner." (emphasis added); <u>*c.f.*</u> Ala. Code § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto")). To the contrary, the law of Alabama is that ***sheriffs*** are the final policymakers for ***all*** operational functions in the jail – including the procedures for the provision of inmate medical care, that ***sheriffs*** are the custodians of the inmates in the jail, and that ***sheriffs*** are ***state***, not ***county*** officials. See <u>Turquitt</u>, 137 F.3d at 1290; <u>Marsh</u>, 268 F.3d at 1026 n.6; Ala. Code § 14-6-19 (requiring the sheriff or jailer to furnish necessary medicines and medical attention to inmates who cannot afford it).

      Alabama counties, unlike Florida counties, are afforded no control over the operations of the jail and are not custodians of inmates in the jail. In fact, in Alabama, the counties' responsibilities are limited to maintaining the jail building and funding the jail operations. Coosa County's hiring of Dr. Weaver was simply its way of fulfilling its duty to fund the medical care of inmates. Therefore, although in Florida, counties can be liable for operational functions of the jail as custodians of the inmates, in Alabama, the law is clear that this is not the case. Further, in <u>Mandel</u>, the physician assistant's decisions were never reviewed by anyone else. In the instant case, Plaintiff was seen by at least five other medical professionals in addition to Dr. Weaver. Consequently, <u>Mandel</u> offers no support for the Plaintiff's claims.

**III.    THE PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED.**

The Plaintiff's state law claims against the Coosa County Commission are also due to be dismissed.  First, the Plaintiff's untimely notice failed to satisfy Alabama's statutes of non-claim.  Second, Alabama Code § 14-6-19 does not provide a private cause of action.  Third, as set forth in the previous section, none of the individuals named in the lawsuit are employees of Coosa County.  Fourth, the Amended Complaint fails to allege negligent/wanton hiring claims against Coosa County.  Fifth, as a matter of law, Coosa County cannot be held liable for any alleged medical malpractice on the part of Dr. Weaver.  Finally, even if the Plaintiff could recover damages against Coosa County on his state law claims, any award is capped at $100,000.00 under Alabama law.

### A.    The Plaintiff Failed to Satisfy the Notice of Claim Requirements.

Plaintiff does not dispute that he failed to submit a notice of claim to Defendant within twelve months of a portion of his alleged injury as required by Alabama law.  ALA. CODE. § 11-12-8.  Thus, the Plaintiff may not recover for anything that he alleges occurred between November 13, 2003, the date he claims to have been admitted to the jail, and December 1, 2003, as he did not sign his Notice of Claim until December 1, 2004, and it was not received by the Coosa County Commission until December 2, 2004.  ALA. CODE § 11-2-8.

The Plaintiff makes two arguments with respect to his inadequate notice of claim.  First, the Plaintiff argues that his notice complied with the notice statutes as interpreted by the Alabama Supreme Court.  Second, the Plaintiff seems to think that Rule 8 applies to notices.  Neither of these arguments save his claims.

As set forth in Coosa County's principal brief, the Plaintiff's notice fails to meet the requirements of Alabama's notice statutes in two respects: (1) it does not contain any specific claim for damages; and (2) it does not assert any basis for his negligent hiring, negligent retention, or

funding claims.  (Doc. 13 at p. 14.)  The Plaintiff counters that all the Alabama Supreme Court requires is "a description of the accident and the accident scene, the basis for the claim that the county was liable, and a description of the medical care that was required."  (Doc. 55 at p. 12 quoting Elmore County Commission v. Ragona, 540 So. 2d 720, 723 (Ala. 1989).)  All Ragona does, however, is protect persons who file notices with "relatively minor deficiencies" from having their claims dismissed.  540 So. 2d at 723; see also Ford v. Jefferson County, 774 So. 2d 600, 606 (Ala.Civ.App. 2000).

Clearly, however, this is not all that is required for every claim because not all claims involve automobile accidents.  To the contrary, the more generalized standard set forth by the Ragona court is applicable in the instant case, "the 'items' should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded." 540 So. 2d at 723.  The Ragona decision also does not indicate whether the plaintiffs asked for a specific amount of damages or what was present that the court found sufficient to provide the "basis for the claim."

