**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **DANIEL BRYAN KELLY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO.: 2:05-cv-1150-T** |
| | ) |
| **RICKY OWENS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANT SHERIFF RICKY OWENS'S REPLY TO THE PLAINTIFF'S**
**OPPOSITION TO THIS DEFENDANT'S MOTION TO DISMISS THE**
**PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Coosa County Sheriff Ricky Owens, a Defendant in the above-entitled action, and submits this Reply to the Plaintiff's Opposition to this Defendant's Motion to Dismiss the Plaintiff's Amended Complaint.

**INTRODUCTION**

In Defendant Sheriff Ricky Owens's Motion to Dismiss the Plaintiff's Amended Complaint and Brief in support of same which were filed June 2, 2006, he presented legal authority and arguments showing that the Plaintiff's Amended Complaint was due to be dismissed. First Sheriff Owens asserted that all official capacity claims are due to be dismissed because (1) he is entitled to Eleventh Amendment immunity in his official capacity; and (2) Plaintiff's claims for equitable relief are moot, are not justiciable because the Plaintiff lacks standing, and fail under the facts pled. Second, Sheriff Owens asserted that the Eighth Amendment claims are due to be dismissed because the Plaintiff was a pretrial detainee at all times material to the Amended Complaint. Last, Sheriff Owens asserted that he is entitled to qualified immunity on all the Plaintiff's claims against him in his individual capacity. On June 26, 2006, the Plaintiff filed an opposition to Sheriff Owens's Motion to Dismiss.

**ARGUMENT**

## I.    THE PLAINTIFF'S CLAIMS AGAINST SHERIFF OWENS IN HIS OFFICIAL CAPACITY ARE DUE TO BE DISMISSED.

In the Plaintiff's Opposition, he does not dispute that Sheriff Owens is entitled to Eleventh Amendment immunity in his official capacity as to all claims for money damages. Except for Plaintiff's arguments that his claims are not moot and he has standing to bring the claims, the Plaintiff has offered no argument in response to Sheriff Owens's showing that the Plaintiff's equitable claims fail under the facts pled because he has failed to allege facts which satisfy the three elements to justify an injunction. As to the Plaintiff's arguments concerning mootness and standing, his reasoning is flawed.

In Sheriff Owens's initial brief, he presented clear mandatory Eleventh Circuit authority for the proposition that a prisoner's release or transfer from jail moots any claim for declaratory and injunctive relief arising from alleged conditions at that jail. See Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) & McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984). The Plaintiff, in response, argues that Sheriff Owens has a "heavy burden of showing that subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to occur." However, the case which Plaintiff cites to – Secretary of Labor, U.S. Dep't of Labor v. Burger King Corp. – actually addressed a defendant's burden where voluntary cessation of illegal activity is an issue. 955 F.2d 681, 684 (11th Cir. 1992). Burger King did not involve a situation where the plaintiff had been removed from the power of the defendants. See McKinnon, 745 F.2d at 1363. In McKinnon, the plaintiff – just like the Plaintiff here – cited cases referring to voluntary cessation of illegal activity. The McKinnon court distinguished those cases stating:

> The cases to which the plaintiff refers concern the *voluntary* cessation of illegal conduct rather than the removal of the plaintiff from the power of defendants. And while this court might entertain jurisdiction over McKinnon's claim if there

2

were evidence of efforts on the part of the defendants to evade the jurisdiction of
the court, the defendants have shown that there was no such subterfuge here.

Id. (emphasis in original) (citations omitted).  In the instant case, there is likewise no allegation

that the Defendants are attempting to evade the jurisdiction of the court.  Because there has been

no *voluntary* cessation of allegedly illegal conduct in this case, the "heavy burden" as outlined in

Burger King is inapplicable in the case at bar.

The second case cited by the Plaintiff in support of his argument that his declaratory and

injunctive relief claims are not moot – Maryland Casualty Co. v. Pacific Co. – did not even

address the issue of mootness and did not address facts similar to those in the instant case.  312

U.S. 270 (1941).  In fact, Maryland Casualty involved a claim under the Declaratory Judgment

Act where the issue to be resolved was whether an insurer was liable to defend an action brought

against its insured or to indemnify the insured if judgment was entered against the insured.

Maryland Casualty, 312 U.S. at 271-272.

The Plaintiff argues that he is much more likely to be confronted with confinement in the

Coosa County jail due to his mental and physical illness, and therefore his claims for injunctive

and declaratory relief are not moot.  However, the United States Supreme Court addressed a

similar situation in O'Shea v. Littleton, 414 U.S. 488 (1974).  In Littleton, the prospect of future

injury rested on the likelihood that the plaintiffs would be arrested and charged with violations of

the criminal law again and would again be subjected to bond proceedings, trial, or sentencing

before the defendants.  The plaintiffs attempted to show that there was an imminent threat of

such an arrest because they were deeply involved in a program to eliminate racial discrimination

in Cairo and that tensions were high.  The Supreme Court rejected this argument, declined to

assume that the plaintiffs would violate the law, and held that the threat of injury was "simply

too remote to satisfy the case-or-controversy requirement."  Id. at 498.

Based on the allegations in the Amended Complaint, it is clear that the Plaintiff has been out of the Coosa County Jail for over two years, and there is no allegation that he has been subject to incarceration there during that time.  Accordingly, any speculation that the Plaintiff may again be incarcerated at the Coosa County Jail is undercut by the Plaintiff's own Amended Complaint.  See Lyons, 461 U.S. at 108 (finding that the plaintiff lacked standing and noting that five months had elapsed between the alleged injury and the time of the filing of the complaint but that there were no allegations of any further incidents such as the one complained of in the complaint).

As to the Plaintiff's argument that his claim is not moot because he continues to suffer from Post Traumatic Stress Disorder, the United States Supreme Court in Lyons made it clear that "emotional consequences of a prior act simply are not a sufficient basis for any injunction absent a real and immediate threat of future injury by the defendant."  Lyons, 461 U.S. at 107. Because the Plaintiff is no longer incarcerated at the Coosa County Jail, Sheriff Owens has no way of injuring the Plaintiff in the future.  Further, the Plaintiff's recitation of what he expects the evidence to show as set forth on page 6 and 7 of his Response is not a part of his Amended Complaint, and therefore is not proper for consideration on Sheriff's Owens's Motion to Dismiss.  See St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The scope of the review [on determination of a Motion to Dismiss] must be limited to the four corners of the complaint.")

The three cases cited by the Plaintiff which he asserts are more analogous to the facts as pled than the cases cited by the Defendants are readily distinguishable from the facts as alleged in the instant case.  As mentioned in the previous paragraph, the Plaintiff's recitation of what he expects the evidence to show as set forth on page 6 and 7 of his Response is not a part of his Amended Complaint, and therefore cannot be used in analogizing the facts in this case to those

in the cases cited by the Plaintiff. In the first case cited by the Plaintiff, <u>Church v. City of Huntsville</u>, the Eleventh Circuit reviewed the district court's determination of the plaintiff's standing to seek an injunction. The portion of the injunction wherein the Court held that the plaintiffs had standing had the purpose of preventing the city from arresting, harassing, or removing the plaintiffs – homeless residents of the city – because of their homeless status. 30 F.2d 1332, 1335 & 1337 - 1339 (11th Cir. 1994). Therefore, the facts surrounding the request for the first part of the injunction are clearly distinguishable from the facts in the instant case. The <u>Church</u> plaintiffs were involuntarily homeless. Simply because of their status, they were subject to being arrested. In contract, the Plaintiff in the case at bar is not – simply by virtue of his status – subject to being arrested and incarcerated in the Coosa County Jail. Accordingly, the imminent threat of injury present in <u>Church</u> is absent in the instant case.

