IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL BRYAN KELLY,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        2:05-CV-1150-MHT-DRB
                                   )        [wo]
RICKY OWENS, et al.,               )
                                   )
        Defendants.                )


**RECOMMENDATION OF THE MAGISTRATE JUDGE**

After considering all submissions on *Defendant Coosa County Commission's Motion to Dismiss Plaintiff's Amended Complaint* (Doc. 45), the Magistrate Judge concludes that the *Motion* is due to be granted in its entirety.

## I.    PROCEDURAL BACKGROUND

Daniel Bryan Kelly ("Kelly") filed this 42 U.S.C. § 1983 action on December 6, 2005, to remedy inadequate medical care and physical abuse he allegedly suffered as a pretrial detainee in the Coosa County Jail from November 13, 2003 until January 16, 2004.   Designated defendants are Coosa County Sheriff Ricky Owens ("Sheriff Owens") and sheriff's deputies Al Bradley ("Dep. Bradley"), Terry Wilson ("Dep. Wilson"), and Wendy Roberson ("Dep. Roberson"), all sued individually and in official capacities;   Doctor Randall Weaver ("Dr. Weaver"), sued individually and in his official capacity as medical doctor for Coosa County Jail;   and the Coosa County Commission ("the Commission").

All defendants except Dr. Weaver responded to the complaint with dismissal motions.[1] For good cause made apparent during requested oral argument on Sheriff Owens' dismissal motion, the court allowed Kelly to file the First Amended Complaint docketed on May 22, 2006 (Doc. 42, "Complaint") and denied the dismissal motions without prejudice (Doc. 41). Defendants filed anew their motions to dismiss, and all are now submitted on briefs. For the sake of clarity, the court examines the merit of these motions in separate Recommendations.

The *Defendant Commission's Motion to Dismiss,* filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is submitted on its *Motion* (Doc. 45) and *Brief* (Doc. 46), *Plaintiff's Opposition* (Doc. 55), the *Commission's Reply* (Doc. 59), and the *Commission's Supplement to its Motion to Dismiss* (Doc. 65), filed "to include as additional supports the arguments and law cited by Defendant Dr. Weaver in his summary judgment motion."

## II.  FACTUAL ALLEGATIONS

Kelly invokes federal question jurisdiction on asserted claims under the Eighth and Fourteenth Amendments of the United States Constitution (Counts I -V), and asserted state court claims rest on ancillary or pendent jurisdiction (Counts VI-IX). He seeks compensatory and punitive damages, declaratory relief, injunctive relief, a reasonable attorneys' fee, and costs. The factual summary which follows is grounded on the "allegations of fact" stated in paragraphs 4-41 of his Complaint.

---

[1] *Defendant Coosa County Commission's* Motion to Dismiss, filed on January 12, 2006, with a supporting brief (Docs. 12 and 13); *Defendant Sheriff Owens'* Motion to Dismiss, filed on January 13, 2006, with a supporting brief (Docs. 14 and 15); Motion to Dismiss Official Capacity Claims, filed with a supporting brief by *Deputies Bradley, Wilson, and Roberson* on January 25, 2006 (Docs. 16 and 17).

When "placed as a pretrial detainee in the Coosa County Jail on November 13, 2003" (¶ 4), Kelly and his parents told "the defendants" (not otherwise named) about his "extensive medical history":

> that he suffered from a Bipolar disorder and had recently been in treatment for that; that he was under medication and under a doctor's care for his bipolar condition; that [he] had a history of lower back pain and a degenerative disc problem in his lower back for which he had surgery; that [he] had a history of migraine headaches; that [he] was on medication, without which he would suffer seizures.

(¶ 5).  Notwithstanding this notice, Defendants did not then provide either medication or medical treatment.

About two weeks later, a mental health professional evaluated Kelly after Defendants observed his seizures, notified the defendant Sheriff and his deputies on November 25 of the seriousness of his seizures and recommended further evaluation. These named defendants "informed defendant [Dr.] Weaver of plaintiff's serious medical condition", and Dr. Weaver treated him for back and leg injuries stemming from a fall.  Before Kelly fell again on December 5, and was taken to Russell Hospital for treatment, he had grown "increasingly disoriented" and the Sheriff and deputy defendants knew that he had suffered more seizures.

