IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |  |
|---|---|---|
| DANIEL BRYAN KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:05-CV-1150-MHT |
| | ) | wo |
| RICKY OWENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

The Amended Complaint by Daniel Bryan Kelly ("Kelly"), filed pursuant to 42 U.S.C. § 1983 (Doc. 42), alleges inadequate medical care and physical abuse during his pretrial detention in the Coosa County Jail. A *Motion to Dismiss* by *Coosa County Sheriff's Deputies Al Bradley, Terry Wilson, and Wendy Roberson* seeks the dismissal of *Claims Against Them in Their Official Capacities*, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief. Kelly grounds his claims on the Eighth and Fourteenth Amendment to the United States Constitution, and these defendants also move for dismissal of Eighth Amendment claims. The *Motion* (Doc 50) is fully submitted on its supporting Brief (Doc. 51) and *Plaintiff's Opposition* (Doc. 54, June 26, 2006). As discussed herein, these defendants' motion is due to be granted.

### I. FACTUAL BACKGROUND

In addition to these sheriff's deputies, the designated defendants are Coosa County Sheriff Ricky Owens ("Sheriff Owens"), the Coosa County Commission, and Dr. Randall Weaver ("Dr. Weaver"). Kelly invokes federal question jurisdiction against the sheriff's deputies on the Eighth and Fourteenth Amendments; all the deputies are named in Counts I, II, III, and V, and in Count

IV, Kelly excludes Deputy Bradley. He seeks compensatory and punitive damages, declaratory relief, injunctive relief, a reasonable attorneys' fee, and costs.

Common to the claims against all defendants is Kelly's contention that during his pretrial detention, commencing on November 13, 2003, he suffered constitutionally impermissible deprivations of medical care and due process as well as cruel and unusual punishment after being "put in solitary cell known as 'the hole'" from December 6 until January 16, 2004. In the summary which follows, the court accepts as true – solely for analytical purposes – the "allegations of fact" in paragraphs 4-41 of his Complaint and highlights those on which liability is predicated against the deputy defendants.

When "placed as a pretrial detainee in the Coosa County Jail on November 13, 2003" (¶ 4), Kelly and his parents told "the defendants" (not otherwise named) about his "extensive medical history":

> that he suffered from a Bipolar disorder and had recently been in treatment for that; that he was under medication and under a doctor's care for his bipolar condition; that [he] had a history of lower back pain and a degenerative disc problem in his lower back for which he had surgery; that [he] had a history of migraine headaches; that [he] was on medication, without which he would suffer seizures.

(¶ 5). Notwithstanding this notice, Defendants did not then provide either medication or medical treatment.

About two weeks later, a mental health professional evaluated Kelly after Defendants observed his seizures, and on November 25 he notified the defendant Sheriff and deputies "Wilson, Roberson, and Bradley of plaintiff's serious medical condition of seizures with memory loss, and of his bipolar disorder"; he recommended further evaluation. These named defendants "informed

defendant [Dr.] Weaver of plaintiff's serious medical condition", and Kelly was taken to Dr. Weaver for treatment of back and leg injuries stemming from a fall. (¶ 6). Before Kelly fell again on December 5, and was taken to Russell Hospital for treatment, he had grown "increasingly disoriented" and the Sheriff and all deputy defendants purportedly knew that he had suffered more seizures.(¶ 7).

Upon Kelly's return from the hospital, Sheriff Owens decided, "for his (Owens') protection" to place him in a solitary cell known as "the hole" and so informed Kelly's family. Kelly's constitutional claims target these conditions he suffered inside the solitary cell from December 6, 2003 until January 16, 2004:

> being required...to sleep on the cell concrete floor on a thin plastic mat... (¶ 9); ...The only facility for urinating or defecating was a hole in the center of the floor beside his plastic pallet . . .The drain hole had to be flushed by jail staff from outside "the hole" and defendants Owens, Wilson, Roberson, and Bradley did not flush it or cause it to be flushed for hours at a time (¶ 10). . . Plaintiff was not provided toilet paper. ..(¶ 11)
>
> Plaintiff repeatedly called for water to drink but was not given water for hours at a time... Defendants Owens, Wilson, Roberson and Bradley knew that the plaintiff was without water for hours at a time but did not provide it to him. Defendant Bradley repeatedly told plaintiff that he was tied of his asking for water. . . (¶ 12)
>
> Defendants Owens, Wilson, Roberson and Bradley knew that plaintiff was without basic hygiene for extended periods of time but denied him access to basic hygiene . . . (¶ 13) Defendants Owens, Wilson, Roberson and Bradley were aware that plaintiff was not allowed out for exercise or use of basic hygiene but nevertheless denied his requests for access to that hygiene or exercise.(¶ 14)
>
> Plaintiff repeatedly requested that he be provided medication and to be taken to a doctor because he was in pain and suffering from seizures. Defendants Owens, Wilson, Roberson and Bradley were aware . . . but did not respond to his request nor did they provide medication or medical treatment at the time that he was requesting it. . . (¶ 15)

Kelly avers that the sheriff and his deputies knew of his disorienting seizures and "were aware of [his]

deteriorating physical and mental condition but did not call a doctor or provide access to personal hygiene or water." (¶¶ 16-17; see also ¶ 20).

Kelly also contends that Dep. Bradley "assaulted him on several occasions, beginning shortly after he was placed ["in the hole"] and continuously up until shortly before he was taken to Russell Hospital on January 16, 2004." (¶ 21; see also ¶¶ 23, 28). The Sheriff and Deputies Wilson and Roberson failed to respond to Kelly's complaints notwithstanding their purported awareness of the abuse by Dep. Bradley. (¶¶ 22, 24, 26); nor did the sheriff and his deputies respond to pains and sufferings Kelly identified when he begged repeatedly for medical attention. He contends that they gave him medications inappropriately and without medical training or supervision. (¶¶ 29-31).

On January 7, 2004, a doctor examined the skin rash Kelly had complained about for several weeks, and he was admitted to the hospital on January 16, 2004, with diagnoses including "drug induced hepatitis, and drug poisoning." He claims to have been diagnosed "as suffering from Post Traumatic Stress Disorder" as a result of defendants' alleged treatment. (¶ 30).

## II.  STANDARDS OF REVIEW

### A.  Rule 12(b)(1) Dismissal

Federal Rule of Civil Procedure 12(b)(1) dictates that the question of subject matter jurisdiction be accorded priority consideration because it implicates the court's "very power to hear the case." *Bell v. Hood,* 327 U.S. 678, 682-683 (1946); *see Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1261 (11th Cir.1997) (noting that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"); *Lawrence v. Dunbar,* 919 F.2d 1525,

1529 (11th Cir.1990). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Gilmore v. Day*, 125 F.Supp.2d 468, 471 (M.D. Ala. 2000) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

### B.    Rule 12(b)(6) Dismissal

Dismissal pursuant to Rule 12(b)(6) is appropriate only if the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The threshold issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *accord*, *Swierkiewicz v. Sorema*, N.A., 515 U.S. 506, 515 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits"). The threshold is "exceedingly low" for a complaint to survive Rule 12(b)(6) scrutiny. *Ancata v. Prison Health Servs.,Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). The court must accept as true the plaintiff's factual allegations, draw all reasonable inferences in the plaintiff's favor, and construe the pleadings liberally so as to do substantial justice.

### III.    DISCUSSION

### A.    Eighth Amendment Claims

Kelly concedes that his status as a pretrial detainee dictates judicial analysis of his monetary claims under the Fourteenth Amendment's due process clause rather than the Eighth Amendment's cruel and unusual punishment prohibition. Indisputably, there is no appreciable difference in the analysis under these Amendments. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

He insists, however, that his claims for "injunctive and declaratory relief" trigger Eighth Amendment analysis "because he is now a convicted prisoner, and is likely to be subject to re-confinement in the Coosa County jail as a convicted prisoner . . . because parole revocation is vested in the circuit judge, . . . and he is likely to be held in the Coosa County jail if in his parole officer's judgment he ha violated parole." (*Pl.'s Opposition* at 10-11.)

The contention assumes facts not included in the Complaint which fails to allege either Kelly's dual status as a pretrial detainee and a convicted prisoner or his status as a convicted prisoner after his transport from the jail to Russell Hospital on January 16, 2004. In fact, the Complaint gives no report at all on Kelly's return to the jail and his subsequent status. The omission negates his entitlement to any injunctive and declaratory relief. *See Am. Compl.*, Doc. 42, ¶ 32; *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir.1985), *citing Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984). Consequently, Eighth Amendment claims are due to be dismissed based on the present complaint.

### B.  Official Capacity Claims

The sheriff's deputies ground their motion to dismiss the "official capacity" claims against them on two contentions. First, they argue the absence of subject matter jurisdiction pursuant to the Eleventh Amendment because "[they] are state officials and a suit against them in their official capacities is a suit against the State of Alabama", correctly *citing Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (1997). Next, they contend that the complaint fails to state a claim upon which

relief can be granted because they do not qualify, in their official capacities, as "persons" for purposes of 42 U.S.C. §1983; for this contention, they cite *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989) and *Carr v. City of Florence, Ala.*, 916 F.2d 1521,1525 n.2 (11th Cir. 1990). (*Defs.' Br.* at 3.) Kelly responds that because these defenses apply only to monetary claims against state defendants in official capacities, dismissal is inappropriate because "[ ] Eleventh Amendment immunity does not apply to injunctive relief (*citing Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989) and *Edelman v. Jordan*, 415 U.S. 651, 664 (1974), [ ] § 1983 suits are allowed against public officials in their official capacities for injunctive relief (citing *Will*, 491 U.S. at 71), and [ ] Plaintiff's claims are not moot." (*Pl.'s Opposition* at 2).[1]

Kelly's contention is bootless for the same reason his Eighth Amendment claims cannot be maintained: his complaint provides no factual basis for injunctive relief because it asserts his transfer from the jail while providing no report on his subsequent return or status.[2] The only reference to Kelly's status after his January 2004 hospitalization comes from his opposition brief to the dismissal

---

[1]An "official capacity" lawsuit is "in all respects other than name, . . .treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Kelly does not dispute that Alabama deputy sheriffs act as extensions of the sheriffs, who are executive officers of the state; actions against sheriffs and deputies in their official capacities are thus deemed actions against the state which, absent consent, are barred by the Eleventh Amendment. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), overruled on other grounds by *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

[2]*See Am. Compl.*, Doc. 42, ¶ 32; *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir.1985)*, citing Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984).

motion.³ The court cannot speculate with Kelly that "[he] is much more likely to be confronted with confinement in the Coosa County jail due to his mental and physical illnesses, . . . [the fact that his] injury is ongoing [and] his proneness to engage in substance abuse. . ." (*Pl.'s Opposition* at 4-5). Kelly specifies conditions he suffered as a pretrial detainee almost four years ago; the complaint provides no sound basis for the court to assess cited jail conditions as ongoing, to evaluate whether the identified deputies continue to engage in the conduct alleged, or to assess Kelly's status as a contemporary or imminent sufferer of constitutionally improper conditions or conduct. Kelly's claim for injunctive and declaratory relief requires him to show a sufficient likelihood of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994). His Complaint makes no such showing; as presently plead, it states no cause for which injunctive relief can be granted against these deputies in their official capacities, and the court lacks subject matter jurisdiction under the Eleventh Amendment.

---

³Counsel submits:

> Plaintiff expects the evidence will be that, since he has been confined in the state penitentiary, he has had involuntary reactions that caused to be revisited upon him all the horrors he suffered in the Coosa county jail when he was awakened and merely given an order by a prison guard. Plaintiff expects the evidence will be that this reaction caused the prison system to transfer him to the state prison system's psychiatric unit. In this way, plaintiff's continuing injury makes him much more vulnerable, so that merely being arrested and confined in the Coosa County jail in its current condition will likely further exacerbate his continuing injuries.

(*Pl.'s Opposition* at 6).

## IV.  CONCLUSION

It is, therefore, the *Recommendation of the Magistrate Judge* –

A.  that the *Motion to Dismiss* filed by defendant deputy sheriffs Al Bradley, Terry Wilson, and Wendy Roberson (Doc. 50) be GRANTED to the extent requested with respect to the First Amended Complaint, as follows:

  1. that Section 1983 claims asserted under the Eighth Amendment be DISMISSED;

  2. that Section 1983 claims asserted under the Fourteenth Amendment for monetary damages against Deputy Sheriffs Bradley, Wilson, and Roberson in their official capacities be DISMISSED with prejudice;

  3. that Section 1983 claims asserted under the Fourteenth Amendment for injunctive and declaratory relief against Deputy Sheriffs Bradley, Wilson, and Roberson, in their official capacities, be DISMISSED without prejudice;

B.  that this action proceed against *(a) Defendant Bradley* only in his individual capacity on the Fourteenth Amendment claims asserted against him for monetary damages in Counts I, II, III, and V, *and (b) against Defendants Wilson and Roberson* only in their individual capacities on the Fourteenth Amendment claims asserted against them for monetary damages in Counts I, II, III, IV, and V.

It is further **ORDERED that the parties shall file any objections to the said Recommendation not later than November 22, 2006.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 9th  DAY OF November, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE