IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL BRYAN KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:05-CV-1150-MHT-DRB |
| | ) | [wo] |
| RICKY OWENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

After considering all submissions on *Defendant Randall W. Weaver, M.D.'s Motion for Summary Judgment* (Doc. 57), the Magistrate Judge concludes that the *Motion* should be GRANTED.

**I. Procedural Background**

Daniel Bryan Kelly ("Kelly") filed this 42 U.S.C. § 1983 action on December 6, 2005, alleging inadequate medical care and physical abuse suffered as a pretrial detainee in the Coosa County Jail from November 13, 2003 until January 16, 2004. Doctor Randall Weaver ("Dr. Weaver") is sued "individually and in his official capacity as medical doctor for Coosa County Jail." Additional defendants are Coosa County Sheriff Ricky Owens ("Sheriff Owens"), sheriff's deputies Al Bradley ("Dep. Bradley"), Terry Wilson ("Dep. Wilson"), and Wendy Roberson ("Dep. Roberson"), and the Coosa County Commission ("the Commission").

For good cause, the court allowed Kelly to file the First Amended Complaint docketed on May 22, 2006 (Doc. 42, "Complaint"). Dr. Weaver's summary judgment motion, filed June 30, 2006, is supported by evidentiary exhibits and a memorandum brief (Doc. 58), as corrected (Doc. 62). He asserts two grounds for summary judgment: statutory absolute immunity, pursuant to 42 U.S.C.

233(g), and the two-year statute of limitations for medical liability and 42U.S.C. § 1983 claims, §§ 6-2-38(1) and 6-5-482 Ala. Code (1975). Plaintiff filed a brief in opposition (Doc.63, Aug.7, 2006), and Dr. Weaver responded with a Reply Memorandum (Doc. 64, Aug. 18, 2006).

## II.    Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*; See Fed.R.Civ.P. 56(e) and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-

moving party, and draw all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999).

### III. Evidentiary Background

#### A. Factual Allegations in the Complaint

Kelly invokes federal question jurisdiction under the Eighth and Fourteenth Amendments of the United States Constitution (Counts I-V), and state court claims asserted in Counts VI-IX rest on ancillary or pendent jurisdiction. He seeks compensatory and punitive damages, declaratory relief, injunctive relief, a reasonable attorneys' fee, and costs. At this pre-discovery juncture an overview of Kelly's "allegations of fact" is a necessary framework for the claims on this motion for summary judgment.

When "placed as a pretrial detainee in the Coosa County Jail on November 13, 2003" (¶ 4), Kelly and his parents told "the defendants" (not otherwise named) about his "extensive medical history":

> that he suffered from a Bipolar disorder and had recently been in treatment for that; that he was under medication and under a doctor's care for his bipolar condition; that [he] had a history of lower back pain and a degenerative disc problem in his lower back for which he had surgery; that [he] had a history of migraine headaches; that [he] was on medication, without which he would suffer seizures.

Kelly declares that the Sheriff and the named deputies "informed defendant Weaver of plaintiff's serious medical condition" and had him taken to Dr. Weaver, "on or about November 25, 2003, for treatment of injury to his back and leg."(¶ 5).

Kelly suffered a fall on December 5, and after hospital treatment, he returned to jail, where the Sheriff had him placed in a solitary cell known as "the hole." Kelly's constitutional claims target deplorably unsanitary and dangerous conditions he endured inside the solitary cell from December

6, 2003 until January 16, 2004 (*see* ¶¶ 10-15). He alleges that Dr. Weaver, as well as all other named defendants, "knew that [he] was suffering seizures and was confused and distressed . . . knew that [he] was continually crying and begging for the attention of a doctor, but they did not provide him the medical assistance he needed." (¶ 16). Finally, on January 7, 2004, he was taken to see an unnamed doctor, and transported on January 16, 2004, from the jail to Russell Hospital. Paragraphs 34 and 35 of the Complaint attribute to the Coosa County Commission the hiring of Dr. Weaver "to provide medical treatment for inmates at the Coosa County jail" and claims, in pertinent part:

> Defendant Weaver was aware of plaintiff's serious medical condition. He had been provided a summary of plaintiff's medical condition. He also observed and treated plaintiff when plaintiff was brought to his office.
>
> Defendant Weaver was grossly incompetent in providing medical care to the plaintiff and also chose an easier but less effective course for treating the plaintiff by sending him back for confinement in the jail with no medical facilities and under the observation of untrained personnel and having instructed untrained and unsupervised personnel to give depression medication to plaintiff. Defendant Weaver was responsible for prescribing medication which resulted in poisoning the plaintiff.

Kelly includes Dr. Weaver along with the Sheriff, sheriff's deputies, and the Commission in federal claims charging deliberate indifference to his medical needs (Counts I, II). In Count IX, Kelly charges, in material part:

> that defendant Coosa County Commission and defendant Randall Weaver owed plaintiff a duty to provide medical treatment to the plaintiff.
>
> Defendants breached their duty when Weaver breached the standard of care required of physicians by failing to adequately treat the plaintiff, but instead provided such grossly incompetent treatment that plaintiff suffered seizures, pain, mental anguish, drug poisoning, drug induced hepatitis, onset of his bipolar disorder, exacerbation of his back injury, and post traumatic stress disorder.

(¶¶ 75-76).

### B.      Movant's Evidentiary Submissions

Dr. Weaver submits three exhibits: his affidavit (*Def.'s Ex* A), an unauthenticated letter on October 4, 1993, from an Assistant Surgeon General with the Health Resources and Services Administration to the Chief Executive Officer of Health Services, Inc. (*Def.'s Ex.* B) and another unauthenticated letter, dated March 6, 2003, from the Deputy Associate General Counsel for the Department of Health & Human Services to a lawyer in the Justice Department. (*Def.'s Ex.* C).[1]

A physician with a family practice since August 1995, Dr. Weaver declares his employment by Health Services, Inc., ("HSI") "[f]rom on or about July 2001 through June 2004. . . to provide medical services in Rockford and the surrounding area." (*Def.'s Ex.* A at ¶5). He maintains that he examined the plaintiff, as an HSI patient, on a single occasion – November 26, 2003 – in his office, and he attaches five pages of medical records which "accurately reflect [his] examination."[2] Kelly told him then "that he had a seizure in jail and suffered a fall", and he "complained of pain in his right leg, foot, and knee." Dr. Weaver "never saw Mr. Kelly again." (*Def.'s Ex.* A. at ¶6). Additionally, the doctor declares under penalty of perjury:

I have never been employed by Coosa County or the Coosa County Commission to

---

[1] Kelly does not object that these exhibits lack the formal authentication generally contemplated by Fed.R.Civ.P.56(e). Indeed, he relies on the contents of *Def.'s Ex.* B in arguing for discovery to evaluate whether the claimed statutory immunity covers medical treatment of county jail inmates.

[2] The notes include handwritten notes on a one-page form with the printed caption, "HSI Adult Medicine Progress Note", and four pages of handwritten notes on a form with the printed caption, "Health Services, Inc. - Initial Pain Assessment Tool (Adult)".

>provide medical services for inmates at the Coosa County jail.
>I have never had any responsibility for conditions of confinement or medical services at the Coosa County Jail.

(*Def.'s Ex.* A at ¶¶ 7, 8).

*Def.'s Ex. B* purports to document the status of Dr. Weaver's employer, HSI, as "an employee of the Federal Government for the purposes of Section 224(h) of the Public Health Service (PHS) Act, 42 U.S.C. 233(h) as added by the Federally Supported Health Centers Assistance Act of 1992 (P.L. 102-501." Similarly, it confirms the status of HSI's physician employees as federal employees against whom claims "for medical and related functions" are governed exclusively by the Federal Tort Claims Act. *Def.'s Ex. C* similarly purports to document Dr. Weaver's determined status as "an employee of the Public Health Service" entitled to representation by the Department of Justice on Kelly's claims in this specific lawsuit.

### C. Plaintiff's Evidentiary Submission in Opposition

In opposition to Dr. Weaver's requested summary judgment, Kelly seeks to continue the motion, pursuant to Fed. R.Civ. P. 56(f),[3] in order to conduct discovery concerning Dr. Weaver's declarations of non-employment and non-responsibility for medical care to Coosa County's jail

---

[3]Fed.R.Civ.P. 56(e) provides:

>Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

inmates at the time of his pretrial detention. Kelly submits affidavits from his parents, Wanda Kelly and Roy Kelly (Pl.'s Exs. A and B) "that they were told by Wendy Roberson, an officer in the Coosa County Jail, that the Coosa County Jail had its own doctor, Dr. Weaver, and that Dr. Weaver was the doctor that was prescribing medications." (Plaintiff's Opposition, Doc. 63, at 102, hereinafter *Pl.'s Br.*).[4] By his own affidavit, Kelly's counsel highlights the absence of any discovery at all in this litigation once defendants responded to the complaint with dismissal motions, and he specifies the necessary discovery, in pertinent part, as follows:

> In order to be able to adequately address Defendant Dr. Weaver's claim that he is entitled to immunity 42 U.S.C.§ 233 Plaintiff will need discovery from Defendant Dr. Weaver, Defendant Coosa County, Defendant Roberson, Defendant Owens and Defendant Dr. Weaver with respect to whether or not Defendant Dr. Weaver was the jail doctor.
>
> [W]here the doctor has worked outside the scope of his employment with the public

---

[4] Concerning Dr. Weaver's responsibility, Mrs. Kelly declares: "When my son, Bryan, was being held in the Coosa County Jail, I went and spoke with Wendy Roberson, an officer in the Coosa County Jail, because I was concerned about my son's health. She told me that the Coosa County Jail had its own doctor and that was Dr. Weaver." (*Pl.'s Ex.* A).

Mr. Kelly summarizes his pertinent knowledge as follows:

When my son, Bryan was being held in the Coosa County Jail, in November 2003, December 2003, and January 2004 I was concerned that he was not getting adequate medical treatment so I went to the jail and talked to the jail personnel about it. Wendy Roberson, an officer in the Coosa County Jail, told me that the Coosa County Jail had its own doctor and that was Dr. Weaver. She also told me that Dr. Weaver was the doctor who was prescribing medications.

(*Pl.'s Ex.* B).

> health service [that] he is not entitled to immunity under 42 U.S.C.§ 233. Plaintiff needs to explore in discovery the range of the immunity offered under the Health Services, Inc., contract with Defendant Dr. Weaver. . . Plaintiff needs to take discovery as to whether or not the treatment of county jail employees is covered within this contract.
>
> Plaintiff will also need discovery with respect to Dr. Weaver's assertion of his statute of limitations defense . . .[including] discovery as to the ongoing nature of Dr. Weaver's treatment and/or failure to treat Plaintiff's serious medical needs. . ., discovery on the role of Defendant Dr. Weaver in the prescription of medication for Plaintiff that resulted in his poisoning, as well as what follow-up he had regarding administration of medication to the Plaintiff, as well as what other roles Dr. Weaver had undertaken with regard to the Coosa County Jail.

(*Pl.'s Ex.* C at 2-5).

## IV.  DISCUSSION

### A.  Contentions

In reliance on his evidentiary exhibits, Kelly submits that requested discovery "will allow him to show that there is a dispute with regard to the relevant facts" underlying Dr. Weaver's asserted immunity and statute of limitations defenses. Because immunity under 42 U.S.C. § 233 requires a covered physician to act within the line and scope of his employment, Kelly argues that discovery "may well show that [Dr. Weaver's] treatment of the Plaintiff did not fall within the scope of [his] employment under his contract with Health Services, Inc." (*Pl.'s Br.* at 5). Specifically, he suggests the absence of statutory immunity for Dr. Weaver's treatment of county jail inmates, pursuant to the following-described limits described in pertinent part by *Def.'s Ex.* B:

> All officers, employees, and full time contractors [ ] of this grantee who are physicians . . . and who are providing services under the scope of activities covered by the project

> funded through its Section 329 (migrant health centers), Section 330 (community health centers), Section 340 (health services for the homeless), or Section 340A (health services for residents of public housing) grant(s) are also deemed to be employees of the Federal Government for the purposes of section 224, . . . Subrecipients listed as eligible for FTCA coverage by the grantee will be deemed eligible only for carrying out those grant-related activities designated as being within the scope of their contract.

Moreover, citing *Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000), Kelly challenges Dr. Weaver's claimed entitlement to 42 U. S. C §233 immunity for the constitutional torts asserted in Counts I and II, and suggests his need fo discovery "to show that [his] actions fall outside the area of negligence and outside [his] scope of employment in his contract with Health Services, Inc." (*Pl.'s Br.* at 9). In response to Dr. Weaver's "statute of limitations" defense, Kelly "submits that through discovery Plaintiff expects to establish facts that show that Plaintiff's medical condition was severe and continuing, and that denial of treatment, or inadequate treatment came under Dr. Weaver's responsibility as jail doctor for inmates in the Coosa County Jail. (*Pl.'s Br.* at 10).

Dr. Weaver's *Reply Memorandum* ("Reply Br.") objects to any Rule 56(f) continuance for discovery

> because the Department of Health and Human Services' (HHS) determination that Dr. Weaver was a deemed employee of the Publish Health Service (PHS) when he treated plaintiff is **final and binding** on all parties to this litigation 42 U.S.C. 233 (g)(1)(F). Accordingly, all of the discovery plaintiff seeks in an attempt to establish that Dr. Weaver was in fact employed as the doctor the Coosa County jail is entirely irrelevant because HHS's deeming determination is not subject to judicial review. Id. As a deemed PHS physician, Dr. Weaver is entitled to absolute immunity from all claims arising from his performance of medical or related functions. 42 U.S.C. §233 (g) (a). Plaintiff's sole and exclusive remedy for Dr. Weaver's alleged acts or omissions is an action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C.§§1346(b), 2671-2680. 42 U.S.C § 233 (g) (1)(A). His

claims against Dr. Weaver fail as a matter of law.

(*Def.'s Reply Br.* at 1-2, emphasis in original).

**B.     Analysis**

Dr. Weaver's statutory immunity is due to be honored on this summary judgment record because no genuine factual issue exists and controlling law establishes his entitlement to the claimed immunity. No Rule 56(f) continuance is warranted because it is clear that the requested discovery will not preclude the entry of summary judgment.[5]

The controlling issue of fact is Dr. Weaver's status at the time he rendered any medical services to Kelly – whether a Public Health Service ("PHS") physician or a doctor employed by Coosa County for its inmates' medical care. Dr. Weaver documents his claimed status with sworn testimony of his employment by Health Services, Inc., indisputably a PHS contractor, when he examined Kelly on November 26, 2003, along with his authenticated, contemporaneously prepared medical records, prepared on HSI forms.

In addition to his testimony, Dr. Weaver submits without opposition "official" documentation that (a) the Federal Tort Claims Act is the exclusive remedy for claims against HSI

---

[5]Whether to grant or deny a Rule 56(f) postponement is committed to the district court's discretion, and the court must balance the movant's need for the requested discovery against the burden the discovery and delay will place on the opposing party. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Sufficient reasons to reject a Rule 56(f) motion include mere speculation as to what may be discovered, the irrelevance of the information sought to be discovered, and a summary judgment record which indicates that further discovery is not likely to produce facts needed to defeat the motion. 11 *Moore's Federal Practice* § 56.10[8][a] (Matthew Bender 3d ed.).

physicians for their medical and related functions (*Def.'s Ex.* B), and (b) "the Department of Health and Human Services has deemed Dr. Weaver to be an employee of the Public Health Service pursuant to 42 U.S.C. 233(g) as to all three counts against him" in this lawsuit. (*Def.'s Ex.* C). In granting Dr. Weaver's request for legal representation by the United States, the Department's presumptively authorized counsel advised the U.S. Department of Justice, in pertinent part:

> Although the complaint ... contains two counts alleging that the physician violated the plaintiff's constitutional rights, these allegations arise out of "the performance of medical ... or related functions ...by...employee[s] of the Public Health Service while acting within the scope of [their] office or employment." 42 U.S.C § 233(a).
> ***
> Although the complaint alleges that Dr. Weaver was employed by the Coosa County Commission and was acting in his official capacity as the medical doctor for the Coosa County Jail, Dr. Weaver was not a county employee when he treated the plaintiff on November 26, 2003. Rather, as the attached documentation shows, Dr. Weaver was employed by Health Services, Inc. ("health center") when he treated plaintiff on that date. . . Plaintiff was transported by jail personnel to the health center's clinic in Autaugaville, Alabama, where he was seen by Dr. Weaver. . . [T]he health center's Autaugaville clinic is within the scope of the funding grant issued pursuant to 42 U.S.C. § 254b. ....
>
> Plaintiff's claim against Dr. Weaver is one of medical malpractice, but only Count IX is plead as a standard negligence claim, while Courts I and II allege that Dr. Weaver violated plaintiff's rights under the U.S. Constitution to be free from cruel and unusual punishment. [ ] Nonetheless, all three counts arise from the performance of medical or related functions, i.e., Dr. Weaver's treatment of plaintiff's leg. For this reason, the Department of Health and Human Services has deemed Dr. Weaver to be an employee of the Public Health Service pursuant to 42 U.S.C § 233(g) as to all three counts against him.
>
> Based on our review of the medical records and Dr. Weaver's statements . . ., we are satisfied that **Dr. Weaver was acting within the scope of his deemed federal employment in connection with this matter.**

(*Def.'s Ex.* C)(emphasis added).

In response to this documented fact of Dr. Weaver's deemed status as a federally employed physician, Kelly offers only speculation – fueled by his parents' testimony of their understanding from a deputy sheriff also sued – that Dr. Weaver's undisputed evidentiary submissions should not be accepted but instead tested by further discovery. No affidavit from the deputy sheriff supports the representations attributed to her. No direct or otherwise credible evidence indicates that Dr. Weaver examined, treated, or prescribed medicines for, Kelly on any specific occasion after November 26, 2003. Nor does Kelly provide an evidentiary submission from an authorized spokesman for the Coosa County Jail or the Coosa County Commission, or from the Sheriff or a Commissioner, which would be probative of Deputy Sheriff Roberson's purported identification of Dr. Weaver as the Coosa County Jail's physician and/or the doctor who prescribed medicines or otherwise treated him after November 26, 2003.

Kelly seeks a chance to challenge the federal government's unconditional determination of Dr. Weaver's status entitling him to statutory immunity in this action. In sum, Kelly urges the court to ignore evidence because he is unable to discredit it and, instead, to permit him to engage in discovery. The requested discovery, however, is fueled only by the speculative opinions of persons having no supervisory or official roles in deciding either the physicians Coosa County hired to provide inmate medical care or the physicians the federal government can deem to be federal physicians entitled to statutory immunity. The court's decision favoring the undisputed evidence warrants little discussion.

Because the record is clear regarding Dr. Weaver's status when he did provide medical

services to Kelly, the court is bound to apply the controlling law giving final and binding effect to this factual determination:

> Once the Secretary makes a determination that an entity or an officer, governing board member, employee, or contractor of an entity is deemed to be an employee of the Public Health Service for purposes of this section, **the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding**. Except as provided in subsection (i), the Secretary and the Attorney General may not determine that the provision of services which are the subject of such a determination are not covered under this section.

42 U.S.C. § 233 (g)(1)(F) (emphasis added); *see Brown v. Health Services, Inc.*, 971 F. Supp. 518, 521 (M.D. Ala. 1997) ("The statute does not provide for judicial review of the individual administrative decisions which culminate in FTCA protection. Instead, the statute provides, in clear language that the FTCA 'shall be exclusive of any other civil remedy'".); *see also Allen v. Christenberry*, 327 F. 3d 1290, 1294 (11th Cir. 2003) ("In order to be covered under the FTCA, an entity, an employee of the entity, or a contractor of the entity seeking coverage must be deemed an employee of PHS.")

This court thus concludes that Dr. Weaver has established his entitlement to summary judgment by demonstrating the absence of any genuine dispute on the determinative fact – his status as a "deemed" Public Health Service physician when he provided medical services to Kelly – along with the clearly controlling law which insulates him from liability in this action. Because Dr. Weaver's submissions also document November 26, 2003, as the only occasion for his medical examination of Kelly, he has also established that any valid claim asserted in this action filed on December 6, 2005, would be barred by the statute of limitations if re-filed under the Federal Tort Claims Act. Kelly's suggestion of a "continuing duty" by Dr. Weaver to serve his medical needs is

13

simply unsupported by any basis in fact or law.

## V.   CONCLUSION

Pursuant to the foregoing discussion, it is the *Recommendation of the Magistrate Judge*

*1.* that Plaintiff Kelly's *request* at ¶ 3 of his Opposition (Doc. 63), *construed as a Motion,* for a Rule 56(f) stay of Dr. Weaver's summary judgment motion in order to conduct limited discovery be DENIED; and

*2.* that *Defendant Randall W. Weaver, M.D.'s Motion for Summary Judgment* (Doc. 57) be *GRANTED with respect to* the purported federal claims asserted against him in Counts I and II, and the purported state claims asserted in Count IX.

It is further **ORDERED that the parties shall file any objections to the said Recommendation not later than November 28, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of

issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 14th day of November, 2006.

> **/s/ Delores R. Boyd**
> DELORES R. BOYD
> UNITED STATES MAGISTRATE JUDGE