IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL BRYAN KELLY,           )
                              )
        Plaintiff,            )
v.                            )        2:05-CV-1150-MHT-DRB
                              )        wo
RICKY OWENS, et al.,          )
                              )
        Defendants.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

The Amended Complaint by Daniel Bryan Kelly ("Kelly"), filed pursuant to 42 U.S.C. §

1983 (Doc. 42), alleges inadequate medical care, unconstitutional conditions of confinement, and

physical abuse during his pretrial detention in the Coosa County Jail. Defendant Ricky Owens

("Sheriff Owens") is sued individually and in his official capacity as Sheriff of Coosa County. His

*Motion to Dismiss,* filed pursuant to Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil

Procedure (Doc. 43, June 2, 2006), is submitted on its supporting Memorandum Brief (Doc. 44,

"Def.'s Br."), *Plaintiff's Opposition* (Doc. 56, June 26, 2006, "Pl.'s Br."), and Defendant Owens's Reply

(Doc. 60, July 10, 2006, "Def.'s Reply Br."). As discussed herein, Sheriff Owens' Motion is due to

be granted in part and denied in part.

## I.  FACTUAL BACKGROUND

In addition to Sheriff Owens, the designated defendants are Coosa County Sheriff's Deputies

Al Bradley, Terry Wilson, and Wendy Roberson; the Coosa County Commission; and Dr. Randall

Weaver. Kelly invokes federal question jurisdiction on the Eighth and Fourteenth Amendments,

and his nine-count complaint names Sheriff Owens on federal claims in Counts I, II, III, IV, and

V.[1]   Kelly seeks from Sheriff Owens compensatory and punitive damages, declaratory relief, injunctive relief, a reasonable attorneys' fee, and costs.

Common to the claims against all defendants is Kelly's contention that during his pretrial detention, commencing on November 13, 2003, he suffered constitutionally impermissible deprivations of medical care and due process as well as cruel and unusual punishment after being "put in solitary cell known as 'the hole'" from December 6, 2003, until January 16, 2004.   In the summary which follows, the court accepts as true – solely for analytical purposes – the "allegations of fact" in paragraphs 4-41 of his Complaint and highlights those on which liability is predicated against the Sheriff.

When "placed as a pretrial detainee in the Coosa County Jail on November 13, 2003" (¶ 4), Kelly and his parents told "the defendants" (not otherwise named) about his "extensive medical history":

> that he suffered from a Bipolar disorder and had recently been in treatment for that; that he was under medication and under a doctor's care for his bipolar condition; that [he] had a history of lower back pain and a degenerative disc problem in his lower back for which he had surgery; that [he] had a history of migraine headaches; that [he] was on medication, without which he would suffer seizures.

(¶ 5).  Notwithstanding this notice, Defendants did not then provide either medication or medical treatment.

About two weeks later, a mental health professional evaluated Kelly after Defendants observed his seizures, and on November 25 he notified the defendant Sheriff and deputies "Wilson,

---

[1]All defendants are designated in Counts I and II; all except Dr. Weaver are designated in Count III; only Sheriff Owens and Deputies Wilson and Roberson are defendants in Count IV; and Count V designates the Sheriff and all three deputies.

Roberson, and Bradley of plaintiff's serious medical condition of seizures with memory loss, and of his bipolar disorder"; he recommended further evaluation. These named defendants "informed defendant [Dr.] Weaver of plaintiff's serious medical condition", and Kelly was taken to Dr. Weaver for treatment of back and leg injuries stemming from a fall. (¶ 6). Before Kelly fell again on December 5, and was taken to Russell Hospital for treatment, he had grown "increasingly disoriented" and the Sheriff and all deputy defendants purportedly knew that he had suffered more seizures.(¶ 7).

Upon Kelly's return from the hospital, Sheriff Owens decided, "for his (Owens') protection" to place him in a solitary cell known as "the hole" and so informed Kelly's family. Kelly's constitutional claims target these conditions he suffered inside the solitary cell from December 6, 2003 until January 16, 2004:

> being required...to sleep on the cell concrete floor on a thin plastic mat... (¶ 9); ...The only facility for urinating or defecating was a hole in the center of the floor beside his plastic pallet . . .The drain hole had to be flushed by jail staff from outside "the hole" and defendants Owens, Wilson, Roberson, and Bradley did not flush it or cause it to be flushed for hours at a time (¶ 10). . . Plaintiff was not provided toilet paper. ..(¶ 11)

> Plaintiff repeatedly called for water to drink but was not given water for hours at a time... Defendants Owens, Wilson, Roberson and Bradley knew that the plaintiff was without water for hours at a time but did not provide it to him. Defendant Bradley repeatedly told plaintiff that he was tied of his asking for water. . . (¶ 12)

> Defendants Owens, Wilson, Roberson and Bradley knew that plaintiff was without basic hygiene for extended periods of time but denied him access to basic hygiene . . . (¶ 13) Defendants Owens, Wilson, Roberson and Bradley were aware that plaintiff was not allowed out for exercise or use of basic hygiene but nevertheless denied his requests for access to that hygiene or exercise.(¶ 14)

> Plaintiff repeatedly requested that he be provided medication and to be taken to a doctor because he was in pain and suffering from seizures. Defendants Owens, Wilson, Roberson and Bradley were aware . . . but did not respond to his request nor

3

did they provide medication or medical treatment at the time that he was requesting it. . . (¶ 15)

Kelly avers that the sheriff and his deputies knew of his disorienting seizures and "were aware of [his] deteriorating physical and mental condition but did not call a doctor or provide access to personal hygiene or water." (¶¶ 16-17; see also ¶ 20).

Kelly also contends that Deputy Bradley "assaulted him on several occasions, beginning shortly after he was placed ["in the hole"] and continuously up until shortly before he was taken to Russell Hospital on January 16, 2004." (¶ 21; see also ¶¶ 23, 28).    He maintains that he "complained to defendant Owens, asking him when the treatment was going to stop(referring to Bradley) and when he was going to get out of 'the hole.'  Defendant Owens called the plaintiff a 'son-of-a-bitch" and told him he would stay in 'the hole' until he left the jail." (¶ 22).  According to Kelly, Sheriff Owens was "aware that Bradley would come to work intoxicated and would be abusive toward prisoners . . . [and] acknowledged to plaintiff's family that he knew Bradley would come to work intoxicated." (¶ 24).

Sheriff Owens ignored a specific request from Kelly's family, made on Christmas day 2003, that Kelly be allowed out of "the hole" to "walk around for just a little while."  (¶ 25). Kelly received medications inappropriately and without medical training or supervision. (¶¶ 29-31).  Sheriff Owens continued to ignore his requests for medical attention "[s]hortly after Christmas [when he] began to experience pains in his right side and complained to defendants that he needed to see a doctor." (¶ 27).  Kelly also attributes to the Sheriff specific notice, as follows, that his confinement conditions inside "the hole" served to exacerbate his suffering:

Plaintiff experienced shocking feelings all over his body and complained about them

to defendants. Plaintiff became extremely cold laying on the floor but defendant Owens, Wilson, Roberson and Bradley not allow (sic) him to move to a bed off of the cold concrete floor. He repeatedly complained about this to them. Plaintiff's confinement in the "hole" was during the months of December and January. The whole jail was so cold at this time that when plaintiff's parents went to regular visitation they had to keep their coats on. Plaintiff's parents observed at those times that the jail staff would be wearing coats also.

(¶31).

On January 7, 2004, a doctor examined the skin rash Kelly had complained about for several weeks, and he was admitted to the hospital on January 16, 2004, with diagnoses including "drug induced hepatitis, and drug poisoning." He claims to have been diagnosed "as suffering from Post Traumatic Stress Disorder" as a result of defendants' alleged treatment. (¶ 30).

## II.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) dictates that the question of subject matter jurisdiction be accorded priority consideration because it implicates the court's "very power to hear the case." *Bell v. Hood,* 327 U.S. 678, 682-683 (1946); *see Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1261 (11th Cir.1997) (noting that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"); *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

Dismissal pursuant to Rule 12(b)(6) is appropriate only if the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The threshold issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).  The court must accept as true the plaintiff's factual allegations, draw all reasonable inferences in the plaintiff's favor, and construe the pleadings liberally so as to do substantial justice.

When a governmental officer sued individually asserts qualified immunity, as Sheriff Owens does, controlling Eleventh Circuit precedent imposes a "heightened pleading" standard for the complaint instead of Rule 8's minimal notice pleading.[2]  A dismissal motion grounded on the defendant's qualified immunity requires the court to accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Dalrymple v. Reno*, 334 F.3d 991, 994-995 (11th Cir. 2003).  Only "well-pleaded facts" and "reasonable inferences drawn from those facts" should be accepted.  *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir.

---

[2]*See GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998)("We stress at this point, . . . that the heightened pleading requirement is the law of this circuit. . . . Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities,  *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases involving individual government officials,  *see id*. at 167, 113 S.Ct. at 1162, and we likewise decline to do so here.");  *See Wash v. Bauer*, 149 Fed. Appx. 867, at*870 (11th Cir. 2005)("[T]here is a heightened pleading requirement when a plaintiff brings a §1983 complaint against officials acting in their individual capacities.")*; Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1281 n. 31 (M.D.Ala. 2004) (recognizing that the Eleventh Circuit employs heightened pleading standards for §1983 claims against state officials in their individual capacities).

2001).

## III.    DISCUSSION

Sheriff Owens seeks dismissal of "official capacity" claims on three grounds: (1) that he is entitled to Eleventh Amendment immunity; (2) that he is not a "person" for purposes of 42 U.S.C. §1983;  and (3) that any equitable claims are moot, not justiciable for Plaintiff's lack of standing, and/or fail under the facts pled. He seeks dismissal of Eighth Amendment claims  because Kelly was a pretrial detainee, and he asserts qualified immunity on the remaining claims in his "individual capacity."

### A.    "Official Capacity" Claims

Sheriff Owens contends correctly, pursuant to Rule 12(b)(1), that the Eleventh Amendment bars "official capacity" claims  against him and thereby deprives this court of subject matter jurisdiction.   Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under  Alabama law, a county sheriff acts as a state officer "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of state's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is  executive officer of the State).  *As* explained *in Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997):

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59  (1996)].  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.

7

Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

Sheriff Owens is also correct that Rule 12(b)(6) dictates dismissal of official capacity claims asserted under 42 U.S.C. §1983 because *he* does not qualify, in his official capacity, as a "person" within this statute. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989); *Carr v. City of Florence, Ala.*, 916 F.2d 1521,1525 n.2 (11th Cir. 1990).

Kelly's response in opposition argues: (1)Eleventh Amendment immunity does not apply to injunctive relief [*citing Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989) and *Edelman v. Jordan*, 415 U.S. 651, 664 (1974)]; (2) § 1983 suits are allowed against public officials in their official capacities for injunctive relief (citing *Will*, 491 U.S. at 71), and (3)Plaintiff's claims are not moot. (*Pl.'s Br.* at 2). "The purpose of the injunctive relief sought," Kelly submits, is "to prevent similar future treatment by Owens in his official capacity." (*Pl.'s Br.* at 4).

Kelly's arguments are entirely bootless, however, because his complaint provides no factual basis for a finding that he is now, or will be, subject to the treatment attributed to the Sheriff in his official capacity. The Complaint asserts his transfer from the Coosa County Jail but does not report his subsequent return to jail or status elsewhere.[3] The only reference to Kelly's status after his January 2004 hospitalization comes from his brief in opposition to dismissal.[4] The court cannot speculate

---

[3]*See Compl.*, Doc. 42, ¶ 32; *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir.1985)*, citing Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984).

[4]Counsel submits:

Plaintiff expects the evidence will be that, since he has been confined in the state
(continued...)

8

with Kelly that "[he] is much more likely to be confronted with confinement in the Coosa County jail due to his mental and physical illnesses . . ." (*Pl.'s Br.* at 5).

Kelly specifies conditions he suffered as a pretrial detainee almost four years ago. The Complaint provides no sound basis for the court to assess cited jail conditions as ongoing, to evaluate whether the Sheriff continue to engage in and/or allow the conduct alleged, or to pinpoint Kelly's status as a contemporary or imminent sufferer of unconstitutional conditions of confinement. Kelly's claim for injunctive and declaratory relief requires him to show a sufficient likelihood of future harm. *See City of Los Angeles v. Lyons,* 461 U.S. 95 (1983); *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994). His Complaint makes no such showing; as presently plead, it states no cause for which injunctive relief can be granted against these deputies in their official capacities.

### B.    Eighth Amendment Claims

Kelly concedes that his status as a pretrial detainee dictates judicial analysis of his monetary claims under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's cruel and unusual punishment prohibition. (*Pl.'s Br.* at 10-11). Indisputably, there is no appreciable difference in the analysis under these Amendments. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell*

---

[4](...continued)

> penitentiary, he has had involuntary reactions that caused to be revisited upon him all the horrors he suffered in the Coosa County jail when he was awakened and merely given an order by a prison guard. Plaintiff expects the evidence will be that this reaction caused the prison system to transfer him to the state prison system's psychiatric unit. In this way, plaintiff's continuing injury makes him much more vulnerable, so that merely being arrested and confined in the Coosa County jail in its current condition will likely further exacerbate his continuing injuries.

> (*Pl.'s Br.* at 6).

*v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). He insists, however, that his claims for "injunctive and declaratory relief" trigger Eighth Amendment analysis "because he is now a convicted prisoner, and is likely to be subject to re-confinement in the Coosa County jail as a convicted prisoner . . . because parole revocation is vested in the circuit judge, . . . and he is likely to be held in the Coosa County jail if in his parole officer's judgment he ha violated parole." (*Pl.'s Br.* at 11).

The contention assumes facts not included on this record. Kelly's Complaint fails to allege either his dual status as a pretrial detainee and a convicted prisoner or his status as a convicted prisoner after his transport from the jail to Russell Hospital on January 16, 2004. As noted, *supra*, the Complaint does not indicate if Kelly ever returned to the jail, and the omission negates his entitlement to any injunctive and declaratory relief *(see* n.3, *supra)*. Consequently, Eighth Amendment claims are due to be dismissed based on the present complaint.

### C.    Qualified Immunity

#### 1.    *Qualified Immunity Standards*

Qualified immunity offers "complete protection for government officials sued in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As explained by the court in *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002):

> [t]he purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, [ ], protecting from suit all but the plainly

incompetent or one who is knowingly violating the federal law. *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

An officer asserting qualified immunity "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1998)). Assuming the officer's requisite showing for his discretionary authority, the burden shifts to the Section 1983 plaintiff to demonstrate the impropriety of qualified immunity. The court's evaluation must be guided by the two-pronged test required by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001):

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?...[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition.

The governing law is clearly established if the "'preexisting law dictates, that is, truly compel[s], ' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Marsh v. Butler County*, 268 F.3d 1014, 1031 (11th Cir. 2001) (*en banc*) (citations omitted). Plaintiff must establish that at the time of the challenged conduct the law then gave the defendant "fair warning" of the unconstitutionality of his alleged conduct. *Willingham v. Loughnan*, 321 F. 3d 1299, 1301 (11th Cir. 2003).

### 2. *Qualified Immunity Analysis*

In support of his qualified immunity defense, Sheriff Owens argues that "[he] was clearly acting within his discretionary authority; [Kelly] has failed to allege sufficient non-conclusory facts

11

demonstrating that [he] violated his federally protected rights; [and] . . . no clearly established law provided [him] with the requisite 'fair warning' that his conduct was illegal." (*Def.'s Br.* at 9). In opposition, Kelly maintains that pursuant to clearly established law the Sheriff violated his constitutional rights with respect to jail conditions, deliberate indifference to serious medical needs, "knowing failure to stop jail staff from abusing [him]", and failure to train jail staff. (*Pl.'s Br.* at 12). Because Kelly does not dispute that the Sheriff acted within his discretionary authority, the court addresses directly the alleged violation of federally secured rights.

### (i) Deliberate Indifference to Medical Needs

In the context of a pretrial detainee's claim for "deliberate indifference to medical needs", the Eleventh Circuit has treated the Eighth and Fourteenth Amendment protections as co-extensive. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). Thus, Kelly must allege facts demonstrating that Sheriff Owens acted with deliberate indifference to his serious medical conditions and needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994). Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834-836 (1994) ("Deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge

12

at the other . . ." ).[5]

The complaint satisfies the "heightened pleading" standard sufficiently for Kelly to proceed against Sheriff Owens individually on the "deliberate indifference to serious medical needs" claims asserted in Counts I and II. Kelly specifies the Sheriff's "actual knowledge or awareness" – through communications from him and his parents at the time of his admission to the jail – of his extensive medical history, which included a bipolar mental disorder for which he had recently been treated and remained under medication, and his dependence on medications, without which he would suffer seizures. Such knowledge and awareness gave the Sheriff reason to characterize and to treat Kelly as an at-risk inmate. Within two weeks or so after his admission, Kelly apparently suffered seizures which were observed by defendants and resulted in a mental health evaluation, which resulted in professional advice that Kelly "needed an evaluation by a doctor for the seizures."

Sheriff Owens argues that the act of securing a mental health evaluation for Kelly is inconsistent with any "deliberate indifference" claim; for the same reason, he highlights the provision

---

[5]The Eleventh Circuit explained in *Farrow v. West*, 320 F.3d 1235, 1243-1246 (11th Cir. 2003) that the plaintiff must satisfy both an objective query – an objectively serious medical need – and a subjective inquiry – the official's deliberate indifference to that need:

> [W]e have stated that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 (11th Cir.1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248 , 1255(11th Cir. 1999).

*Id.* at 1246.

13

of medications to Kelly and the medical attention provided for his falls. Viewed in isolation, these acts might be so construed, but at this pre-discovery Rule 12(b)(6) stage, the court is bound to construe all of the allegations, and the reasonable inferences therefrom, most favorably to the plaintiff. The Complaint alleges that even with the knowledge of Kelly's medical history acquired at his admission and from the mental health professional on November 25, 2003, the Sheriff continued both (a) to be deliberately indifferent to this knowledge by failing to take steps to abate the risks indicated for his health, and (b) to acquire additional knowledge or awareness of serious risks to his medical needs and fail to abate them.

In the category of failing to abate indicated risks, the Complaint alleges that the Sheriff did not act on the recommended "evaluation by a doctor for the seizures" (¶ 6), and that Kelly's seizures continued at least to December 5 – triggering a reasonable inference that Kelly did not receive the medications necessary to prevent them, as the Sheriff had been warned. Moreover, the Complaint specifies two additional sources for the Sheriff's continuing awareness of Kelly's serious medical problems and urgent need for special attention: his private treating physician's request "that he be brought to a lock down unit in Birmingham for his medical supervision" (¶ 7); and Kelly's hospital treatment on December 5 for an injury to his back. Notwithstanding this notice of his serious medical needs, the Sheriff – according to the plead facts – knowingly confined Kelly in an isolation cell where he suffered conditions bound to aggravate significantly his injured back as well as his other mental and medical ailments. That the Sheriff was kept apprised of but ignored his continued suffering is also specified in the Complaint (see ¶¶16-25).

Deliberate indifference can occur when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference

14

could be drawn that a substantial risk of serious harm exists and he must also draw the inference."
*Farmer*, 511 U.S. at  837.  As plead, Kelly's medical needs – as manifested by observed seizures, complaints of "shocking feelings all over his body", skin itching, confusion, and depression so severe that he continually begged for help –  were  demonstrable and sufficiently significant that  even a layperson would believe  that refusing or delaying proper or emergency medical attention might  be exacerbating. [6]  Kelly alleges, in fact,  that delayed and improper medical treatment resulted in diagnosed conditions of drug induced hepatitis, drug poisoning, and post traumatic stress disorder.

After viewing all relevant  factual allegations most favorably to Kelly, against the backdrop of the applicable law then clearly established,  the court cannot conclude that Kelly cannot state a claim against Sheriff Owens for deliberate indifference to his serious medical needs.  The Complaint alleges objectively Kelly's serious medical conditions and needs, Sheriff Owens' subjective knowledge of a risk of serious harm to Kelly and his disregard of that risk by deliberate acts and omissions which

---

[6]In assessing the seriousness of the medical needs alleged, the court in *Hill,* 40 F.3d. at 1188-89, advised:

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

surpass mere negligence.    Accordingly, Rule 12(b)(6) dismissal is inappropriate.

### (ii) General Conditions of Confinement

Nor is dismissal warranted at this juncture on Kelly's allegations that Sheriff Owens violated his constitutional rights with respect to his conditions of confinement (Count III) and the physical abuse allegedly suffered at the hand of Defendant Deputy Sheriff Bradley (Count V).  Kelly specifies supporting facts for both claims which demonstrate (1) deprivations that are "objectively, sufficiently serious" such that he was denied "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of Sheriff Owens,  such as deliberate indifference to inmate health or safety.  *See Farmer v. Brennan,* 511 U.S. at 834.[7]  Sheriff Owens may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates. *See   Bozeman v. Orum,* 199 F.Supp.2d 1216, 1233 (M.D.Ala.2002), *citing Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999).

Regarding the conditions of Kelly's confinement, the Complaint alleges the Sheriff's specific notice and awareness of (a) the conditions inside the "hole" which, as described in ¶¶ 10-14, clearly

_____

[7]See *Hamm v. Dekalb Co.,*774 F. 2d at 1574 ("[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons."); Assessing the constitutionality of Kelly's confinement conditions in "the hole" – as described with particularity in the complaint – requires the court to examine "contemporary standards of decency," *Estelle  v.  Gamble,*  429 U.S. at 103, to ascertain whether those conditions deprived him of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The conditions in controversy  must have deprived him, at minimum, "of a single human need." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).  Kelly's complaint meets this standard.

indicate deprivation of the "minimal civilized measure of life's necessities", and (b) his substantial and continuing suffering exacerbated by preexisting mental and physical illnesses. Notwithstanding Kelly's specific complaints and observable suffering, the Sheriff continued Kelly's confinement for weeks and disregarded serious risks to his health triggered by the absence of basic hygiene, water, or exercise.

In analyzing the extant state of the law concerning the constitutionality of the confinement conditions described, Kelly's litany of deprivations and denied necessities should not be segregated but instead evaluated by reference to their entirety and in the context of his serious, preexisting medical conditions. The Complaint challenges both Kelly's placement in "the hole" and the uncivilized conditions therein endured. Clearly established law recognized a claim under the Fourteenth Amendment's Due Process Clause on an inmate's allegations of confinement conditions or restricts not reasonably related to a legitimate penological goal. *See Lynch v. Baxley*, 744 F.2d 1452, 1463 (11th Cir. 1984) ("If a restriction is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may infer that the purpose of the government action is punishment.")

Kelly alleges deprivations which appear to have no purpose except to punish or humiliate him because of his mental illness. According to Kelly, Sheriff Owens reported to his parents that confining him in "the hole" was for his (the Sheriff's) protection. Accepting this allegation as true, the court finds it incomprehensible how the Sheriff advanced this purpose by compelling Kelly – a bipolar, medication-dependent, seizure-prone, back-injured pretrial detainee – from December 6, 2003 though January 16, 2004:

> to sleep on the cell concrete floor on a thin plastic mat" just a day after receiving hospital treatment for the injured back . . . inside a solitary cell having "no running water or a toilet". . . to be deprived of toilet paper . . . not to be "given water for hours

at a time. . . to be "denied access to a shower or means to carry out personal hygiene for extended periods, and on several occasions for days at a time" . . .. to be denied any exercise outside the cell. . . (see ¶¶ 9-14)

Indeed,  Kelly attributes to the Sheriff a blatant disregard for his plight as well as notice of his deputies' similar disregard, and his pertinent allegations clearly discredit any legitimate purpose for his either his confinement or the conditions in "the hole."

Defendant Bradley repeatedly told plaintiff that he was tired of his asking for water. Plaintiff begged for water continuously over the course of the day on a daily basis the whole time he was in the "hole", but defendants did not give it to him.  (¶ 12);

Plaintiff repeatedly asked defendants to clean his toilet facility and they would laugh at him. (¶13);  He repeatedly begged for help and to go to a doctor because he felt sick and weak, was in pain and suffering from seizures. . . . Plaintiff asked Wilson, Roberson, and Bradley about this repeatedly.  They would reply that defendant Owens had to make those decisions, and that they had told him. (¶15).

Defendant Owens took a piece of paper and taped it over the window in the "hole in response to plaintiff's repeated cries for help. . . Owens told plaintiff he covered the window to keep plaintiff [from] calling out all the time. (¶16).

On or about December 16, 2003, plaintiff's parents requested a copy of the evaluation and recommendation done by the mental health personnel from defendant Owens. Owens acknowledged that the mental health person had met with plaintiff but he denied that there was any recommendation and refused to provide anything. (¶18).

Plaintiff complained to defendant Owens, asking him when the treatment was going to stop (referring to Bradley) and when he was going to get out of "the hole." Defendant Owens called the plaintiff a "son-of-a bitch" and told him he would stay in "the hole"until he left the jail. (¶22).

That the Sheriff knew, or reasonably should have known, the constitutional impropriety of the confinement conditions alleged appears beyond cavil.  *See  Hope v. Pelzer,* 536 U.S. 730, 738  (2002) (finding "obvious" the constitutional violation);  *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1280 n.10 (11th Cir. 2002) (A "right may be so clear from the text of the Constitution or federal statute that no

prior decision is necessary to give clear notice of it to an official.")

### (iii) *"Excessive Force" Conditions*

Kelly also pleads that Sheriff Owens not only had specific notice of Deputy Bradley's unprovoked assaults and excessive force but also that he apparently acquiesced, knew of this deputy's predisposition for alcohol-influenced or gratuitous violence to inmates, and and otherwise ignored his specific pleas for help. (see ¶¶ 22, 24). Force is deemed constitutionally legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002), *quoting Whitley v. Albers,* 475 U.S. 312, 320-21 (1986). The Eleventh Circuit in *Skrtich* provided this test for excessive force:

> To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Id.* at 1300 -1301.

Kelly attributes to Deputy Bradley force, which if proven, clearly qualifies as unprovoked, excessive, unjustified, malicious, wanton, and otherwise deliberate infliction of harm for the sake of inflicting harm. Kelly alleges that Sheriff Owens had specific notice of this unconstitutionally applied force, that he acquiesced in its application, and had an awareness of Kelly's serious risk of harm from Deputy Bradley as well as Kelly's actual suffering and complaints; because he also alleges that Sheriff

Owens failed to prevent this repeated physical abuse and willfully disregarded his serious risk of harm, Rule 12(b)(6) dismissal is not appropriate in response to the Sheriff's assertion of qualified immunity.[8]

### (iv) Failure to Train Jail Staff

In contrast to the allegations in Counts I, II, III, and V, Kelly's "failure to train" allegations in Count IV, are too non-specific and conclusory to be sustained against the Sheriff's qualified immunity defense.   Kelly alleges only generally that "Defendants Owens, Wilson and Roberson "fail[ed] to provide training to jail staff regarding the mistreatment and proper treatment of prisoners." No factual averments buttress this legal claim; in fact, "training" is referenced in only one paragraph, as follows: "Defendants gave plaintiff medications but did so without any training or supervision and not in accordance with any medically appropriate treatment scheme." (¶30).  This single reference is wholly inadequate for any assessment of Sheriff Owens' relevant acts or omissions in training his staff, and the court's assessment must point to the Sheriff's impairment of a  Kelly's constitutional right relating to training of the jail staff.  Sheriff Owens correctly states that the complaint does not allege a cognizable failure to train claim.  *See Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990).  Rule 12(b)(6) dismissal is  warranted on this claim.

---

[8]As Deputy Bradley's supervisor, Sheriff Owens can be held liable if Kelly proves the alleged facts.  *See Braddy v. Florida Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (finding supervisory liability possible "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.");  *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990) (finding that supervisory liability is appropriate when "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate.")

## IV.   CONCLUSION

**A.   *It is, therefore, the Recommendation of the Magistrate Judge* that Defendant Sheriff Owens's *Motion to Dismiss the First Amended Complaint* (Doc.43) be *GRANTED* to the following extent that:**

      1.   Section 1983 claims asserted  under the Eighth Amendment be DISMISSED;

      2.   Section 1983 claims for monetary damages under the Fourteenth Amendment be DISMISSED with prejudice against Defendant Sheriff Owens in his *official* capacity;

      3.   Section 1983 claims for injunctive and declaratory relief under the Fourteenth Amendment  be  DISMISSED without prejudice against Defendant Sheriff Owens in his *official* capacity; and

      4.   Section 1983 claims for monetary damages under the Fourteenth Amendment be DISMISSED with prejudice against Defendant Sheriff Owens in his individual capacity on the "failure to train jail staff" claims asserted in Count IV.


**B.   *It is  further the Recommendation of the Magistrate Judge* that  Defendant Sheriff Owens's *Motion to Dismiss the First Amended Complaint* (Doc.43) be *DENIED* with respect to the  following-described claims asserted under the Fourteenth Amendment against him individually for monetary damages:**

      1.   "Deliberate Indifference to Medical Care" claims in Counts I and II;

      2.   " Unconstitutional Conditions of Confinement" claim in Count III; and

      3.   "Unconstitutional failure to prevent excessive force" claim in Count V.

It is further **ORDERED that the parties shall file any objections to the said Recommendation not later than November 30, 2006.**   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 16th   DAY OF November, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE