IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL BRYAN KELLY,                    )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )          2:05-CV-1150-MHT-TFM
                                       )
RICKY OWENS,  et al.,                  )
                                       )
        Defendants.                    )

## OPINION AND ORDER

Pending before the court is a *Motion to Quash Subpoena* (Doc. #95, filed on

August 9, 2007 by a non-party, the Board of Trustees of The University of Alabama, on

behalf of the University of Alabama Hospital).  This Court issued an Order for the parties

to show cause why the *Motion* should not be granted.  (Doc. #97).  Defendants Bradley,

Roberson, and Wilson filed a timely response to the Order.  (Doc. #98).  Plaintiff did not

file a response.  Having reviewed the pleadings and issues in this case, the Court is

prepared to rule on the *Motion to Quash*.

## BACKGROUND

The *Amended Complaint* by Daniel Bryan Kelly ("Kelly"), filed pursuant to 42

U.S.C. § 1983 (Doc. #42), alleges inadequate medical care and physical abuse during his

pretrial detention in the Coosa County Jail.  Kelly's allegations of fact recite he was

"placed as a pretrial detainee in the Coosa County Jail on November 13, 2003," and that

upon admission to the jail, he and his parents informed the defendants "that he suffered

from a Bipolar disorder and had recently been in treatment for that; that he was under

medication and under a doctor's care for his bipolar condition. . . ."  (Doc. #42, at ¶ ¶4-5).

The *Complaint* also alleges the conditions of Kelly's confinement caused his mental

condition to deteriorate, induced hallucinations, and led to his being diagnosed with Post

Traumatic Stress Disorder.  (Doc. #42, at ¶ ¶17, 27, 40).

During the course of this litigation Defendants served upon the University of

Alabama Hospital ("the Hospital") a subpoena duces tecum, which prompted the Hospital

to file a *Motion to Quash Subpoena*.  The subpoena requested the Hospital to produce

> Any and all medical or psychological records, or other documents,
> including, without limitation, all letters, charts, diagnosis, prognosis,
> histories, pictures, summaries, records of interviews, records of treatments,
> records of any test(s) performed or administered by you or anyone at your
> request, memoranda, progress notes, opinions, conclusions, office notes,
> handwritten notes, bills, operative notes, discharge reports, pharmacy
> records, pharmacy bills, and other written materials in your file, in your
> possession, or under your control that reference, relate, or pertain to Daniel
> Bryan Kelley, DOB: June 17, 1971, SSN XXX-XX-XXXX, as well as
> copies of all statements for services rendered showing dates of treatment
> and charges made.

(Doc. #95, at ¶ 1).  The Hospital asserts its right to withhold any documents which

"include confidential communications between [Kelly] and a licensed

psychiatrist/psychologist, which are protected from disclosure by law.  Ala. Code §34-26-

2 (1975)[1]."  (Doc. #95, at ¶ 2).  After its assertion of the privilege, the Hospital notes "the

---

[1]  The statute provides "[F]or the purpose of this chapter, the confidential relations and
communications between licensed psychologists, licensed psychiatrists, or licensed
psychological technicians and their clients are placed upon the same basis as those
provided by law between attorney and client, and nothing in this chapter shall be
construed to require any such privileged communication to be disclosed."  Ala. Code §34-
26-2 (1975)

burden of showing that privileged records are necessary to a party's case rests with the party seeking the privileged records and requires such a finding by the court." (Doc. #95, at ¶ 2). It further states it is unaware of Kelly's waiver of his state law privilege during this litigation. (Doc. #95, at ¶ 3).

Defendants Bradley, Roberson, and Wilson filed a *Reply In Opposition to the Motion to Quash* (Doc. #98), which responded the privilege provided by Ala. Code §34-26-2 is inapplicable. Defendants assert Kelly's pursuit of a remedy under 42 U.S.C. § 1983 places the issue of privilege within the coverage of Federal Rule of Evidence 501.[2]

## DISCUSSION

"A subpoena must be quashed or modified if it 'requires disclosure of privileged or other protected matter and no exception or waiver applies.'" *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 (N.D. Ga. 2001). The Hospital supports its *Motion to Quash* by citation to the Alabama Supreme Court's decision in *Ex Parte Western Mental Health Center*, 884 So.2d 835 (Ala. 2004), wherein the Court interpreted Ala. Code §34-26-2 to except from its coverage "(1) child custody cases in which the mental state of a parent is at issue; (2) a criminal case plea of insanity; (3) psychiatric commitment proceedings; (4) communications relevant in proceedings to hospitalize a patient for

---

[2]The relevant portion of that rule provides "[T]he privilege of a . . . person . . . shall be governed by principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, [or] person . . . shall be determined in accordance with State law." F.R.E. 501.

3

mental illness; and (5) a case involving breach of duty arising out of the psychotherapist-patient privilege."  (Doc. #95, at ¶ 2).  *See Ex Parte Western Mental Health Center*, 884 So.2d at 840-41.  As none of these exceptions are present in this litigation, and Kelly has not provided a waiver of his privilege, the Hospital seeks to produce only those documents which do not reveal "confidential communications between [Kelly] and a licensed psychiatrist/psychologist."

The Eleventh Circuit last examined the interplay of F.R.E. 501and evidence of psychiatric treatment in *Hancock v. Hobbs*, 967 F.2d 462 (11th Cir. 1992).  The *Hancock* Court found federal law governed issues of privilege in actions under § 1983, and the federal common law did not recognize a psychiatrist-patient privilege.  *Hancock*, 967 F.2d at 466.  The Court also held "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege."  *Id.* at 467.  The portion of the *Hancock* ruling as to the existence of a psychotherapist-patient privilege was abrogated when the Supreme Court recognized the privilege, and used F.R.E. 501 to protect "confidential communications between a licensed psychotherapist and her patients [made] in the course of diagnosis or treatment. . . ."  *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 1931 (1996).  The *Jaffee* Court also held the privilege was extended "with equal force to treatment by a clinical social worker . . . ."  *Jaffee*, *id*.  The Supreme Court did not discuss circumstances where the privilege would not apply, but stated "we do not

4

doubt that there are situations in which the privilege must give way. . . ." *Id*. at 18, n.19, 116 S.Ct. at 1932.

*Stevenson* provides a thorough discussion of the post-*Jaffee* decisions addressing the psychotherapist-patient privilege. After noting the absence of Eleventh Circuit guidance on the issue, United States Magistrate Judge Scofield reviewed the circumstances under which a patient was deemed to have waived his psychotherapist-patient privilege under *Jaffee*. A consensus of courts hold the privilege is waived where a party places his "mental condition in issue." *Stevenson*, 201 F.R.D. at 556. Many cases distinguish between cases presenting a "'garden variety' claim of emotional distress," which does not waive the privilege, and cases where a patient's psychiatric condition is clearly at issue and justifies a waiver. *Id*. at 556-57.

A review of the *Complaint* in this § 1983 action reveals Kelly has placed his mental health, prior to and after his detention in the Coosa County Jail, directly at issue. Kelly alleges he had been diagnosed as bipolar prior to November, 2003, and diagnosed with post traumatic stress disorder after his experience in the jail. (Doc. # 42, at ¶¶ 4-5, 40). He alleges the defendants disregarded his pre-existing mental condition during his detention, and their actions led to the development of another serious mental condition. The Court cannot fathom a more clear example of voluntary waiver of the psychotherapist-patient privilege. Notwithstanding the Hospital's belief that state law prevents its production of the documents requested in the subpoena, it is clear that federal decisional law governs the privileged material at issue, even if the material is "relevant to

5

a pendent state law count which may be controlled by a contrary state law of privilege."[3]

*Hancock*, *id*. at 467.

## CONCLUSION

The federal common law recognizes a psychotherapist-patient privilege, applicable through *Jaffee* and F.R.E. 501. Kelly waived that privilege when he placed his mental health at issue by alleging existing mental illness when he was first detained in the Coosa County Jail, and a newly developed mental illness as a result of his treatment while detained. These claims of ongoing and new mental illness constitute a waiver of privilege, and satisfy Defendants' burden of showing the records are necessary to their defense of this action. Federal precedent requires the Hospital to comply with Defendants' subpoena requests.

Accordingly, the *Motion to Quash* filed by the Board of Trustees of the University of Alabama is hereby DENIED.

Done this 4th day of September, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

_____

[3]Negligence claims governed by state law were included in the *Complaint*, but were dismissed pursuant to a Recommendation by the Magistrate Judge. (Doc. # # 67, 72). Presumably, these claims would have been subject to the ruling in *Ex Parte Western Mental Health Center* if not dismissed.

7