**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BRYAN KELLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 2:05-cv-1150-T** |
| | ) | |
| **RICKY OWENS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS TERRY WILSON, WENDY ROBERSON AND AL BRADLEY'S MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Terry Wilson, Wendy Roberson and Al Bradley, Defendants in the above-styled cause, in their individual capacities, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit this memorandum brief in support of their contemporaneously filed motion for summary judgment. Defendants Wilson, Roberson and Bradley adopt and incorporate by reference the "Statement of Facts" contained in Co-Defendant Ricky Owens' "Motion for Summary Judgment" as well as "Defendants' Joint Evidentiary Submissions" both filed contemporaneously herewith under separate cover. Summary judgment is appropriate because the Plaintiff has filed to create a genuine issue of fact and these Defendants are entitled to judgment as a matter of law especially on the basis of qualified immunity.

### ARGUMENT

Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-23.

When deciding whether the moving party is entitled to summary judgment, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. Early v. Champion Int'l. Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).

On a motion for summary judgment, the court should view the evidence in the light most favorable to the non-movant. Greason v Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the non-movant's benefit. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000). "[T]he court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested

witnesses.'" Id. (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299).[1]  The Court "need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) (quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998)).

Just a few months ago, the United States Supreme Court, in a qualified immunity case, revisited the standard of review in the context of a motion for summary judgment emphasizing the "reasonable jury" aspect of the standard:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.*

Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (Emphasis added).

---

[1] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review, relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In <u>Scott</u>, the Supreme Court rejected the reading of the record by the district court and the Eleventh Circuit Court of Appeals which had, in an effort to view the evidence in a light most favorable to the Plaintiff, credited the Plaintiff's deposition testimony. In his deposition, Harris swore that "[he had] remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns. He did not run any motorists off the road. Nor was he a threat to pedestrians in the shopping center parking lot, which was free from pedestrian and vehicular traffic as the center was closed." <u>Id</u>. at 1775. Yet the Plaintiff's words were flatly contradicted by other more credible aspects of the record, particularly a videotape showing driving in an extremely reckless manner: "The videotape tells quite a different story." <u>Id</u>.

Nothing in the <u>Scott</u> opinion, however, limited its application to cases where the Plaintiff's testimony is pitted against videotape. The Ninth Circuit in <u>Skylstad v. Reynolds</u>, 2007 WL 2766436 at *2 (9th Cir. 2007), relying on <u>Scott</u>'s broadening of the motion for summary judgment standard, rejected the Plaintiff's version of the facts *even without a videotape disputing it*.

> Skylstad disputes that he actively resisted arrest. Declarations from officers on the scene unanimously state that Skylstad refused to exit the car and violently resisted arrest. Skylstad states that he voluntarily surrendered, that the officers unnecessarily used a K-9 dog to repeatedly bite and attack him, and that the officers smashed his head against the car and cut his arms open at the scene to take his blood. Skylstad offers the declarations of his wife and two other witnesses to support his version of events. The medical evidence, however, directly contradicts Skylstad's version of events. Although the dog bite was serious and required medical attention, there is no medical evidence of multiple dog bites, head injury, or cuts on the arms. . . . In summary, Skylstad failed to raise a triable issue for a jury on his claim of excessive force.

<u>Skylstad</u>, 2007 2766436 at *2 - * 3.

Similarly, the Northern District of Georgia granted summary judgment on an excessive force claim, citing <u>Scott v. Harris</u>'s standard and concluding that "the evidence supporting William's claim that Hatcher used unconstitutionally excessive force is exceptionally weak." <u>Williams v. Martin</u>, 2007 WL 4139476 (N.D. Ga. Oct 29, 2007); <u>see</u> <u>Morales-Arcadio v. Shannon Produce Farms, Inc</u>. 2007 WL 2106188, *9 (S.D.Ga. 2007) ("There thus is no genuine issue of fact that the checks face-dated 8/11/04 were printed and given to the workers in late September or early October 2004. Though Shannon would like to take a position without evidentiary support other than the user-selected face date on the check, that 'position is so utterly discredited by the record that no reasonable jury could ... believe [ ]' it." (<u>quoting</u> <u>Scott v. Harris</u>, 550 U.S. ----, 127 S.Ct. 1769, 1776 (2007)).

Defendants Terry Wilson, Wendy Roberson and Al Bradley are entitled to judgment in their favor as a matter of law on each of the Plaintiff's claims because they are entitled to qualified immunity. Once a Defendant has asserted the defense of qualified immunity and demonstrated that he was acting within his discretionary authority, the burden shifts to the Plaintiff who must first demonstrate from the record that the defendant official violated his federally protected rights. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). However, even if the Plaintiff successfully makes such a showing, he must also point the Court to clearly established law that provided "fair warning" that the conduct of the Defendants was illegal. <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003). In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing Court must examine the state of law at the time the alleged deprivation occurred. <u>See</u> <u>Rodgers v. Horsley</u>, 39

F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1998). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Applying the Supreme Court's reasoning in Scott and its progeny in the context of qualified immunity, this Court is justified in concluding that no reasonable jury would find the Plaintiff's outrageous claims (which find no objective support in the record) credible. As set forth more extensively below, Defendants Wilson, Roberson and Bradley are entitled to qualified immunity for three reasons. First, these Defendants were acting within their discretionary authority. Second, the evidence in the record would not convince any reasonable juror that these Defendants violated any of the Plaintiff's federally protected rights. Third, even if the record contained evidence of a constitutional violation, no clearly established law provided these Defendants with the requisite fair warning that their conduct was unlawful.

## I.    DEFENDANTS WILSON, ROBERSON AND BRADLEY ACTED WITHIN THEIR DISCRETIONARY AUTHORITY.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity.  Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988).  In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)).  Courts should not be "overly narrow" in interpreting this requirement.  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted).  As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear."  Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

This Court noted at the motion to dismiss stage that the Plaintiff did not contest that Sheriff Owens was acting within his discretionary authority.  (Doc. 71 at p. 12.)  The same conclusion is true with respect to Defendants Wilson, Roberson and Bradley.  No evidence that has come out of discovery leads to any conclusion other than these Defendants were acting in their discretionary authority.  At all times they were acting as jailers at the Coosa County Jail and employees of Sheriff Owens.  At all times the Plaintiff was an inmate of the Coosa County Jail.  It was only in their capacity as jail staff

members that they had any authority or obligation to operate the jail, supervise jail staff (to the extent alleged), supervise inmates, or provide inmate medical care. As all of the alleged actions were taken under the auspices of these roles, these Defendants were acting within their discretionary authority.

> **A.    Neither Wilson, Roberson nor Bradley Violated the Plaintiff's Federally Protected Rights.**

To the extent the Plaintiff attempts to make supervisory claims against Wilson and Roberson, neither Wilson nor Roberson are liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The causal connection may be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).

> **1.    Neither Wilson, Roberson nor Bradley were deliberately indifferent to the Plaintiff's medical needs.**

In order to prevail under 42 U.S.C. § 1983 on a medical claim, the Plaintiff must demonstrate that each of these Defendants was deliberately indifferent to a "serious"

medical condition, such that his conduct constitutes a violation of the Fourteenth Amendment.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing Estelle v. Gamble, 429 U.S. 97, 103-104 (1976)).  In Estelle, the Supreme Court stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. ***Medical malpractice does not become a constitutional violation merely because the victim is a prisoner***.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  ***It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment***.

429 U.S. at 105-06 (emphasis added).  See also, Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).  Assuming, *arguendo*, the Plaintiff had a serious medical condition, the evidence in the record shows that these Defendants were not deliberately indifferent to it.

Prior to January 16, 2004, the Plaintiff did not have a serious medical condition. To be sure, he had a sprained ankle and his long standing back problems.  However, as the records clearly show, the Plaintiff was seen by physicians, received treatment, and was given prescribed medications.  The Plaintiff received medications daily.  (See generally jail logs; Crews Pharmacy recs.)  The Plaintiff was taken to Dr. Weaver, Dr.

James, and Dr. Currie four times.  Paramedics were called when the Plaintiff had his "seizures" and falls.  (Jail logs dated 12/09/03.)  The Plaintiff was transported to Russell Hospital when he had his problems and the treatment plan of his doctor there was followed.  (Russell Hospital docs., treatment date 11/23/03).  The Plaintiff had a mental health evaluation.  (Hillyer docs.)  Dr. Hillyer's recommendation was followed and the Plaintiff followed up with Dr. Weaver.  (Jail logs dated 11/26/03; Weaver recs.)

Even the primary complaint by the Plaintiff – being moved from general population to the holding cells – demonstrates that Sheriff Owens and his staff (including Defendants Wilson, Roberson and Bradley) were not indifferent.  As the logs reflect, jailers were able to, and did, keep a close watch on the Plaintiff because of the cameras in the holding cells.  If the Plaintiff had a medical problem, the staff would have been able to quickly respond, unlike in general population where there were areas of the cell blocks – such as the cells themselves – that were not in view of the jail's security cameras.  It is perhaps not coincidental that once the Plaintiff was moved to the holding cell for the last time on December 16, 2003, he stopped having "falls" and "seizures" – he knew he was being watched.

The evidence conclusively demonstrates that the Plaintiff received medical treatment from at least three doctors, a dentist, and a psychiatrist.  He was taken to the hospital.  Paramedics were called for him when needed.  There is absolutely no evidence whatsoever that Defendants Wilson, Roberson and Bradley were indifferent to the Plaintiff's medical condition.  To the contrary, all of the evidence shows that the Defendants took extraordinary steps to ensure that the Plaintiff received medical, dental, and psychiatric care.

Where the Plaintiff's real bone of contention lies is in the type of assistance he received. The Plaintiff appears to be laboring under the misunderstanding that jail personnel are required to provide him with the treatment option he desires. However, as a matter of law, an inmate does not have a right to a *specific* kind of treatment. <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***.") (emphasis added). Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff. <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), <u>cert. denied</u>, 475 U.S. 1096 (1986); <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, neither Sheriff Owens nor Defendants Wilson, Roberson and Bradley had any kind of medical education, training or experience. They relied upon the professional judgment of medical professionals who provided care to the inmates in general and the Plaintiff in particular. In <u>Williams v. Limestone County</u>, 198 Fed. App'x. 893 (11th Cir. 2006), the Eleventh Circuit addressed in an unpublished opinion the issue

of whether an inmate may maintain a medical claim under the auspices of § 1983 against prison officials with no medical background.  In Williams, the Eleventh Circuit held that a Sheriff was not liable for failure to train his employees in emergency medical procedures.    (The same conclusion would hold true for any claims made against Defendants Wilson, Roberson and Bradley.)  In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." ….
>
> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.  See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir.1988).  In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide ….  "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997).  See also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).  Williams [the plaintiff], as the district court concluded, thus failed to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition.

198 Fed. App'x. at 897-898.

The Eighth Circuit has also addressed whether a jail official may be held liable for claims of deliberate indifference to a medical condition when medical treatment is provided. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[2] for failing to provide

---

[2] The medical director was a trained and licensed nurse.  Zentmyer, 302 F.3d at 846.

him with a positive air pressure machine needed to treat his sleep apnea.  <u>Meloy</u>, 302

F.3d at 847.  Reversing the district court's denial of summary judgment for the director,

the Eighth Circuit began by making some common sense observations.  "A prison's

medical treatment director who lacks medical expertise cannot be liable for the medical

staff's diagnostic decisions."  302 F.3d at 847 <u>citing</u>, <u>Camberos v. Branstad</u>, 73 F.3d 174,

176 (8th Cir. 1995).  Further, the <u>Meloy</u> court stated "[p]rison officials cannot substitute

their judgment for a medical professional's prescription."  <u>Id.</u> <u>citing</u>, <u>Zentmyer v. Kendall</u>

<u>County</u>, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical
> training to second-guess or disregard a treating physician's treatment
> decision.  Because the law was not clearly established that [the director]
> was deliberately indifferent to [the plaintiff's] serious medical needs, [the
> director] is entitled to qualified immunity.

302 F.3d at 849.

### 2.    Defendants Wilson, Bradley and Roberson did not subject the Plaintiff to unlawful jail conditions.

There is no constitutional mandate that prisons or jails be made comfortable.

<u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).  "Lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

considerations underlying our penal system."  <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948).

"Maintaining institutional security and preserving internal order and discipline are

essential goals that may require limitation or retraction of the retained constitutional

rights of both convicted prisoners and pretrial detainees."  <u>Bell v. Wolfish</u>, 441 U.S. 520,

546 (1979).  A claim by a pretrial detainee regarding conditions of confinement is reviewed

under the Fourteenth Amendment's due process standard.  <u>Id.</u> at 575 n.16.  The Plaintiff

cannot prevail on his conditions of confinement claim because the evidence shows that he was not punished and these Defendants were not deliberately indifferent.

> **a.    The Plaintiff's conditions of confinement did not amount to punishment.**

The standard for evaluating the constitutionality of a particular restriction for purposes of affording due process under the Fourteenth Amendment is whether the restriction amounts to punishment of the detainee.  Bell, 442 U.S. at 535.  The Supreme Court went on in Bell to spell out how the Court determines whether conditions amount to punishment.  "[I]f a particular condition or restriction of pretrial detention is ***reasonably related to a legitimate governmental objective***, it does not, without more, amount to 'punishment'."  Id. at 539 (emphasis added).  In general, moving the Plaintiff to the holding area after his repeated "falls" and "seizures" cannot be said to be anything but a legitimate governmental objective.  The objective was the very thing the Plaintiff accuses the Defendants of not doing – looking after his health.

The Plaintiff was not kept in the holding cell continuously for 40 days as alleged in the Amended Complaint.  Although the Plaintiff was in and out of the holding cell for a variety of reasons previously, he was not moved into the holding cell for the last time until December 16, 2003.  He remained there until he was taken to Russell Hospital on January 16, 2004 – a period of 31 days.  (Jail logs dated 12/16/03 and 12/16/04).

Placing the Plaintiff in the holding cells enabled jail staff to monitor him around the clock and immediately summon assistance if he needed it.  Prior to December 16, 2003, the Plaintiff had apparently fallen down stairs, tripped over a mop bucket, and had self-described "seizures" for which no medical confirmation was ever received.  Moreover, the Defendants went so far as to first try a lesser restrictive means of accomplishing the

14

objective by moving the Plaintiff to a lower tier cell to prevent him from having any problems with the stairs. This was clearly insufficient because the Plaintiff then had a problem with a mop bucket. The jail staff also could not monitor him while he was in his cell. When the Plaintiff complained about this through the grievance process, he was specifically informed "you are placed up front so you can be monitored on camera 24 hrs [sic] for your safety due to your medical problems – this has been explained to you several times." (Request form dated 12/18/03.)

The evidence also shows that once the Plaintiff was moved to the holding area, he was still afforded nearly the same amenities as he received in general population. Contrary to the allegations in the Amended Complaint, the Defendants did not simply throw the Plaintiff in "the hole" and throw away the key. *By order of Sheriff Owens and Jail Administrator Wilson*, the Plaintiff was allowed to leave the holding area for, on occasion, hours at a time to shower, use the telephone, watch television, etc. (See generally Jail logs; Owens dec. at ¶¶ 46-49.)

Consequently, the Defendants' act of moving the Plaintiff to the holding area and treatment of him while he was there were related to a legitimate governmental objective, did not amount to punishment, and did not violate his Fourteenth Amendment rights. Bell, 441 U.S. at 539.

> **b.** **Defendants Wilson, Roberson and Bradley were not deliberately indifferent to the Plaintiff's conditions of confinement.**

The evidence also shows that Defendants Wilson, Roberson and Bradley were not deliberately indifferent with respect to the Plaintiff's conditions claims. In order to overcome the Defendants' entitlement to qualified immunity, the Plaintiff must allege and

prove that they were deliberately indifferent.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994). Specifically, in this context, these Defendants must have been subjectively aware of a serious risk to the Plaintiff's safety due to his conditions of confinement and disregarded it. <u>Id.</u>

No reasonable juror would find that the Plaintiff was subjected to unconstitutional conditions based upon the evidence in the record.  The Plaintiff has alleged a wide variety of allegedly deficient conditions including lack of showers (except on "rare occasions"), drinking water (for "hours at a time"), toilet paper, and exercise outside of his cell.  He has also asserted that he was required to sleep on a "thin" plastic mat on the floor near the holding cell's in-ground toilet.  (Doc. 42 at pp.4-11.)  The facts that have emerged do not support the Plaintiff's claims.

As noted previously, during the 31 days the Plaintiff was in the holding cells, the Plaintiff was allowed out each and every day.  (<u>See generally</u> Jail logs.)  Sheriff Owens and Jail Administrator Wilson specifically instructed that the Plaintiff be allowed to take a bath every night and use the phone occasionally.  (Owens dec. at ¶ 46; Jail logs dated 12/08/03.) The jail's logs show that these orders were carried out on every day the Plaintiff was in the holding cell with the exceptions of December 17th, December 28th, December 30th, and January 4th-5th.  (Jail logs dated 12/16/03 through 1/16/04.)

The longest the Plaintiff ever went without a shower while he was in the holding cell was two days.  (Jail logs dated 12/16/03 through 1/16/04.)  Federal courts have authorized much longer deprivations.  <u>Davenport v. DeRobertis</u>, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding one shower per week sufficient); <u>Briggs v. Heidlebaugh</u>, 1997 WL 318081, *3 (E.D. Pa. 1997) (holding denial of shower for two weeks not constitutional

violation); DiFilippo v. Vaughn, 1996 WL 355336, *5 (E.D. Pa. 1996) (holding Eighth Amendment does not require inmates be given frequent showers); Tinsley v. Vaughn, 1991 WL 95323 at *4 (E.D. Pa. 1991) (holding no violation when shower privileges suspended for twelve days); Bensinger v. Nichols, 1994 WL 561924, *1 (E.D. Pa. 1994) (granting motion to dismiss where plaintiff alleged, *inter alia*, that he received showers only once every three days); Mugmuk v. Beyer, 1988 WL 80875, *2 (D.N.J. 1988) (holding no constitutional violation where plaintiff was permitted to shower only once every three days); Pendleton v. Housewright, 651 F. Supp. 631, 634 (D. Nev. 1986) (approving three-day shower rule imposed by prison official).

Moreover, when the Plaintiff took his showers he was usually allowed to take them in B-block and in at least once instance remained out of the holding cell for over five hours. (Jail log dated 1/13/04.) During the time the Plaintiff was allowed out for showers, he had the opportunity to get water, use the bathroom, use the telephone, watch television, and walk. (See generally Jail logs dated 12/16/03 to 1/16/04.)

The Plaintiff was also allowed out of the holding cell on numerous occasions to use the telephone and for weekly visitation. While he was in the holding cell, the Plaintiff never missed a visitation. (Jail logs dated 12/20/03, 1/3/04, 1/10/04; Visitation logs dated 12/20/03, 12/27/03, 1/3/04, 1/10/04.) The Plaintiff also was allowed out of his holding cell to use the telephone at least once every day. (Jail logs dated 12/16/03 through 1/16/04.) The record makes it clear that the Plaintiff was absolutely not cut off from the outside world.

Sheriff Owens also specifically directed that the Plaintiff be allowed to use the toilet in the exam room located between the two holding cells. (Jail log dated 12/18/03; Owens dec. at ¶ 47.) While the Plaintiff's bathroom trips were not as well-documented as some of

his other trips outside of his cell, when combined with the shower trips, it is clear that the Plaintiff was allowed to regularly leave the holding cell to use the restroom. Furthermore, there is no evidence that these Defendants received some sort of notice that created subjective knowledge on their part of the alleged deprivations.

With respect to the Plaintiff being forced to sleep on the floor, three points need to be made. First, the evidence shows that the mats were not "thin" and were sufficient to insulate the Plaintiff from the floor. (Owens dec. at ¶ 18.) The mats were 5-6" thick and the Plaintiff was allowed to have two of them because of his back. Id. at ¶ 19. Second, the cells were sufficiently large enough that the Plaintiff could sleep well away from the in-ground toilet and, in the larger cell, sleep against a wall and be as far away from the in-ground toilet as he would be were he to sleep on the bench. Id. at ¶ 40. Third, the order was given because of the Plaintiff's demonstrated propensity for falling and supposedly hurting himself. In short, the order was given for his own protection. Id. at ¶ 41. If the Plaintiff felt the mats were insufficient, he never let these Defendants know about it. (Owens dec. at ¶¶ 73-75.)[3]

The Plaintiff has also alleged that there were bugs in his food and in his cell. There was one incident on December 7, 2003, in which bugs were found in some oatmeal. (Jail logs dated 12/07/03; Owens dec. at ¶ 63.) However, the oatmeal was **not** served to the inmates and grits were substituted instead. Id. Additionally, as the June 2003 Alabama Department of Corrections inspection report shows, the jail had a monthly pest control contract. (See also, Owens dec. at ¶ 62.) Accordingly, even if having bugs in the jail

---

[3] The Plaintiff did file several grievances that said little more than he wanted to talk with Sheriff Owens. (Request forms dated 12/2/03 (signed), 12/2/03 (unsigned), 12/3/03, 12/10/03, "Unknown 12-3".) However, these never got to Sheriff Owens because they were not specific and the only one that mentioned something specific was handled by a staff member in accordance with jail policy. (Owens dec. at ¶ 74.)

amounted to a constitutional violation, the jail staff was not indifferent because corrective action was taken.

Another of the Plaintiff's allegations that has a kernel of truth to it is his complaints about the heat. It is true that there was a problem with the jail's heat pump in December. However, a work order was put in immediately and the heat pump was repaired on or about December 12, 2003. (Owens dec. at ¶ 61.) Once again though, the Plaintiff never complained to these Defendants nor let him know them know there was a problem.

There is no evidence in the record to support the Plaintiff's condition of confinement claim against Defendants Wilson, Roberson and Bradley. The undisputed evidence regarding the orders that Sheriff Owens gave, the contemporaneously prepared jail logs showing the efforts to comply with Sheriff Owens's orders by these Defendants and other jail staff members, the actions taken by Sheriff Owens and his staff to correct the problems that did exist, and the lack of the Plaintiff's use of the grievance procedure make the Plaintiff's deliberate indifference burden insurmountable. He cannot show subjective awareness on the part of these Defendants nor can he show indifference to the conditions of which these Defendants became aware.

### 3. The Plaintiff has failed to create a triable issue with respect to his alleged assault by Defendant Al Bradley.

Based on the Supreme Court's reasoning in Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) and the application of that reasoning in excessive force cases like Skylstad v. Reynolds, 2007 WL 2766436 at *2 (9th Cir. 2007) and Williams v. Martin, 2007 WL 4139476 (N.D. Ga. Oct 29, 2007), Kelly has failed to create a genuine issue of fact with respect to his use of force claims against Defendant Al Bradley. Kelly has therefore

failed to state a constitutional claim and Defendant Bradley is entitled to qualified immunity.[4]

According to Kelly's testimony, Al Bradley beat him, abused him or mistreated him on several occasions—one time violating him with a broom handle.  Yet, Kelly's claims are so far removed from the testimony of all the other eyewitnesses and documentary evidence that this Court would be justified in rejecting it as being utterly incredible to any reasonable jury.   See Scott, 127 S.Ct at 1776 ("*When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")*  (Emphasis added).

First, no other eyewitness supports Kelly's account of being regularly mistreated and abused by Al Bradley. Moreover, the undisputed facts show that Bradley was ten to fifteen years Kelly's senior and had been hobbled by six hip-related operations—hardly someone who could have taken the actions alleged by Kelly.  Kelly never filed a complaint or grievance with respect to his alleged mistreatment at the hands of Bradley although Kelly knew the procedure having filed nearly twenty grievances or complaints during his sixty days in the Coosa County Jail.  Kelly's account of his mistreatment is also inconsistent with his father's testimony as to what Kelly told him and the work records showing that Bradley was not even working when the alleged abuse occurred.

But perhaps most significantly, the medical records concerning Kelly show that he never reported to any medical provider any injury incurred as a result of these alleged beatings, nor do the medical providers record any signs of such abuse.  No reasonable

---

[4] Contra Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th. Cir. 2002) (stating that qualified immunity is unavailable to excessive force claims arising in an Eighth Amendment context.) This statement in Skritch is arguably dictum.  Additionally, the facts in Skritch are distinguishable from the instant case.

jury would believe that Kelly was abused to the extent he alleges, yet the abuse left no marks on him and Kelly never related to any of numerous medical providers any description of the abuse or its effects.    Compare with Skylstad v. Reynolds, 2007 WL 2766436 at *2 (9th Cir. 2007) ("The medical evidence, however, directly contradicts Skylstad's version of events. Although the dog bite was serious and required medical attention, there is no medical evidence of multiple dog bites, head injury, or cuts on the arms. . . . In summary, Skylstad failed to raise a triable issue for a jury on his claim of excessive force.") and Williams v. Martin, 2007 WL 4139476 at *7 -*8 (N.D. Ga. Oct 29, 2007) (concluding that "the evidence supporting William's claim that Hatcher used unconstitutionally excessive force is exceptionally weak" and "[v]iewing the affidavits, depositions, statements, medical information, and other portions of the record as a whole, the Court concludes that no reasonable juror could believe that Hatcher used actionable force against Williams after the CERT officers arrived.")

Finally, the fact that Plaintiff has failed to produce any evidence that his alleged injuries existed—much less were substantial—justifies summary judgment in Bradley's favor based on this Circuit's de minimis injury rule.   The same logic applied in the Williams case described above applies to Kelly's claim here:

> "In the present case, there is no evidence that Williams suffered any injury from Hatcher's uses of force before the CERT team arrived. . . . Even if Hatcher's use of force before the CERT officers arrived was improper, Williams does not allege and the record does not show any substantial injury. Thus, Williams's Eighth Amendment claim fails with regard to Hatcher's actions prior to the CERT officers' arrival.

Williams, 2007 WL 4139476 at *7 (granting qualified immunity and summary judgment on the excessive force claims).

4.    **Defendants Wilson and Roberson Did Not Fail to intervene and protect the Plaintiff.[5]**

The Eleventh Circuit has held that an officer who is present when another officer uses excessive force can be held liable for failing to intervene.   Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).  However, liability only arises if the defendant officer is actually in a position to intervene and fails to do so.   Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).  Fundiller stands for the proposition that an officer *who is present* can be held liable under 42 U.S.C. § 1983 for failing to intervene.  Fundiller, 772 F.2d at 1441-42.

There is absolutely no evidence in the record to demonstrate that Defendants Wilson and Roberson were ever present when the alleged incidents between the Plaintiff and Al Bradley took place. Nor is there any evidence whatsoever that Defendants Wilson and Roberson took part in the alleged abuse.  Consequently, under Fundiller, Sheriff Owens cannot be held liable on a direct liability theory of failure to intervene.  772 F. 2d at 1441-42.

However, as this Court noted in its earlier decision, it is possible for a supervisory official to be held liable for excessive force if there is a causal connection between his actions and the alleged constitutional violation.  (Doc. 71 at p. 20 n.8 citing Braddy v. Florida Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998).  The Court pointed out, however, that the Plaintiff would have to prove the facts alleged in his Complaint.  Id.  He has not done so.

---

[5] Wilson and Roberson adopt by reference Defendant Bradley's arguments contained in this brief that he did not use excessive force on the Plaintiff.  If Al Bradley did not use excessive force, then, *a fortiori*, these Defendants did not fail to intervene or cause Al Bradley to abuse the Plaintiff.

The evidence in the record clearly shows that neither Wilson nor Roberson's conduct could have caused or allowed the alleged abuse to have occurred. As discussed at length above, Sheriff Owens specifically ordered that the Plaintiff be moved to cells that would allow him to be closely monitored by the jail staff. Not one entry in the jail logs states "Al Bradley beat Kelly", or words to that effect. (See generally jail logs.)

Even if Kelly had told Wilson or Roberson that Bradley had "beat him" such a claim would have been highly dubious under the circumstances. Kelly was under 24 hour surveillance – any assault would have been observed and the perpetrator stopped. The Plaintiff had been caught "crying wolf" on previous occasions. There were never any signs of such abuse on the Plaintiff.[6] Of course there was also the disparity in age, size, and physical infirmity between the two men that also belied the likelihood that Al Bradley was involved in such conduct. (Owens dec. at ¶ 70.)

The Plaintiff has also adduced no evidence of these Defendants or any other jailers being involved despite the naked allegation in his Amended Complaint that an unnamed jailer assisted Al Bradley during one of the assaults.

5.    **Plaintiff's "failure to train" claim against Defendants Wilson and Roberson is due to be stricken on summary judgment.**

Supervisory official faces § 1983 liability only where the "'failure to train' amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains." Belcher v. City of Foley, 30 F.3d at 1390, 1397 (11th Cir. 1994) (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)). Put into the

---

[6] The Plaintiff apparently did not report his abuse to any of his medical providers. There is no mention of any of the attacks or injuries suffered therefrom in the Russell Hospital records, Dr. Weaver's records, Dr. James's records, or Dr. Currie's records.

context of Plaintiff's training claim, in order to be deliberately indifferent, Defendants Wilson and Roberson must have been aware of a serious risk posed by Bradley or other jailers that would result in their violation of the Plaintiff's federally protected rights. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Plaintiff's training claims can be grouped into two categories. Claims in the first category involve failure to provide medical training to jail staff. For the reasons stated previously (e.g., allegations in the Amended Complaint and evidence in the record regarding Plaintiff's frequent access to medical care and the reasonableness of relying upon the jail doctor and other medical personnel), the Plaintiff's medical training claims fail as a matter of law.

The second category involve claims related to the alleged abuse the Plaintiff received at the hands of Officer Bradley and others. The Plaintiff's claims here involve failing to train officers not to abuse prisoners. However, under Eleventh Circuit precedent, a policy-making official is not required to promulgate policy or train subordinates to refrain from doing that which is clearly illegal. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (holding that there is no supervisory liability where the conduct engaged in by a subordinate is obviously illegal).

If the Plaintiff's conclusory allegations are correct, kicking prisoners, punching them, and attempting to sodomize them with a broomstick are clearly illegal. Assuming, arguendo, the truth of the Plaintiff's allegations (in spite of the overwhelming evidence and application of the Scott v. Harris standard of review), Defendants Wilson and Roberson were under no constitutional obligation to implement a policy against or provide training regarding that which is clearly already illegal.

These same arguments were made in a motion to dismiss filed by Sheriff Owens and they were used by the Magistrate to dismiss the failure to train claims against Sheriff Owens. See Doc. No. 71, p. 20, Magistrate's Report and Recommendation of November 16, 2006 (adopted by this Court on December 4, 2006, see Doc. No. 80).

**B.    No Clearly Established Law Provided Defendants With "Fair Warning" That His Conduct Violated the Plaintiff's Federally Protected Rights.**

The Plaintiff's final burden under the qualified immunity analysis is to show that clearly established law provided Defendants Wilson, Roberson and Bradley with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

After a diligent search of the relevant case law, counsel for the Defendants has been unable to find a case involving materially similar facts that held conduct similar to that engaged in by the Defendants to be unlawful. Consequently, the Plaintiff has the burden of

25

either identifying such a case or proving that the conduct of these Defendants was obviously illegal. In light of the law cited above finding similar conduct constitutional, the Plaintiff simply cannot meet his burden. See, e.g., City of Revere, 463 U.S. at 246; Hamm, 774 F.2d at 1575; Camberos, 73 F.3d at 176; Davenport, 844 F.2d at 1316-17; French, 777 F.2d at 1255; Sewell, 117 F.3d at 490. Consequently, even if the Court were to conclude that the Amended Complaint set forth constitutional violations against these Defendants, they are nonetheless entitled to judgment in their favor as a matter of law.

CONCLUSION

Based on the foregoing, Defendants Terry Wilson, Wendy Roberson and Al Bradley move that this Court enter summary judgment in their favor and against the Plaintiff with respect to all remaining claims.

Respectfully submitted this 30th day of November, 2007.

**s/Kristi A. McDonald**
Kristi A. McDonald, Esq.
McDonald & McDonald
1005 Montgomery Highway
Birmingham, Alabama 35216-2805
Telephone: (205) 824-0507
Fax: (205) 824-0509
E-mail: felalaw@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Richard J. Stockham, III**, and **Gary L. Willford, Jr**.

**s/Kristi A. McDonald**
OF COUNSEL