IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| **DANIEL BRYAN KELLY,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | CIVIL ACTION NO. |
| **v.** ) | 2:05cv1150-MHT |
| ) | |
| **RICKY OWENS, etc., et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

### ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on December 20, 2007, wherein the following proceedings were held and actions taken:

**1.    PARTIES AND TRIAL COUNSEL:**

| PARTIES | TRIAL COUNSEL |
|---|---|
| Plaintiff<br>Daniel Bryan Kelly | Richard J. Stockham, III<br>Stockham, Carroll, & Smith P.C. |
| Defendants<br>Sheriff Ricky Owens | Kendrick E. Webb<br>Gary L. Willford, Jr.<br>Webb & Eley, P.C. |
| Terry Wilson<br>Wendy Roberson<br>Al Bradley | Kristi McDonald<br>McDonald & McDonald |

**2.    COUNSEL APPEARING AT PRETRIAL HEARING:**

Same as Trial Counsel.

**3.    JURISDICTION AND VENUE:**

The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Personal Jurisdiction and Venue is proper in the Middle District of Alabama, Northern Division, because the existing claims are alleged to have occurred in Coosa County, Alabama, and all Defendants resided in Coosa County, Alabama at the time of filing of the instant action.

4. **PLEADINGS:** The following pleadings and amendments were allowed:

   (a)   Plaintiff's Amended Complaint;

   (b)   Answer to Amended Complaint of Defendant Sheriff Ricky Owens; and

   (c)   Answer of Defendants Terry Wilson, Wendy Roberson, and Al Bradley to Amended Complaint.

   Further the following motions are pending:

   (a)   Motion for Summary Judgment by Defendant Ricky Owens; and

   (b)   Motion for Summary Judgment by Defendants Terry Wilson, Wendy Roberson, and Al Bradley.

5. **CONTENTIONS OF THE PARTIES:**

   **(a)   Plaintiff Daniel Bryan Kelly**

   1.   Plaintiff Daniel Bryan Kelly contends that Defendants Ricky Owens, Terry Wilson, Wendy Roberson and Al Bradley violated his constitutional rights under 42 U.S.C. § 1983, when they; (1) were deliberately indifferent to his medical care; (2) subjected him to unconstitutional conditions of confinement; and (3) subjected him to physical abuse and/or failed to prevent physical abuse.

   2.   Plaintiff had seizures while in the jail resulting in falls where Plaintiff was injured. Each of the Defendants were aware of Plaintiff's injuries but denied treatment for and/or were

unreasonably delayed in responding to Plaintiff's serious medical condition, resulting in pain and mental anguish that constituted a constitutional deprivation.

3. Defendants were notified by Matt Hilyer of Cheha Mental Health of Plaintiff serious medical condition of seizures, and that he needed to be evaluated about his seizures by a doctor. Defendants failed to obtain any evaluation of plaintiff's seizures by a doctor. Instead, when Plaintiff fell on December 16, 2003 Defendants moved Plaintiff to a 4'x 8' cell that had no running water or toilet and kept him housed there until January 16, 2004 instead of providing medical evaluation and treatment for Plaintiff's seizures. Plaintiff had several seizures in this time period. Plaintiff requested in writing December 18, 2003 that he get to see a doctor for his seizures but none was provided. This resulted in Plaintiff suffering pain and mental anguish, which was a constitutional deprivation.

4. Plaintiff was given medicines, including some that were not his regular medicines. Plaintiff complained repeatedly that he was feeling bad, was having shocking spells, was having seizures, was hallucinating, and that his urine was turning dark. Defendants failed to respond and/r were unreasonably delayed in responding to Plaintiff's complaints, resulting in Plaintiff suffering the life threatening condition of drug induced hepatitis and a hepatic encephalopathy in violation of Plaintiff's constitutional rights.

5. Plaintiff's teeth were broken when Al Bradley struck him in the face. He complained about his teeth aching beginning December 27th but was not taken to a dentist until January 14th, resulting in pain and mental anguish that constituted a constitutional violation.

6. With respect to Plaintiff's conditions of confinement, Plaintiff was confined in an 8x10 foot cell with no water and no toilet. The only facility for urination and defecation was a hole

in the floor which was flushed from the outside. Plaintiff was housed in this cell from December 16, 2003 to January 16, 2003. Plaintiff was taken out to get a shower once or twice a week. He was taken out to go to the bathing room one time a day, but he was otherwise required to urinate and defecate in the grate. On two occasions he was not taken out to go to the bathroom for three or four days. There were occasions when the cell drain hole was not flushed for several days. He was taken out on occasions to use the phone. Plaintiff was required to sleep on a thin plastic matt on the floor next to the grate where he was required to urinate and defecate. Toilet paper was taken away from him on Owens' instruction. He had been using the toilet paper to wrap his feet because it was cold in the cell. He had to use candy wrappers to wipe himself. He complained about the cold, but nothing was done. There were roaches in the cell. Plaintiff was constantly thirsty and constantly requesting water. Defendants, however, did not provide him with water when he asked for it. He was only given a cup of water at meal times. After Plaintiff had been in the cell for about a week Defendant Owens put a piece of cardboard over the only window in the cell. Plaintiff was never taken out to exercise. He was taken out of the cell on occasion to use the phone and to use the restroom. There were still numerous times when he had to use the restroom that he was required to use the grate in his cell. These constitute unconstitutional conditions of confinement. Defendants were aware of them.

      7.      With respect to the physical abuse, Plaintiff was subjected to repeated occasions where Al Bradley struck him. Plaintiff reported this to Defendants Owens, Wilson, and Roberson. When Plaintiff reported this to Wilson, Wilson shoved him into the holding cell hurting his back. These violated Plaintiff's constitutional right to be free of physical abuse.

     **(b)**     **Defendant Ricky Owens**

1. Sheriff Owens contends that he is entitled to qualified immunity on each of the Plaintiff's claims.

2. The Plaintiff received timely medical treatment.

3. The Plaintiff received adequate medical treatment.

4. If the Plaintiff did not receive timely or adequate medical treatment, these were facts unknown to Defendant Owens.

5. Prior to January 16, 2004, the Plaintiff did not suffer from a serious medical condition.

6. To the extent the Plaintiff had a serious medical condition on January 16, 2004, it was self-inflicted, and not preventable by Defendant Owens.

7. Defendant Owens relied upon the independent medical judgments of the Plaintiff's medical care providers.

8. The Plaintiff was not subjected to unconstitutional conditions of confinement.

9. If the Plaintiff was subjected to unconstitutional conditions of confinement, the underlying facts were unknown to Sheriff Owens and in violation of his express orders to the contrary.

10. The Plaintiff was not mistreated at all during his incarceration. The Plaintiff was given regular medical treatment and all treatment regimens prescribed by the Plaintiff's treating physicians were followed. Following two mysterious falls and claims of seizures, the Plaintiff was moved to the holding cells on December 16, 2003, because Defendant Owens was concerned for the Plaintiff's safety and wanted to keep him under close observation. While he was assigned to the holding cells, the Plaintiff was let out regularly for hours at a time – to use the telephone, shower,

watch television, use the toilet, and other purposes. The Plaintiff was given two thick mats to sleep on. The Plaintiff was not subjected to any of the harsh conditions he alleges in his Amended Complaint, despite the fact that he was a constant discipline problem for Defendant Owens and his staff.

      11.     The Plaintiff was not subjected to excessive force.

      12.     If the Plaintiff was subjected to excessive force, Defendant Owens was unaware of it.

      14.     If the Plaintiff was subjected to excessive force, it was in violation of Defendant Owens's policies and express orders to the contrary.

      **15.     At all times, Sheriff Owens was acting within his discretionary authority.**

      **16.     The Plaintiff is barred by the statute of limitations for any alleged acts that occurred more than two years prior to the filing of his Complaint.**

      (c)     Defendants Terry Wilson, Wendy Roberson, and Al Bradley

      1.     Defendants Wilson, Roberson, and Bradley were acting within their discretionary authority at all times.

      2.     Defendants Wilson, Roberson, and Bradley contend they are entitled to qualified immunity on each of the Plaintiff's claims.

      3.     The Plaintiff received timely medical treatment.

      4.     The Plaintiff received adequate medical treatment.

Prior to January 16, 2004, the Plaintiff did not suffer from a serious medical condition. To the extent the Plaintiff had a serious medical condition on January 16, 2004, it was self-inflicted, and not preventable by Defendant Wilson, Roberson or Bradley. Defendants Wilson, Roberson and Bradley relied upon the independent medical judgment of the Plaintiff's medical care providers. The Plaintiff was not subjected to unconstitutional conditions of confinement. The Plaintiff was not

subjected to excessive force. If the Plaintiff was subjected to excessive force, he failed to report it to Defendant Wilson or Roberson. On one of the occasions the Plaintiff alleges that Defendant Bradley used excessive force against him, January 3, 2004, Defendant Bradley was not working that day. The Plaintiff was not mistreated at all during his incarceration. The Plaintiff was given regular medical treatment and all treatment regimens prescribed by the Plaintiff's treating physicians were followed. Following two mysterious falls and claims of seizures, the Plaintiff was moved to the holding cells on December 16, 2003, so he could be kept under close observation. While he was assigned to the holding cells, the Plaintiff was let out regularly for hours at a time – to use the telephone, shower, watch television, use the toilet, and other purposes. The Plaintiff was given two thick mats to sleep on. The Plaintiff was not subjected to any of the harsh conditions he alleges in his Amended Complaint, despite the fact that he was a constant discipline problem for the jail staff. The Plaintiff's claims for acts which occurred two years prior to the filing of his Complaint is barred by the statute of limitations.

6. **STIPULATIONS BY AND BETWEEN THE PARTIES:**

(a) The Plaintiff was incarcerated in the Coosa County Jail on Thursday, November 13, 2003, after failing a drug test in Court, in violation of his probation.

(b) The Plaintiff remained in the Coosa County Jail until January 16, 2004, when he was transported to Russell Medical Center.

(c) At all relevant times, the Sheriff of Coosa County was Ricky Owens.

(d) At all relevant times, Terry Wilson was a Coosa County deputy sheriff serving as the jail administrator of the Coosa County Jail.

(e) At all relevant times, Wendy Roberson was a jailer with the rank of sergeant in the Coosa County Jail, and as such, served as the assistant jail administrator.

(f) The Coosa County Jail has two holding cells located in the booking/dispatch area of

7                                                                                       7

the jail.

(g) The holding cells do not have a sink, shower or standard toilet located within them. There is, however, a flushable in-ground toilet located in the middle of the floor. The in-ground toilet is primarily used for urination although it could be used for defecation. The in-ground toilet cannot be flushed from inside the cell. There is button on the outside of the holding cells that flushes the in-ground toilet.

(h) The holding cells have a concrete bench wide enough for an average sized person to lay down upon.

(i) There are no telephones in the holding cells.

(j) Each cell has a camera mounted within it so the inmate(s) in the cell can be monitored from the tower at all times.

(k) Upon incarceration at the Coosa County Jail, inmates are provided with a copy of the Coosa County Jail Inmate Rules and Regulations.

(l) The Plaintiff was provided with a copy of the Rules and Regulations.

(m) On the date the Plaintiff was incarcerated he was taking only two medications: Zyprexa and Lorcet Plus.

(n) The Plaintiff was out of his medication on the date he was incarcerated.

(o) The Plaintiff's mother was made aware by Defendant Roberson that the jail would administer any medications brought to the jail pursuant to the jail policy.

(p) On November 25, 2003, the Plaintiff was evaluated by Matt Hillyer from Cheaha Mental Health. The Plaintiff reported to Mr. Hillyer that he was taking the following medications: Clonazepam – 2mg; Neurontin – 300 mg; Zyprexa – 5 mg; Phenobarbital – 60 mg; and Seroquel – 200 mg. Mr. Hillyer's note was faxed to Dr. Weaver and an appointment was made for the Plaintiff to see Dr. Weaver on the following day.

(q)   Dr. Weaver was the doctor that was used by Coosa County Jail for inmate care. When Dr. Weaver was unavailable, Dr. James in Alexander City was the doctor that was used for inmate medical care.

(r)   On November 26, 2003, the Plaintiff was seen by Dr. Weaver for medication check and to check for a possible fracture to the Plaintiff's foot.

(s)   The Plaintiff was taken to Russell Medical Center Emergency Room on November 26, 2003, to have his foot x-rayed.

(t)   The Plaintiff's foot was x-rayed and the radiology report indicates there was no fracture or dislocation. The impression was that there was no evidence of acute right ankle injury. The Plaintiff's foot was wrapped with an ace bandage and he was told to use Tylenol for pain. No prescriptions were given to the Plaintiff.

(u)   The records from Crew Drug Store in Rockford, Alabama, indicate the following medications were filled for the Plaintiff during his incarceration:

> **November 26, 2003**: Zyprexa – 5 mg (14 tablets)Clonazepam (28 tablets)Neurontin (42 tablets)Seroquel (42 tablets)Phenobarbital (28 tablets)**December 9, 2003:**Zyprexa (14 tablets)Clonazepam (28 tablets)Neurontin (42 tablets)Seroquel (42 tablets)Phenobarbital (28 tablets)**December 12, 2003:**Methocarbamol 28 tablets**December 26, 2003:**Zyprexa – (16 tablets)Clonazepam – (32 tablets)Neurontin – (48 tablets)Seroquel – (48 tablets)Phenobarbital (32 tablets)**January 2, 2004**Methocarbamol (28 tablets)Zyprexa – 10 mg (28 tablets)**January 6, 2004**Clonazepam – (14tablets)Neurontin – (42 tablets)Seroquel – (42 tablets)Phenobarbital (28 tablets)**January 7, 2004**Hyproxyzine – (40 tablets)**January 12, 2004**Methocarbamol (28 tablets)**January 15, 2004**Zyprexa – 10 mg (28 tablets)

(v)   On December 9, 2003, an inmate called the front and advised that the Plaintiff had fallen down the stairs. The officer in the tower noted that he did not see this fall. The Plaintiff was transported to Russell Medical Center Emergency Room by ambulance. The Plaintiff was released and returned to the jail where he was placed back in a holding cell for medical observation.

(w)   At the time of the Plaintiff's alleged December 9, 2003 fall, the Plaintiff was being

housed on the upper tier of the block. He was reassigned to a cell on the lower level of the block and advised that he was not to use the stairs at all.

(x)    On December 10, 2003, the Plaintiff filled out an Inmate Request Form asking to see a doctor to get his right knee checked and to get his Zyprexa refilled. An appointment was made for him to see Dr. James on December 11, 2003.

(y)    The Plaintiff was taken to see Dr. James on December 11, 2003. The Plaintiff reported to Dr. James that his shoulder, knee and lower back were hurting. The Plaintiff's shoulder was injected with two cortisone shots. His other medications remained unchanged.

(z)    On December 16, 2003, the Plaintiff claimed that he fell over a mop bucket and had problems with his head, back and one leg.

(aa)    An ambulance was summoned. Upon arrival, the EMS determined it was not necessary for the Plaintiff to be transported to the hospital. EMS advised to place Kelley under medical observation. The Plaintiff was placed in a holding cell on December 16, 2003. The Plaintiff remained assigned to a holding cell until he was taken to Russell Medical Center on January 16, 2004.

(cc)    On December 18, 2003, Sheriff Owens met with his jail supervisors and issued orders to the jail staff that the Plaintiff was allowed to have a bath every night and to use the telephone occasionally. Sheriff Owens also ordered that the Plaintiff be allowed to use the restroom in the medical examination room, which was a room located between the two holding cells. Sheriff Owens also ordered that the Plaintiff be observed by camera continuously and his activities documented..

(dd)    The examination room had its own toilet facilities

(ee)    On January 2, 2004, Dr. James' records indicate they had received a phone call asking that the Plaintiff's Zyprexa be changed from 5mg to 20mg. The records indicate that the

10                         10

Plaintiff's mother had initially been incorrect as to the dosage the Plaintiff had been receiving. The records further indicate that Food World Pharmacy had been contacted to confirm that the Plaintiff had been receiving 20mg of Zyprexa. The Plaintiff's prescription was then changed.

(ff) An appointment was made for the Plaintiff with Dr. David Currie, a dentist in Sylacauga, and the Plaintiff was taken to see Dr. Currie on January 14, 2004.

(gg) The Plaintiff was taken to see Dr. John James on January 7, 2004, where the records indicate his present illness as "body rash". Dr. James wrote a prescription for Atarax for the Plaintiff and, in addition, did blood work, which included a CBC with Platelet and a Comprehensive Metabolic Panel.

(hh) Dr. James records also indicate that the Plaintiff's liver tests on January 7, 2004, were abnormal and that the Plaintiff should follow up in 2 weeks

.(ii) The Plaintiff's incarceration at the Coosa County Jail from November 13, 2003 to January 16, 2004 was for a total of 65 days.

(jj) Prior to the Plaintiff's incarceration at the Coosa County Jail, the Plaintiff had been hospitalized at Brookwood Hospital in Birmingham, Alabama. The hospitalizations were in July and September of 2003. On both admissions, the Plaintiff was admitted for alcohol abuse, prescription drug abuse and illicit drug abuse. The History and Physical done on both occasions specifically states the Plaintiff has no history of seizures.

**It is ORDERED that:**

**(1) The jury selection and trial of this cause, which is to last four days, are set for January 28, 2008, at 10:00 a.m. at the Frank M. Johnson, Jr. United States**

Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama, 36104;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(4) The parties in this case are not required to file trial briefs.  However, if they wish to do so, their trial briefs shall be filed no later than January 23, 2008;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. No. 83) entered by the court on December 19, 2006; and

**(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.**

**DONE, this the 20th day of December, 2007.**

                          <u>/s/ Myron H. Thompson</u>
                          **UNITED STATES DISTRICT JUDGE**