The questions left unanswered in Ragona are addressed in the two subsequent Alabama Court of Civil Appeals decisions that have dealt with the issue.  In Ford v. Jefferson County, the Alabama Court of Civil Appeals rejected notices that did not contain either the basis of the county's liability or the compensation demanded.  774 So. 2d at 606.  Similarly, in Jacks v. Madison County, the plaintiff filed a notice of claim that set forth the basis of a breach of contract claim against the county.  741 So. 2d 429, 430 (Ala.Civ.App. 1999).  The Alabama Court of Civil Appeals found that the notice was filed outside of the 12-month period for the breach of contract claim.  Although the continuing nature of trespass and nuisance claims made the plaintiff's notice timely, her failure to provide a basis for them in her notice of claim barred her from making such claims.  Id. at 433-34.

More recently, the Alabama Supreme Court had an opportunity to revisit Ragona. In Helms v. Barbour County, the plaintiffs filed a very detailed notice of claim. 914 So. 2d 825, 826 (Ala. 2005). The notice, according to the court, contained statements that clearly set forth the claims later made by the plaintiffs in their lawsuit:

> The Helmses first allege a trespass claim with the following language: "During the scraping process the grader went outside of the established right-of-way and came upon the property of the claimants. This caused the long leaf pines to be destroyed." The Helmses next allege an "improper taking" claim, stating that "[t]his further caused the right-of-way to be expanded without the consent of the property owners and without compensation to the property owners." Therefore, the bases for the County's liability as stated in the Helmses' § 6-5-20 claim are substantially the same as those stated in their complaint.

914 So. 2d at 830. The notice met the compensation element because it specifically asked for $6,500.00 as the value of the trees and a promise to avoid further scraping the plaintiffs' land in lieu of monetary compensation for the trespass. Id.

The notice before this Court does not contain any language from which one could construe negligent hiring, negligent retention, or funding claims. (See generally Doc. 55 at Exhibit A.) Unlike Helms, there are no facts in the notice asserting that Dr. Weaver was incompetent prior to his hiring. There are no facts in the notice demonstrating that the Commission ever became aware that Dr. Weaver was allegedly incompetent. Clearly, there is absolutely no demand for a sum of money or type of equitable relief as was present in Helms. The missing assertions are not minor deficiencies; they are glaring omissions that run contrary to the plain language of the notice statutes and the holdings of Alabama's appellate courts.

The Plaintiff finally argues that Rule 8 of the Alabama Rules of Civil Procedure applies to his notice of claim. (Doc. 55 at pp. 12-13.) However, the Plaintiff cites no authority for his implied proposition that a notice of claim is a civil pleading under the authority of the Alabama Rules of Civil Procedure. Plaintiff's notice of claim is governed by and fails to comply with Alabama Code Section 11-12-5. Rule 8 is wholly inapplicable.

**B.      The Plaintiff Lacks Standing to Bring a Claim Pursuant to Alabama Code §
         14-6-19.**

Plaintiff's claims that Coosa County breached its duty under Alabama Code Section 14-

6-19 to fund medical care at the jail and provide staffing to perform medical care are due to be

dismissed as Plaintiff lacks standing to bring these claims.  Instead of responding to this specific

argument, Plaintiff argues that because the Commission hired a doctor to treat inmates, the

Commission took upon itself duties not required by Alabama law and can be held liable for

negligence on the part of that doctor.  (Doc. 27 at p. 10, citing Carpenter v. Mobile County, 841

So. 2d 1237 (Ala. 2002).)  However, Carpenter concerns a jail facility that was operated by both

a county and a city pursuant to a specific agreement.  Carpenter does not concern Alabama Code

§ 14-6-19 and does not address a private right of action for this code section.

The Plaintiff's failure to address the standing issue constitutes waiver of that issue.

Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570 (11th Cir. 1989).  Consequently, the Court

should dismiss the Plaintiff's claims based upon § 14-6-19.

**C.      The Plaintiff's Conditions Claims Fail as None of the Jail Staff are Employed
         by the Coosa County Commission.**

The Plaintiff's responsive argument that various code sections impose certain duties on

counties is without merit.  Alabama law is clear that the jail conditions subject to Plaintiff's

Complaint fall under the authority of the Coosa County Sheriff.  The Plaintiff's complaints of

having to sleep on a plastic mat on the floor, that his toilet was not flushed often enough by the

jailers, that no toilet paper was provided to him by the jailers, that on several occasions he was

not given water by the jailers until several hours after he had requested it, that jailers did not

allow him to shower often enough, and that he was not allowed out of his cell to exercise do not

implicate any of the code sections he cites.  The Plaintiff's same statutes were in existence at the

time Turquitt was decided and were not deemed by the Eleventh Circuit to expand the duties of

Alabama counties. 137 F.3d at 1289-1290. The Alabama Supreme Court has similarly refused to broaden the responsibility of counties with respect to the jails on the basis of these statutes. Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989).

> **D.    The Plaintiff Has Failed to State a Negligent Hiring/Retention Claim Regarding Dr. Weaver Against the Commission.**

In his Opposition, the Plaintiff cites no law establishing that Coosa County can be held liable for the negligent hiring or retention of Dr. Weaver. The Plaintiff does not dispute that to establish a claim for negligent hiring or retention against the Commission, he must allege facts to show that the Coosa County Commission knew, or in the exercise of due diligence, should have known of Dr. Weaver's incompetence. Lane v. Central Bank of Alabama, N.A., 425 So. 2d 1098, 1100 (Ala. 1983). The Plaintiff's Amended Complaint is devoid of any such facts. (See generally Doc. 42.)[4]

Further, the Plaintiff does not dispute that in order to establish negligence by Coosa County, the Plaintiff must allege and prove wrongful conduct on the part of the doctor. Voyager Ins. Companies v. Whitson, 867 So. 2d 1065, 1073 (Ala. 2003). Instead the Plaintiff states that the cases of Lane and Voyager were not adjudicated at the 12(b)(6) stage and are thus inapplicable. This is irrelevant as both cases outline what a plaintiff must allege and prove to establish a negligence claim. Additionally, as noted previously, the Plaintiff failed to rebut Defendant's argument that the provision to medical care to inmates is the responsibility of an Alabama sheriff, not the Coosa County Commission.

Plaintiff further asserts that his Complaint need not contain all the elements of his claims and that any requirement that he do so embraces the abandoned "theory of pleading standard." He is incorrect as a matter of law. Under the liberal pleading standards of Rule 8, a plaintiff

---

[4] The only difference in the allegations with respect to the Coosa County Commission's language is that the Amended Complaint alleges the Commission "knew" whereas the original Complaint alleged they were "aware". (Compare Doc. 1 at ¶ 37 with Doc. 42 at ¶ 37.)

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Eleventh Circuit has made it clear that despite the apparent low hurdle of Rule 8, a complaint must still contain allegations from which all of the elements of a viable legal theory can be deduced:

> while notice pleading may not require that the pleader allege a "specific fact" to cover every element or allege "with precision" each element of a claim, *it is still necessary that a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory*." In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept.8, 1981). See also St. Joseph's Hosp., 795 F.2d at 954 *("[T]he pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."*) (internal quotation and citation omitted); Quality Foods v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir.1983) (stating, "*enough data must be pleaded so that each element of the alleged ... violation can be properly identified*"); Municipal Utils. Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir.1991) (same); Seagood Trading Corp. v. Jerrico, Inc., 924 F.2d 1555, 1576 (11th Cir.1991) (same); Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988) (stating that *even under the liberal notice pleading standard, a plaintiff is still required to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory"*).

Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683-84 (11th Cir. 2001) (footnotes omitted, emphasis added).

The Amended Complaint does not allege that the Commission was aware of Dr. Weaver's alleged incompetence or in any position to learn Dr. Weaver was incompetent at the time it hired him. (See generally Doc. 42.) There are no "direct or inferential allegations" respecting these necessary elements whatsoever. To the contrary, the facts alleged are that the Plaintiff was seen by five other health care professionals. The Amended Complaint does not allege than any of these professionals reported that Dr. Weaver was incompetent to the Coosa County Commission. Furthermore, as explained fully above, the Coosa County Commission has

no control over the operations involved in rendering health care to inmates as a matter of law. See Turquitt, 137 F.3d at 1289-1290.

The Plaintiff's failure to make the averments necessary to set forth the elements of his negligent hiring and retention claims mandates their dismissal.  Aware Woman Center, 253 F.3d at 683-84.

As a final note regarding Coosa County's liability for Dr. Weaver, Dr. Weaver has not filed a motion for summary judgment (Docs. 57 and 58.)[5]   Under Alabama law, "if a putative servant is not liable, either because he is innocent or because he is immune, no liability exists to be visited upon the putative master under the rule of *respondeat superior*."  Hollis v. City of Brighton, 885 So. 2d 135, 142 (Ala. 2004) (citations omitted).  Consequently, if Dr. Weaver is not liable for the grounds stated in his motion for summary judgment, neither is Coosa County.  Therefore, Coosa County adopts and incorporates the arguments contained in Dr. Weaver's briefs supporting his motion to dismiss in conjunction with Hollis as mandating dismissal of the Plaintiff's medical care claims.

### E.     The Coosa County Commission Cannot be Held Liable for Medical Malpractice.

The Plaintiff, in his Opposition, has attempted to recharacterize his claim for medical malpractice as not being based on *respondeat superior* in order to avoid dismissal based on the clear law of Alabama.  However, in Count IX of Plaintiff's Complaint, he alleges:

> 75.     Plaintiff avers that defendant Coosa County Commission and defendant Randall Weaver owed plaintiff a duty to provide medical treatment to the plaintiff.

> 76.     Defendants breached their duty when Weaver breached the standard of care required of physicians.

Accordingly, it is clear from the text of the Plaintiff's own Complaint that the Plaintiff does, in fact, seek to hold the County Commission liable for Dr. Weaver's alleged breach of his

---

[5] Dr. Weaver's motion was filed after Coosa County filed its Motion to Dismiss the Amended Complaint.

standard of care required of physicians.  The "master of his complaint" has spoken, and the Plaintiff has clearly made a *respondeat superior* claim.  Because, based on Alabama law, vicarious liability is insufficient to create corporate liability on the Commission, the Plaintiff's claims are due to be dismissed.  See e.g., Parsons v. Yolande Coal & Coke Co., 91 So. 493, 496 (Ala. 1921); Golden v. Autauga Medical Center, Inc., 675 So. 2d 418, 419 (Ala. 1996).  As the Coosa County Commission is clearly not a hospital, Count IX is due to be dismissed.  Additionally, as noted in the preceding section, if Dr. Weaver is entitled to summary judgment, Coosa County is entitled to dismissal of the Plaintiff's malpractice claim as well.  Hollis, 885 So. 2d at 142.

### F.     The Plaintiff's Claims for Compensatory Damages Exceed the Ceiling Authorized by State Law.

The Alabama Code clearly limits compensatory damages recoverable against the Coosa County Commission "to $100,000.00 for bodily injury or death for one person in any single occurrence."  ALA. CODE § 11-93-2.  The Plaintiff argues that his potential compensatory damages against the Coosa County Commission are not capped at $100,000.00 because each day that Plaintiff was denied medical treatment could constitute a separate "single occurrence." Plaintiff's assertion is in opposition to Alabama law.

In Home Indemnity Co. v. Anders, 459 So. 2d 836 (Ala. 1984), the Alabama Supreme Court held that, "... for the purpose of Sec. 11-93-2, all injuries that stem from one proximate cause are the result of a single 'occurrence.'"  The Plaintiff's Amended Complaint claims that all of his alleged injuries result from his alleged denial of medical care by the Sheriff and his staff during a single incarceration period.  The Plaintiff makes no other claim of how his injuries occurred.  See Carson v. City of Prichard, 709 So. 2d 1199 (Ala. 1998) (holding that the failure of the Board to remedy the overflow of sewage was a single 'occurrence' within the meaning of section 11-93-2 even though there were numerous incidents of sewage overflow).  As a matter of law, the Plaintiff's single incarceration is a single occurrence for purposes of the damages cap.

United States Fire Ins. Co. v. Safeco Ins. Co. 444 So. 2d 844, 846 (Ala. 1983); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982). ("The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence.") Consequently, the Plaintiff, as a matter of law, can prove no set of facts that would entitle him to more than $100,000.00 in compensatory damages on his state law claims.

## CONCLUSION

Based upon the foregoing, Defendant Coosa County Commission requests that this Court grant its Motion to Dismiss and grant unto it costs and attorneys' fees pursuant to law and 42 U.S.C. § 1988.

Respectfully submitted this 11th day of July, 2006.

**s/Gary L. Willford, Jr.**
KENDRICK E. WEBB – Bar No. WEB022
GARY L. WILLFORD, JR. – Bar No. WIL198
Attorney for Defendants
WEBB & ELEY, P.C.
7474 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard J. Stockham, III, Esquire
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL  35209

Kristi Allen Dowdy, Esquire
McDonald & Dowdy
1005 Montgomery Highway
Birmingham, AL  35216

Stephen M. Doyle, Esquire
Chief, Civil Division
Assistant United States Attorney
P. O. Box 197
Montgomery, AL  36101-0197

**s/Gary L. Willford, Jr.**
OF COUNSEL