The second case cited by the Plaintiff is similarly distinguishable. In <u>Lynch v. Baxley</u>, the relief sought was an injunction prohibiting state officials from detaining in county jails persons awaiting mental illness involuntary commitment proceedings. 744 F.2d 1452 (11th Cir. 1984). The Court held that the plaintiff's claim was not moot even though he was no longer detained in a county jail. 744 F.2d at 1457. However, there was a key reason cited by the Court in support of this determination that is not present in the instant case. The Court held the Plaintiff had standing because the emergency detention challenged was a temporary situation, capable of repetition and could evade review. There is no such issue present here. Further, the <u>Lynch</u> case was a class action, whereas the instant case is not.

In the final case cited by the Plaintiff, <u>Honig v. Doe</u>, the plaintiff at issue sought an order prohibiting the school district from expelling and/or indefinitely suspending him from school for conduct attributable to his disability. 484 U.S. 305, 315-316. The plaintiff was a student in the school district, and although he was not at the time facing suspension or expulsion, the Court

held that his claim was not moot.  In reaching this decision, the Court noted that generally, the Court is "unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."  484 U.S. at 320.  However, in the Honig case, the Court noted that the plaintiff is disabled in that he is unable to conform his conduct to socially acceptable norms and is unable to govern his aggressive, impulsive behavior. Id.  Therefore, the Court found it likely that he would again engage in classroom misconduct, and therefore the claim was not moot.    Id.  In contrast, in the instant case there are ***no allegations*** that the Plaintiff is unable to control his actions so as to make it more than speculative that he would be incarcerated in the Coosa County Jail again.  Also unlike the Honig plaintiff, the instant Plaintiff is no longer under the control of the Defendant.

Because the Plaintiff has failed to overcome Sheriff Owens's argument that his claims are moot, all claims against Sheriff Owens in his official capacity are due to be dismissed, and all claims for declaratory and injunctive relief are due to be dismissed.

## II.    THE PLAINTIFF'S RELIANCE ON THE EIGHTH AMENDMENT IN THIS ACTION IS MISPLACED.

The Plaintiff admits in his Response that he was a pretrial detainee at the time of the allegations of his Amended Complaint.  (Doc. 56 p. 11.)  However, the Plaintiff asserts that he is now a convicted prisoner, and therefore his Eighth Amendment claims are cognizable.  This argument fails for two reasons.  First, there is nothing in the Amended Complaint to suggest that the Plaintiff is now a convicted prisoner, and therefore such an argument is not proper for consideration on Sheriff's Owens's Motion to Dismiss.  St. George, 285 F.3d at 1337. Second, the relevant time for determining whether the Eighth of Fourteenth Amendment applies to an inmate's claim for unconstitutional jail conditions is the time that the inmate's rights were alleged violated.  Mladek v. Day, 293 F.Supp.2d 1297, 1305 (M.D. Ga. 2003) ("The Court finds that Plaintiff's Eighth Amendment claims must be dismissed because Mr. Mladek was not

6

convicted of any crime *at the time that these acts about which he complains occurred*.")
(emphasis added); <u>Wells v. Kyzar</u>, 2005 WL 1331259, *2 (M.D. Ala. 2005) ("[W]ith respect
to those claims *arising while Wells was a pretrial detainee*, the Fourteenth Amendment, rather
than the Eighth Amendment, provides the appropriate standard for assessing whether conditions
of confinement are violative of the Constitution") (emphasis added). Because, according to the
Plaintiff's Amended Complaint, the Plaintiff was a pretrial detainee at the time that his rights
were allegedly violated, his claims arise under the Fourteenth Amendment and not the Eighth
Amendment, and therefore his Eighth Amendment claims are due to be dismissed.

## III.   THE PLAINTIFF HAS FAILED TO MEET HIS BURDEN UNDER THE QUALIFIED IMMUNITY ANALYSIS.

Once a defendant official demonstrates that he was acting within his discretionary
authority, the burden under the qualified immunity analysis shifts to the plaintiff. The Plaintiff
does not dispute Sheriff Owens's showing that he was acting within his discretionary authority at
all times relevant to the Plaintiff's Amended Complaint. Therefore, the Plaintiff has the burden
to show that the defendant official (1) violated his federally protected rights; and (2) had "fair
warning" that his conduct was illegal. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The Court
must first determine that a constitutional violation exists before proceeding to the "fair warning"
prong. <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991).

In his Opposition, the Plaintiff states that his four claims against Sheriff Owens are
unconstitutional jail conditions, denial of care for serious medical needs, failure to stop jail
personnel from abusing the Plaintiff, failure to train the jail staff. (Doc. 56 at p. 11-12.)
However, as a matter of law, the Amended Complaint does not validly state any of these claims
against Sheriff Owens because the case law cited by the Plaintiff does not satisfy his burden
under the qualified immunity analysis, and the Plaintiff has failed to provide the Court with
applicable clearly established law that gave Sheriff Owens fair warning.

**A.    SHERIFF OWENS DID NOT VIOLATE THE PLAINTIFF'S FEDERALLY PROTECTED RIGHTS.**

Sheriff Owens is entitled to qualified immunity because the Amended Complaint does not show that he violated the Plaintiff's federally protected rights.  In his Opposition, it appears that the Plaintiff argues that the case law he cites, read in conjunction with the allegations of the Amended Complaint, demonstrates both a constitutional violation and the existence of clearly established law – thereby address both of his burdens simultaneously.  While Sheriff Owens will address the Plaintiff's arguments in the order set forth in the Opposition, this brief will, where possible, continue to address the Plaintiff's burden in the manner established by the Supreme Court.  See, e.g., Saucier, 533 U.S. at 201; Siegert, 500 U.S. at 232.

**1.    Sheriff Owens was not Deliberately Indifferent to Plaintiff's Alleged Serious Medical Conditions.**

**a.    The Plaintiff has not established a violation of his rights.**

The Plaintiff asserts that he has met both the subjective and objective tests as set forth in Farmer v. Brennan, 511 U.S. 825 (1994).  The Plaintiff alleges that a mental health professional made Owens aware that the Plaintiff had a serious medical condition and needed an evaluation by a doctor for seizures.  (Doc. 42 at ¶ 6.)  The Plaintiff argues that nothing was done in response to this recommendation.  (Id. at p. 18.)  However, the Plaintiff alleges that on the same day he was taken to Dr. Weaver for treatment, and Sheriff Owens informed Dr. Weaver of the Plaintiff's serious medical condition.  (Id. at ¶ 6.)  Clearly, Sheriff Owens was not deliberately indifferent.  To the contrary, he followed the instructions of the mental health professional precisely.  The Plaintiff never alleges that any doctor recommended any follow up appointment.

The Plaintiff also claims that his family informed Sheriff Owens that his medication was administered differently than it was while the Plaintiff was under the care of his personal physician.  However, the Plaintiff had been treated by different physicians while incarcerated at

the Coosa County Jail.  Nowhere in the Plaintiff's First Amended Complaint does he allege that the medication was not administered according to the instructions of those physicians.  Simply because the physicians may have differed in their treatment of the Plaintiff from what the Plaintiff's personal physician recommended does not create any liability on the part of Sheriff Owens.  See, e.g., Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986).  As to the Plaintiff's allegation that Sheriff Owens did not inform the Plaintiff's family of the mental health professional's recommendation, the family had no right to this information, and thus no constitutional right is implicated.

Finally, simply because the Plaintiff was not taken to the doctor during one month cannot create deliberate indifference where there is no allegation that the instructions from the previous doctor's visit were not followed.  The Plaintiff was seen by medical care professionals for problems and injuries relating to his seizures on two occasions prior to December 6, 2003.  (Doc. 42 at ¶ 6.)  The mental health care professional recommended that the Plaintiff be evaluated by a doctor for seizures, and the Plaintiff was seen by Dr. Weaver that same day.  Id.  There is no allegation that any of Dr. Weaver's instructions or any other medical professional's instructions were not followed or that any follow-up instructions were given and ignored.

### b.    The case law cited by the Plaintiff does not satisfy his burden of providing the Court with clearly established law.

The Plaintiff cites several cases for his proposition that he succeeded in stating a claim against Sheriff Owens for deliberate indifference to his serious medical need.  However, none of the cases even approach meeting the materially similar test.  In fact, the cases cited by the Plaintiff are so readily distinguishable from the facts as alleged in the Plaintiff's Amended

9

Complaint, that it is clear that the Plaintiff's allegations do not rise to the level of a constitutional violation.

First, five of the cases cited by the Plaintiff do not even address the liability of a sheriff or jail officer for medical claims. Therefore, these five cases *cannot* be considered in determining whether a constitutional violation is established with regard to a sheriff and certainly cannot be considered in determining whether Sheriff Owens had fair warning that his conduct was unlawful. In <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1032 (11th Cir. 1989), the Defendants were a staff physician and a prison psychiatrist. In <u>McElligott v. Foley</u>, 182 F.2d 1248, 1251 (11th Cir. 1999), the defendants were a physician, a nurse, and the county. In <u>Steele v. Shah</u>, 87 F.3d 1266 (11th Cir. 1996), the defendant was a psychiatrist. In <u>Hathaway v. Coughlin</u>, 37 F.3d 63 (2nd Cir. 1994), the defendant was a doctor. Further, <u>Hathaway</u> carries absolutely no weight in the clearly established prong of the qualified immunity analysis, and it is not even binding authority as to the question of whether a constitutional violation has occurred. <u>See</u> <u>Jenkins ex rel. Hall v. Talladega City Board of Education</u>, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (en banc) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose"); <u>U.S. v. Veal</u>, 322 F.3d 1275, 1278 (11th Cir. 2003) (holding that decisions of another circuit are not binding authority in the Eleventh Circuit).

The decision of the United States Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) focused on claims against a physician. The Court held that, where the amended complaint alleged that the plaintiff had been seen and treated by medical personnel seventeen times in a three-month period, it was insufficient to state a cause of action against the physician. The court noted: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106. On remand, the warden and

corrections director were also dismissed.  Gamble v. Estelle, 554 F.2d 653 (5th Cir. 1977).  The facts alleged in the Estelle case are similar to those alleged in the instant case.  In the case at bar, it is clear from the face of the Amended Complaint that the Plaintiff was seen and treated by medical personnel several times during the two-month period he was in the Coosa County Jail.  Just like in Estelle, in the instant case, such allegations are insufficient to state a cause of action against Sheriff Owens.  The Plaintiff's acknowledgements in his Amended Complaint of the several times that he was seen and treated by medical personnel is fatal to his Amended Complaint, and therefore, this claim should be dismissed as was the claim in Estelle.

Similarly, in Hill v. DeKalb, 40 F.3d 1176 (11th Cir. 1994), the Court granted qualified immunity to the defendants.  In Hill, the Eleventh Circuit found that the director of the detention center directed that the plaintiff be taken to a hospital if he did not improve after taking his prescribed medicine and that the plaintiff was given "extraordinary care and medical attention." Hill, 40 F.3d at 1191 and 1193.  The Plaintiff's Amended Complaint in the instant case presents a similar factual scenario.  The Amended Complaint states that during the course of the Plaintiff's two-month confinement to the Coosa County Jail, he received medications.  (Doc. 42 at ¶ 19, 30.)  Said medications cost $900.00 per month.  Id. at 19.  According to the Amended Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than *six* occasions – an average of almost once a week.  Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (treatment by a doctor for skin rash on 1/7/04 and trip to hospital on 1/16/04).   At least five of these treatments were provided by either hospital personnel or outside providers.  Id.  Because the Plaintiff in the instant case was given extraordinary care and medical attention – as evidenced by the Plaintiff's Amended Complaint – Plaintiff's Amended Complaint fails to state a claim.

The remaining cases cited by the Plaintiff similarly fail to show that the allegations of the Plaintiff's Amended Complaint rise to the level of a constitutional violation on the part of Sheriff Owens.  First, Anderson v. Nosser, 456 F.2d 835 (5th Cir. 1972) does not even discuss a medical claim, so clearly this case cannot support the Plaintiff's position.   Next, in both Bozeman v. Orum, 422 F.3d 1265 (11th Cir. 2005), and H.C. by Hewitt v. Jarrard, 786 F.2d 1080 (11th Cir. 1986), the defendant officers had the requisite subjective knowledge of the serious medical need because they were the ones who actually inflicted the injury.  In contrast, in the instant case, there is no allegation that Sheriff Owens inflicted any injury on the Plaintiff.  Therefore, unlike Bozeman and Jarrard, in the instant case, the allegations are insufficient to show that Sheriff Owens had the requisite subjective knowledge required to make out a claim for deliberate indifference to a serious medical need.

In Harris v. Coweta, 21 F.3d 388 (11th Cir. 1994), and Aldridge v. Montgomery 753 F.2d 970 (11th Cir. 1985), the defendants ignored the recommendations of the medical personnel who were treating the plaintiffs.  In Harris, the Court denied qualified immunity where the sheriff delayed surgery despite the surgery being recommended by two doctors.  In Aldridge, the Court found a jury question where the officers waited two and a half hours before getting treatment for a one and a half inch bleeding cut that required six stitches and where the officers did not give the plaintiff aspirin and an ice pack as prescribed by the doctor.   In contrast to these two cases, in the Plaintiff's Amended Complaint in the instant case, there is no allegation that Sheriff Owens ever ignored the recommendation of any of the medical personnel who treated the Plaintiff.  In fact, the Plaintiff appears to want to hold Sheriff Owens liable for following the advice of doctors.  (See, e.g. Doc. 42 at ¶ 6).

In Ancata v. Prison Health Servs., 769 F.2d 700 (11th Cir. 1985), the plaintiff's complaint was not dismissed where it was alleged that the sheriff had a policy of requiring

inmates to obtain court orders prior to being given medical treatment and that the policy caused the plaintiff's injury. On the contrary, in the instant case, there is no allegation that Sheriff Owens promulgated any policy requiring such an order. In fact the Plaintiff has offered no allegation of any similarly specific policy that Sheriff Owens allegedly enacted that was the alleged cause of the Plaintiff's injury.

In <u>Brown v. Hughes</u>, 894 F.2d 1533 (11th Cir. 1990), the Court granted summary judgment to three of the four defendants because there was no evidence that they were aware of the injury. Summary judgment was denied to the defendant who was present when the inmates "began to limp and then hop on one leg" and saw his foot beginning to swell severely. That fourth defendant promised to send someone to look at his foot but never did. 894 F.2d at 1538-1539. Although the Plaintiff was ultimately taken to the hospital, officers other than the defendants were involved in that process.

In the instant case, the Plaintiff has failed to allege that Sheriff Owens ever saw an obvious medical need such as the one shown in <u>Brown</u> and promised to get medical attention for him but failed to do so. On the contrary, the Plaintiff, as alleged in the Amended Complaint, was provided with medical care an average of once a week. Furthermore, there is no allegation that Sheriff Owens was not actually involved in obtaining that medical care.

In <u>Carswell v. Bay County</u>, 854 F.2d 454 (11th Cir. 1988), the evidence at trial showed that the jail administrator recognized that the plaintiff was in need of medical care. However, his reaction to this need was simply to yell into a crowded room "Get this man to see the doctor." 854 F.2d at 455. Two days later, the plaintiff was seen by a medical professional. The plaintiff had lost 52 pounds, was diagnosed as a diabetic, and spent the next two months in the hospital. In the case at bar, there is no allegation that Sheriff Owens's response to Plaintiff's medical needs were deficient like the response of the jail administrator in <u>Carswell</u>. Further, there is no

allegation that the Plaintiff had such an obvious ailment and was not treated for such. Again – he was seen by a variety of providers on average of once per week.

In <u>Lancaster v. Monroe County</u>, 116 F.3d 1419 (11th Cir. 1997), the sheriff was denied qualified immunity because he intentionally delayed obtaining treatment even though he was aware of an imminent life-threatening seizure. However, the Eleventh Circuit later distinguished the facts of <u>Lancaster</u>, stating that, where the plaintiff was given ongoing medical care, and had medical personnel monitoring her behavior and symptoms, and where affirmative steps were taken to prevent the plaintiff from harming herself and others, no deliberate indifference had occurred. <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1368 (11th Cir. 1999).

In the Plaintiff's Amended Complaint, it is clear that the facts alleged are far more analogous to those in <u>Campbell</u>. The allegations in the Amended Complaint make it clear that the Plaintiff was placed in "the hole" for his own protection due to his propensity to fall over things in the general population cells. (Doc. 42 at ¶¶ 6, 7, 9.) The Plaintiff received medical attention an average of once per week during his incarceration. <u>Id.</u> at ¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (treatment by a doctor for skin rash on 1/7/04 and trip to hospital on 1/16/04). Finally, he was removed from the jail altogether and put in the hospital. <u>Id.</u> at ¶ 21. There is no allegation that medical treatment was delayed or denied for non-medical reasons in this case. Accordingly, it is clear, based on the Eleventh Circuit's analysis in <u>Campbell</u> that there has been no constitutional violation established by the Plaintiff's Amended Complaint.

### B.    <u>Sheriff Owens Did Not Subject the Plaintiff to Unconstitutional Jail Conditions.</u>

#### a.    **The Plaintiff has not established a violation of his rights.**

Even taking all the Plaintiff's allegations as true, the Plaintiff's Amended Complaint fails to allege facts sufficient to overcome Sheriff Owens's qualified immunity defense. The Plaintiff argues that he alleged that Sheriff Owens stated that he placed the Plaintiff in the "hole" for Sheriff

Owens's protection, not the Plaintiff's protection.  Even so, the protection of officers is clearly a legitimate peneological purpose for administratively segregating an inmate.  <u>Royal v. Clark</u>, 447 F.2d 501, 501 (5th Cir. 1971)[1] (holding that administrative segregation of an inmate for two years was constitutional where the "segregation is required to ensure the safety of inmates and prison employees.").  Further, as to the Plaintiff's argument that the allegation that the Plaintiff complained of bugs in his food supports an inference that bugs were actually in the food is unsupportable because only the facts as pled and "reasonable inferences therefrom are taken as true." <u>Bickley v. Caremark RX, Inc.</u>, 2006 WL 1746928, *2 (11th Cir. 2006).  The Plaintiff, as master of his Amended Complaint, had the opportunity to allege that bugs were in his food but did not do so.  The absence of such an allegation coupled with the Plaintiff's allegations that he was hallucinating and was seeing "dead people" cannot lead to a reasonable inference that there were bugs in the Plaintiff's food.  (Doc. 42 at ¶¶ 15 and 27.)

The Plaintiff argues because it is obvious that conditions as pled establish a serious health risk, he is not required to allege that he was seriously injured as a result of the alleged conditions of confinement.  However, the United States Supreme Court has held that a significant injury (not just a serious health risk) is required in order to sustain a conditions of confinement claim. <u>Porter v. Nussle</u>, 534 U.S. 516, 528 (2002); <u>see also</u> <u>Copeland</u>, 87 F.3d at 268 (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation).  Even considering the totality of the circumstances in the instant case, the Plaintiff has still not alleged that he suffered *any* injury as a result of the allegations made the basis of his Amended Complaint.  Accordingly, the Plaintiff cannot sustain conditions of confinement claim.

---

[1] <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).

      **b.**     **The case law cited by the Plaintiff does not satisfy his burden of providing the Court with clearly established law.**

The Plaintiff argues that the cases cited by the Defendant do not show that the totality of the conditions of confinement did not rise to the level of a constitutional violation.  However, the Plaintiff has failed to offer any case law which is analogous to the facts as pled where a constitutional violation was found.  Thus, the Plaintiff's burden has not been met.  The Plaintiff cites three cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens with respect to the conditions at the Coosa County Jail.  (Doc. 56 at pp. 25-28, citing Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974); Hope, 536 U.S. at 742; and Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).)  However, these cases do not support the Plaintiff's position.  In fact, these cases and subsequent cases actually cut against the Plaintiff's claims.

It is remarkable that the Plaintiff compares himself to the inmates who brought suit in Gates.  As alleged in Gates, inmates were placed in a dark cell, naked, without any hygienic materials, bedding, adequate food or heat, or an opportunity for cleaning either themselves or the cell.  501 F.2d at 1305.  The Plaintiff here does not allege he was kept in "the hole" naked.  (See generally Doc. 42.)  The Plaintiff does not allege "the hole" was without light or that he was denied adequate food.  Id.  The Amended Complaint does not allege that the Plaintiff's cell was not cleaned.  Id.  The Plaintiff actually alleges that he was provided with bedding.  Id. at ¶ 9.  The Plaintiff's argument that the bedding provided in this case is "objectively worse" than the facts in Gates – including the absence of bedding – because the Plaintiff was sick and had recent back injuries is unsupportable, especially where there is no allegation that the bedding provided to the Plaintiff aggravated his back

injury.  The Plaintiff alleges that he was given an opportunity to shower.  <u>Id.</u> at 13.  By implication, the Plaintiff alleges that he was given access to some hygiene, albeit infrequently.[2]  <u>Id.</u>

The facts of the instant case are so dissimilar from those in <u>Gates</u> that the Fifth Circuit's case cannot possibly clearly establish either a violation of the instant Plaintiff's rights or provide the fair warning required.  Moreover, any commentary as to the constitutionality of the conditions in <u>Gates</u> is pure dicta as that Court noted:

> ***The sole argument on appeal is that the state lacks the financial ability to implement the district court's order within the time schedule designated***, and that therefore, the court exceeded its jurisdiction in ordering the total elimination of the armed trusty system, the improvement of the physical facilities, the classification of inmates, the implementation of inmate protection procedures, and emendation of medical facilities.  More specifically, the appellants' argument is that after the entry of the judgment they immediately promulgated conforming rules and regulations concerning the censorship of mail, use of corporal punishment, the discipline of inmates, and disciplinary confinement, but lacked the funds to effectuate the other portions of the judgment in accordance with the time guidelines specified. It is important to note that the appellants do not challenge, for example, the court's holding that equal protection requires reclassification of the inmates on a basis other than race or that the Eighth Amendment requires improvements in the physical and medical facilities at Parchman and the elimination of the trusty system. The appellants did not deny the unconstitutionality of their previous operation and administration of Parchman and do not now controvert the constitutional mandate for the reforms ordered. Rather ***their sole argument is that they do not have the financial capacity to effectuate these reforms***. To reiterate, appellants do not challenge a single finding of fact or conclusion of law by the trial court.

501 F.2d at 1299 (emphasis added).  <u>Gates</u> was ***not*** a § 1983 case seeking money damages.  The inmates there sought equitable relief for unchallenged claims of unconstitutional conditions. Qualified immunity was not an issue.  Accordingly, as <u>Gates</u> is factually, legally, and procedurally dissimilar to the instant case, it cannot assist the Plaintiff in overcoming either of his qualified immunity burdens.

---

[2] Plaintiff appears to have tried to track the "magic language" of <u>Gates</u> in his Amended Complaint with the result that the factual allegations of the Complaint are internally inconsistent.  For example, in paragraph 13, the Plaintiff alleges that the individual defendants "knew that plaintiff was without basic hygiene for extended periods of time but denied him access to basic hygiene."  While the latter to words mirror the absolute denial language in <u>Gates</u>, the phrase "extended period of time" indicates that the Plaintiff received some access to hygiene.  Furthermore, in the same paragraph, the Plaintiff alleges that he sometimes went without showers for days – thereby implying that he actually received showers and negating the claim that he was denied "access to basic hygiene."

The Plaintiff also improperly relies on <u>Hope</u> with respect to his drinking water claim. According to the Amended Complaint, the Plaintiff was without water "for hours at a time" while in his cell. Leaving aside that this phrase is impermissibly vague under the heightened pleading standard, the Plaintiff's situation does not come close to that faced by the inmate in <u>Hope</u>. Specifically:

> [Hope] took a nap during the morning bus ride to the chain gang's worksite, and when it arrived he was less than prompt in responding to an order to get off the bus. An exchange of vulgar remarks led to a wrestling match with a guard. Four other guards intervened, subdued Hope, handcuffed him, placed him in leg irons and transported him back to the prison where he was put on the hitching post. ***The guards made him take off his shirt, and he remained shirtless all day while the sun burned his skin***. He remained attached to the post for approximately seven hours. ***During this 7-hour period, he was given water only once or twice and was given no bathroom breaks. At one point, a guard taunted Hope about his thirst. According to Hope's affidavit: "[The guard] first gave water to some dogs, then brought the water cooler closer to me, removed its lid, and kicked the cooler over, spilling the water onto the ground.***"

536 U.S. at 734-35 (footnotes omitted; emphasis added).

Clearly, the instant Plaintiff did not face even remotely similar conditions. He was inside. He had clothes on. He was not exposed to the sun in hot temperatures. The guards did not taunt him by giving water to a dog. The Plaintiff was not shackled to a hitching post. (<u>See generally</u> Doc. 42.)

The Plaintiff also asserts that the <u>Hope</u> court cited Eleventh Circuit precedent as establishing "that the denial of drinking water to an inmate violates clearly established constitutional law." (Doc. 56 at p. 27.)[3] According to the Plaintiff, the Eleventh Circuit has held that denial of drinking water for as much as two hours violates a prisoner's constitutional rights. <u>Id.</u> (naming, without a specific citation, <u>Hope</u> and <u>Ort v. Wright</u>, 813 F.2d 318 (11th Cir. 1987)). However, what <u>Hope</u> and <u>Ort</u> actually say is radically different:

---

[3] The Plaintiff does not give a citation to either <u>Hope</u> or the Eleventh Circuit precedent in his brief for this proposition.

18

> ***The reasoning, though not the holding***, in a case decided by the Eleventh Circuit in 1987 sent the same message to reasonable officers in that Circuit. ***In Ort v. White, 813 F.2d 318, the Court of Appeals held that an officer's temporary denials of drinking water to an inmate who repeatedly refused to do his share of the work assigned to a farm squad "should not be viewed as punishment in the strict sense, but instead as necessary coercive measures undertaken to obtain compliance with a reasonable prison rule, i.e., the requirement that all inmates perform their assigned farm squad duties."*** <u>Id.</u>, at 325. "The officer's clear motive was to encourage Ort to comply with the rules and to do the work required of him, after which he would receive the water like everyone else." <u>Ibid</u>. ***The court cautioned, however, that a constitutional violation might have been present "if later, once back at the prison, officials had decided to deny [Ort] water as punishment for his refusal to work."*** <u>Id.</u>, at 326. ***So too would a violation have occurred if the method of coercion reached a point of severity such that the recalcitrant prisoner's health was at risk.*** <u>Ibid</u>. ***Although the facts of the case are not identical, Ort's premise is that "physical abuse directed at [a] prisoner after he terminate[s] his resistance to authority would constitute an actionable eighth amendment violation."*** <u>Id.</u>, at 324. This premise has clear applicability in this case. Hope was not restrained at the worksite until he was willing to return to work. Rather, he was removed back to the prison and placed under conditions that threatened his health. Ort therefore gave fair warning to respondents that their conduct crossed the line of what is constitutionally permissible.

<u>Hope</u>, 536 U.S. at 743 (emphasis added).

Neither <u>Hope</u> nor <u>Ort</u> stand for the proposition that a denial of drinking water for two hours violates an inmate's rights *per se*, as the Plaintiff would have the Court believe. In fact, the Eleventh Circuit specifically held that a two-hour denial of water under the facts of that case ***was constitutionally permissible***. 813 F.2d at 325. With respect to <u>Hope</u> it was not the denial of drinking water while the inmate refused to work, but the continued denial of water and other "punishments" back at the prison that constituted the violation of clearly established law. 536 U.S. at 743 (citing <u>Ort</u>, 813 F.2d at 324).

Put into the context of the instant case, the Plaintiff's Amended Complaint would have to contain allegations that the denial of drinking water was (1) punishment designed to obtain compliance that was continued after the Plaintiff ceased being noncompliant; or (2) placed his health at risk. <u>Hope</u>, 536 U.S. at 743 (citing <u>Ort</u>, 813 F.2d at 324). The Amended Complaint contains no such allegations. The entirety of the Plaintiff's water allegations with respect to this

Defendant is that the Plaintiff "repeatedly called for water to drink but was not given water for hours at a time so that [he] was constantly thirsty. [Defendant Owens was] aware that the plaintiff was without water for hours at a time but did not provide it to him." (Doc. 42 at ¶ 12.)

Nowhere does the Amended Complaint allege that the denial of water was punishment to obtain compliance that was continued after the Plaintiff complied. Nowhere does the Amended Complaint allege that the alleged denial of drinking water "for hours at a time" placed his health at risk. (See generally Doc. 42.) The Plaintiff's failure to plead necessary facts is fatal to his claims in light of the heightened pleading standard. See, e.g., Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

The Plaintiff next turns to Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991) to support his jail conditions claims. The Chandler court did allow an inmate's hygiene and cold temperature claims to proceed. 926 F.2d at 1065. However, this case, too, is easily distinguishable on both its facts and the law upon which it relies.

With respect to the facts, the allegations in Chandler were far more specific than those of the instant case. Inmate Chandler averred that the temperature of his cell was as low as 60 degrees and was "ice cold". 926 F.2d at 1063. He also alleged that he was given no clothing except for undershorts and was forced to sleep huddled with a roommate between two mattresses to stay warm. Id. Chandler also made specific hygiene-related allegations. He claimed that he was deprived of toilet paper for three days, running water for two days, and soap, toothbrush, and toothpaste altogether. Id.

Here, there are no allegations as to the temperature in the Plaintiff's cell.[4] He has not alleged that he was deprived of clothing. (See generally Doc. 42.) As noted previously, the

---

[4]The Plaintiff has added new "facts" that contradict his previous fact. In paragraph 31, the Plaintiff now alleges that he became "extremely cold laying on the concrete floor." However, he continues to allege elsewhere that he was provided with a mat. (Doc. 42 at ¶ 9.)

Plaintiff has alleged by implication facts that show he was given access to a shower, thereby gutting his conclusory allegation that he was deprived of basic hygiene.  Id. at ¶ 13.

Chandler is also distinguishable from the perspective of the law relied upon by the Eleventh Circuit in two ways.  First, the Eleventh Circuit rejected a case that was factually distinguishable from the allegations it faced but that was on point with respect to the instant Plaintiff's claims. Second, there has been a fundamental shift in the way Eighth Amendment claims are analyzed since the Chandler decision.

First, the Chandler court examined McMahon v. Beard, 583 F.2d 172 (5th Cir. 1978), and found it distinguishable.  In McMahon, the Fifth Circuit found no constitutional violation where an inmate was kept in solitary confinement without clothes, mattress or blankets for three months.  583 F.2d at 175.  The Chandler court found that McMahon was distinguishable because unlike Chandler, the inmate in McMahon was placed in isolation because he had attempted suicide, was seen by medical personnel during the relevant period, and was eventually given paper clothes.  926 F.2d at 1064.

Similarly, in the instant case, the allegations make it clear that the Plaintiff was placed in "the hole" due to his propensity to fall over things in the general population cells.  (Doc. 42 at ¶¶ 6, 7, 9.)  The Plaintiff received medical attention an average of once per week during his incarceration. Id. at ¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (treatment by a doctor for skin rash on 1/7/04 and trip to hospital on 1/16/04).  Finally, he was removed from the jail altogether and put in the hospital.  Id. at ¶ 21.  Under McMahon, therefore the Plaintiff has failed to state a claim.

Second, the legal analysis used by the Chandler court has changed.  Interestingly, the change was noted in another lawsuit filed by the same plaintiff.  Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004).  In Crosby, the Eleventh Circuit rejected Chandler noting:

We do not find Chandler to be controlling here. First, the Chandler court, in rendering its judgment on qualified immunity, was concerned entirely with the law related to excessive cold claims; the court had no opportunity to treat an excessive heat or inadequate ventilation claim. Second, the Chandler court did not have the benefit of the Supreme Court's rulings in Wilson [v. Seiter, 501 U.S. 294 (1991)], Hudson [v. McMillian, 503 U.S. 1 (1992)], Helling [v. McKinney, 509 U.S. 25 (1993)], or Farmer [v. Brennan, 511 U.S. 825 (1994)]. It was in these cases that the Court refined the Eighth Amendment framework that governs our present cases. See supra Part III.A.

The Chandler court did have the benefit of Estelle and Rhodes, but these foundational cases did not fully establish the current Eighth Amendment framework. Estelle held "that deliberate indifference to serious medical needs of prisoners constitutes" an Eighth Amendment violation. 429 U.S. at 104, 97 S.Ct. at 291. This ruling was landmark but limited. Indeed, the Rhodes Court, writing nearly five years after Estelle, stated,

> until this case, we have not considered a disputed contention that the conditions of confinement at a particular prison constituted cruel and unusual punishment. Nor have we had an occasion to consider specifically the principles relevant to assessing claims that conditions of confinement violate the Eighth Amendment.

452 U.S. at 345, 101 S.Ct. at 2398 (footnote omitted).

Rhodes applies more broadly to all conditions of confinement. See supra Part III.A. Nonetheless, it was not until after Chandler that the Supreme Court clearly delineated the objective and subjective components of Eighth Amendment claims. See Wilson, 501 U.S. at 303, 111 S.Ct. at 2327 (adopting a "deliberate indifference" standard for the subjective component); Farmer, 511 U.S. at 847, 114 S.Ct. at 1984 (holding that a prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"). Furthermore, it was not until after Chandler that the Supreme Court held that a prisoner "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [a condition] that pose[s] an *unreasonable risk of serious damage to his future health*." Helling, 509 U.S. at 35, 113 S.Ct. at 2481 (emphasis added).

The "severe discomfort" language from Chandler *appears to be an anomaly in our jurisprudence*. A quick Lexis search reveals that, after Chandler, *we never again used that phrase in deciding an Eighth Amendment challenge*. We have routinely used language found in the Supreme Court's post-Chandler cases, however. See, e.g., Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) ("A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." (citing Helling, 509 U.S. at 32-33, 113 S.Ct. at 2480)); Bass, 170 F.3d at 1317 ("Wantonness has been defined as 'deliberate indifference to a substantial risk of serious harm to a prisoner.'" (quoting Farmer, 511 U.S. at 836, 114 S.Ct. at 1978)). *In the end, the Supreme Court's*

***holdings, rather than the obsolete and potentially irrelevant phraseology of <u>Chandler</u>, must govern our analysis***.

379 F.3d at 1296-97 (emphasis added).

In other words, <u>Chandler</u> was decided prior to the Supreme Court's imposition of the more demanding deliberate indifference standard containing both an objective and subjective component. The Plaintiff can no longer get by on a mere showing that a given condition caused objective "severe discomfort." The Plaintiff must show that objectively the condition posed "an ***unreasonable*** risk of ***serious*** damage to his future health" and that Sheriff Owens was aware not just of the condition but that it posed such a risk. <u>Helling</u>, 509 U.S. at 32-33.

The Plaintiff's Amended Complaint falls well short of this standard. While he does allege various conditions of his confinement, with the exception of his medical claim, he does not allege that any of them resulted or could have resulted in serious damage to his future health. (<u>See</u> <u>generally</u> Doc. 42.) While he alleges that Sheriff Owens was aware of the conditions, he does not allege that Sheriff Owens was aware that the conditions posed an unreasonable risk of serious damage to his health. <u>Id.</u> Consequently, the Plaintiff has failed to allege a viable conditions claim.

### 3.     <u>Sheriff Owens Did Not Violate the Plaintiff's Constitutional Rights by a Failure to Stop Abuse.</u>[5]

With respect to the Plaintiff's "Failure to Stop Abuse" claims, the Plaintiff cites four cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens. (Doc. 56 at pp. 31-33 citing <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992); <u>Gates v. Collier</u>, 501 F.2d 1291 (5th Cir. 1974); <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003); and <u>Young v. Augusta</u>, 59 F.3d 1160 (11th Cir. 1995).) However, these cases do not, as the

---

[5] The Plaintiff's argument in this section so completely intertwines his twin qualified immunity burdens that it is impossible to separate them. Therefore, for purposes of the failure to stop abuse claims, Sheriff Owens will deal directly with the case law cited by the Plaintiff.

Plaintiff suggests, establish that there was a constitutional violation in the case at bar, nor do they establish the existence of fair warning.

The case of <u>Hudson v. McMillian</u>, does nothing to advance the Plaintiff's argument that Sheriff Owens should be held liable for failing to stop abuse allegedly received at the hands of jail officers. In <u>Hudson</u>, the defendants were two corrections officers as well as a supervising corrections officer. 503 U.S. at 4. The evidence was that the two corrections officers beat the inmate and that the supervising corrections officer "watched the beating but merely told the officers 'not to have too much fun.'" <u>Id.</u> The Court held that the supervising officer "expressly condoned" the actions of the corrections officers. In the instant case, there is no allegation that Sheriff Owens ever witnessed any of the alleged acts of abuse, much less "expressly condoned" such abuse. Accordingly, the <u>Hudson</u> case cannot be relied on by the Plaintiff in the instant case to show evidence of a constitutional violation. Nor can the Plaintiff show that the facts in <u>Hudson</u> are materially similar to the facts of the instant case as would provide fair warning to Sheriff Owens that his conduct was unlawful.

As noted previously, <u>Gates v. Collier</u>, is factually, legally, and procedurally dissimilar to the instant case. In <u>Gates</u>, the Court found that the prison superintendent *acquiesced* in the following:

> . . . administering milk of magnesia as a form of punishment, stripping inmates of their clothes, turning the fan on inmates while naked and wet, depriving inmates of mattresses, hygienic materials, and adequate food, handcuffing inmates to the fence and to cells for long periods of time, shooting at and around inmates to keep them standing or moving, and forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods.

501 F.2d at 1306. In the Plaintiff's Amended Complaint, the allegations are not even close to rising to the level of the conditions found in the <u>Gates</u> case. Additionally, there is no allegation in the Plaintiff's Amended Complaint that Sheriff Owens *acquiesced* in any such treatment of the Plaintiff.

Plaintiff also cites <u>Cottone v. Jenne</u> in support of his position.  However, in <u>Cottone</u>, the Court, on the defendants' motion to dismiss, granted qualified immunity to the supervisory defendants because the complaint failed to allege the causal connection required to impose supervisory liability against them.  Clearly, <u>Cottone</u> does nothing to bolster the Plaintiff's argument, but instead gives credence to the Defendant's argument that no constitutional violation has been established.  Just like in <u>Cottone</u>, in the instant case the Plaintiff has failed to allege the causal connection required to impose liability upon Sheriff Owens.  Therefore, this Court should, as the court in <u>Cottone</u> did, dismiss the Plaintiff's Amended Complaint against Sheriff Owens.

Finally, the Plaintiff cites <u>Young v. Augusta</u> to support his contention that Sheriff Owens violated his clearly established rights.  The <u>Young</u> opinion, however, was solely focused on determining whether to impose municipal liability for the "inadequate selection and training of employees." <u>Young</u>, 59 F.3d at 1163.  There was absolutely no discussion of whether liability should be imposed on an individual supervisor.  Certainly, there was no discussion of qualified immunity in the <u>Young</u> case. Clearly, a municipal liability decision regarding inadequate selection and training of employees cannot provide the fair warning necessary to satisfy the Plaintiff's burden in the qualified immunity analysis of a failure to stop abuse claim. Further, the facts in <u>Young</u> are easily distinguishable from the facts in the instant case.  In <u>Young</u> the plaintiff was "stripped naked and chained to the metal bed, which contained no mattress. She was shackled in such a way that she could not reach the toilet and was forced to eliminate her bodily wastes where she sat on the floor." <u>Young</u>, 59 F.3d at 1164.  She was also maced by male and female guards while chained to the bed.  <u>Id.</u>   In the instant case, there is no allegation that the Plaintiff was naked or chained to a bed.  There is also no allegation that the Plaintiff was maced while naked and chained to a bed.  Clearly, the facts in <u>Young</u> are so far removed from the facts

as alleged in the instant case that this case is completely irrelevant in either prong of the qualified immunity analysis.

### 4. Sheriff Owens Did Not Violate the Plaintiff's Constitutional Rights by a Failure to Train.[6]

With respect to the Plaintiff's "Failure to Train" claims, the Plaintiff cites five cases that he asserts demonstrate that Sheriff Owens violated his clearly established rights and provided fair warning to Sheriff Owens. (Doc. 56 at pp. 34-36 citing Young v. Augusta, 59 F.3d 1160 (11th Cir. 1995); Rivas v. Freeman, 940 F.2d 1491 (11th Cir. 1991); Goodson v. City of Atlanta, 763 F.2d 1381 (11th Cir. 1985); Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003)[7]: and Valdes v. Crosby, 390 F.Supp. 2d 1084 (M.D. Fla. 2005)).

Initially, Sheriff Owens notes that the Valdes case carries absolutely no weight in the clearly established prong of the qualified immunity analysis, and it is not even binding authority as to the question of whether a constitutional violation has occurred. See Jenkins, 115 F.3d at 827 n.4 ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose"); see also Powers v. CSX Transp., Inc., 105 F.Supp. 2d 1295 (S.D.Ala. 2000) (holding Florida district court opinion not relevant to qualified immunity analysis). Furthermore, the facts of the Valdes case are so extreme – Valdes involved a claim that corrections officers beat an inmate to death – that the case is far from materially similar to the facts of the instant case.[8]

---

[6] Again, Sheriff Owens is required to address the Plaintiff's argument in the context of the cases cited.

[7] As set forth in the previous section, in Cottone, the Court, on the defendants' motion to dismiss, granted qualified immunity to the supervisory defendants because the complaint failed to allege the causal connection required to impose supervisory liability against them. Accordingly, the Cottone case does nothing at all to support the Plaintiff's position.

[8] Interestingly, the Valdes court, like the instant Plaintiff, did not address the mandatory authority in Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (holding that there is no supervisory liability where the conduct engaged in by a subordinate is obviously illegal).

As pointed out in the previous section, the <u>Young</u> case involved only the issue of whether or not to impose municipal liability. There was absolutely no discussion of whether liability should be imposed on an individual supervisor. Certainly, there was no discussion of qualified immunity in the <u>Young</u> case. Further, as set forth above, the facts in <u>Young</u> are so far removed from the facts as alleged in the instant case that this case is completely irrelevant in either prong of the qualified immunity analysis.

In <u>Rivas v. Freeman</u>, the Court found that the sheriff "knew of prior instances of mistaken identity, but allowed his deputies to detain individuals even where discrepancies existed." The Court also found that the sheriff failed "to adequately train his officers regarding reliable identification techniques" and failed "to properly account for incarcerated suspects." <u>Rivas</u>, 940 F.2d at 1495-1496. The Court held that there was sufficient evidence to show that the Sheriff's actions caused the Plaintiff's injuries. The allegations in the instant case are completely dissimilar.

In the Plaintiff's Amended Complaint, he alleges that Sheriff Owens failed to train the officers with regard to providing medication and referring inmates to receive medical treatment. (Doc. 42 at ¶ 48.) The Plaintiff also alleges that Sheriff Owens failed to provide training regarding treatment and mistreatment of prisoners. <u>Id.</u> at ¶ 57. None of these types of training were discussed in <u>Rivas</u>. Furthermore, the Plaintiff does not sufficiently allege a claim for failure to train or that any alleged failure to train caused the Plaintiff's injuries. According to the Amended Complaint, the Plaintiff was also evaluated and/or received treatment by medical/mental health professionals on no less than *six* occasions – an average of almost once a week. <u>Id.</u> at ¶ 6 (two visits), 7 (trip to hospital after a fall), 23 (dentist), 32 (treatment by a doctor for skin rash on 1/7/04 and trip to hospital on 1/16/04). Clearly, any alleged failure to train jail staff with regard to medical care did not cause any injury as the Plaintiff was, in fact, given

27

medical care.  Further, the <u>Rivas</u> case involved a specific area wherein training was lacking. Therefore, the allegation – that the Sheriff failed to train officers regarding the mistreatment of prisoners – is so broad that it could not possibly be implicated by <u>Rivas</u> and clearly does not meet the heightened pleading standard applicable to this claim.  Certainly, this case does not satisfy the Plaintiff's burden of showing clearly established law gave Sheriff Owens's fair warning in this case.

In <u>Goodson v. City of Atlanta</u>, the Atlanta Bureau of Corrections had warned the jail supervisor regarding "irresponsible correctional officers and requested the discipline of the same."  763 F.2d at 1387.  However, the jail supervisor refused to discipline the officers and refused to take any corrective action.  In the instant case, there is no allegation that Sheriff Owens failed to take any corrective action with regard to alleged violations of which he was aware.  Accordingly, the <u>Goodson</u> case cannot show the existence of a constitutional violation, nor can it provide fair warning to Sheriff Owens that his alleged conduct was unlawful.

### B.    The Plaintiff's Reliance on <u>Hope v. Pelzer</u> is Misplaced.

The Plaintiff devotes several pages of his opposition to the United States Supreme Court's <u>Hope v. Pelzer</u> decision.  (Doc. 56 at pp. 12-14 citing 536 U.S. 730 (2002).)  However, as noted in Sheriff Owens's principal brief, and as explained by the Eleventh Circuit itself, <u>Hope</u> "did not change the preexisting law of the Eleventh Circuit much."  <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1300 (11th Cir. 2003).  The Plaintiff must still either point to a materially similar case or demonstrate the conduct complained of was unconstitutional with "obvious clarity."  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  This statement of the Eleventh Circuit's "clearly established law" jurisprudence was recognized by Justice Thomas in rejecting the <u>Hope</u> majority's "rigid gloss" language relied upon by the Plaintiff:

> Although the Court argues that the Court of Appeals has improperly imposed a "rigid gloss on the qualified immunity standard," ante, at 2515, and n.9, requiring

28

that the facts of a previous case be materially similar to a plaintiff's circumstances for qualified immunity to be overcome, this suggestion is plainly wrong. Rather, this Court of Appeals has repeatedly made clear that it imposes no such requirement on plaintiffs seeking to defeat an assertion of qualified immunity. See, e.g., Priester v. Riviera Beach, 208 F.3d 919, 926 (C.A.11 2000) (stating that qualified immunity does not apply if an official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without case law on point" (internal quotation marks omitted)); Smith v. Mattox, 127 F.3d 1416, 1419 (C.A.11 1997) (noting that a plaintiff can overcome an assertion of qualified immunity by demonstrating "that the official's conduct lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw"); Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150, n.4 (C.A.11 1994) ("[O]ccasionally the words of a federal statute or federal constitutional provision will be specific enough to establish the law applicable to particular circumstances clearly and to overcome qualified immunity even in the absence of case law").

536 U.S. at 754 (Thomas, J. dissenting).

In other words, the Plaintiff, even post-Hope, still has the burden of showing that Sheriff Owens was on notice that his conduct was crossing a constitutional bright line, and most often this will require a pre-existing factually similar case. "[P]reexisting, factually similar cases are – not always, but (in our experience) usually – needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights." Id. at 1303.

As noted above, the cases relied upon by the Plaintiff are not materially similar. Furthermore, as the cases clearly demonstrate – and the Plaintiff apparently concedes as he has not argued the point – this is not an obvious clarity case. Accordingly, even if the Amended Complaint alleged sufficient facts to show Sheriff Owens violated the Plaintiff's federally protected rights, no clearly established law provided the requisite fair warning. To the contrary, as noted in Sheriff Owens's principal brief, instead of condemning his conduct, the relevant clearly established law demonstrates that Sheriff Owens did not violate the Plaintiff's rights. See, e.g., City of Revere, 463 U.S. at 246; Hamm, 774 F.2d at 1575; Camberos, 73 F.3d at 176; Davenport, 844 F.2d at 1316-17; French, 777 F.2d at 1255; Sewell, 117 F.3d at 490. Consequently, even if the Court were to

conclude that the Amended Complaint set forth constitutional violations against Sheriff Owens, he is nonetheless entitled to a dismissal of the Plaintiff's individual capacity claims against him as Sheriff Owens did not have the requisite fair warning to hold him liable under § 1983.

## CONCLUSION

Based upon the foregoing as well as the arguments as set forth in his Motion to Dismiss the Plaintiff's Amended Complaint and Brief in support of same, Sheriff Owens requests that the Court issue an Order dismissing him from this action and awarding attorney's fees pursuant to law and 42 U.S.C § 1988.

Respectfully submitted this 10th day of July, 2006.

> **s/Gary L. Willford, Jr.**
> KENDRICK E. WEBB – Bar No. WEB022
> GARY L. WILLFORD, JR. – Bar No. WIL198
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7474 Halcyon Pointe Road (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Richard J. Stockham, III**; **Kristi A. McDonald**, and **Stephen Michael Doyle**.

> **s/Gary L. Willford, Jr.**
> OF COUNSEL

30