Upon Kelly's return from the hospital, Sheriff Owens decided, "for his (Owens') protection" to place him in a solitary cell known as "the hole" and so informed Kelly's family. Kelly's constitutional claims target these conditions he suffered inside the solitary cell from December 6, 2003 until January 16, 2004:

> being required...to sleep on the cell concrete floor on a thin plastic mat... (¶ 9); ...The only facility for urinating or defecating was a hole in the center of the floor beside his plastic pallet . . .The drain hole had to be flushed by jail staff from outside "the hole" and defendants Owens, Wilson, Roberson, and Bradley did not flush it or cause it to be flushed for hours at a time (¶ 10). . . Plaintiff was not provided toilet

3

paper. ...(¶ 11)

Plaintiff repeatedly called for water to drink but was not given water for hours at a time...(¶ 12)

Plaintiff was denied access to a shower or means to carry out personal hygiene for extended periods, and on several occasions, for days at a time. (¶ 13) . . . he was not allowed out for exercises. . .(¶ 14)

Plaintiff repeatedly requested that he be provided medication and to be taken to a doctor because he was in pain and suffering from seizures. Defendants Owens, Wilson, Roberson and Bradley were aware . . . but did not respond to his request nor did they provide medication or medical treatment at the time that he was requesting it. . . (¶ 15)

Kelly avers that Defendants "were aware of [his] deteriorating physical and mental condition but did not call a doctor or provide access to personal hygiene or water." (¶ 17; see also ¶ 20).

Kelly also contends that Dep. Bradley "assaulted him on several occasions, beginning shortly after he was placed ["in the hole"] and continuously up until shortly before he was taken to Russell Hospital on January 16, 2004." (¶ 21; see also ¶¶ 23, 28). Neither Deputies Wilson and Roberson nor Sheriff Owens responded to his complaints notwithstanding their purported awareness of the abuse by Bradley. (¶¶ 22, 24, 26). Kelly's diagnoses upon admission to the hospital on January 16, 2004, "included drug induced hepatitis, and drug poisoning." He claims to have been diagnosed "as suffering from Post Traumatic Stress Disorder" as a result of defendants' alleged treatment. (¶ 40).

Paragraphs 33-41 of the Complaint allege the purported factual basis for legal claims against the Coosa County Commission. Kelly cites the Code of Alabama, § 14-6-19 as the basis for duties, breached by the Commission, "to adequately fund" for prisoners both medical care and staff "to administer necessary medication." (¶ 33). He attributes to the Commission the hiring of Dr. Weaver to provide medical treatment for Coosa County jail inmates, and that hiring purportedly "established

4

[Dr.] Weaver as the final policymaker for medical treatment so that [his] conduct became the conduct of the ...Commission." (¶36). Kelly maintains that the Commission "knew of Defendant Weaver's gross incompetence, and failure to train or supervise medical treatment and disbursing of medication to prisoners" and also knew of his own medical condition "that required regular medication." (¶37). Finally, he represents the Commission's failure "to provide funds to maintain an adequate physical accommodation for habitation in 'the hole' at the Coosa County jail."(¶ 39).

## III. Rule 12(b)(6) DISMISSAL STANDARD

Dismissal pursuant to Rule 12(b)(6) is appropriate only if the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The threshold issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *accord*, *Swierkiewicz v. Sorema*, N.A., 515 U.S. 506, 515 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits"). The threshold is "exceedingly low" for a complaint to survive Rule 12(b)(6) scrutiny. *Ancata v. Prison Health Servs.,Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). The court must accept as true the plaintiff's factual allegations, draw all reasonable inferences in the plaintiff's favor, and construe the pleadings liberally so as to do substantial justice.

## IV. DISCUSSION

### A. **Federal Claims** (Counts I, II, III)

#### 1. *Contentions*

Counts I, II, and III of the Complaint charge the Commission with "deliberate indifference"

in the provision of medical care to Kelly, in violation of the Eighth and Fourteenth Amendments, by the following-described acts or omissions:

> • failing and/or refusing to obtain prompt or adequate medical treatment. . . and despite . . knowledge of plaintiff's worsening condition and pain, [defendants], took an easier though less effective treatment (Count I);
>
> • confronting plaintiff's serious medical condition with treatment that was so cursory as to amount to no treatment at all and . . .delay[ing] treatment for an unreasonable amount of time when it was apparent that delay would detrimentally exacerbate plaintiff's medical condition (Count II); and
>
> • placing [plaintiff] in "the hole" in excess of forty days. . . which, as constructed and maintained, was inadequate for human habitation (Count III).[2]

The Commission maintains that dismissal is warranted on these federal claims because (a) they are barred by the statute of limitations; (b) as a pretrial detainee the Plaintiff cannot state Eighth Amendment claims; ( c ) as a matter of law, Defendant Coosa County Commission, having no authority over the Coosa County Sheriff, the Sheriff's employees or the operations of the jail, cannot be held liable for policies or conduct of the Sheriff, his employees or jail operations; (d) the Commission has no duty under Alabama law to provide inmate medical care or prospectively fund such care or staff training; and/or (e) Dr. Weaver is not a final policymaker for Coosa County. (*Mot.* at 2).

### 2.    *Constitutional Predicate*

Accepting as true Kelly's self-described status as a pretrial detainee in the Coosa County Jail,

---

[2] The Commission discerns five federal claims: (a) deliberate indifference to a serious medical need by failing to provide medical care; (2) deliberate indifference to a serious medical need by delaying medical treatment; (3) failure to train jail staff to provide medication; (4) failure to train jail staff to recognize serious medical conditions; and (5) provision of inadequate jail conditions. (*Mot.*,Doc. 45, at 1).

the court analyzes his constitutional grievances about confinement conditions and medical care under the Fourteenth Amendment's due process clause, notwithstanding the absence of any meaningful difference in such analysis under the Eighth Amendment, which governs the rights of convicted inmates. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). Kelly insists that the Fourteenth Amendment governs only his claims for "money damages for past wrongs" and argues:

> Insofar as Plaintiff is seeking injunctive and declaratory relief, however, Plaintiff is maintaining his claims under the Eighth Amendment because he is now a convictd prisoner, and is likely to be subject to re-confinement in the Coosa County jail as a convicted prisoner. This is so because parole revocation is vested in the ciruit judge, here, the Coosa County Circuit Court.

*Pl.'s Br.* at 5. The argument merits short shrift as the complaint does not aver Kelly's dual status as a pretrial detainee and a convicted prisoner while it does report his transport from the jail to Russell Hospital on January 16, 2004; given the absence of any further report on re-confinement of conviction, the complaint itself negates his entitlement to any injunctive and declaratory relief. *See Am. Compl.*, Doc. 42, ¶ 32; *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir.1985), *citing Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir.1984).

### 3.   *Rule 12(b)(6) Analysis for Federal Claims*

For any claims not barred by the applicable statute of limitations[3], the dispositive inquiry is whether Kelly can maintain either his jail conditions or his medical care grievances against the Commission under 42 U.S.C. § 1983.[4]   To the extent such claims are premised on a theory of vicarious liability, he cannot.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115-16 (11th Cir. 2005).*

In *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288-1291 (11th Cir. 1998) the court *en banc* addressed squarely and in the context of a pretrial detainee's claim "whether an Alabama county can be held liable under 42 U.S.C. § 1983 for injuries befalling a county jail inmate arising from the sheriff's management of the jail." County commissioners cannot be held liable for actions undertaken during the daily operation of a county jail.   Alabama statutory authority delegates  to sheriffs the daily operational authority for county jails, and when engaged in that role, they are not county policymakers for purposes of Section 1983.   *Turquitt,* 137 F.3d at 1289 ("The Alabama Supreme Court has held that § 14-6-1 demonstrates that 'the sheriff's authority over the jail is totally

---

[3]While applicable, Alabama's  two-year statute of limitations for personal injury torts would not operate to bar the entire lawsuit filed December 6, 2005, since his complaints extend from November 13, 2003, through January 16, 2004. *See Def.'s Br.*(Doc. 46) at 3. Because the federal claims asserted cannot proceed against the Commission, as a matter of law, the court need not discuss Kelly's "continuing violation" argument (s*ee Pl.'s Br.* at 2-3) except to say that it lacks merit in the context of this 42 U.S.C. § 1983 claim.

[4]Any federal claim which survives dismissal would not entitle Kelly to the punitive damages requested against the Commission, which claims correctly its state law immunity from such damages. *See* Ala. Code §6-11-26(1975); *Harrelson v. Elmore County, Ala.*, 859 F.Supp. 1465, 1469 (M.D. Ala. 1994).  Moreover, it is well-settled that 42 U.S.C.§ 1983 bars punitive damage awards against local governmental entities.  *See, e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

independent of the [county commission].'" *King v. Colbert County*, 620 So. 2d 623, 625 (Ala. 1993)).

The Complaint fails to attribute to the Commission any actual responsibility for the reportedly culpable acts or failures of the sheriff and his deputies with respect to his suffering in "the hole" and his deficient medical treatment.  As explained in *Turquitt*:

> A local government may be held liable under § 1983 only for . . . "acts which the [local government] has officially sanctioned or ordered."  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986) (internal citations omitted). . . . [W]e first look to the analysis of the Supreme Court in *McMillian v. Monroe County*, 520 U.S. 781 (1997), in which the Court considered whether an Alabama sheriff was a state or a county policymaker for 1983 purposes when engaged in law enforcement activities.  To evaluate whether a local government is liable under §1983, a court must "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." (quotation omitted).

*Turquitt*, 137 F.3d at 1287.  A comprehensive review of relevant Alabama law – "including state and local positive law, as well as custom and usage having the force of law"– served to "persuade[]" the *Turquitt* court "that an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."  *Id.*  at 1288.

Kelly's "deliberate indifference to medical care" claims fail to state a valid claim against the Commission because his claims do not allege the Commission's responsibility for either the delay in rendering, or deficient rendering of medical care.[5]  Consequently, the holding in *Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001) governs:

---

[5]The Commission correctly questions whether the Complaint "eviscerate the denial and delay of medical care claims" alleged.  *See Def.'s Br.*  at 7; *see, e.g.*, *Am. Compl.* ¶ 6(reporting Kelly's evaluation by a mental health professional); ¶ 7 (reporting Kelly's hospital treatment following a fall); ¶30 (reporting medications to Kelly); ¶ 32 (reporting Kelly's hospitalization).  For the Commission's dismissal motion, however, the Court need not determine if Kelly has alleged sufficiently a "deliberate indifference" claim .

> [U]nder Alabama law the County is not responsible for assuring procedures are in place for inmates to get medial care. Alabama law assigns counties a "limited role in building and funding the jails." *See Turquitt v. Jefferson Cty.,Ala*.,137 F.3d 1285, 1290 (11ᵗʰ Cir. 1998) (en banc). Therefore, the county is not a responsible party for the alleged tort of deliberate indifference to Owens's medical needs. This claim was properly dismissed against the County.

268 F.3d at 1026 n.6.[6]

Kelly attempts to circumvent *Turquitt* and *Marsh* by underscoring the county's statutory

duties to fund jail operations, including inmate medical care and staff training to render such care.

The effort is unavailing.[7] Alabama statutes do impose on county commissions duties to erect and

---

[6]*See Willliams v. Limestone County,* No. 06-10957, 2006 U.S.App. LEXIS 24738, at *6 (11ᵗʰ Cir. Oct 2, 2006):

> We reject Williams' claims against Limestone County, as they find no support in the record and are without merit. Under Alabama law, Limestone County is not responsible for assuring procedures are in place for inmates to receive medical care. *See Marsh v. Butler County*, 268 F.3d 1014, 1026 n.6 (11ᵗʰ Cir. 2001). Rather, Alabama law assigns counties a "limited role in building and funding the jails." *See Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289-91 (11ᵗʰ Cir. 1998). Contrary to Williams' conclusory allegations, nothing in the record suggests (1) Limestone County failed to provide adequate funding for medical services; or (2) Limestone County voluntarily assumed the obligation to provide adequate training through its contract with Naphcare. As a result, Limestone County is not a responsible party for any purported deliberate indifference to Williams' medical needs. The district court, therefore, did not err in granting summary judgment in Limestone County's favor on these claims.

[7]Nor does the court find any merit in Kelly's attempt to posit Dr. Weaver as the final policymaker for the Commission with respect to medical treatment for jail inmates. *See Am.Compl.* ¶ 36 ("By employing defendant Weaver the Coosa County Commission established defendant Weaver as the final policymaker for medical treatment so that defendant Weaver's conduct became the conduct of the Coosa County Commission.") Abundant case law establishes the Sheriff as the final policymaker for all operational matters in the county jail. Moreover, as Dr. Weaver's summary judgment submissions (duly adopted by the Commission, Doc. 65) demonstrate, he did not and could

(continued...)

maintain county jails, but as noted in *Turquitt*, 137 F. 3d at 1290, "these statutes are entirely consistent with the counties' limited role in building and funding the jails and do not imply or impart any control over the jails' operation." *See Gaines v. Choctaw County Com'n*, 242 F. Supp.2d 1153, 1162 (S.D. Ala.2003) ("While the County does have a duty to maintain its jail, that duty does not extend to the medical care of prisoners.")

The specific statute cited by Kelly as the foundation for the Commission's duty for inmate medical care, Ala. Code §14-6-19 (1975)[8], does impose a duty to fund medical care. Kelly argues that his allegations of the poor and unsanitary conditions he suffered in "the hole" as well as deficient medical care sufficiently put at issue the Commission's duties to fund and maintain the jail as a habitable physical plant and to furnish medical care. His "deliberate indifference" claims, however, can proceed only upon factual allegations not only of a duty and a breach but also of causation for the injury claimed. Kelly avers generally that the Commission "breached the duty it owed to fund the medical care and to fund adequate staffing" (¶ 33), and it "failed to provide funds to maintain an adequate physical accommodation for habitation in 'the hole'" (¶ 39). Kelly fails to provide – in either his factual allegations or the asserted legal claims in counts I, II, and III – the "causation"

---

[7](...continued)
not serve as an employee of the county because he was, instead, a federally contracted Public Health Service Physician.

[8]Section 14-6-19 provides:
>    Necessary clothing and bedding must be furnished by the sheriff or jailer, *at the expense of the county*, to those prisoners, who are unable to provide for themselves, and also *necessary medicines and medical attention to those who are sick or injured, when they are unable to provide for themselves*.

(emphasis added).

11

element specific to the Commission's funding decisions or policies, and instead ascribes to the

Commission the same kind of "deliberate indifference" ascribed to the sheriff's defendants, with the

same result.[9]

    While the court is bound to construe the Complaint liberally at this dismissal juncture, it

cannot rewrite the pleadings to clarify a legal claim;  in this case, Kelly pleads his constitutional

injury as the result of all defendants' deliberate indifference  in failing and/or refusing or delaying or

rendering inadequately medical attention despite their notice of his need.   Because each of the

federal counts adopts the preceding allegations of fact, the most logical reading of the liability

asserted against the Commission is one premised on vicarious liability for the "deliberate

indifference" of those empowered with the direct supervision of inmates' treatment and medical care

at the county jail.  In order to construe the claims as stating a direct or governmental claim of liability

against the Commission, Kelly must aver the Commission's involvement in the alleged failure to

respond, delay in responding, or deficient response to his purportedly clear need for medical

attention.  *See Marsh v. Butler County*, 268 F. 3d at 1026.  Because he makes no such allegation and

---

[9]Kelly alleges in Paragraph 37 of his Complaint:

> It was made known to the Coosa County Commission that plaintiff suffered from a medical condition that required regular medication or he would suffer severe and perhaps fatal consequences.  The medical personnel of Coosa County failed to adequately treat or supervise the providing of medication to plaintiff resulting in his becoming sick, confused, crying, disoriented, upset, having seizures and hallucinations.

These allegations are insufficient to allege  a direct liability claim against the Commission.  In the first place, it is settled that the Commission's duty does not extend to the actual administration or supervision of inmate medical care.  Moreover, Kelly does not allege that the Commission made a policy directive or decision with the intent or effect of denying or delaying Kelly's regular medication notwithstanding notice of his need.

12

simply includes the Commission with the other defendants on generalized claims of deliberate indifference, the court is left to speculate that the alleged deliberate indifference of the sheriff, his deputies, and Dr. Weaver occurred in whole, or in part, from the Commission's breach of funding duties for inmate medical care. Such speculation would be inappropriate, and the court is constrained to conclude that the allegations simply are too conclusory, non-specific, and speculative to survive Rule 12(b)(6) scrutiny.[10]

 **B**. **State Claims** (Counts VI, VII, VIII, IX)

  *1. Contentions*

The state law claims assert that the Commission breached "a duty under Code of Alabama §14-6-19 to fund medical care ...[and] to adequately fund staff to provide medical care" (Count VI); negligently hired and retained Dr. Weaver (Count VII); breached "a duty to provide a facility and to provide adequate funding to provide a safe and habitable facility for inmates" (Count VIII); and breached "a duty to provide medical treatment to the plaintiff." (Count IX).

---

[10]Along with the sheriff, deputies, and Dr. Weaver, the Commission is charged in Counts I and II with failed, refused, delayed, or deficient medical care to Kelly. Count III indicts the same defendants for not providing Kelly "with an environment that does not impair his physical and mental health and is an adequate living space." The court is left to speculate, however, whether that failure arises from the Commission's policy, custom, or specific decision not to provide any funds at all or plainly insufficient funds for inmate medical care. Kelly does not allege, for example, that any of the individual defendants are blamed on their action or inaction on funding-relating deficiencies. Nor does he include any averment with respect to the Commission's funding policies or decisions with respect to the provision of medical care for jail inmates. While Rule 8 does not obligate Kelly to detail all relevant facts, his complaint must state information sufficient for a judicial determination that some valid legal theory exists for granting relief against the Commission. A claim resting solely on conclusory allegations and/or legal conclusions cannot survive Rule 12(b)(6) dismissal.

The Commission seeks dismissal of all state law claims for Kelly's failure "to serve a proper and timely notice of claim on Coosa County."  The Commission's "statute of non-claim" defense challenges the timeliness and sufficiency of the notice received from Kelly on December 2, 2004.[11] The timeliness attack – like the Commission's statute of limitations defense – is appropriate only to restrict untimely claims but Kelly's grievances from December 1, 2003 forward are not barred unless they otherwise fail to state a claim   Thus, the court will consider this defense in the context of discussing each state law claim.

Concerning the substantive merits of the state law claims, the Commission argues: (a) Ala. Code §14-6-19 does not provide Kelly with a private right of action; (b) the jail employees relevant to the conditions claims are not County employees; ( c ) neither a negligent retention nor a negligent hiring claim is alleged properly; (d) the County cannot be held liable for medical malpractice. *See Def.'s Br.* (Doc.46) at 12.

### 2.   Rule 12(b)(6) Analysis for State Law Claims

#### (i) Count VI: Breach of Ala. Code § 14-6-19

Ala. Code § 14-6-19 imposes on the commission a duty "to provide necessary medicines and medical attention to those [county jail inmates] who are sick and injured."  Kelly alleges the Commission's statutory duty (¶ 65); breach of that duty by inadequate funding in a manner which injured Kelly (¶ 66 - "[t]he funding for medical care for prisoners was inadequate such that plaintiff

---

[11]Consideration of the attached notice is appropriate, as the Commission notes, as it is central to the averred fact in Kelly's Complaint – "Plaintiff timely filed a notice of claim into the Coosa County Commission."(*Am. Compl.*¶ 41).   The *Notice* attached to the Commission's brief is undisputed, its propriety is argued by both parties, and it  also qualifies as a public record. *See 2 Moore's Federal Practice*, §12.34[2] (Matthew Bender 3d ed.)

did not receive adequate medical care"); and resulting damages (¶ 67). Similarly plead causes of action have been deemed sufficient to preclude Rule 12(b)(6) dismissal. *See Gaines v. Choctaw County Comm'n*, 242 F. Supp 2d 1153, 1159 (S.D. Ala. 2003)(allowing liability claim to proceed for county's breach of duty in Ala. Code 14-6-19 to fund medical care for inmates, explaining that "[u]nder Alabama law, violation of a statutory duty may give rise to a cause of action for negligence," citing *Ala. Power Co. v. Dunaway*, 502 So. 2d 726, 730 (Ala. 1987)); *Shaw v. Coosa County Comm'n*, 330 F. Supp. 2d 1285, 1289 (M.D. Ala. 2004) (denying Rule 12(b)(6) dismissal of claim alleging breach of county's statutory duty, under 14-6-19, to provide adequate funding for medical treatment of and medicines for inmates).

This court is constrained to conclude, however, that another procedural defect dictates Rule 12(b)(6) dismissal: Kelly's failure to provide sufficient pre-lawsuit notice of this claim to the Coosa County Commission. Kelly's referenced Notice to the Commission (*Am. Compl.* ¶41, Ex. A., *Def.'s Br.*) cannot be construed as sufficient to notify the Commission of a negligent failure to fund claim. Instead, Kelly includes in the Notice the following representation which can be reasonably construed as inconsistent with a claim grounded on breach of the statutory duty to fund inmate medical care: *"Coosa County had undertaken and hired medical personnel, including the services of a physician, to provide medical services to inmates at Coosa County Jail."*

Because the Notice does not elsewhere attribute to the Commission any non-compliance with its statutory funding duty, either in general or specific terms, the Commission had no reason to believe any subsequent lawsuit would specify this as a basis of liability. Though "funding" is not mentioned in the Complaint, acknowledging the Commission's hiring of medical personnel to

15

provide inmate medical services is tantamount to admitting that the Commission funded such medical services.  Ala. Code §6-5-20 mandates the requirement of pre-lawsuit notice to the Commission of an injured party's claim, and with respect to its contents, §11-12-5 provides:

> No claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant or some person in his behalf having personal knowledge of the facts.

In construing the requisite "itemization", the state's highest court has directed that notices include, *inter alia*, "a factual background, a description of the event or transaction giving rise to the claim [and] the alleged basis for the county's liability." *Elmore County Comm'n v. Ragona*, 540 So. 2d 720, 723 (Ala. 1989).  Where a pre-lawsuit Notice of Claim describes the nature of the liability claim in a manner which expressly rejects a particular  theory of recovery against the Commission, as did Kelly's Notice,  the Commission  is entitled to rely on that disclosure as it investigates and considers the merits of the claim.  Consequently, Rule 12(b)(6) dismissal is warranted if the subsequent lawsuit purports to assert a theory of liability which contradicts directly the specific facts reported in the claim.[12]

### (ii)   Count VII:  Negligent hiring/retention of Dr. Weaver

 In Count VII, Kelly alleges in conclusory form that the Commission "acted negligently in employing defendant Weaver to provide adequate medial treatment to inmates in the Coosa County jail, and continuing to employ him when it was on notice that Weaver was not providing adequate

---

[12]S*ee also Jacks v. Madison County,* 741 So.2d 429 (Ala.Civ.App. 1999)(not allowing plaintiff landowner to proceed on claims premised on trespass or nuisance because pre-lawsuit notice to county asserted only a breach of contract theory for recovery); *Helms v. Barbour County*, 914 So.2d 825, 826(Ala.2005)(finding substantially the same the "bases for the County's liability" as stated in the §6-5-20 claim and the subsequent complaint).

medical treatment." (¶69).  In opposition to Rule 12(b)(6) dismissal, he maintains that he has "sufficiently pled his case" by this allegation and "by pleading the facts" adopted by reference.  As he does not pinpoint the relevant facts, the court has scrutinized the pertinent factual allegations.  After declaring that the Commission "undertook to hire defendant Randall Weaver to provide medical treatment for inmates..." (¶ 34), Kelly describes him as "grossly incompetent in providing medical care to the plaintiff" (¶35); recites the Commission's "duty when it employed [Dr. Weaver]...not to do so negligently" (¶36);  and concludes that the Commission "knew of Defendant Weaver's gross incompetence, and failure to train or supervise medical treatment and disbursing of medication to prisoners." (¶37).

Not a single averment reports even a glimmer of a factual basis for attributing either "gross incompetence" to Dr. Weaver at the time of his hiring or the Commission's knowledge, at the time of its hiring decision, that Dr. Weaver had performed elsewhere, or had been charged with, gross incompetence. *See Lane v. Central Bank of Alabama*, N.A., 425 So. 2d 1098, 1100 (Ala. 1983) ("In the master and servant relationship, the master is responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.")  It is well-settled that "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits." *Swierkiewicz v. Sorema,* N.A., 515 U.S. 506, 515 (2002).  Kelly is bound, however, to plead facts from which a valid cause of action can be gleaned.  As the court observed in  *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270-71 (11th Cir. 2004), the Supreme Court in *Swierkiewicz* "did not even remotely suggest that a pleading could survive dismissal when it consisted only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based . . .unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a

dismissal under Fed.R.Civ.P. 12(b)(6)").[13]

### (iii) Count VIII:    Breach of Duty to provide habitable jail facility

Count VIII rests on an averment that the Commission "had a duty to provide a facility and to provide adequate funding to provide a safe and habitable facility for inmates of the Coosa County jail." (¶72). Kelly does not specify precisely how the Commission "breached that duty which resulted in plaintiff suffering physical pain and mental anguish. (¶73). Because this Count adopts all factual averments, the court assumes Kelly's intent that this legal claim rests on Paragraph 39, which alleges:

> Defendant Coosa County Commission has responsibility to provide or provide funds to maintain the Coosa County jail. Defendant Coosa County Commission failed to provide funds to maintain an adequate physical accommodation for habitation in "the hole" at the Coosa County jail.[14]

Kelly cites several Alabama statutes as the predicate for his purported claim against the Commission arising from the conditions he suffered inside the jail: " Ala Code §§ 14-6-9 (duty to fund indigent inmate clothing, bedding and healthcare), 14-6-92 (duty to fumigate, cleanse and paint jail), 14-6-93(duty to provide janitor service, enforce cleanliness, provide bathing facilities, soap, towels, water, clean and sufficient bedding, and clean clothes for indigents in jail) and 14-6-103 (duty to build jail sufficiently ventilated, lighted, heated, with adequate plumbing and sewerage)." Having "pled that the County was negligent with respect to the particular jail conditions, with regard to

---

[13]Even if the court found this count sufficiently plead to survive dismissal, it would be constrained to recommend dismissal, nonetheless, because Kelly's pre-lawsuit Notice of his claim neglected to include any language which can be construed as a negligent hiring or retention claim against the Commission.

[14]Kelly's pre-lawsuit Notice clearly included a sufficient factual basis for the Commission to know that his liability claims included this theory of negligence. Thus, the court does not find the claim procedurally barred by the non-claim statute.

which it owed Plaintiff a duty," Kelly argues that Count VIII "is sufficient under *Conley*" to survive

Rule 12(b)(6) dismissal. *Pl.'s Br.* at 15-16.

Kelly's reliance on these statutes is misplaced. As the Eleventh Circuit concluded in *Turquitt*

following a comprehensive review of relevant statutes:

> We recognize that Alabama counties possess some duties with respect to county jails.
> However, none of these duties relates to the daily operation of the jails or to the
> supervision of inmates. The duties of the counties with respect to the jails "are
> limited to funding the operation of the jail and to providing facilities to house the
> jail." *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996). The
> county commission is charged with erecting and maintaining jails, and each county
> is required to maintain a jail of sufficient size and strength to secure the prisoners.
> Ala.Code 11-14-10, 11-14-13 (1989). In construing these provisions, the Alabama
> courts have made it clear that the duty of the county to erect and maintain a county
> jail pertains exclusively to the physical plant of the jail. The duty to "maintain a
> jail"under 11-14-10 is merely the duty to keep the "jail and all equipment therein in
> a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County,*
> 558 So.2d 884, 886 (Ala. 1989).

137 F.3d at 1289-1290.

Kelly does not aver that the Commission's funding obligations extend to dictating how

appropriated funds are allocated within the physical plant; indeed, such decisions fall within the

province of the Sheriff, whose operational control of the jail, is "subject to control by state executive

agencies, not by counties." *Id.* at 1289.

### (iv) Count IX: *Liability for medical treatment to Kelly*

Construed favorably to Kelly, Count IX attempts to state a medical malpractice claim against

the Commission by first assigning to it a duty of medical care and next alleging its culpability for Dr.

Weaver's breach of the applicable standard of care:

> Plaintiff avers that defendant Coosa County Commission and defendant Randall
> Weaver owed plaintiff a duty to provide medical treatment to the plaintiff.
> (¶75)Defendants breached their duty when Weaver breached the standard of care

19

required by physicians by failing to adequately treat the plaintiff, . . . (¶76).

These allegations warrant short shrift as they fail to identify any authority, and there is none, for the underlying premise of a county commission's duty to provide or render medical treatment to pretrial detainees like Kelly. The duty to fund medical care, referenced in *Ala. Code. §14-6-19*, has not been construed to include a duty to render direct treatment. Nor does the theory of *respondeat superior* or vicarious liability apply to hold the Commission responsible for the direct care rendered by physicians hired by the Commission. Kelly seeks to maintain this Count by piggy-backing on the Count alleging the Commission's negligent hiring and retention of Dr. Weaver. The court has found the negligent hiring allegations inadequate, however, to survive Rule 12(b)(6) dismissal.

## V.   CONCLUSION

Pursuant to the foregoing discussion, it is the Recommendation of the Magistrate Judge that *Defendant Coosa County Commission's Motion to Dismiss Plaintiff's Amended Complaint* be *GRANTED with respect to* the purported federal claims asserted in Counts I, II, III, and the purported state claims asserted in Counts VI, VII, VIII, and IX.

It is further **ORDERED that the parties shall file any objections to the said Recommendation not later than November 14, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate

20

Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 31st DAY OF OCTOBER, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE